Edward Hernstadt (EH 9569)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
212-214-0307

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

AYAL ROSENTHAL,

               Plaintiff,

          -v-

NEW YORK UNIVERSITY, NEW YORK
UNIVERSITY LEONARD N. STERN SCHOOL
OF BUSINESS, THOMAS F. COOLEY,
Richard R. West Dean of the Leonard N. Stern
School of Business, MELCHIOR OCHOA,
Chairman of the Stern School of Business
Judiciary Committee, and JOHN DOES 1-10,

               Defendants.

-------------------------------------------------------------X

08 Civ. 5338 (JES) ( ) ( )

COMPLAINT

JURY TRIAL DEMANDED

        Plaintiff Ayal Rosenthal, by his attorneys, Hernstadt Atlas LLP, as and for his Complaint

herein, alleges as follows:

## NATURE OF THE CLAIM

        1.     This case arises out of the unlawful decision by New York University ("NYU"),

NYU Leonard N. Stern School of Business ("Stern School"), Stern School Dean Thomas F. Cooley

("Dean Cooley,"), Melchior Ochoa ("Mr. Ochoa"), and others (collectively "Defendants") to strip

retroactively Plaintiff Ayal Rosenthal ("Mr. Rosenthal") of his Masters of Business Administration

("MBA") degree. Defendant Cooley and others at NYU and the Stern School orchestrated a star-

chamber disciplinary process that repeatedly violated NYU's own written policies and procedures, and

which culminated in Defendants' purporting to disclaim the actual fact of Mr. Rosenthal's graduation from the Stern School and denying him his MBA diploma and degree.

2.    Ayal Rosenthal graduated from the part-time MBA program at the NYU Stern School in January 2007. In two years, while employed during the day as an accountant at PricewaterhouseCoopers, LLP, Mr. Rosenthal successfully completed the Stern School's challenging course load, fulfilled all the necessary credits and requirements for his MBA degree, and paid fees, dues, and other consideration totaling more than $85,000 to NYU.

3.    Mr. Rosenthal attended a graduation ceremony on January 25, 2007, after which he received a letter from Dean Cooley congratulating him on successfully completing the requirements for graduation and advising him that the faculty had voted to confer an MBA degree upon him. A few days later Mr. Rosenthal received an official copy of his transcript, which indicated that he had indeed been graduated with an MBA degree.

4.    Nearly nine months after Mr. Rosenthal's graduation, however, NYU purported to retract the MBA degree it had already conferred on him, in clear violation of its own rules and policies. NYU made this outrageous decision even though Mr. Rosenthal had successfully completed all of the coursework and requirements, paid all necessary NYU tuition, fees, and other consideration valued in excess of $85,000, and had been duly graduated from the Stern School.

5.    Defendants have been inconsistent and evasive – indeed Kafkaesque – in the deeply flawed and capricious procedures they imposed on Mr. Rosenthal and the ever-changing explanations they have raised to justify their behavior. NYU averred that it took this unprecedented and punitive step because Mr. Rosenthal pleaded guilty to a federal offense after he graduated from the Stern School, even though the offense was wholly unconnected in any way to his course work, to the Stern School, or to any another school or division at NYU. Specifically, Mr. Rosenthal admitted to foolishly

2

and improperly divulging information about a client to his brother in "conscious avoidance" of federal securities laws. Mr. Rosenthal had acknowledged (and paid for) this serious mistake in judgment.

6.      Nonetheless, almost one year after Mr. Rosenthal joined his classmates in a graduation ceremony and was informed in writing by Dean Cooley that he had been awarded an MBA degree, NYU refused to send Mr. Rosenthal his diploma and, notwithstanding its prior statements to the contrary, informed him that no MBA degree had ever been conferred upon him. Instead, employing a bizarre and error-ridden process that denied Mr. Rosenthal most of the due process promised him under NYU rules and ignored essential NYU policies and regulations, the Stern School Faculty recommended that the "A" grade Mr. Rosenthal earned in the professional responsibility class he completed in April 2006 be changed to an "F" and that he be expelled from NYU. It is unclear whether the Stern School has actually implemented the Faculty's recommendation and changed Mr. Rosenthal's grade.

7.      In doing so, NYU and the Stern School breached their obligations to provide Mr. Rosenthal with the diploma that he earned; they also breached their obligations to Mr. Rosenthal in connection with the sham procedures they employed in purporting, well after the fact, to retract a grade properly earned by Mr. Rosenthal two years ago and to expel him from the Stern School almost a year after he had already been graduated.

8.      As a result of these and other improper and exceptionally damaging actions, Mr. Rosenthal has been forced to commence this lawsuit seeking damages and injunctive relief against the Stern School, NYU, Dean Cooley, Mr. Ochoa, and John Does 1-10.

THE PARTIES

9.      Mr. Rosenthal is an individual residing in the State of New Jersey.

10.     Upon information and belief, defendant New York University was and is a private, non-profit University, located in New York City, New York.

3

11.    Upon information and belief, defendant Leonard N. Stern School of Business is a graduate school of business administration affiliated with and part of NYU.

12.    Upon information and belief, defendant Thomas F. Cooley was and is the Richard R. West Dean of the Leonard N. Stern School of Business, and resides and works in New York City.

13.    Upon information and belief, defendant Melchior Ochoa was the Chairman of the Stern School Judiciary Committee during the 2007-2008 academic year, and resides in New York City.

14.    Upon information and belief, John Does 1-10 are the other current and/or former faculty and student members of the Stern School Judiciary Committee.

<u>JURISDICTION AND VENUE</u>

15.    This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

16.    This Court has personal jurisdiction over defendants NYU and Stern School on the grounds that defendants' principal place of business is located in the State and County of New York, over Dean Cooley on the grounds that, upon information and belief, he resides in New York City and his principal place of employment is located in the State and County of New York, over Melchior Ochoa and the grounds, upon information and belief, that he resides in the State and County of New York, and over John Does 1-10 on the grounds, upon information and belief, that they reside and/or work in the State and County of New York.

17.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because defendants reside in this judicial district and a substantial part of the events giving rise to the claims here occurred within this district.

FACTS

Ayal Rosenthal at the Stern School of Business

18.    Ayal Rosenthal matriculated at the Stern School in its Langone program – the program designed and utilized by the Stern School for part-time MBA students – in January 2005. After attending NYU for the Spring, Summer and Fall semesters in 2005 and 2006, Mr. Rosenthal completed the 60 credits of course work required to earn his MBA degree by December 2006. Mr. Rosenthal timely paid all fees due for classes taken. From approximately June 2001 until May 2006, Mr. Rosenthal also was employed at PricewaterhouseCoopers as an accountant.

19.    Mr. Rosenthal earned a grade point average of 3.4275 and was duly graduated by the Stern School "as of" January 22, 2007. His graduation is undisputable, and is evidenced by, among others, the following facts:

- Mr. Rosenthal attended a graduation ceremony on January 25, 2007;

- On January 31, 2007, Stern School Dean Thomas Cooley sent Mr. Rosenthal a letter congratulating him on "completing the requirements" for an MBA degree and stating that the "Faculty has recommended to the President and Board of Trustees of New York University that your degree be conferred as of January 22, 2007" (emphasis added); and

- On February 1, 2007, NYU's Office of Records and Registration sent Mr. Rosenthal an official NYU transcript stating that he had indeed graduated. The cover letter accompanying the transcript was addressed to "Dear Stern Graduate" and stated "Enclosed is a copy of your academic transcript indicating your graduation as of January 22, 2007."

(Copies of the January 31, 2007 letter and official NYU Transcript with cover letter are attached hereto as Exhibits A and B).

20.     Thus, as of January 22, 2007, or at the latest, January 31, 2007, the Stern School faculty had already voted to confer an MBA degree upon Mr. Rosenthal, had already conveyed that recommendation to NYU's President and its Board of Trustees; and Mr. Rosenthal's degree, according to his Official Stern School Transcript, had already been conferred.

21.     During his time at the Stern School, Mr. Rosenthal was more than just a successful student; he was also integrally involved in the school's academic life, serving as a Teaching Fellow or Grader for six classes, and participating in several student groups and events. Mr. Rosenthal never had any academic or disciplinary issues as a graduate student.

Mr. Rosenthal's Legal Problems

22.     Unfortunately, wholly apart from his student life at the Stern School and NYU, Mr. Rosenthal had become embroiled in a legal problem arising out of the securities trading activities of his older brother, NYU Law School graduate Amir Rosenthal. Mr. Rosenthal made the unfortunate mistake of mentioning to his brother, with whom he was very close, a deal he was working on at PricewaterhouseCoopers ("PWC"). Unbeknownst to Mr. Rosenthal, his brother Amir engaged in a trade related to the deal they discussed.

23.     Mr. Rosenthal was not aware of or involved in the trade itself, nor did he profit from it. Nevertheless, the United States Attorney's Office for the Eastern District of New York pursued a criminal investigation against Mr. Rosenthal. In February 2007, Mr. Rosenthal accepted a plea offer by the government for a non-custodial sentence. Although Mr. Rosenthal did not intend any harm and did not know his brother would make unlawful use of the information gleaned from their conversation, he realized that he should have anticipated that a very active trader like his brother might use such

6

information and, accordingly, Mr. Rosenthal accepted responsibility for his mistake and agreed to the plea offered by the government.

24.     Mr. Rosenthal acknowledged in his plea allocution on February 8, 2007, that:

in or about May 2005, in a discussion about my work, I agreed to tell my brother Amir Rosenthal the names of two companies that were involved in a confidential acquisition that I was working on. I knew that my brother Amir was an active trader of securities. I consciously turned a blind eye to what would have otherwise been obvious to me; that my brother was going to trade, in violation of United States securities laws on information that I provided to him. I accept responsibility for my actions and am very sorry for what I did.

25.     In negotiating his plea agreement and plea allocution, Mr. Rosenthal was assiduous in ensuring that there would be no reference to NYU or the Stern School in any potentially public document so as not to embarrass his new *alma mater*.   Indeed, because of Mr. Rosenthal's care, there was no mention of NYU or the Stern School in February 2007, when he pleaded guilty to a single count of conscious avoidance of securities laws; none in the minor press coverage of his plea; and there has been none as of the date of this complaint.

26.     Mr. Rosenthal was never accused of and did not plead guilty to any other criminal wrongdoing, or of being involved in a larger conspiracy.  To the contrary, the United States Attorney freely conceded that it was "not trying to prove or won't seek to prove and doesn't believe that it can prove" Mr. Rosenthal's involvement in a more serious case the government pursued against his brother Amir.

The Stern School Reacts to Mr. Rosenthal's Conviction

27.     A week after pleading to the conscious avoidance charge, and some three weeks after he graduated from the Stern School, Mr. Rosenthal's counsel was informed by the U.S. Attorney's Office that it had been contacted by an individual purporting to be from the Stern School, seeking information about Mr. Rosenthal's plea.  Mr. Rosenthal went to see Stern School Dean of Students Gary

7

Fraser and expressed his concern about the call, and that NYU might take action against him. Dean

Fraser sent Mr. Rosenthal an email later that same day assuring him that he had made a "complete check

of the different departments here at Stern" and was "confident that a Stern administrator did not call the

federal prosecutor."

28.    Mr. Rosenthal heard nothing more about the matter until about one month later,

when a school friend told him that Mr. Rosenthal was the subject of a Professional Responsibility class

taught by Stern School Dean Thomas Cooley. Dean Cooley, who ultimately made the decision to

rescind Mr. Rosenthal's MBA degree and retroactively expel him from the Stern School, had discussed

Mr. Rosenthal's case in class and conducted class discussion as to whether the Stern School should

award such a student his MBA degree. At that time, Dean Cooley was already aware that Stern School

administrators were preparing to commence disciplinary proceedings against Mr. Rosenthal. Also, Dean

Cooley knew, or should have known, that there was a high likelihood that some of the students in his

class would serve on the committee that would later decide Mr. Rosenthal's case. Further, Dean Cooley

knew, or should have known, that it was particularly improper and prejudicial for him, as a member of

the faculty and the Dean of the Stern School, to discuss publicly a pending disciplinary matter with his

students.

29.    About this time, Mr. Rosenthal also learned from another former classmate that

Stern School Professor Jennifer Bergenfeld had sent the students in her Professional Responsibility class

an article from a local newspaper covering the case against Mr. Rosenthal's family, and mentioning him

by name (though not, of course, identifying him as an NYU or Stern School student).

30.    It is likely that member(s) of the Stern School Judiciary Committee, which

ultimately asserted jurisdiction over the case against Mr. Rosenthal, were present at or otherwise heard

8

about the case through Dean Cooley and Professor Bergenfeld's discussion of the case, which would have prejudiced them against Mr. Rosenthal.

Defendants' Improper Investigation and Hearing

31.     By May of 2007, Mr. Rosenthal still has not received his diploma from the Stern School, even though NYU had promised in writing months earlier that his degree was forthcoming.

32.     Mr. Rosenthal visited the Stern School on May 2, 2007 to ask about the diploma, and was told it can take months for the diploma to be printed and mailed. He subsequently made additional telephone calls seeking further information about his diploma to various offices at the Stern School on May 14 and 15, 2007, but learned nothing.

33.     On May 16, 2007, however, Dean Fraser (with whom he had discussed, in mid-February, the information provided to his counsel by the U.S. Attorney's office) shocked Mr. Rosenthal with the news that NYU had withheld his diploma because "the Faculty" had filed a complaint against him (the "Complaint"), relating to his criminal conviction. The Complaint, dated February 28, 2007, was filed more than a month after Mr. Rosenthal's Graduation. Dean Fraser told Mr. Rosenthal that the Complaint had been referred to the Stern School's Judiciary Committee to resolve the question of whether NYU and the Stern School had jurisdiction over this matter. This May 16, 2007 conversation was the first time Mr. Rosenthal had ever heard of a Complaint having been filed against him.

34.     Dean Fraser would not explain why NYU had made no attempt to inform Mr. Rosenthal sooner about the Complaint, as was required under University policy, but stated that Stern School MBA student Melchior Ochoa, the chairperson of the MBA Judiciary Committee, would contact Mr. Rosenthal shortly to discuss the matter.

35.     On or about May 18, 2007, Mr. Ochoa called Mr. Rosenthal and explained that it was not clear under University rules whether the MBA Judiciary Committee had jurisdiction over the

Complaint, and that the Committee had to meet to debate the issue of jurisdiction. Mr. Ochoa also read Mr. Rosenthal the Complaint, which Mr. Rosenthal physically received for the first time on May 23, 2007.

36.    The Complaint contained several factual errors, including, most importantly, the false and very damaging allegation that Mr. Rosenthal had pleaded to "an insider trading scheme involving his father, brother, and a childhood friend . . ." As was described above, Mr. Rosenthal admitted to conscious avoidance of securities laws; he did not plead to the "insider trading scheme" referenced in the Complaint. Not only did this false and inflammatory allegation serve as the sole basis for the Complaint, but it also painted Mr. Rosenthal as having engaged in significantly worse conduct than the foolish and wrongful act he had acknowledged.

37.    The Complaint stated, in part, that both Stern School and University policies expect students to "behave with honesty and integrity," and alleged that Mr. Rosenthal's guilty plea broke "both the Stern Honor Code and the University Code of Ethical Conduct" so that "he is not qualified to receive the degree of Master of Business Administration." The Complaint further stated that the "University Counsel's opinion supports the faculty's stand in this matter." A copy of the Complaint is attached hereto as Exhibit C; Copies of the Stern Honor Code (both current, and that which was in effect at the time of the Complaint against Mr. Rosenthal) and the University Code of Ethical Conduct are attached hereto as Exhibits D and E.

38.    On or about May 20, 2007, Mr. Ochoa emailed a memo he had prepared (the "Ochoa Memo," attached hereto as Exhibit F), in which he discussed both the jurisdictional issues the MBA Judiciary Committee had to resolve and his understanding of the Stern School and/or University policies and procedures that applied to the Complaint and his committee's jurisdictional analysis. The Ochoa Memo also revealed that NYU had apparently already conducted some sort of investigation into

the matter – Mr. Ochoa had reviewed the Complaint and other unspecified materials provided by the University, and met with Dean Fraser to "determine the facts" – while failing in any way to contact Mr. Rosenthal, the subject of the Complaint. Remarkably, Mr. Ochoa told Mr. Rosenthal that he would not be permitted to see or know the substance or content of any of the materials reviewed by the University.

39.     The Ochoa Memo established that NYU and the Stern School had already failed to comply with many of its own published policies and procedures, including, but not limited to:

- the requirement that notice of a complaint be mailed to the subject student within 48 hours of its initiation;
- the requirement that the Office of Legal Counsel notify the student of its decision on the matter; and
- the requirement that the Vice President for Student Affairs meet with the student to try to resolve the matter with the consent of the student.

40.     Mr. Rosenthal asked to be permitted to provide the MBA Judiciary Committee with an answer responding to the Complaint and, at a minimum, to correct the prejudicial factual errors contained in it. However, Mr. Ochoa refused to allow Mr. Rosenthal either to set the record straight or to provide an explanation, on the bizarre grounds that permitting a student accused of wrongdoing to present his side of the story to the body responsible for rendering judgment on that complaint would be prejudicial to the "other side." Mr. Ochoa attempted to reassure Mr. Rosenthal that the hearing Committee would receive and consider his response at the hearing.

41.     Hoping to clear up the factual mistakes in the Complaint before they became the basis of any further NYU or Stern School decisions about him, Mr. Rosenthal then wrote Dean Fraser on May 24, 2008, explaining in detail the factual errors contained in the Complaint and pointing out the numerous procedural errors and denials of due process to which Mr. Rosenthal had already been

11

subjected. Mr. Rosenthal transmitted that letter with an email to Dean Fraser, Dean Lee Sproull, and

Mr. Ochoa demanding that the fatally flawed proceedings against him be dropped so that he could

receive his diploma, which request Dean Fraser rejected. A copy of the May 24, 2007 letter is attached

hereto as Exhibit G.

   42. NYU ignored Mr. Rosenthal's requests and, instead, forced him to endure a

drawn-out hearing process that failed to comply with virtually all of the protections afforded him in the

NYU and Stern School rules, and which ultimately resulted in a fatally flawed hearing on September 13,

2007, nearly eight months following his graduation from the Stern School and almost seven months after

the Complaint was filed.

   43. At the hearing itself, Mr. Rosenthal was presented with the materials the Judiciary

Committee had been given, which included the Complaint – but not Mr. Rosenthal's May 24 response to

it, which was given to the Committee only minutes before the hearing convened at the insistence of Mr.

Rosenthal's counsel – a copy of the transcript of his plea, and copies of the Stern School Honor Code,

Code of Conduct, and Rules and Procedures from the University website.

   44. Additionally, Mr. Rosenthal for the first time received a copy of a memorandum

opining on the committee's jurisdiction and procedures prepared by Thomas Grace, NYU's Director of

Judicial Affairs and Compliance, at some point between February and September 2007. Mr. Grace's

memorandum correctly stated that the:

> Judiciary Committee's job is to determine [(a)] to what degree the
> student's behavior damaged or endangered the School's reputation and
> [(b)] what punishment is appropriate.

*See* Tom Grace Memorandum ("Grace Memo") attached hereto as Exhibit H.  The Grace Memo

specifically cautioned the Judiciary Committee that it could:

> only rule on behavior that has occurred and the impact of that behavior on
> the University.  Therefore, it should only recommend withholding the

degree if they believe the amount of damage [Mr. Rosenthal] did warrants that particular damage. A judiciary process may not recommend withholding the degree because they don't want the damage to be greater. (Emphasis added.)

In this regard, the Grace Memo cited to the University Policy on Student Conduct that:

In general, a student's off-campus activities should be subject only to sanctions of the public authorities. Where a student is convicted of a violation of law, he should not be subject to University discipline for the same offense unless his conduct seriously affects his position as a member of the academic community

It also cited to the University's Rules for the Maintenance of Public Order, which states that:

Conduct that is violative of [federal] laws and ordinances occurring off University premises will ordinarily not be subject to University discipline, unless such conduct [a.] seriously affects the interests of the University or the position of the member within the University community, or [b.] occurs in close proximity to University premises and is connected to violative conduct on University premise.

45.    As noted above, Mr. Rosenthal had already completed his coursework and attended his graduation ceremony, so his guilty plea by definition had no effect at all on his position as a member of the academic community from which he had recently been graduated. Thus, the only issue to be determined by the MBA Judiciary Committee, according to Defendants, was whether Mr. Rosenthal's conduct affected the interests of the University – that is, caused NYU any harm.

46.    Similarly, the Grace Memo clarified that the Stern School and the Judiciary Committee, when faced with a jurisdictional dispute, had the obligation to: (i) send the jurisdictional question to the University Office of Legal Counsel for resolution and (ii) provide Mr. Rosenthal with a copy of that office's decision, which he would have the right to appeal. Mr. Ochoa and the Judiciary Committee were well aware that Mr. Rosenthal had raised a number of jurisdictional issues, to some of which Mr. Ochoa himself had adverted in the Ochoa Memo. But both the Judiciary Committee and the Office of Legal Counsel failed to comply with either of these University procedural regulations.

47.    Finally, despite the clear dictates of Student Disciplinary Procedures Rule II.D.3 ("the student has the right to be accompanied by counsel") – which was cited in the May 20, 2007 Ochoa Memo, along with other procedural rights that Mr. Rosenthal was blatantly denied – Mr. Rosenthal's counsel was barred from the hearing. Counsel reluctantly permitted Mr. Rosenthal to attend without him on the condition that he not be asked to address the facts underlying his plea to a securities violation. The members of the MBA Judiciary Committee agreed to this request.

48.    During the course of the 45-minute hearing, despite the fact that that Judiciary Committee rules clearly state that he was to be presumed innocent until proven guilty, Mr. Rosenthal was repeatedly asked to explain how his conviction did not cause harm to the University and to convince the committee members why he should not be disciplined. He was also asked about the facts underlying his plea, despite the limitations set by his counsel against exactly such questions when that attorney was barred from the hearing, and asked to repeat his explanation as to the Committee's lack of jurisdiction that was contained in the May 24 letter that was not provided to the Committee until the hearing began.

49.    Since none of the documents submitted by Mr. Rosenthal prior to the hearing were provided to the Committee, Committee members did not know that the Complaint contained material and dispositive factual mistakes. Thus, Mr. Rosenthal was placed in the position of explaining to the MBA Judicial Committee members that they had relied on false and misleading materials in preparation for the hearing, and that his conviction did not involve the "insider trading scheme" referenced in the Complaint. Nevertheless, despite Mr. Rosenthal's best efforts, his explanation fell on deaf ears: at the conclusion of the hearing, a Judiciary Committee member asked him to address his involvement in the "insider trading scheme involving his brother, father, and a childhood friend."

50.    The Stern School Faculty – which was the entity that filed the Complaint and which had the burden of showing that some discipline was appropriate – did not bother to send a

14

representative or witness to attend the hearing. Consequently, it presented no witnesses or testimony related to the Complaint, and failed to provide even a single shred of evidence of any kind, even anecdotal, that the plea had any negative impact on, or caused damage to, NYU or Stern School.

51.    In fact, no evidence was ever presented by anyone that any public connection had ever been drawn between Mr. Rosenthal's plea and NYU or Stern School. Nor did the Stern School faculty present any evidence that Mr. Rosenthal's non-school-related conduct gave him any academic advantage so as to constitute a violation of the Stern School Honor Code – which is expressly limited to academic conduct; or a violation of the University Code of Ethical Conduct – which on its face expressly does not even apply to students, but only to NYU employees and staff, but which was nonetheless cited in the Complaint. Nor, for that matter, did the Stern School faculty present any evidence regarding the other potentially relevant University policies that were not cited to in the Complaint, including the Statement of Policy on Student Conduct at NYU, which does apply to students and is referred to at the end of the Stern School Code of Conduct.

52.    Later the same evening as the hearing, the Committee met and rendered a decision, which it forwarded to Dean Cooley, but not to Mr. Rosenthal.

53.    Some six weeks later, by letter dated October 25, 2007, Dean Cooley advised Mr. Rosenthal that the Judiciary Committee had unanimously decided that Mr. Rosenthal's plea of guilty to conscious avoidance of securities laws constituted a violation of the "Stern Honor Code"; he also opined that Mr. Rosenthal's conduct broke both the "student Honor Code and the University Code of Conduct." Additionally, according to Dean Cooley, it was the Stern School's contention that Mr. Rosenthal's guilty plea had been taken during the period between his completing the course requirements for his MBA, but prior to "the date for approval by the President and Board of Trustees" of his degree.

15

54.     Dean Cooley referred the Judiciary Committee's decision to the Stern School faculty, which he reported "decided by unanimous vote that Mr. Rosenthal 'is guilty of violating the Stern Honor Code and Code of Conduct'" and voted not to recommend Mr. Rosenthal to the NYU President and Board of Trustees for an MBA degree. Dean Cooley modified this recommendation to decide that "Mr. Rosenthal shall not be conferred his degree of Master of Business Administration from the Stern School of Business." In his letter, also for the first time, Dean Cooley asserted that he had been aware of Mr. Rosenthal's case since December 2006. A copy of Dean Cooley's October 25, 2007 letter is attached hereto as Exhibit I.

55.     Dean Cooley's October 25, 2007 letter decision did not address the essential – indeed, the only – issue before the Judiciary Committee at the hearing: whether Mr. Rosenthal had caused harm to the University. Perhaps this was because the complainant faculty failed to present any evidence at all on that issue. It also did not state which specific codes the faculty decided that Mr. Rosenthal had violated; the Complaint alleged violations of the "Stern Honor Code and the University Code of Ethical Conduct," but Dean Cooley's letter referred to the Stern Honor Code and Code of Conduct, and the University Code of Conduct. Nor did the letter explain why, if Dean Cooley had been aware of Mr. Rosenthal's legal problems since December 2006, he had allowed Mr. Rosenthal to graduate with his classmates in January 2007.

56.     In a letter dated November 5, 2007, Mr. Rosenthal informed Dean Cooley that he intended to appeal Defendants' decision and requested a number of documents to assist him in preparing the appeal, including:

- the exact provisions of the Stern Honor Code and the University Code of Ethical Conduct that Mr. Rosenthal allegedly violated;

- the meeting minutes and records from the Faculty and MBA Judiciary Committee hearings about Mr. Rosenthal's case;

- the documents reviewed and/or relied upon by Dean Cooley or the Judiciary Committee; and

- the meeting minutes and records from the Faculty meeting at which the decision was made to confer Mr. Rosenthal his MBA degree, as set forth in Dean Cooley's January 31, 2007 letter to Mr. Rosenthal.

A copy of Mr. Rosenthal's November 5, 2007 letter is attached hereto as Exhibit J.

57.     By letter dated November 20, 2007, Dean Cooley refused to provide Mr. Rosenthal with any of the materials he requested. A copy of Dean Cooley's November 20, 2007 letter is attached hereto as Exhibit K.

58.     By letter dated February 19, 2008, Dean Cooley denied Mr. Rosenthal's appeal, summarily concluding that there was no material evidence or witness missing at the hearing, and stating that Mr. Rosenthal was not affected by any material or prejudicial procedural irregularity. Dean Cooley also wrote that Mr. Rosenthal was not an alumnus of the Stern School at the time the Complaint was filed because, he alleged for the first time, and in the face of his own January 31, 2007 letter to Mr. Rosenthal, the Faculty at its February 22, 2007 meeting had not only voted to file the Complaint, but also then "determined not to certify you for the Stern MBA." Dean Cooley boiled the entire proceeding down the conclusory argument that Mr. Rosenthal's guilty plea was a *per se* violation of the Stern School Code of Conduct's introductory imprecation that "[s]tudents are expected in all of their actions to reflect personal honesty, integrity, and respect for others," while ignoring the fact that the Complaint did not even allege a violation of the Code of Conduct. Moreover, Dean Cooley completely ignored Mr. Rosenthal's argument that Stern School and University rules set forth an entirely different standard –

17

assessing whether a student's alleged acts caused harm to the University – when considering disciplinary action against a student for conduct that had already been addressed by City, State, or Federal law enforcement. A copy of Dean Cooley's February 19, 2008 letter is attached hereto as Exhibit L.

59.    In the face of this arbitrary and unjustified treatment, and because NYU and the Stern School's improper conduct has caused Mr. Rosenthal severe damages, and will continue to do so in the future, Mr. Rosenthal has no choice but to vindicate his rights by and through the courts.

COUNT ONE
(Declaratory Judgment against NYU, the Stern School and Dean Cooley)

60.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61.    An actual controversy exists as to whether the Stern School and NYU conferred the degree of MBA on Mr. Rosenthal as of January 22, 2007 — as stated in correspondence to Mr. Rosenthal from Stern School Dean Cooley and as reflected in the official NYU transcript sent to Mr. Rosenthal following his graduation from the Stern School — or whether, as subsequently claimed by Stern School Dean Cooley, Mr. Rosenthal's name was not referred to the NYU President and Board of Trustees for the conferral of an MBA degree. Additionally, Mr. Rosenthal has reason to believe that his official NYU transcript has since been changed to reflect the Stern School's position that he was not graduated and conferred an MBA degree.

62.    NYU's own admissions and conduct conclusively determined that it had conferred the MBA degree on Mr. Rosenthal as of January 22, 2007.

63.    A declaratory judgment with respect to these questions will settle directly, expeditiously and finally the aforesaid controversies.

64.    By reason of the foregoing, Mr. Rosenthal is entitled to a declaration that the Stern School has conferred an MBA degree upon him, that it must provide him with a diploma

indicating the same, and that it must ensure that his transcript is restored to the form originally mailed to him on February 1, 2007.

65.    Mr. Rosenthal has no adequate remedy at law as to this claim.

## COUNT TWO
### (Breach Of Contract against NYU and the Stern School)

66.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.    By virtue of the foregoing, a contract existed between Mr. Rosenthal on the one hand and NYU and the Stern School of Business on the other.

68.    Mr. Rosenthal fully and adequately performed all of his obligations under the aforesaid contract; he successfully attended and completed the 60 credit hours of courses required by the Stern School for an MBA degree, and paid to NYU all of the fees demanded by it.

69.    Defendants wrongfully breached the terms of the contract and their obligations of good faith and fair dealing to Mr. Rosenthal by, among other things, refusing to provide Mr. Rosenthal with a diploma following his graduation from the Stern School and purporting to withdraw the conferral of the MBA degree on him and to change his official transcript to reflect that he did not earn the MBA degree actually conferred on him on January 22, 2007.

70.    As a result of defendants' breach of contract, Mr. Rosenthal has been damaged and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest.

## COUNT THREE
### (Conversion against NYU, the Stern School and Dean Cooley)

71.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 70 of this Complaint as though fully set forth herein.

72.     As set forth above, Mr. Rosenthal completed all of the requirements for the conferral of an MBA degree from the Stern School, including completing 60 credit hours of classes and paying more than $88,000 in tuition and fees to the Stern School, and was accordingly informed by the Stern School that his MBA degree had duly been conferred upon him and that a diploma certifying that degree would be sent to him.

73.     NYU and the Stern School have refused to provide Mr. Rosenthal with the diploma that belongs to him but have improperly retained possession of it.

74.     Defendants' refusal to turn over to Mr. Rosenthal the property that belongs to him amounts to conversion.

75.     As a direct result of NYU and the Stern School's conversion, Mr. Rosenthal has been injured and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest, and punitive damages in an amount to be determined at trial but not less than the sum of $5,000,000.

## COUNT FOUR
(Unjust Enrichment against NYU and the Stern School)

76.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 75 of this Complaint as though fully set forth herein.

77.     By reason of the foregoing, defendants NYU and the Stern School have been unjustly enriched in that they received the valuable benefits of not less than $88,000.00 in tuitions, fees, costs, and more from Plaintiff, which they cannot in good conscience be entitled to retain or use for their benefit.

78.     By reason of the foregoing, there is now due and owing from defendants NYU and the Stern School an amount to be determined at trial but not less than the sum of $88,000.00, plus interest.

20

COUNT FIVE

(Tortious Interference With a Contract against Defendants Cooley, Ochoa and John Does 1-10)

79.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.    As set forth above, Mr. Rosenthal had a contractual relationship with NYU and the Stern School with which defendants Cooley and Ochoa interfered. They did so using wrongful means – they knowingly violated virtually all of the NYU and Stern School procedures and regulations in connection with the Complaint against Mr. Rosenthal, the investigation and hearing of that Complaint, and the punishment inflicted on Mr. Rosenthal as a result.

81.    As a direct result of Dean Cooley and Mr. Ochoa's tortuous conduct, Mr. Rosenthal has been injured and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest, and punitive damages in an amount to be determined at trial but not less than the sum of $5,000,000.

COUNT SIX

(In the Alternative, For Breach of Contract against NYU and the Stern School)

82.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83.    By virtue of the foregoing, a contract existed between Mr. Rosenthal on the one hand and NYU and the Stern School of Business on the other.

84.    Mr. Rosenthal fully and adequately performed all of his obligations under the aforesaid contract; he successfully attended and completed the 60 credit hours of courses required by the Stern School for an MBA degree, and paid to NYU all of the fees demanded by it.

85.    Defendants wrongfully breached the terms of the contract and their obligations of good faith and fair dealing to Mr. Rosenthal by, among other things, permitting a complaint to be filed

21

against him for conduct that occurred off the University premises and having no connection to the University, and then failing to provide him with many of the essential due process and procedural rights to which he was entitled under University and Stern School rules, and then conducting a hearing at which no evidence regarding the only matter before the hearing was introduced, but a decision against Mr. Rosenthal was nonetheless reached.

86.    As a result of defendants' breach of contract, Mr. Rosenthal has been damaged and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest.

COUNT SEVEN
(In the Alternative, Under New York CPLR § 7803(2) against all Defendants)

87.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.    Defendants' conduct set forth above was undertaken without or in an excess of jurisdiction.  As such, the entire proceedings undertaken by defendants is improper and must be dismissed as a nullity *nunc pro tunc*.

89.    By reason of such wrongful conduct, Mr. Rosenthal has been damaged and is entitled to an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree conversion, and damages in an amount to be determined at trial, but not less than $500,000, plus interest.

COUNT EIGHT
(In the Alternative, Under New York CPLR § 7803(3) against all Defendants)

90.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91.    Defendants' conduct set forth above, and the decisions reached by Defendants, were arbitrary and capricious and/or an abuse of discretion with respect to the process utilized, the results reached, and the punishment meted out. As such, the entire proceeding undertaken by defendants is improper and must be dismissed as a nullity *nunc pro tunc* or, alternatively, its outcome reversed as to Mr. Rosenthal so that he is awarded all the rights of a graduated student, including without limitation, his diploma.

92.    By reason of such wrongful conduct, Mr. Rosenthal has been damaged and is entitled to an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree conversion, and damages in an amount to be determined at trial, but not less than $500,000, plus interest.

COUNT NINE
(In the Alternative, Under New York CPLR § 7803(4) against all Defendants)

93.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 92 of this Complaint as though fully set forth herein.

94.    Defendants' conduct set forth above resulted in a determination and a punishment that was not, on the entire record, supported by substantial evidence. As such, the entire proceeding undertaken by Defendants is improper and must be dismissed as a nullity *nunc pro tunc* or, alternatively,

its outcome reversed as to Mr. Rosenthal so that he is awarded all the rights of a graduated student, including without limitation, his diploma.

95.    By reason of such wrongful conduct, Mr. Rosenthal has been damaged and is entitled to an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree conversion, and damages in an amount to be determined at trial, but not less than $500,000, plus interest.

WHEREFORE, plaintiffs demand judgment against Defendants for the following relief:

(a)    On Count One of the Complaint, a declaration that the Stern School conferred a degree upon Mr. Rosenthal on January 22, 2007, an order that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and an order that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree;

(b)    On Count Two of the Complaint, damages against Defendants in an amount to be determined at trial, but not less than $88,000, plus interest;

(c)    On Count Three of the Complaint, damages against Defendants in an amount to be determined at trial, but than $500,000, plus interest, and punitive damages in an amount to be determined at trial but not less than the sum of $5,000,000.

(d)    On Count Four of the Complaint, damages against Defendants in an amount to be determined at trial, but not less than $88,000, plus interest

(e)    On Count Five of the Complaint, damages against Defendants in an amount to be determined at trial, but than $500,000, plus interest, and punitive damages in an amount to be determined at trial but not less than the sum of $5,000,000.

(f)    On Count Six of the Complaint, damages Defendants in an amount to be determined at trial, but not less than $500,000;

(g)    On Count Seven of the Complaint, an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree, and damages in an amount to be determined at trial, but not less than $500,000;

(h)    On Count Eight of the Complaint, an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree, and damages in an amount to be determined at trial, but not less than $500,000; and

(i)    On Count Nine of the Complaint, an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree, and damages in an amount to be determined at trial, but not less than $500,000;

(j)     Interest, costs, attorneys' fees to the extent provided by law and such other and

further relief as the Court may deem just and proper.

<u>JURY TRIAL</u>

Plaintiffs demand a trial by jury.

Dated: New York, New York
       June 10, 2008

HERNSTADT ATLAS LLP

By: _Edward Hernstadt_

Edward Hernstadt (EH 9569)
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
Attorneys for Plaintiff

# EXHIBIT A



NEW YORK UNIVERSITY

NYU

STERN

LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
*Paganelli-Bull Professor of Economics
and Richard R. West Dean*

January 31, 2007

Mr. Ayal Rosenthal
98 Walnut Dr.
Tenafly, NJ 07670

Dear Mr. Rosenthal:

Congratulations on completing the requirements for the degree of Master of Business Administration.

The Faculty has recommended to the President and Board of Trustees of New York University that your degree be conferred as of January 22, 2007. I trust that your experience at Stern was a good one. I hope that you will stay involved with the School and with the larger Stern community, and wish you continued success as you move to new challenges and opportunities.

Sincerely,

TC/dg

# **<u>EXHIBIT B</u>**



NEW YORK UNIVERSITY

**NYU STERN**

LEONARD N. STERN
SCHOOL OF BUSINESS

OFFICE OF RECORDS AND REGISTRATION
GRADUATE DIVISION

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, SUITE 6-100
NEW YORK, NY 10012-1126
TEL: 212-998-0660
FAX: 212-995-4424

February 1, 2007

Dear Stern Graduate,

Enclosed is a copy of your academic transcript indicating your graduation as of January 22, 2007.
Congratulations and best wishes as you move on to new endeavors

You should receive your diploma in about six to eight weeks, but if you change your address in the
meantime, please notify Ms. Jaclyn Shaw in writing at the address above or by fax at 212-995-4424.

Please do not hesitate to call if you have any questions.

Sincerely,

David Gordon
Associate Director of Records and Registration

THE BACK OF THIS DOCUMENT HAS A TRUE ELECTRONIC WATERMARK HOLD AT AN ANGLE TO VIEW

NEW YORK UNIVERSITY
STERN SCHOOL OF BUSINESS - GRADUATE DIVISION
44 WEST 4TH ST. NEW YORK, N.Y. 10012
ACADEMIC TRANSCRIPT

NAME....: Rosenthal, Ayal
STUDENT ID.: xxx-xx-8659
BIRTH DATE...: 05/17/1980
ADDRESS....: 98 Walnut Dr.
Tenafly, NJ 07670

CANDIDATE FOR... MBA
Gen Mgmt
REQUIRED CR.... 60.0

PREVIOUS NON-SGD DEGREE(S):
1. BS  05/2001  RUTGERS STATE UNIVERSITY RUTGERS C
2.
3.
4.

| COURSE | TITLE | CREDITS | GRADE |
|---|---|---|---|
| SPRING 2005 | | | |
| B01-1302 | MBA PREPARATION & PRETERM | 0.0 | P |
| B01-1302 | MANAGING ORGANIZATIONS | 3.0 | B+ |
| B01-1105 | STATISTICS &DATA ANALYSIS | 3.0 | B |
| SUMMER 2005 | | | |
| B01-2103 | STRATEGY I | 1.5 | B |
| B01-2104 | STRATEGY II | 1.5 | B |
| B01-2314 | COMPET ADVT FM OPERATIONS | 3.0 | A |
| FALL 2005 | | | |
| B01-2310 | BUSINESS COMMUNICATION | 1.5 | B+ |
| B01-2310 | MARKETING CONCEPTS | 3.0 | B+ |
| B01-2311 | FOUNDATIONS OF FINANCE | 3.0 | B+ |
| SPRING 2006 | | | |
| B02-3101 | PROFESSIONAL RESPONSIBILI | 1.5 | A |
| B30-2190 | GLOB PERSP ENTERPRISE SYS | 1.5 | A- |
| B40-3102 | CORPORATE FINANCE | 3.0 | B- |
| B40-3145 | INVEST BANK&PRIV EQTY-EMT | 1.5 | B+ |
| B40-3140 | TOPICS-CORP FINANCE | 1.5 | A |
| B40-3188 | TOPICS-INTERNATIONAL FINC | 1.5 | A |
| B65-2159 | COLLABORATN,CONFLCT&NEGTN | 1.5 | A |
| SUMMER 2006 | | | |
| B40-3165 | PRIVATE EQUITY FINANCE | 1.5 | B |
| B40-3333 | DEBT INSTRUMENTS & MKTS | 3.0 | B |
| B40-3335 | FUTURES & OPTIONS | 3.0 | B+ |
| B70-2121 | FINC SERVICES CHAINS M | 1.5 | B+ |
| B70-2129 | SALES MANAGEMENT | 1.5 | A- |
| B70-2347 | CONSUMER BEHAVIOR | 1.5 | A |
| FALL 2006 | | | |
| B30-2119 | ENTRTNT&MEDIA: MKTS& ECON | 1.5 | B |

TOTAL CREDITS ATTEMPTED: 60.0
CONTINUED ON THE NEXT COLUMN

| COURSE | TITLE | CREDITS | GRADE |
|---|---|---|---|
| B40-2304 | RESTRUCT FIRMS&INDUSTRIES | 3.0 | B |
| B40-3125 | CORP STRAT & FINC IN ENT | 1.5 | B |
| B40-3196 | MERGERS & ACQUISITIONS | 1.5 | A |
| B40-3199 | CASH STDS-BANKRPCY&REORGS | 1.5 | A |
| B70-2110 | ENTRTNMT & MEDIA INDUSTRES | 1.5 | A |
| B95-2110 | STRATEGY | 1.5 | A |

END OF COURSE LISTING

OVERALL GPA: 3.4275

TOTAL CREDITS EARNED: 60.0

OVERALL GPA: 3.4275

SGD DEGREE(S) CONFERRED:
1. MBA  01/22/2007  Gen Mgmt
2.
3.
4.

Specializations: Entertainment, Media & Technology, Law & Business and Finance.

DIRECTOR, RECORDS AND REGISTRATION
TRANSCRIPT IS VALID ONLY IF IT BEARS THE RAISED
UNIVERSITY SEAL AND THE OFFICIAL SIGNATURE.

PRINT DATE: 02/01/2007;    PAGE 1 OF 1
THIS INFORMATION IS RELEASED ON THE CONDITION OF THE STUDENT.

IN ACCORDANCE WITH THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974, AS AMENDED, THIS INFORMATION IS RELEASED ON THE CONDITION THAT YOU WILL NOT PERMIT ANY OTHER PARTY TO HAVE ACCESS TO THIS INFORMATION WITHOUT THE WRITTEN CONSENT OF THE STUDENT.

# EXHIBIT C



NEW YORK UNIVERSITY

LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, SUITE 11-55
NEW YORK, NY 10012-1126
212-998-0804
FAX: 212-995-6212
E-MAIL: lsproull@stern.nyu.edu

LEE S. SPROULL
Vice Dean of Faculty
Leonard N. Stern Professor of Business

February 28, 2007

Gary Fraser
Dean of Students & Associate Dean, MBA Student Affairs
NYU Stern School of Business
Kaufman Management Center
44 West 4th Street, Suite 6-129
New York, NY 10012

Dear Gary:

On behalf of the faculty of the Leonard N. Stern School of Business, I write to file a complaint against AYAL ROSENTHAL, a part-time MBA student. Mr. Rosenthal completed the course work for the MBA degree as of January 2007. However, we believe that he was in serious violation of the NYU Stern MBA Code of Conduct and the NYU Code of Ethical Conduct in actions he took while a matriculated student at Stern.

On Friday, February 9, 2007, Mr. Rosenthal pleaded guilty to conspiracy to commit securities fraud before Eastern District Judge John Gleeson, in an insider trading scheme involving his father, brother, and a childhood friend.

During his studies at the Stern School, Mr. Rosenthal took the required course in Professional Responsibility. He also served as a Teaching Fellow for the course. A basic premise of this course is the responsibility that individuals have to act according to the highest ethical principles in the course of their professional lives. Mr. Rosenthal would therefore be expected to understand the implications of his criminal conduct from the course and related discussion, if from nothing else.

University and School policy states that students are expected to behave with honesty and integrity. The NYU Stern MBA Code of Conduct, which Mr. Rosenthal was required to sign, states: "Students are expected in all of their actions to reflect personal honesty, integrity and respect for others." The New York University Code of Ethical Conduct states that "Every member of the University shall, at all times, conduct his or her activities in accordance with the highest professional and community ethical standards." And the New York University Policy on Student Conduct states that "Students are expected to conduct themselves as mature and law-abiding members of both the University community and the general community."

In his admission of guilt in Federal Court, Mr. Rosenthal said the following:

> "In or about May, 2005, in a discussion about my work, I agreed to tell my brother Amir Rosenthal the names of two companies that were involved in a confidential acquisition that I was working on. I knew that my brother Amir was an active trader of securities. I consciously turned a blind eye to what would have otherwise been obvious to me; that my brother was going to trade, in violation of United States securities laws on information that I provided to him. I accept that responsibility for my actions..."

The faculty believes that by pleading guilty to an infraction of federal securities law, Mr. Rosenthal has broken both the Stern Honor Code and the University Code of Ethical Conduct. He is therefore not qualified to receive the degree of Master of Business Administration. University Counsel's opinion supports the faculty's stand in this matter.

At the February 22, 2007 Faculty Meeting, the faculty voted unanimously in favor of the following motion:

"That this faculty votes that the case of Ayal Rosenthal, having pleaded guilty to the intent to commit securities fraud, be remanded to the Stern School's Judiciary Committee and their procedures."

I ask that the Judiciary Committee meet at the earliest opportunity to review the case and provide its recommendations to the Dean of the School.

Sincerely,

Lee S. Sproull
Vice Dean of Faculty

Encl:
University Code of Conduct
NYU Stern Honor Code
Transcript of Plea Hearing in Eastern District Court of New York

# EXHIBIT D



## MBA Judiciary Committee

### Honor Code

*I will not lie, cheat or steal to gain an academic advantage, or tolerate those who do.*

The Stern community believes that honesty and integrity are qualities necessary for rewarding academic and professional experiences. These qualities form the basis for the strong trust among all members of the academic community (students, faculty, and administrators) that is essential for excellence in education. The purpose of the Honor Code is therefore to express a commitment to promote principles of honesty, integrity and trust among Stern students. Therefore, prior to entering the program, each student is asked to commit to the principles of this Honor Code and, by signing the Honor Code, agrees to abide by the Code.

The Honor Code requires that each student act with integrity in all academic activities and that each student endeavors to hold his or her peers to the same standard.

Violations of the Honor Code include:

- Lying - Lying includes knowingly communicating an untruth in order to gain an unfair academic advantage or neglecting to divulge information when under the circumstances a person of integrity would be expected to disclose the matter.

- Cheating - Cheating includes using unauthorized materials to complete an assignment; copying the work of another student, or representing another's work as one's own work (plagiarism); falsifying one's identity by having another person take an exam; unauthorized providing of materials or information to others during exams; and any other activity which gives a student an unfair academic advantage. All communications, written, oral or otherwise, among students during examinations, are forbidden, as is the use of notes, books, calculators or other written material except when approved by the instructor.

- Stealing - Students are required to submit their own work. Ideas, data, direct quotations, paraphrasing, or any other incorporation of the work of others must be clearly referenced. To do otherwise consti-tutes plagiarism, which is using the work of another without giving proper credit.

This list is not inclusive, and is included for illustrative purposes.

Upon witnessing a violation of the Honor Code, a student has a moral obligation to inform the student whose conduct is believed to be in violation of the Code that the Code has been violated. Each member of the Stern community, as a person of integrity, has a personal obligation to adhere to this requirement. The student also has the right to inform a member of the faculty, and/or may submit a written complaint to the MBA Judiciary Committee.

Violations of this agreement to be governed by the Honor Code are viewed as serious matters that are subject to disciplinary sanctions imposed by the MBA Judiciary Committee of the Stern School, which is comprised of five MBA students and two faculty.

Back to the main MBA Judiciary Committee Page

©2003 New York University Leonard N. Stern School of Business
Home | About Stern | Academic Programs | Executive Programs | Admissions
Students | Alumni | Faculty | International | Jobs | News and Information
Search | Site Directory | STERNlinks | Calendar | Contact Us



NYU STERN
NEW YORK UNIVERSITY · LEONARD N. STERN SCHOOL OF BUSINESS       SCORP

| About Stern | Academic Programs | Admissions | Academic Departments | Faculty & Research | Executive Education | Events | News |

| Mission & Responsibilities | Current Leaders | Club Services | Events | SCorp/Stern Feedback | Committees |

→ Archived MBA Honor Code

→ Judiciary Committee

Honor Code | Code of Conduct | Members | Policies & Procedures | Contact Us | Archived Honor Code

**Honor Code**



*I will not lie, cheat or steal to gain an academic advantage, or tolerate those who do.*

The Stern community believes that honesty and integrity are qualities necessary for rewarding academic and professional experiences. These qualities form the basis for the strong trust among all members of the academic community (students, faculty, and administrators) that is essential for excellence in education. The purpose of the Honor Code is therefore to express a commitment to promote principles of honesty, integrity and trust among Stern students. Therefore, prior to entering the program, each student is asked to commit to the principles of this Honor Code and, by signing the Honor Code, agrees to abide by the Code.

The Honor Code requires that each student act with integrity in all academic activities and that each student endeavors to hold his or her peers to the same standard.

**Violations of the Honor Code include:**

- Lying - Lying includes knowingly communicating an untruth in order to gain an unfair academic advantage or neglecting to divulge information when under the circumstances a person of integrity would be expected to disclose the matter.

- Cheating - Cheating includes using unauthorized materials to complete an assignment; copying the work of another student, or representing another's work as one's own work (plagiarism); falsifying one's identity by having another person take an exam; unauthorized providing of materials or information to others during exams; and any other activity which gives a student an unfair academic advantage. All communications, written, oral or otherwise, among students during examinations, are forbidden, as is the use of notes, books, calculators or other written material except when approved by the instructor.

▫ Stealing - Students are required to submit their own work. Ideas, data, direct quotations, paraphrasing, or any other incorporation of the work of others must be clearly referenced. To do otherwise constitutes plagiarism, which is using the work of another without giving proper credit.

This list is not inclusive, and is included for illustrative purposes.

Upon witnessing a violation of the Honor Code, a student has a moral obligation to inform the student whose conduct is believed to be in violation of the Code that the Code has been violated. Each member of the Stern community, as a person of integrity, has a personal obligation to adhere to this requirement. The student also has the right to inform a member of the faculty, and/or may submit a written complaint to the Graduate Judiciary Committee.

Violations of this agreement to be governed by the Honor Code are viewed as serious matters that are subject to disciplinary sanctions imposed by the Graduate Judiciary Committee of the Stern School, which is comprised of a fair representation of MBA, part-time, executive and PhD students and faculty members.

### Code of Conduct

Students are expected in all of their actions to reflect personal honesty, integrity and respect for others. Moreover, as members of a distinctively academic community, Stern students must adhere to the norms of a serious intellectual community.

More particularly, a Stern student's responsibilities include:

▪ a duty to respect the integrity of all members of the Stern community by avoiding all forms of force, violence or intimidation, including sexual harassment;

▪ a duty to respect the property and rights of others; and

▪ a duty to respect and preserve the quality of academic facilities.

### Respect for Others

Students have an obligation to maintain a learning and community environment that is humane, fair, and responsible.

This includes behavior that is consistent with equal treatment without regard to age, citizenship status, color, disability, marital or parental status, national origin, sex or sexual orientation, race, or religion. Conduct that interferes with the rights of another or creates an atmosphere of intimidation or disrespect is inconsistent with the environment of learning and cooperation that the School requires. Sexual harassment,

which includes all types of inappropriate sexual advances, verbal or physical, will not be tolerated.

## Academic Facilities

Students have a responsibility to preserve the quality of classrooms and public space. This responsibility extends, for example, to such things as disposal of one's food and trash, to reporting problems to the building maintenance manager, to maintenance of appropriate level of noise in study areas, and to notification to appropriate security personnel of suspicious persons in the facility.

## Computer Facilities

Access to Stern computing and networking resources, including hardware, software, computer-based files and data, the Stern network and other networks reached via Stern facilities, is limited to authorized users and is for approved purposes only. The copying of software, the unauthorized installation of software, and the unauthorized reconfiguration of systems are forbidden by School policy. Such activity would therefore constitute an example of failure to respect the property and rights of others and is expressly forbidden under this Code.

Each student is expected to use Stern's computing resources in an ethical and legal manner and has the following responsibilities:

- a duty to preserve the quality and cleanliness of computing and networking facilities;

- a duty to utilize the computing resources for the sole purpose of facilitating his or her work as a Stern student;

- a duty to respect the privacy and reasonable preferences of other users, including the privacy of their accounts and data and any confidential or privileged information to which the student may have access; and

- a duty to maintain the integrity and security of the systems and network, including the safeguarding of passwords, codes and other privileged information.

## Library

Circulating library material may be borrowed upon presentation of the student's own valid NYU Photo ID.

Non-circulating material, e.g., magazines, journals and reference items, may not leave the library under any circumstances. Stealing or vandalizing library materials is forbidden, as is mutilating and pilfering library materials.

In addition, students are expected to be familiar with and abide by the "Statement of Policy on Student Conduct at New York University," which sets down basic rules and covers issues of academic freedom, speaker demonstrations and invitations, and use of University facilities. University Rules and Regulations cover the policy on affirmative action, equal opportunity, and compliance with the Family Educational Rights and Privacy Act (PL. 93-380). A copy of the Rules and Regulations is in the NYU Student Handbook. Failure to abide by these rules may result in referral to the Dean of Students of the Stern School and/or local law enforcement authorities. Conduct that violates the Code may be subject to both School or University discipline and/or public sanctions as circumstances may warrant. I affirm that I have read and understand the above.

**Members**

**Students**

Chair:  Mel Ochoa (MBA 2)

Vice Chair: Jamila Williams (MBA 2)

Brad Doyle (MBA 2)

Debraj Ghosh (MBA 2)

Catherine Zhang (MBA 2)

David Gorelik (MBA 1)

Lydia Midwood (MBA 1)

Cindy Chan (MBA 1)

Jaspal Singh (MBA 1)

Spencer Jones (MBA 1)

Frank Angelo (MBA PT)

Tara Teaford (MBA PT)

# EXHIBIT E

# *New York University*
# *Code of Ethical Conduct*



*By action of the Audit Committee*

*New York University Board of Trustees*

*June 22, 1999*

*Updated: December 2006*

# *New York University*
# *Code of Ethical Conduct*

## PREFACE

In furtherance of maintaining and promoting New York University's reputation for excellence and integrity, the Board of Trustees has promulgated this Code of Ethical Conduct, which sets forth the general principles to which we subscribe and to which we expect every member of the University - every part-time and full-time employee, faculty member, officer, trustee, overseer, and advisory board member - to adhere. These principles have been derived from federal, state, and local laws and regulations, University policies and procedures, contractual and grant obligations, and generally accepted principles of ethical conduct.

## I. ADHERENCE TO THE HIGHEST ETHICAL STANDARDS

Every member of the University shall, at all times, conduct his or her activities in accordance with the highest professional and community ethical standards.

## II. RESPECT FOR AND COMPLIANCE WITH THE LAW

Every member of the University is expected to become familiar with those laws, regulations, and University rules which are applicable to his or her position and duties, and to comply with both their letter and spirit. The University will implement programs to further members' awareness and to monitor and promote compliance. All questions and concerns about the legality or propriety of any action or failure to take action by or on behalf of the University should be referred to either the member's supervisor or to the Office of Legal Counsel.

## III. COMPLIANCE WITH ALL CONTRACTUAL AND GRANT TERMS AND CONDITIONS

Every member of the University is expected to maintain access to and to comply strictly with the terms and conditions of each University grant and contract on which he or she is working. All questions or concerns about whether a particular term or condition violates the law or whether the grantor or contractor has breached its obligations to the University should be referred promptly to the Office of Legal Counsel.

## IV. SUPPORT OF THE UNIVERSITY'S GOALS AND AVOIDANCE OF CONFLICTS OF INTEREST

New York University is a not-for-profit institution which is dedicated to teaching and research. Every member of the University is expected to faithfully carry out his or her professional duties in furtherance of the University's mission. Every member has a duty to avoid conflicts between his or her personal interests and official responsibilities and to comply with University and applicable School codes and guidelines for reporting and reviewing actual and potential conflicts of interest and conflicts of commitment. Additionally, a member may not utilize his or her position with the University for his or her personal benefit. Members are also expected to consider and avoid, not only an actual conflict but also, the appearance of a conflict of interest.

## V. MAINTENANCE OF THE HIGHEST STANDARDS OF ACADEMIC INTEGRITY

Every member of the University involved in teaching and research activities is expected to conform to the highest standards of honesty and integrity. Activities such as plagiarism, misrepresentation, and falsification of data are expressly prohibited. All research at the University must be conducted in strict conformity with the applicable University policies, procedures, and approvals and the requirements of all governmental and private research sponsors.

## VI. RESPECT FOR THE RIGHTS AND DIGNITY OF OTHERS

New York University is committed to a policy of equal treatment, opportunity, and respect in its relations with its faculty, administrators, staff, students, and others who come into contact with the University. Every member of the University is prohibited from discriminating on the basis of race, color, religion, sexual orientation, gender and/or gender identity or expression, marital or parental status, national origin, citizenship status, veteran or military status, age, disability, and any other legally protected status; physically assaulting, emotionally abusing, or harassing anyone; and depriving anyone of rights in his or her physical or intellectual property, under University policy, or under federal, state, and local laws.

## VII. STRIVING TO ATTAIN THE HIGHEST STANDARDS OF PATIENT CARE

Every member of the University involved in furnishing medical and dental services is expected to provide the highest quality of services responsive to the needs of patients, their families, and the communities in which the University functions. All patient care must be reasonable, necessary, and appropriate to the situation and be provided only by duly qualified University personnel. All patient records and documentation must conform to all applicable legal and payor requirements as well as professional standards. Every member of the University is expected to protect the confidentiality of patient information.

## VIII. MAINTENANCE AND PRESERVATION OF ACCURATE RECORDS

Members of the University are expected to create and maintain records and documentation which fully conform to all applicable laws and professional, and ethical standards. Every member of the University who is involved, directly or indirectly, in the preparation or submission of a bill to any governmental or private payor is expected to use his or her best efforts to ensure the bill addresses only those services rendered and products delivered and in the correct amount, supported by appropriate documentation.

## IX. CONDUCTING BUSINESS PRACTICES WITH HONESTY AND INTEGRITY

Every member of the University is expected to conduct all business with patients, payors, vendors, competitors, and the academic community with honesty and integrity. This duty includes, but is not limited to: adherence to federal and state anti-fraud and referral prohibitions in dealing with vendors and referral sources; adherence to all antitrust laws (such as those governing prices and other sales terms and conditions, improper sharing of competitive information, allocation of territories, and group boycotts); and protecting and preserving University property and assets--including proprietary intellectual property, buildings, equipment, books, supplies, and funds.

## X. CONCERN FOR HEALTH AND SAFETY; RESPECTING THE ENVIRONMENT

Every member of the University is expected, in the performance of his or her duties, to comply with all laws and regulations which govern occupational and patient health and safety and to make every reasonable effort to ensure that students, faculty, patients, employees, and visitors are protected from undue health risks and unsafe conditions.

Every member of the University is expected, in the course of his or her activities: to comply with all applicable environmental laws and regulations; to ensure that the University has obtained all necessary licenses, permits, and approvals; and to employ the proper procedures and controls in the storage and handling of radioactive and toxic materials and in the handling and disposition of hazardous and biohazardous wastes.

## XI. REPORTING SUSPECTED VIOLATIONS OF THE CODE; ENFORCEMENT OF THE CODE

This Code of Conduct has been created and exists for the benefit of the entire University and all of its members. It exists in addition to and is not intended to limit the specific policies, procedures, and rules enacted by the University and each of its Schools.

Each member of the University is expected to uphold the standards of New York University and to report suspected violations of the Code or any other apparent irregularity to either his or her Supervisor, Human Resources, Financial Compliance and Internal Audit, Research Compliance, Operational Risk Management, the School Compliance Officer, the Office of Legal Counsel, the University Compliance Officer, or the **NYU NO CALLER ID toll-free COMPLIANCE LINE (877) 360-7626**. If a member prefers, he or she may make the report anonymously (by mail, by web (www.nyu.edu/compliance), or by the Compliance Line). The University will, if requested, make every reasonable effort to keep confidential the identity of anyone reporting a suspected violation, to the extent permitted by law, and except if doing so would effectively prevent the University from conducting a full and fair investigation of the allegations.

This Code of Ethical Conduct will be enforced. Reports of suspected violations will be investigated by authorized University personnel. Officers, managers, and supervisors have a special duty to adhere to the principles of the Code, to encourage their subordinates to do so, and to recognize and report suspected violations. Each member of the University is expected to cooperate fully with any investigation undertaken. If it is determined that a violation has occurred, the University reserves the right to take corrective and disciplinary action against any person who was involved in the violation or who allowed it to occur or persist due to a failure to exercise reasonable diligence. Additionally, the University may make an appropriate disclosure to governmental agencies (including law enforcement authorities). Disciplinary actions will be determined on a case-by-case basis and in accordance with the applicable disciplinary codes.

## XII. PROMISE OF NO RETALIATION

The University promises that there will be no adverse action, retribution, or other reprisal for the good faith reporting of a suspected violation of this Code, even if the allegations ultimately prove to be without merit. The University will, however, pursue disciplinary action against any member who is shown to have knowingly filed a false report with the intention to injure another.

The University reserves the right, at any time, and without notice, to amend this Code of Conduct in its sole, good faith, discretion. This Code does not form a contract.

---

For more interpretation of the articles of this **Code** as it relates to members of the faculty please refer to **Questions and Answers for Faculty Members Regarding the Compliance Program and the NYU Code of Ethical Conduct**.

---

# EXHIBIT F

May 20, 2007

## Summary

Mel Ochoa (hereafter, "**the Chair**") has received the complaint presented in the case involving the faculty of the Leonard N. Stern School of Business (hereafter, "**the Faculty**") and student Ayal Rosenthal (hereafter, "**the Student**"), reviewed materials including an email exchange between Dean Gary Fraser, Dean Kim Corfman, Leona Chamberlin, Thomas Grace and Tim Colvin (not included herein as it is a matter of University privilege), and met with Dean Gary Fraser, all to determine the facts of the case.

The circumstances involving the allegation of violating the NYU Stern MBA Code of Conduct and the NYU Code of Ethical Conduct by the Faculty are intricate and open to interpretation, especially as they pertain to jurisdiction and/or authority in this matter.

## Details of Faculty Complaint

As outlined in the complaint, the Student on February 9, 2007, "pleaded guilty to conspiracy to commit securities fraud before Eastern District Judge John Gleeson" and as such, the Faculty "believes that by pleading guilty to an infraction of federal securities law, [the Student] has broken both the Stern Honor Code and the University Code of Ethical Conduct. He is therefore not qualified to receive the degree of Master of Business Administration."

Subsequently, the Faculty voted unanimously on February 22, 2007, that "the case of [the Student], having pleaded guilty to the intent to commit securities fraud, be remanded to the Stern's Judiciary Committee and their procedures."

At the core of the complaint is the Faculty's interpretation, supported by the University's Counsel, that the Student acted in an unbecoming manner as part of the University community and without honesty and integrity in relation to the New York University Stern MBA Code of Conduct, the New York University Code of Ethical Conduct and the New York University Policy on Student Conduct.

Under this interpretation, off-campus incidents are only subject to University disciplinary action when there is direct effect on the University, including harm and damage to the University's relationship with an involved external party. The Student's behavior could be interpreted as damaging the University's reputation and relationship with recruiters and potential applicants. The Student, therefore, might be undeserving of the Stern MBA.

## Details of Jurisdiction

The Judiciary Committee may or may not hold jurisdiction and/or authority in this matter. Under policies stated within The Student's Guide to NYU (http://www.nyu.edu/students.guide/policies/student_discipline.pdf), the Student's admitted actions did not take place on University premises and therefore the University should not use its powers to interfere with his rights outside of campus—his off-campus actions should be subject only to sanctions of the public authorities. As written, "Where a student is convicted of a violation of law, he should not be subject to University discipline for the same offense unless his conduct seriously affects his position as a member of the academic community." (p. 222, 224)

At the same time, his admitted actions could be interpreted as seriously affecting the interests of the University and his position as a member of the academic community in reference to the School's aforementioned interaction and reputation with recruiters, applicants and other external parties. Further, under these policies the Student is expected to conduct himself as a law-abiding member of both the University community and the general community. (p. 224) Under the Stern Code of Conduct, "Students are expected in all of their actions to reflect personal honesty, integrity and respect for others."

However, it is questionable if the Judiciary Committee can successfully determine or speculate the extent or severity to which the Student's behavior has damaged or endangered, or will damage or endanger, the University's reputation since the Student has thus far not been directly and explicitly associated with Stern in the public domain—media, record of court proceedings or otherwise.

### Conclusion & Recommendation

The Chair acknowledges that a formal complaint has been forwarded to the Judiciary Committee and, as such under its procedures, must be reviewed by an Investigative Committee comprised of two student members for purposes of fact finding and recommending further action as necessary. It is the Chair's opinion, however, that the Student's plead of guilt before Eastern District Judge John Gleeson is sufficient evidence to suspect a violation and that the case of Ayal Rosenthal requires a hearing as an appropriate channel to discuss this matter on the following three levels.

First, under section 2.ii. of Stern's Policies and Procedures, it is the Chair's recommendation that a quorum of members (at least one faculty advisor, the presiding Chair and three students) decides if the Judiciary Committee, in its opinion alone from University Counsel, holds jurisdiction and/or authority in this case as it relates to a possible violation. The body should take into account "off-campus," "academic community" (i.e. University reputation) and "law-abiding" phrases offered within The Student's Guide to NYU to determine if the Student can be tried by the Judiciary Committee for actions taken outside of the University. This is especially pertinent since The Student's Guide to NYU only makes reference to jurisdiction pertaining to Faculty and Senate and does not include a case of this nature within its I.A. or I.B.

If jurisdiction is established, the Judiciary Committee may decide if and to what degree the Student's behavior "has broken both the Stern Honor Code and the University Code of Ethical Conduct" as put forth in the complaint (included within is the assumption of possible impact on the University's reputation).

Lastly, if determined that the Student is in violation, the Judiciary Committee may recommend an appropriate penalty to Dean Cooley ranging from, but not limited to, withholding the Student's degree to no punishment if the severity of his actions and damage or endangerment to the University's reputation is minimal or indefinable at this point in time.

However, it is also the conclusion of the Chair that the Judiciary Committee is not mandated to provide a judgment, recommendation or opinion on jurisdiction, violation and/or penalty and may forward the complaint to Dean Cooley with the simple recognition that the case has been acknowledged and heard by the Judiciary Committee and nothing more. It should be noted that if the judiciary process does not result in a recommendation satisfactory to the University, an administrative process can be invoked.

### Due Process

Since section 2.ii. of Stern's Policies & Procedures holds The Student's Guide to NYU under the Judiciary Committee's jurisdiction, due process for the Student must be applied as it relates to the following notification clause:

II.A. Filing and Notice of Complaint.
Any member of the faculty, administration, or staff or any student may file a complaint against any student for a student offense with the Dean of the school in which the student complained of is enrolled or with the Vice President for Student Affairs. Notice of the filing shall be mailed to the student within 48 hours.

Further, under section I.C., if the NYU Office of Legal Counsel opines in the question of resolution of jurisdiction (beyond the stated realm of Faculty or Senate jurisdiction), then again the Student must be afforded his due process as follows:

2. The decision of the Office of Legal Counsel shall be both telephoned and mailed to each student who is the subject of the same or a similar complaint as the one in which the question of jurisdiction has been raised, to the Dean of the faculty of each school in which any such student is enrolled and to the Chairman of the University Judicial Board (hereinafter defined).

Finally, under Stern's Policies & Procedures:

4.d. If the Investigative Committee or the Chair concludes there is sufficient evidence to suspect a Violation, the Chair will notify the Complainant and the Accused.

6.b. The Accused has the right to be informed in writing of the charges against him or her and the identity of the Complainant.

6.c. The Accused will receive a copy of the Investigative Committee's written report no later than three academic days prior to the hearing.

6.g. The Accused may consult with an adviser of his or her own choosing to assist in the preparation of the Accused's defense.

Again, since section 2.ii. of Stern's Policies & Procedures holds The Student's Guide to NYU under the Judiciary Committee's jurisdiction:

D.3. That the student has the right to be accompanied by counsel or an adviser. The student or his counsel or adviser shall have the right to examine and cross-examine each witness either by putting questions directly to the witness, or by asking questions through members of the hearing body. The method shall be determined by the hearing body, and may be altered by it at any time.

# EXHIBIT G

May 24, 2007


Ayal Rosenthal
98 Walnut Dr.
Tenafly NJ, 07670
732-763-8125

Dean Gary Fraser
Dean of Students & Associate Dean, MBA Student Affairs
NYU Stern School of Business
Kaufman Management Center
44 West 4th Street, Suite 6-129
New York, NY 10012

Dear Dean Fraser,

This letter is in regard to the complaint filed against me on February 28, 2007, by Dean Lee Sproull (the "Complaint"). This complaint was made available to me on May 23, 2007. The Complaint accuses me of violating the Stern Honor Code and University Code of Ethical Conduct, but it does not specify how either code was violated. After reviewing the New York University Student Disciplinary Procedures (the "Disciplinary Procedures"), the New York University Code of Ethical Conduct, and the NYU Stern MBA Honor Code, it is evident that the University has not afforded me the due process to which I am entitled under these guidelines. Specifically, the University did not fulfill its obligation to timely communicate the charges to me, meet with me, and not summarily suspend me. By failing to follow its own basic procedures, the University has waived any authority it may have had to commence disciplinary proceedings against me and the Complaint against me should therefore be dismissed.

In addition, I would like to point out certain material factual errors contained in the Complaint that need to be corrected before the Stern MBA Judicial Committee begins its deliberations on this matter. Please note that I first received the written Complaint via mail on Wednesday, May 23, 2007 and that my responses are being submitted in a timely manner.

The University violated its own procedural guidelines when it failed to timely notify me about the charges. According to the Disciplinary Procedures, the University is obligated to notify the student of the complaint against him within 48 hours of the filing. *See* Disciplinary Procedures Part II(A) ("Notice of the filing shall be mailed to the student within 48 hours.") But I did not learn about the proceedings against me for more than 10 weeks after the Complaint was filed.

Moreover, the Disciplinary Procedures provide that the Office of Legal Counsel is required to notify the student of its decision. *See* Disciplinary Procedures Part I(C)3 ("The decision of the Office of Legal Counsel shall be both telephoned and mailed to each student who

is the subject of the same or a similar complaint"). However, this has still not been done by the Office of Legal Counsel and even now I am not aware of how its decision was made.

The Disciplinary Procedures also require the Vice President for Student Affairs to meet with the student to try to resolve the matter with the consent of the student. *See* Disciplinary Procedures Part I(E)2 ("The Vice President for Student Affairs shall meet with the student(s) complained against and shall try to resolve the matter with the consent of the student(s)"). However, no effort was made by the Vice President for Student Affairs to contact me, nor did the University attempt to resolve this matter amicably.

Finally, the Disciplinary Procedures forbid the University from summarily suspending a student. By withhold my diploma and preventing me from graduating, the University has, in effect summarily suspended me, thereby violating my due process rights. *See* Disciplinary Part II(B) ("A student should not be summarily suspended either completely or for certain purposes, except for reasons relating to his/her physical or emotional safety and well-being, the safety and well-being of students, faculty, staff, or University property, the maintenance of public order, or the effective continuation of the education process"). When a student is suspended, the University is obligated to expedite disciplinary proceedings. *See* Disciplinary Part II(B) ("the opportunity to expedite disciplinary proceedings so as to enable the determination of the appropriate sanction, if any, at the earliest possible time, preferably within 48 hours."). The University's action in this matter resulted in a *de facto* suspension, which is clearly against University policy and which was first communicated to me more than 10 weeks after the decision was made.

The Complaint against me should be dismissed because the University repeatedly violated my rights as a student by failing to provide me with the minimum due process mandated by the Student Disciplinary Procedures. The University's action have been in stark contrasts to my own, as I have previously made inquiries to your office (office visit and email communications on February 15, 2007), visited the Langone Office (walk-in visit on May 2, 2007) and called various departments in my attempts to uncover my current standing at the University (phone calls to the Langone Office, Registrar, and Graduation Services on May 14, 2007, and follow-up conversation with Graduation Services and voice-message to the MBA Office of Student Affairs on May 15, 2007). Such actions by the University are inexcusable and have had (and continue to have) irreparable detrimental effects on me, both personally and financially.

In addition to the above violations of my due process rights, the Complaint against me contains a number of material factual errors. These following facts are in the public record and are indisputable:

1) Paragraph 1 of the Complaint is factually incorrect in stating that "Mr. Rosenthal completed the course work for the MBA degree as of January 2007." The coursework was completed as of December 2006 and the degree was conferred on January 31, 2007. *See* Letter from Dean Thomas Cooley (stating that the "Faculty has recommended to the President and Board of Trustee of New York University that your degree be conferred as of January 22, 2007.").

2) Paragraph 2 of the Complaint states that "Mr. Rosenthal pleaded guilty . . . in an insider trading scheme involving his father, brother, and a childhood friend." I did not plead guilty to an insider trading scheme. Nor did my plea relate to the charges against my father, brother, and my brother's childhood friend. In fact, the government specified that it was not "trying to prove or won't seek to prove, and doesn't believe that it can prove" any relevant conduct from the purported scheme involving the other individuals and me." *See* Transcript of United States District Court Eastern District of New York in the matter appearing before the Honorable John Gleeson on February 8, 2007, page 70, lines 1 and 2. The Faculty improperly and prejudicially conflated these two completely separate matters. ***This critical mistake must be corrected before the Complaint reaches the Judicial Committee.***

3) For the record, my plea was for "conscious avoidance" of securities laws, which is materially different from a guilty plea as a matter of both law and fact. Not only is the faculty's conclusion that I "pleaded guilty to the intent to commit securities fraud" irrefutably wrong, but such a conclusion undoubtedly tainted every step of the proceedings against me. At a minimum, an error of this magnitude requires that the faculty, Office of Legal Counsel, and any other body or individual involved in investigating this matter re-evaluate their analysis and conclusions.

Lastly, the Complaint should not have been filed under the NYU Code of Ethical Conduct (the "Code"), *see* Paragraphs 1, 4 and 6 of the Complaint, and it was wrong for the Faculty to consider the Code when filing its complaint. The Code only applies to "every part-time and fulltime employee, faculty member, officer, trustee, overseer, and advisory board member." I am not currently a member of any of these groups, nor was I a member at the time the Complaint was filed. Consequently, I cannot be accused of violating the Code.

In light of the University's repeated and unjustified failure to afford me the proper due process to which I am entitled under the Disciplinary Procedures, and the numerous material and prejudicial factual misstatements contained in the Complaint against me, I respectfully request that the University immediately drop the disciplinary proceedings against me and award me my diploma.

Sincerely,

Ayal Rosenthal

Cc:    Lee S. Sproull
       Mel Ochoa

Encl:  Student Disciplinary Procedures
       University Code of Conduct
       Transcript of Plea Hearing in Eastern District Court

# EXHIBIT H

[Tom Grace]

1. The NYU Office of Legal Counsel has the official word on matters of jurisdiction. If Lee Chamberlin says there is reason to believe harm was done to the University (in this case, to the University's reputation) through Rosenthal's actions, our judiciary process has jurisdiction.

2. Our Judiciary Committee's job is to determine */a)/* to what degree the student's behavior damaged or endangered the School's reputation and */b)/* what punishment is appropriate.

3. If they feel the damage is minimal, they can recommend that no punishment be exacted.

4. A judiciary process may only rule on behavior that has occurred and the impact of that behavior on the University. Therefore, they should only recommend withholding the degree if they believe the amount of damage he did warrants that particular punishment. A judiciary process may not recommend withholding the degree because they don't want the damage to be greater.

5. If the Committee feels that withholding the degree does not fit the offense (in nature and/or severity), other penalties might be imposed (e.g., a notation of sanction on the transcript, a requirement that he take ethics instruction, delaying the degree, etc.).

6. If the judiciary process does not result in a recommendation satisfactory to the School, an administrative process can be invoked.

From page 222 "Rules of Conduct"

http://www.nyu.edu/students.guide/policies/student_discipline.pdf

A. All members of the University Community - students, faculty members, and members of the staff - shall comply with city, state, and federal laws and ordinances affecting the maintenance of order on University premises. Students who engage in behavior that violates these standards will be subject to the disciplinary process in the following manner:

1. Conduct that is violative of such laws and ordinances occurring on University premises may be subject to both University discipline and public sanctions as circumstances may warrant or dictate.

2. Conduct that is violative of such laws and ordinances occurring off-University premises will ordinarily not be subject to University discipline, unless such conduct a) seriously affects the interests of the University or the position of the member within the University community; or b) occurs in close proximity to University premises and is connected to violative conduct on University premises.

From page 224 "University Policy on Student Conduct". (second paragraph of section 2. Rules of Conduct)

2. Basic Rules of Conduct. Students are expected to conduct themselves as mature and law-abiding members of both the University community and the general community, and to comply with requests of the administrative authorities of the University for maintenance of order on University premises. Behavior which jeopardizes the health or safety of the University community, or disrupts the educational activities and supporting services of the University, is subject to review and possible penalty in accordance with the procedures and practices of the University and its colleges, schools, or divisions.

Where activities sponsored by student organizations constitute violations of University rules or of public laws and regulations, sanctions may be imposed on such organizations as well as on individual students.

The University should not use its powers to interfere with the rights of a student outside the University campus. In general, a student's off-campus activities should be subject only to sanctions of the public authorities. Where a student is convicted of a violation of law, he should not be subject to University discipline for the same offense unless his conduct seriously affects his position as a member of the academic community.

Where a student's conduct on campus constitutes violations of both University rules and public law, he may be subject to both University discipline and public sanctions.

From Page 227 "Resolution of Questions of Jurisdiction in Any Particular Case"

C. Resolution of Questions of Jurisdiction in Any Particular Case. While questions of jurisdiction are not expected to be numerous or difficult, the following procedures shall be used where such questions arise:

1. Where a question arises as to whether a case should come within faculty or Senate jurisdiction, the question shall be referred for decision to the Office of Legal Counsel of the University.

2. The decision of the Office of Legal Counsel shall be both telephoned and mailed to each student who is the subject of the same or a similar complaint as the one in which the question of jurisdiction has been raised, to the Dean of the faculty of each school in which any such student is enrolled and to the Chairman of the University Judicial Board (hereinafter defined).

3. If either a student who is the subject of a complaint, or the Dean or Chairman of the Disciplinary Committee of a faculty in which such student is enrolled, or the Chairman of the University Judicial Board disagrees with the decision rendered by the Office of Legal Counsel, such person shall have the right to appeal the decision to the Committee on Organization and Governance of the University Senate.

4. The Office of the Secretary of the Senate must receive notice of such appeal no later than three days after the initial decision of the Office of Legal Counsel has been communicated to the person taking the appeal. In cases in which the student has been temporarily suspended or dismissed pending disciplinary proceedings, such notice of appeal must be received within eight hours.

# EXHIBIT I



NEW YORK UNIVERSITY

# NYU STERN

LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
*Paganelli-Bull Professor of Economics
and Richard R. West Dean*

October 25, 2007

Mr. Ayal Rosenthal
98 Walnut Dr.
Tenafly, NJ 07670

Dear Mr. Rosenthal,

I am writing to inform you of my decision in the matter referred by faculty complaint to the Stern MBA Judiciary Committee, regarding your guilty plea in federal District Court to an information charging conspiracy to engage in insider trading, based upon your admission that you engaged in conscious avoidance of United States securities law. Your guilty plea was entered in the period between the completion of the course requirements for the MBA degree and the date for approval by the President and Trustees of the University of degrees to be conferred on NYU students.

In December, 2006, it came to my notice that you were under investigation for charges related to securities fraud. Although you had completed the course requirements for the MBA degree, that degree is only awarded after the Faculty votes to recommend degree recipients to the President and Board of Trustees for receipt of the degree.

On February 9th, 2007, in the US District Court Eastern District of New York, you allocuted the following in submitting your guilty plea to the Honorable Judge John Gleeson:

> "[I]n or about May 2005, in a discussion about my work, I agreed to tell my brother Amir Rosenthal the names of two companies that were involved in a confidential acquisition that I was working on. I knew that my brother Amir was an active trader of securities. I consciously turned a blind eye to what would have otherwise been obvious to me; that my brother was going to trade, in violation of United States securities laws on information that I provided to him. I accept responsibility for my actions and am very sorry for what I did."

At the February 22, 2007 Faculty meeting, the faculty voted to submit your case to the MBA Judiciary Committee. The Judiciary Committee convened a hearing on September, 2007, in which you were given the opportunity to have your voice heard. The Judiciary Committee rejected your contention that it lacked jurisdiction in this matter, and, taking account of the fact that you pled guilty to conscious avoidance of securities law, it voted unanimously that you had violated the Stern Honor Code.

Mr. Ayal Rosenthal
October 25, 2007
Page 2

The following sanctions were recommended:

> *Degree: Mr. Rosenthal shall not be conferred his degree of Master of Business Administration from the Stern School of Business but may transfer his completed coursework, credits, and grades to another school that will accept them.*

> *Transcript: Immediately and prior to any transfer of coursework, credits, and grades to another school, Mr. Rosenthal's grade for Professional Responsibility shall be changed from an A to Fail (F) and the credits for this class shall not be eligible for transfer, with a notation added to his transcript that states: "Not transferable due to judiciary hearing."*

In the interests of due process, I referred the Judiciary Committee's recommendations back once more to the faculty for its approval. At the October 3, 2007 Faculty Meeting, the Faculty voted to approve the following motion:

> *Whereas:*

> ➢ *At its meeting of February 22, 2007 the Stern School faculty voted unanimously that "the case of Ayal Rosenthal, having plead guilty to the intent to commit securities fraud, be remanded to the Stern School's Judiciary Committee and their procedures,"*

> *And Whereas:*

> ➢ *The panel of the Stern MBA Judiciary committee that investigated and reviewed the case of Ayal Rosenthal decided by unanimous vote that Mr. Rosenthal "is guilty of violating the Stern Honor Code and Code of Conduct, namely that students are expected in all of their actions to reflect personal honesty, integrity, and respect for others,"*

> *And Whereas:*

> ➢ *That same panel, as sanction, has recommended that "Mr. Rosenthal shall not be conferred a degree of Masters of Business Administration from the Stern School"*

> *I move:*

> ➢ *That Mr. Ayal Rosenthal not be recommended to the NYU President and Board of Trustees for a degree of Masters of Business Administration."*

As Dean of the Stern School of Business, I can accept, deny, or modify the Judiciary Committee's recommendations. Given that you pled guilty to a federal crime predicated upon your conscious avoidance of securities law, offenses that were based upon conduct that took place while you were a student at the NYU Stern School of Business, I choose to exercise my prerogative as Dean to modify the Judiciary Committee's recommendation as follows:

Mr. Ayal Rosenthal
October 25, 2007
Page 3

> *Mr. Rosenthal shall not be conferred his degree of Master of Business Administration from the Stern School of Business.*

I wish to emphasize that at every stage of the proceeding, your guilty plea to conscious avoidance of securities law has been the deciding factor in the decisions made. The student Honor Code and the University Code of Conduct are the bedrock of our community. In consciously avoiding securities law while a student at the NYU Stern School of Business, you have broken both these Codes and broken also the trust that holds our community together.

Sincerely,

TC/ks

# EXHIBIT J

November 5, 2007

Ayal Rosenthal
98 Walnut Dr.
Tenafly, NJ 07670

Thomas F. Cooley
Henry Kaufman Management Center
44 West Fourth Street, 11-58
New York, NY 10012-1126

Dear Mr. Cooley,

I received a copy of your letter dated October 25, 2007. Needless to say, I find your decision unacceptable. It is based on incorrect interpretation of the school's rules and regulations, wrong factual allegations, and a severely flawed process.

In accordance with MBA Judiciary Committee Student Disciplinary Rule 7, I will file an appeal on or before December 1, 2007 (30 calendar days from the date I received of your letter).

To adequately prepare for my appeal, I respectfully request that you provide me with the following documents:

1. A copy of the charging instrument (i.e., a copy of the complaint against me) and any supporting documents;

2. A copy of all documents drafted, reviewed, and consulted by you, the Faculty, and the MBA Judiciary Committee in rendering your respective decisions;

3. A copy of the relevant NYU and Stern rules and regulations upon which your decision is based, including but not limited to, any rules and/or regulations purportedly conferring jurisdiction upon you, the Faculty, and the MBA Judiciary Committee to render a decision on this matter and recommend the sanctions imposed;

4. The names and contact information for all members of the MBA Judiciary Committee who attended the disciplinary hearing and voted on this matter;

5. The names and contact information for all members of the Faculty who attended the February 22 faculty meeting and voted on this matter;

6. The names and contact information for all members of the Faculty who attended the October 3 faculty meeting and voted on this matter;

7. Minutes of all meetings concerning this matter;

8. All documents concerning the decision to confer upon me a Masters of Business Administration degree, and the subsequent award of said degree on January 22, 2007;

9. All documents concerning the University's communications with any government agency regarding this matter; and

10. Any findings of fact or law that have been made by you, the Faculty, the University's Counsel, or the MBA Judiciary Committee concerning this matter.

In addition, please provide me with a list of all instances during the last 10 years where NYU has been aware that a student has been convicted of a crime while attending the University. For each instance, please specify whether the student has been disciplined by the University, and, if so, the outcome of each case.

Sincerely,

Ayal Rosenthal

cc:    Oren Rosenthal, Esq.

Leona Chamberlin, Esq.
NYU Office of Legal Counsel

# EXHIBIT K



NEW YORK UNIVERSITY
LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
Paganelli-Bull Professor of Economics
and Richard R. West Dean

November 20, 2007

Mr. Ayal Rosenthal
98 Walnut Drive
Tenafly, NY 07670

Dear Mr. Rosenthal,

I am responding to your November 5, 2007 letter requesting copies of certain documents and other information in connection with your expressed intent to appeal from the decision of the Stern MBA Judiciary Committee.

I have considered your requests in light of the Stern Policies & Procedures applicable at the time your case was heard and specifically Section 7 of the Student Disciplinary Rules, which provides the following grounds upon which a Judiciary Committee decision may be appealed:

    i.      Any evidence of a material nature and/or witness unavailable at the time of the original hearing and now available which might have affected the Hearing Panel's decision at that time.

    ii.    Any procedural irregularity in the conduct of the hearing that was material and prejudicial to the Student.

With regard to your specific requests, you previously were provided with a copy of the Judiciary Committee's written report informing you of the charges against you, as requested in item 1 in your letter. Similarly, my October 25, 2007 letter sets forth the Judiciary Committee's findings upon which the sanction you have received is based and responds to your request in item 10. For your convenience I have enclosed additional copies of these documents.

The NYU and Stern School disciplinary rules and procedures which you request are posted on the web at www.nyu.edu/students.guide (NYU policies and procedures) and http://w4.stern.nyu.edu/scorp/committee.cfm?doc_id=4797#policies (Stern policies and procedures applicable to your case). You were present at the Judiciary Committee hearing and therefore are aware of the identities of members of the Hearing Panel. Apart from that, Stern Policies & Procedures do not entitle you to contact information for these individuals nor to the names and contact information for the members of the Stern faculty who attended the faculty meetings you have cited.

With regard to your remaining requests, Stern Policies & Procedures do not provide for the document discovery that you are seeking. Nor does it appear that the additional information you have requested is necessary in order for you to file your appeal on the grounds permitted under Stern disciplinary procedures, namely, the existence of previously unavailable material evidence or procedural irregularity. Accordingly, I am denying your requests, but will extend your time to file your appeal until December 14, 2007.

Sincerely,

Thomas Cooley

Enclosures

Cc: Gary Fraser, Dean of Students and Associate Dean, MBA Student Affairs

# EXHIBIT L

NEW YORK UNIVERSITY



LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
*Paganelli-Bull Professor of Economics
and Richard R. West Dean*

February 19, 2008

Mr. Ayal Rosenthal
98 Walnut Drive
Tenafly, NY 07670

Dear Mr. Rosenthal:

This letter is to advise you of the disposition of your appeal of the decision of the MBA Judiciary Committee of the Stern School of Business's (the "Judiciary Committee") not to confer upon you a degree of Master of Business Administration. After carefully reviewing your appeal, I am satisfied that you have failed to demonstrate that there is any (i) "evidence of a material nature and/or witness unavailable at the time of the original hearing and now available which might have affected the Hearing Panel's decision at the time" nor (ii) "any procedural irregularity in the conduct of the hearing that was material and prejudicial" to you. Stern Disciplinary Rules § 7(a)(i)-(ii). Your appeal therefore is denied.

As your appeal asserts several grounds for overturning the decision, I will address the concerns raised in your letter below.

### I.    Jurisdiction

The appeal is primarily predicated on the claim that the adjudication was jurisdictionally flawed. Specifically, the assertion is that New York University, its Stern School of Business, the Stern School Faculty and the Judiciary Committee lacked both personal and subject matter jurisdiction in your case. Your assertion, however, is based on a misapprehension of the facts and of New York University and Stern School Codes, Policies and Procedures.

#### A.    Personal Jurisdiction

At the time the Stern Faculty filed their complaint, you were a "matriculated and continuing MBA [student]...in the full-time or part-time MBA Programs...of the Stern School of Business." Stern Disciplinary Rules § 2. Any suggestion that you were already an alumnus of the Stern School at that time is inaccurate. On February 22, 2007, the Stern Faculty determined not to certify you for the Stern MBA. Instead, the Stern Faculty voted to file the instant complaint and to remand the complaint to the Judiciary Committee. The New York University Bylaws require the Faculty of each school "to certify to the President, for recommendation to the Board, qualified candidates for degrees and certificates." NYU Bylaw 61(b). Furthermore, "[d]egrees in course are granted by the Board to candidates recommended by the President on certification by a faculty as having fulfilled the requirements for a degree." NYU Bylaw 63(a). While we regret any miscommunication around this matter, the fact remains that you had not been certified by the Faculty as mandated by the NYU Bylaws and thus remained a student subject to University-wide and Stern School jurisdiction at the time of the complaint. And as a Stern student, the Judiciary Committee's decision not to confer your degree was equivalent to expelling you from the Stern School. Stern Disciplinary Rules § 8(a)(viii).

### B.   Subject Matter Jurisdiction: In General

It is apparent from the New York University Policy on Student Conduct (the "University Policy") and the Stern School Code of Conduct (the "Stern Code") that the University and each of its schools – including Stern – have concurrent jurisdiction over NYU students; University Policy and University Student Disciplinary Procedures do not divest a school of jurisdiction to discipline its students unless the matter impacts more than one school. As the University Policy states: "[e]ach faculty has the duty of enforcing not only its own rules of conduct but also, in appropriate cases, the University rules of conduct established by the Senate under the authority granted to it by the University Bylaws." University Policy § 6. Moreover, students affirm that they have read and understand the Stern Student Code, which states "[c]onduct that violates the Code may be subject to both School or University discipline and/or public sanctions as circumstances may warrant." While the University-wide and school level policies and procedures often overlap – for example, both permit any member of the faculty to file a complaint against a student for a perceived offense – students within a given school are subject to both disciplinary regimes. Student Disciplinary Procedures § II.A; Stern Disciplinary Rules § 4(a). Specifically, "[b]ehavior which jeopardizes the health or safety of the University community, or disrupts the educational activities and supporting services of the University, is subject to review and possible penalty in accordance with the procedures and practices of the University *and* its colleges, schools, or divisions." University Policy § 2 (emphasis added).

### C.   Subject Matter Jurisdiction: Violations of Federal Law

The Stern School has developed a set of procedures and practices that reinforce the University Policy's statement that a student may be disciplined when the student's criminal conviction "seriously affects [the student's] position as a member of the academic community." University Policy § 2. Namely, under the authority delegated by the Stern Faculty, the Judiciary Committee has jurisdiction over "violations of federal, state or local laws." Stern Disciplinary Rules § 2(iii). As you may know, private educational institutions have broad authority to discipline students according to their own policies and procedures. In this case, the Stern Faculty has recognized the nexus between being a law-abiding citizen and behaving ethically in business dealings and the Stern School's Disciplinary Rules embody this principle. While every violation of the law does not come before the Judiciary Committee, the Stern community is not required to turn a blind eye to student "indiscretions," especially when the violation of the law involves a business transaction.

### II.    Rights & Obligations of the Accused

The Stern Disciplinary Rules outline students' rights and obligations in relation to adjudicating complaints. Specifically, a student may "consult with an adviser of his or her own choosing to assist in the preparation of the Accused's defense." Stern Disciplinary Rules § 6(g). A student also "has the right to be present during all witness testimony and the right to challenge witness testimony as appropriate." Stern Disciplinary Rules § 6(d). Furthermore, a student "has the right to have the Chair request presence of a reasonable number of witnesses on his or her behalf." Stern Disciplinary Rules § 6(e). It appears that you took advantage of the adviser option in preparing a statement to challenge the complaint and consulted with your counsel prior to the hearing. While your counsel was not permitted to accompany you into the hearing room, the primary purpose of permitting counsel to attend hearings is to enable counsel "to examine and cross-examine each witness either by putting questions directly to the witness, or by asking questions through members of the hearing body." Student Disciplinary Procedures § II.D.3. In contrast to a state or federal adjudicatory body, neither the University nor the Stern policies and procedures mandate that the counsel must be allowed to present the student's case; the only active role of counsel is to interrogate witnesses. As you are aware, you did not request witnesses to attend the hearing

on your behalf, and your allocution in federal court obviated the need to summon witnesses to your crime. The Faculty complainants were not required to retry the government's case. As your guilty plea and allocution were crucial in the Judiciary Committee determination, I find that the absence of counsel during the hearing was neither "material" nor "prejudicial."

It should be noted that a student does not have a right to modify or amend the complaint; the purpose of the hearing is to determine the veracity of the complaint. Regardless of any references to an "insider trading scheme" in the initial complaint, the Judiciary Committee took into account your statement regarding the factual errors in the complaint. As my October 25, 2007 letter made clear, the basis for not conferring your degree was not your alleged involvement in an "insider trading scheme," but your guilty plea and allocution before U.S. District Judge John Gleeson to "conscious avoidance of securities law."

### III.    Violation of the Stern Codes

#### A.    Standard of Proof

Under the Stern Disciplinary Rules, "the accused is presumed innocent until proven guilty by standard of beyond a reasonable doubt." Stern Disciplinary Rules § 5(h). As you are aware, the issue before the Judiciary Committee was whether or not you violated the Stern and/or University Codes. Once you pled guilty in federal court, the scope of the Judiciary Committee's inquiry was limited to evaluating the admitted behavior in light of rules to which NYU and Stern students are bound. Your guilty plea has been the determining factor throughout this process and the decisions made; your own admission rebuts any presumption of innocence. Although the Judiciary Committee may have been convinced that your conviction damaged the Stern School, it was not required to adjudicate this issue, and any representations to the contrary should be disregarded.

#### B.    Violation of the Code of Conduct

The Stern Code of Conduct states that "students are expected in *all* of their actions to reflect personal honesty, integrity, and respect for others." While the statement is broad, it is not merely "aspirational" – it encompasses the Stern School's philosophy that its students – as future business leaders – have an obligation to adhere to these principles in their behavior. As a former Teaching Fellow for Professional Responsibility, you should be aware that this philosophy is reflected even in the curriculum as the Stern School has made business ethics a central and integral component of its business education program. It is undisputed that you pled guilty to "conscious avoidance" of the securities laws and admitted to sharing confidential information with your brother, an active securities trader. Your crime – an offense under United States securities laws – also violates the Stern Code. Moreover, conferring your MBA degree would undermine the Stern School's position as a moral authority on business ethics and the integrity of a Stern degree.

#### C.    Violation of the Honor Code

Similarly, the purpose of the Stern Honor Code is "to express a commitment to promote principles of honesty, integrity and trust among Stern students…each student is asked to commit to *the principles* of this Honor Code and, by signing the Honor Code, agrees to abide by the Code" (emphasis added). It is irrelevant whether you committed any of the enumerated offenses such as lying, cheating, or stealing. The Stern Honor Code states "[t]his list is not inclusive, and is included for illustrative purposes." It is beyond dispute that you did not adhere to its principles. Moreover, your violation of the Stern Code of Conduct was a sufficient basis upon which to expel you.

### IV.    Faculty Behavior

Under the Stern Disciplinary Rules, the Chair may appoint a Committee member to serve as "pre-hearing counsel" – at the student's request – to discuss the judiciary rules and process. Stern Disciplinary Rules § 6(h). Without conceding the veracity of your complaints, your statements regarding Professor Rachel Kowel's "bias" are without merit as nothing in the rules required Professor Kowel to "serve as an impartial advisor." Indeed, Dean Fraser is the Judiciary Committee's sole formal advisor.

While Stern Faculty may have relied upon any of the numerous public reports – the New York Times, Wall Street Journal, the SEC Press Release – as a basis for academic discussions on professional responsibility, such discussions were not improper. Only the Hearing Panel has an obligation of confidentiality regarding the proceedings. Stern Disciplinary Rules § 4(f).

### V.    *Outstanding Issues*

The other issues that you raise reference University Student Disciplinary Procedures, which are either inapplicable or have been misapprehended. Specifically, the Vice President for Student Affairs is required to meet with students and resolve the matter with the student's consent only in cases subject to University Senate Jurisdiction. Student Disciplinary Procedures § I.E.2. Under the Student Grievance Procedures, the burden is on the student to file a formal complaint raising his grievances; we are not aware of any formal complaint in this regard. Student Grievance Procedure § III. The Stern Disciplinary Rules do not require that students receive notice of the complaint within 48 hours, nor do the Rules require that students be notified of the Office of Legal Counsel's decision regarding jurisdiction. Stern Disciplinary Rules §§ 2 & 4. The Office of Legal Counsel determined that jurisdiction was proper in your case.

Finally, I want to reemphasize that private educational institutions have broad authority to discipline students according to their own policies and procedures and in accordance with their stated values. "The Stern community believes that honesty and integrity are qualities necessary for rewarding academic and professional experiences." Stern Honor Code. Based on your actions, you have demonstrated a lack of integrity and a complete disregard for the values that hold our community together. The decision not to confer your Masters of Business Administration degree was not only not "a draconian penalty," but a necessary step in restoring balance to the Stern community and well within the Stern School's rights. Accordingly, I am denying your appeal.

Sincerely,

Thomas Cooley

Cc: Gary Fraser, Dean of Students and Associate Dean, MBA Student Affairs