Edward Hernstadt (EH 9569)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
212-214-0307

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

AYAL ROSENTHAL,                          :
                                         :  08 Civ. 5338 (LAK)
                    Plaintiff,           :  ECF Case
                                         :
           -v-                           :  SECOND AMENDED COMPLAINT
                                         :
NEW YORK UNIVERSITY, NEW YORK            :
UNIVERSITY LEONARD N. STERN SCHOOL       :  JURY TRIAL DEMANDED
OF BUSINESS, and THOMAS F. COOLEY,       :
Richard R. West Dean of the Leonard N. Stern   :
School of Business,                      :
                                         :
                    Defendants.          :
------------------------------------------------------------X

Plaintiff Ayal Rosenthal, by his attorneys, Hernstadt Atlas LLP, as and for his

Second Amended Complaint herein, alleges as follows:

### NATURE OF THE CLAIM

1.      This case arises out of the unlawful decision by New York University

("NYU"), NYU Leonard N. Stern School of Business ("Stern School"), and Stern School Dean

Thomas F. Cooley ("Dean Cooley") (collectively "Defendants") retroactively to strip Plaintiff

Ayal Rosenthal ("Mr. Rosenthal") of his Masters of Business Administration ("MBA") degree.

Defendant Cooley and others at NYU and the Stern School orchestrated a star-chamber

disciplinary process that repeatedly violated NYU's own written policies and procedures, and

which culminated in Defendants' purporting to disclaim the actual fact of Mr. Rosenthal's

graduation from the Stern School and denying him his MBA diploma and degree.

2.      Ayal Rosenthal graduated from the part-time MBA program at the NYU Stern School in January 2007. Over the course of two years, while employed during the day as an accountant at PricewaterhouseCoopers, LLP, Mr. Rosenthal successfully completed the Stern School's challenging course load, fulfilled all the necessary credits and requirements for his MBA degree, and paid fees, dues, and other consideration totaling more than $85,000 to NYU.

3.      Mr. Rosenthal attended a graduation ceremony on January 25, 2007, shortly after which he received a letter from Dean Cooley congratulating him on successfully completing the requirements for graduation and advising him that the faculty had voted to confer an MBA degree upon him. A few days later Mr. Rosenthal received an official copy of his transcript, which indicated that he had indeed been graduated with an MBA degree.

4.      Nearly nine months after Mr. Rosenthal's graduation, however, NYU purported to retract the MBA degree it had already conferred on him, in clear violation of its own rules and policies. NYU made this outrageous decision even though Mr. Rosenthal had successfully completed all of the coursework and requirements, paid all necessary NYU tuition, fees, and other consideration valued in excess of $85,000, and had been duly graduated from the Stern School.

5.      Defendants have been inconsistent and evasive – indeed Kafkaesque – in the deeply flawed and capricious procedures they imposed on Mr. Rosenthal and the ever-changing explanations they have raised to justify their behavior. NYU averred that it took this unprecedented and punitive step because Mr. Rosenthal pleaded guilty to a federal offense after he graduated from the Stern School, even though the offense was wholly unconnected in any way to his course work, to the Stern School, or to any another school or division at NYU. Specifically, Mr. Rosenthal admitted to foolishly and improperly divulging information about a

client to his brother in "conscious avoidance" of federal securities laws. Mr. Rosenthal had acknowledged (and paid for) this serious mistake in judgment.

6.    Nonetheless, almost one year after Mr. Rosenthal joined his classmates in a graduation ceremony and was informed in writing by Dean Cooley that he had been awarded an MBA degree, NYU refused to send Mr. Rosenthal his diploma and, notwithstanding its prior statements to the contrary, informed him that no MBA degree had ever been conferred upon him. Instead, employing a bizarre and error-ridden process that denied Mr. Rosenthal most of the due process promised him under NYU rules and ignored essential NYU policies and regulations, the Stern School Faculty attempted to reverse its recommendation to the President that Mr. Rosenthal be granted a degree and issued a new recommendation that the "A" grade Mr. Rosenthal had earned in the professional responsibility class he completed in April 2006 be changed after the fact to an "F" and that he be expelled from NYU. It is unknown whether the Stern School has actually implemented the Faculty's recommendation and changed Mr. Rosenthal's grade.

7.    In doing so, NYU and the Stern School breached their obligations to provide Mr. Rosenthal with the diploma that he earned; they also breached their obligations to Mr. Rosenthal in connection with the sham procedures they employed in purporting, well after the fact, to retract a grade properly earned by Mr. Rosenthal two years ago and to expel him from the Stern School almost a year after he had already been graduated.

8.    As a result of these and other improper and exceptionally damaging actions, Mr. Rosenthal has been forced to commence this lawsuit seeking damages and injunctive relief against the Stern School, NYU, and Dean Cooley.

## THE PARTIES

9.     At all times relevant hereto, Mr. Rosenthal was a citizen and resident of the State of New Jersey.

10.     Upon information and belief, defendant New York University was and is a private, non-profit University, located in and with its principal place of business in New York City, incorporated under the laws of the State of New York as a domestic not-for-profit corporation, and is a citizen of the State of New York.

11.     Upon information and belief, defendant Leonard N. Stern School of Business is a graduate school of business administration affiliated with and part of NYU, with its principal place of business in New York City, and is a citizen of the State of New York.

12.     Upon information and belief, defendant Thomas F. Cooley was and is the Richard R. West Dean of the Leonard N. Stern School of Business; upon information and belief, he resides and works in New York City and is a citizen of the State of New York.

## JURISDICTION AND VENUE

13.     This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

14.     This Court has personal jurisdiction over defendants NYU and Stern School on the grounds that defendants' principal place of business is located in the State and County of New York so that it is a citizen of the State of New York, and over Dean Cooley on the grounds that, upon information and belief, he resides in New York City and he is a citizen of the State of New York.

15.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because defendants reside in this judicial district and a substantial part of the events giving rise to the claims here occurred within this district.

FACTS

Ayal Rosenthal at the Stern School of Business

16.    Ayal Rosenthal matriculated at the Stern School in its Langone program – the program designed and utilized by the Stern School for part-time MBA students – in January 2005. From approximately June 2001 until May 2006, Mr. Rosenthal also was employed at PricewaterhouseCoopers as an accountant.

17.    During his time at the Stern School, Mr. Rosenthal was more than just a successful student; he was also integrally involved in the school's academic life, serving as a Teaching Fellow or Grader for six classes, and participating in several student groups and events. Mr. Rosenthal never had any academic or disciplinary issues as a graduate student.

18.    After attending NYU for the Spring, Summer and Fall semesters in 2005 and 2006, Mr. Rosenthal completed the 60 credits of course work required for an MBA degree, earning a grade point average of 3.4275 in the process, by December 2006. Mr. Rosenthal timely paid all fees due for classes taken.

19.    Since Mr. Rosenthal had successfully completed the required class-work, and paid all required fees, in accordance with NYU Bylaw 63(a), upon information and belief, the Stern School faculty duly certified Mr. Rosenthal to the President of NYU, who in turn recommended to the NYU Board of Trustees that it grant an MBA degree to Mr. Rosenthal, and the NYU Board of Trustees granted such degree.

20.    In confirmation of that fact, Stern School Dean Thomas Cooley sent Mr. Rosenthal a congratulatory letter dated January 31, 2007, that confirm that Mr. Rosenthal had "complet[ed] the requirements" for an MBA degree and that the "Faculty has recommended to the President and Board of Trustees of New York University that your degree be conferred as of January 22, 2007."

21.    Additionally, by letter dated February 1, 2007, NYU's Office of Records and Registration confirmed that the Board of Trustees had in fact granted the MBA degree to Mr. Rosenthal when it sent him an official NYU transcript confirming the award of the degree. Indeed, the cover letter accompanying the transcript was addressed to "Dear Stern Graduate" and stated "[e]nclosed is a copy of your academic transcript indicating your graduation as of January 22, 2007." Copies of the January 31, 2007 letter and official NYU Transcript with cover letter are attached hereto as Exhibits A and B).

22.    Finally, in keeping with the fact that a degree had been awarded to him, Mr. Rosenthal was invited to attend, and did attend, a graduation ceremony from the Stern School on January 25, 2007.

23.    Thus, as of January 22, 2007, or at the latest, January 31, 2007, the Stern School faculty had already voted to confer an MBA degree upon Mr. Rosenthal, had already conveyed that recommendation to NYU's President, who in turn had already recommended Mr. Rosenthal's graduation and award of an MBA degree to the NYU Board of Trustees, and the Board of Trustees had, as confirmed by Mr. Rosenthal's Official Stern School Transcript, had already granted the MBA degree to him.

6

Mr. Rosenthal's Legal Problems

24.    Unfortunately, wholly apart from his student life at the Stern School and NYU, Mr. Rosenthal had become embroiled in a legal problem arising out of the securities trading activities of his older brother, NYU Law School graduate Amir Rosenthal. Mr. Rosenthal made the unfortunate mistake of mentioning to his brother, with whom he was very close, a deal he was working on at PricewaterhouseCoopers ("PWC"). Unbeknownst to Mr. Rosenthal, his brother Amir engaged in a trade related to the deal they discussed.

25.    Mr. Rosenthal was not aware of or involved in the trade itself, nor did he profit from it. Nevertheless, the United States Attorney's Office for the Eastern District of New York pursued a criminal investigation against Mr. Rosenthal. In February 2007, Mr. Rosenthal accepted a plea offer by the government for a non-custodial sentence. Although Mr. Rosenthal did not intend any harm and did not know his brother would make unlawful use of the information gleaned from their conversation, he realized that he should have anticipated that a very active trader like his brother might use such information and, accordingly, Mr. Rosenthal accepted responsibility for his mistake and agreed to the plea offered by the government.

26.    Mr. Rosenthal acknowledged in his plea allocution on February 8, 2007, that:

> in or about May 2005, in a discussion about my work, I agreed to tell my brother Amir Rosenthal the names of two companies that were involved in a confidential acquisition that I was working on. I knew that my brother Amir was an active trader of securities. I consciously turned a blind eye to what would have otherwise been obvious to me; that my brother was going to trade, in violation of United States securities laws on information that I provided to him. I accept responsibility for my actions and am very sorry for what I did.

27.    In negotiating his plea agreement and plea allocution, Mr. Rosenthal was assiduous in ensuring that there would be no reference to NYU or the Stern School in any

7

potentially public document so as not to embarrass his new *alma mater*. Indeed, because of Mr. Rosenthal's care, there was no mention of NYU or the Stern School in February 2007, when he pleaded guilty to a single count of conscious avoidance of securities laws; none in the minor press coverage of his plea; and there has been none as of the date of this complaint.

28.    Mr. Rosenthal was never accused of and did not plead guilty to any other criminal wrongdoing, or of being involved in a larger conspiracy. To the contrary, the United States Attorney freely conceded that it was "not trying to prove or won't seek to prove and doesn't believe that it can prove" Mr. Rosenthal's involvement in a more serious case the government pursued against his brother Amir.

The Stern School Reacts to Mr. Rosenthal's Conviction

29.    A week after pleading to the conscious avoidance charge, and some three weeks after he graduated from the Stern School, Mr. Rosenthal's counsel was informed by the U.S. Attorney's Office that it had been contacted by an individual purporting to be from the Stern School, seeking information about Mr. Rosenthal's plea. Mr. Rosenthal went to see Stern School Dean of Students Gary Fraser and expressed his concern about the call, and that NYU might take action against him. Dean Fraser sent Mr. Rosenthal an email later that same day assuring him that he had made a "complete check of the different departments here at Stern" and was "confident that a Stern administrator did not call the federal prosecutor."

30.    Mr. Rosenthal heard nothing more about the matter until about one month later, when a school friend told him that Mr. Rosenthal was the subject of a Professional Responsibility class taught by Stern School Dean Thomas Cooley. Dean Cooley, who ultimately made the decision to rescind Mr. Rosenthal's MBA degree after the Board of Trustees had already granted it and retroactively expel him from the Stern School, had discussed Mr.

8

Rosenthal's case in class and conducted class discussion as to whether the Stern School should award such a student his MBA degree. At that time, Dean Cooley was already aware that Stern School administrators were preparing to commence disciplinary proceedings against Mr. Rosenthal. Also, Dean Cooley knew, or should have known, that there was a high likelihood that some of the students in his class would serve on the committee that would later decide Mr. Rosenthal's case. Further, Dean Cooley knew, or should have known, that it was particularly improper and prejudicial for him, as a member of the faculty and the Dean of the Stern School, to discuss publicly a pending disciplinary matter with his students.

  31. About this time, Mr. Rosenthal also learned from another former classmate that Stern School Professor Jennifer Bergenfeld had sent the students in her Professional Responsibility class an article from a local newspaper covering the case against Mr. Rosenthal's family, and mentioning him by name (though not, of course, identifying him as an NYU or Stern School student).

  32. It is likely that member(s) of the Stern School Judiciary Committee, which ultimately asserted jurisdiction over the case against Mr. Rosenthal, were present at or otherwise heard about the case through Dean Cooley and Professor Bergenfeld's discussion of the case, which would have prejudiced them against Mr. Rosenthal.

Defendants' Improper Investigation and Hearing

  33. By May of 2007, Mr. Rosenthal still has not received his diploma from the Stern School, even though NYU had promised in writing months earlier that his degree was forthcoming.

  34. Mr. Rosenthal visited the Stern School on May 2, 2007 to ask about the diploma, and was told it can take months for the diploma to be printed and mailed. He

subsequently made additional telephone calls seeking further information about his diploma to various offices at the Stern School on May 14 and 15, 2007, but learned nothing.

35.     On May 16, 2007, however, Dean Fraser (with whom he had discussed, in mid-February, the information provided to his counsel by the U.S. Attorney's office) shocked Mr. Rosenthal with the news that NYU had withheld his diploma after the Board of Trustees had granted it to him because "the Faculty" had filed a complaint against him (the "Complaint"), relating to his criminal conviction. The Complaint, dated February 28, 2007, was filed more than a month after Mr. Rosenthal's Graduation. Dean Fraser told Mr. Rosenthal that the Complaint had been referred to the Stern School's Judiciary Committee to resolve the question of whether NYU and the Stern School had jurisdiction over this matter. This May 16, 2007 conversation was the first time Mr. Rosenthal had ever heard of a Complaint having been filed against him.

36.     Dean Fraser would not explain why NYU had made no attempt to inform Mr. Rosenthal sooner about the Complaint, as was required under University policy, but stated that Stern School MBA student Melchior Ochoa, the chairperson of the MBA Judiciary Committee, would contact Mr. Rosenthal shortly to discuss the matter.

37.     On or about May 18, 2007, Mr. Ochoa called Mr. Rosenthal and explained that it was not clear under University rules whether the MBA Judiciary Committee had jurisdiction over the Complaint, and that the Committee had to meet to debate the issue of jurisdiction. Mr. Ochoa also read Mr. Rosenthal the Complaint, which Mr. Rosenthal physically received for the first time on May 23, 2007.

38.     The Complaint contained several factual errors, including, most importantly, the false and very damaging allegation that Mr. Rosenthal had pleaded to "an

insider trading scheme involving his father, brother, and a childhood friend . . ." As was described above, Mr. Rosenthal admitted to conscious avoidance of securities laws; he did not plead to the "insider trading scheme" referenced in the Complaint. Not only did this false and inflammatory allegation serve as the sole basis for the Complaint, but it also painted Mr. Rosenthal as having engaged in significantly worse conduct than the foolish and wrongful act he had acknowledged.

39.    The Complaint stated, in part, that both Stern School and University policies expect students to "behave with honesty and integrity," and alleged that Mr. Rosenthal's guilty plea broke "both the Stern Honor Code and the University Code of Ethical Conduct" so that "he is not qualified to receive the degree of Master of Business Administration." The Complaint further stated that the "University Counsel's opinion supports the faculty's stand in this matter." A copy of the Complaint is attached hereto as Exhibit C; Copies of the Stern Honor Code (both current, and that which was in effect at the time of the Complaint against Mr. Rosenthal) and the University Code of Ethical Conduct are attached hereto as Exhibits D and E.

40.    On or about May 20, 2007, Mr. Ochoa emailed a memo he had prepared (the "Ochoa Memo," attached hereto as Exhibit F), in which he discussed both the jurisdictional issues the MBA Judiciary Committee had to resolve and his understanding of the Stern School and/or University policies and procedures that applied to the Complaint and his committee's jurisdictional analysis. The Ochoa Memo also revealed that NYU had apparently already conducted some sort of investigation into the matter – Mr. Ochoa had reviewed the Complaint and other unspecified materials provided by the University, and met with Dean Fraser to "determine the facts" – while failing in any way to contact Mr. Rosenthal, the subject of the

Complaint. Remarkably, Mr. Ochoa told Mr. Rosenthal that he would not be permitted to see or know the substance or content of any of the materials reviewed by the University.

41.    The Ochoa Memo established that NYU and the Stern School had already failed to comply with many of its own published policies and procedures, including, but not limited to:

- the requirement that notice of a complaint be mailed to the subject student within 48 hours of its initiation;

- the requirement that the Office of Legal Counsel notify the student of its decision on the matter; and

- the requirement that the Vice President for Student Affairs meet with the student to try to resolve the matter with the consent of the student.

42.    Mr. Rosenthal asked to be permitted to provide the MBA Judiciary Committee with an answer responding to the Complaint and, at a minimum, to correct the prejudicial factual errors contained in it. However, Mr. Ochoa refused to allow Mr. Rosenthal either to set the record straight or to provide an explanation, on the bizarre grounds that permitting a student accused of wrongdoing to present his side of the story to the body responsible for rendering judgment on that complaint would be prejudicial to the "other side." Mr. Ochoa attempted to reassure Mr. Rosenthal that the hearing Committee would receive and consider his response at the hearing.

43.    Hoping to clear up the factual mistakes in the Complaint before they became the basis of any further NYU or Stern School decisions about him, Mr. Rosenthal then wrote Dean Fraser on May 24, 2008, explaining in detail the factual errors contained in the Complaint and pointing out the numerous procedural errors and denials of due process to which

Mr. Rosenthal had already been subjected. Mr. Rosenthal transmitted that letter with an email to

Dean Fraser, Dean Lee Sproull, and Mr. Ochoa demanding that the fatally flawed proceedings

against him be dropped so that he could receive his diploma, which request Dean Fraser rejected.

A copy of the May 24, 2007 letter is attached hereto as Exhibit G.

44.    NYU ignored Mr. Rosenthal's requests and, instead, forced him to endure

a drawn-out hearing process that failed to comply with virtually all of the protections afforded

him in the NYU and Stern School rules, and which ultimately resulted in a fatally flawed hearing

on September 13, 2007, nearly eight months following his graduation from the Stern School and

almost seven months after the Complaint was filed.

45.    At the hearing itself, Mr. Rosenthal was presented with the materials the

Judiciary Committee had been given, which included the Complaint – but not Mr. Rosenthal's

May 24 response to it, which was given to the Committee only minutes before the hearing

convened at the insistence of Mr. Rosenthal's counsel – a copy of the transcript of his plea, and

copies of the Stern School Honor Code, Code of Conduct, and Rules and Procedures from the

University website.

46.    Additionally, Mr. Rosenthal for the first time received a copy of a

memorandum opining on the committee's jurisdiction and procedures prepared by Thomas

Grace, NYU's Director of Judicial Affairs and Compliance, at some point between February and

September 2007. Mr. Grace's memorandum correctly stated that the:

> Judiciary Committee's job is to determine [(a)] to what degree the
> student's behavior damaged or endangered the School's reputation and
> [(b)] what punishment is appropriate.

*See* Tom Grace Memorandum ("Grace Memo") attached hereto as Exhibit H.

The Grace Memo specifically cautioned the Judiciary Committee that it could:

13

only rule on behavior that has occurred and the impact of that behavior on
the University. Therefore, it should only recommend withholding the
degree if they believe the amount of damage [Mr. Rosenthal] did warrants
that particular damage. A judiciary process may not recommend
withholding the degree because they don't want the damage to be greater.
(Emphasis added.)

 In this regard, the Grace Memo cited to the University Policy on Student Conduct

that:

In general, a student's off-campus activities should be subject only to
sanctions of the public authorities. Where a student is convicted of a
violation of law, he should not be subject to University discipline for the
same offense unless his conduct seriously affects his position as a member
of the academic community

 It also cited to the University's Rules for the Maintenance of Public Order, which

states that:

Conduct that is violative of [federal] laws and ordinances occurring off
University premises will ordinarily not be subject to University discipline,
unless such conduct [a.] seriously affects the interests of the University or
the position of the member within the University community, or [b.]
occurs in close proximity to University premises and is connected to
violative conduct on University premise.

 47. As noted above, Mr. Rosenthal had already completed his coursework and

attended his graduation ceremony, so his guilty plea by definition had no effect at all on his

position as a member of the academic community from which he had recently been graduated.

Thus, the only issue to be determined by the MBA Judiciary Committee, according to

Defendants, was whether Mr. Rosenthal's conduct affected the interests of the University – that

is, caused NYU any harm.

 48. Similarly, the Grace Memo clarified that the Stern School and the

Judiciary Committee, when faced with a jurisdictional dispute, had the obligation to: (i) send the

jurisdictional question to the University Office of Legal Counsel for resolution and (ii) provide

Mr. Rosenthal with a copy of that office's decision, which he would have the right to appeal. Mr. Ochoa and the Judiciary Committee were well aware that Mr. Rosenthal had raised a number of jurisdictional issues, to some of which Mr. Ochoa himself had adverted in the Ochoa Memo. But both the Judiciary Committee and the Office of Legal Counsel failed to comply with either of these University procedural regulations.

49.    Finally, despite the clear dictates of Student Disciplinary Procedures Rule II.D.3 ("the student has the right to be accompanied by counsel") – which was cited in the May 20, 2007 Ochoa Memo, along with other procedural rights that Mr. Rosenthal was blatantly denied – Mr. Rosenthal's counsel was barred from the hearing. Counsel reluctantly permitted Mr. Rosenthal to attend without him on the condition that he not be asked to address the facts underlying his plea to a securities violation. The members of the MBA Judiciary Committee agreed to this request.

50.    During the course of the 45-minute hearing, despite the fact that that Judiciary Committee rules clearly state that he was to be presumed innocent until proven guilty, Mr. Rosenthal was repeatedly asked to explain how his conviction did not cause harm to the University and to convince the committee members why he should not be disciplined. He was also asked about the facts underlying his plea, despite the limitations set by his counsel against exactly such questions when that attorney was barred from the hearing, and asked to repeat his explanation as to the Committee's lack of jurisdiction that was contained in the May 24 letter that was not provided to the Committee until the hearing began.

51.    Since none of the documents submitted by Mr. Rosenthal prior to the hearing were provided to the Committee, Committee members did not know that the Complaint contained material and dispositive factual mistakes. Thus, Mr. Rosenthal was placed in the

15

position of explaining to the MBA Judicial Committee members that they had relied on false and misleading materials in preparation for the hearing, and that his conviction did not involve the "insider trading scheme" referenced in the Complaint. Nevertheless, despite Mr. Rosenthal's best efforts, his explanation fell on deaf ears: at the conclusion of the hearing, a Judiciary Committee member asked him to address his involvement in the "insider trading scheme involving his brother, father, and a childhood friend."

52.    The Stern School Faculty – which was the entity that filed the Complaint and which had the burden of showing that some discipline was appropriate – did not bother to send a representative or witness to attend the hearing. Consequently, it presented no witnesses or testimony related to the Complaint, and failed to provide even a single shred of evidence of any kind, even anecdotal, that the plea had any negative impact on, or caused damage to, NYU or Stern School.

53.    In fact, no evidence was ever presented by anyone that any public connection had ever been drawn between Mr. Rosenthal's plea and NYU or Stern School. Nor did the Stern School faculty present any evidence that Mr. Rosenthal's non-school-related conduct gave him any academic advantage so as to constitute a violation of the Stern School Honor Code – which is expressly limited to academic conduct; or a violation of the University Code of Ethical Conduct – which on its face expressly does not even apply to students, but only to NYU employees and staff, but which was nonetheless cited in the Complaint. Nor, for that matter, did the Stern School faculty present any evidence regarding the other potentially relevant University policies that were not cited to in the Complaint, including the Statement of Policy on Student Conduct at NYU, which does apply to students and is referred to at the end of the Stern School Code of Conduct.

54.    Later the same evening as the hearing, the Committee met and rendered a decision, which it forwarded to Dean Cooley, but not to Mr. Rosenthal.

55.    Some six weeks later, by letter dated October 25, 2007, Dean Cooley advised Mr. Rosenthal that the Judiciary Committee had unanimously decided that Mr. Rosenthal's plea of guilty to conscious avoidance of securities laws constituted a violation of the "Stern Honor Code"; he also opined that Mr. Rosenthal's conduct broke both the "student Honor Code and the University Code of Conduct." Additionally, according to Dean Cooley, it was the Stern School's contention that Mr. Rosenthal's guilty plea had been taken during the period between his completing the course requirements for his MBA, but prior to "the date for approval by the President and Board of Trustees" of his degree.

56.    Dean Cooley referred the Judiciary Committee's decision to the Stern School faculty, which he reported "decided by unanimous vote that Mr. Rosenthal 'is guilty of violating the Stern Honor Code and Code of Conduct'" and, despite the fact that the Board of Trustees had already granted an MBA degree to Mr. Rosenthal based on the recommendation of the Stern School faculty and President, purported to vote not to recommend Mr. Rosenthal to the NYU President and Board of Trustees for an MBA degree. Perhaps recognizing that a vote of the Stern School cannot change what has already transpired, Dean Cooley modified this recommendation to purport to determine that "Mr. Rosenthal shall not be conferred his degree of Master of Business Administration from the Stern School of Business." In his letter, also for the first time, Dean Cooley asserted that he had been aware of Mr. Rosenthal's case since December 2006. A copy of Dean Cooley's October 25, 2007 letter is attached hereto as Exhibit I.

57.    Dean Cooley's October 25, 2007 letter decision did not address the essential – indeed, the only – issue before the Judiciary Committee at the hearing:  whether Mr.

17

Rosenthal had caused harm to the University. Perhaps this was because the complainant faculty failed to present any evidence at all on that issue. It also did not state which specific codes the faculty decided that Mr. Rosenthal had violated; the Complaint alleged violations of the "Stern Honor Code and the University Code of Ethical Conduct," but Dean Cooley's letter referred to the Stern Honor Code and Code of Conduct, and the University Code of Conduct. Nor did the letter explain why, if Dean Cooley had been aware of Mr. Rosenthal's legal problems since December 2006, he had allowed Mr. Rosenthal to graduate with his classmates in January 2007.

58.    In a letter dated November 5, 2007, Mr. Rosenthal informed Dean Cooley that he intended to appeal Defendants' decision and requested a number of documents to assist him in preparing the appeal, including:

- the exact provisions of the Stern Honor Code and the University Code of Ethical Conduct that Mr. Rosenthal allegedly violated;

- the meeting minutes and records from the Faculty and MBA Judiciary Committee hearings about Mr. Rosenthal's case;

- the documents reviewed and/or relied upon by Dean Cooley or the Judiciary Committee; and

- the meeting minutes and records from the Faculty meeting at which the decision was made to confer Mr. Rosenthal his MBA degree, as set forth in Dean Cooley's January 31, 2007 letter to Mr. Rosenthal.

A copy of Mr. Rosenthal's November 5, 2007 letter is attached hereto as Exhibit J.

59.    By letter dated November 20, 2007, Dean Cooley refused to provide Mr.
Rosenthal with any of the materials he requested. A copy of Dean Cooley's November 20, 2007
letter is attached hereto as Exhibit K.

60.    By letter dated February 19, 2008, Dean Cooley denied Mr. Rosenthal's
appeal, summarily concluding that there was no material evidence or witness missing at the
hearing, and stating that Mr. Rosenthal was not affected by any material or prejudicial procedural
irregularity. Dean Cooley also wrote that Mr. Rosenthal was not an alumnus of the Stern School
at the time the Complaint was filed because, he alleged for the first time, and in the face of his
own January 31, 2007 letter to Mr. Rosenthal, the Faculty at its February 22, 2007 meeting had
not only voted to file the Complaint, but also then "determined not to certify you for the Stern
MBA." Dean Cooley boiled the entire proceeding down the conclusory argument that Mr.
Rosenthal's guilty plea was a *per se* violation of the Stern School Code of Conduct's
introductory imprecation that "[s]tudents are expected in all of their actions to reflect personal
honesty, integrity, and respect for others," while ignoring the fact that the Complaint did not
even allege a violation of the Code of Conduct. Moreover, Dean Cooley completely ignored Mr.
Rosenthal's argument that Stern School and University rules set forth an entirely different
standard – assessing whether a student's alleged acts caused harm to the University – when
considering disciplinary action against a student for conduct that had already been addressed by
City, State, or Federal law enforcement. A copy of Dean Cooley's February 19, 2008 letter is
attached hereto as Exhibit L.

61.    In the face of this arbitrary and unjustified treatment, and because NYU
and the Stern School's improper conduct has caused Mr. Rosenthal severe damages, and will

continue to do so in the future, Mr. Rosenthal has no choice but to vindicate his rights by and through the courts.

## COUNT ONE
### (Declaratory Judgment against NYU, the Stern School and Dean Cooley)

62.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63.    An actual controversy exists as to whether, as alleged by Mr. Rosenthal and as confirmed in correspondence to Mr. Rosenthal from Stern School Dean Cooley and in the official NYU transcript sent to Mr. Rosenthal following his graduation from the Stern School, the President had recommended to the NYU Board of Directors that Mr. Rosenthal be granted an MBA degree and the Board had duly granted such degree as of January 22, 2007, or whether, as claimed by Stern School Dean Cooley well after the fact, Mr. Rosenthal's name was not referred to the NYU President and Board of Trustees for the conferral of an MBA degree and no degree granted.

64.    NYU's own admissions and conduct conclusively demonstrate that the Board had granted the MBA degree on Mr. Rosenthal as of January 22, 2007.

65.    A declaratory judgment with respect to these questions will settle directly, expeditiously and finally the aforesaid controversies.

66.    By reason of the foregoing, Mr. Rosenthal is entitled to a declaration that the Stern School has conferred an MBA degree upon him, that it must provide him with a diploma indicating the same, and that it must ensure that his transcript reflects his MBA as it did on the transcript originally mailed to him on February 1, 2007.

67.    Mr. Rosenthal has no adequate remedy at law as to this claim.

COUNT TWO
(Breach Of Contract against NYU and the Stern School)

68.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69.     By virtue of the foregoing, a contract existed between Mr. Rosenthal on the one hand and NYU and the Stern School of Business on the other.

70.     Mr. Rosenthal fully and adequately performed all of his obligations under the aforesaid contract; he successfully attended and completed the 60 credit hours of courses required by the Stern School for an MBA degree, and paid to NYU all of the fees demanded by it.

71.     Based on Mr. Rosenthal's satisfactory completion of all requirements for an MBA degree, the Stern School faculty certified him to the President, who recommended to the NYU Board of Trustees that such degree be granted to Mr. Rosenthal, and the NYU Board duly granted the MBA degree to Mr. Rosenthal.

72.     Defendants wrongfully breached the terms of the contract and their obligations of good faith and fair dealing to Mr. Rosenthal by, among other things, refusing to provide Mr. Rosenthal with a diploma following his graduation from the Stern School and purporting to withdraw the conferral of the MBA degree on him and to change his official transcript to reflect that he did not earn the MBA degree actually conferred on him on January 22, 2007.

73.     As a result of defendants' breach of contract, Mr. Rosenthal has been damaged and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest.

## COUNT THREE
### (Conversion against NYU, the Stern School and Dean Cooley)

74.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 of this Complaint as though fully set forth herein.

75.     As set forth above, Mr. Rosenthal completed all of the requirements for the conferral of an MBA degree from the Stern School, including completing 60 credit hours of classes and paying more than $88,000 in tuition and fees to the Stern School, and was accordingly informed by the Stern School that his MBA degree had duly been conferred upon him and that a diploma certifying that degree would be sent to him.

76.     NYU and the Stern School have refused to provide Mr. Rosenthal with the diploma that belongs to him but have improperly retained possession of it.

77.     Defendants' refusal to turn over to Mr. Rosenthal the property that belongs to him amounts to conversion.

78.     As a direct result of NYU and the Stern School's conversion, Mr. Rosenthal has been injured and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest, and punitive damages in an amount to be determined at trial but not less than the sum of $5,000,000.

## COUNT FOUR
### (In the Alternative, For Breach of Contract against NYU and the Stern School)

79.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.     By virtue of the foregoing, a contract existed between Mr. Rosenthal on the one hand and NYU and the Stern School of Business on the other.

81.    Mr. Rosenthal fully and adequately performed all of his obligations under the aforesaid contract; he successfully attended and completed the 60 credit hours of courses required by the Stern School for an MBA degree, and paid to NYU all of the fees demanded by it.

82.    Defendants wrongfully breached the terms of the contract and their obligations of good faith and fair dealing to Mr. Rosenthal by, among other things, permitting a complaint to be filed against him for conduct that occurred off the University premises and having no connection to the University, and then failing to provide him with many of the essential due process and procedural rights to which he was entitled under University and Stern School rules, and then conducting a hearing at which no evidence regarding the only matter before the hearing was introduced, but a decision against Mr. Rosenthal was nonetheless reached.

83.    As a result of defendants' breach of contract, Mr. Rosenthal has been damaged and is entitled to damages in an amount to be determined at trial, but not less than $500,000, plus interest.

## COUNT FIVE
### (In the Alternative, Under New York CPLR § 7803(2) against all Defendants)

84.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85.    Defendants' conduct set forth above was undertaken without or in an excess of jurisdiction. As such, the entire proceedings undertaken by defendants is improper and must be dismissed as a nullity *nunc pro tunc*.

86.    By reason of such wrongful conduct, Mr. Rosenthal has been damaged and is entitled to an award directing that the Stern School conferred an MBA degree upon Mr.

Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma

reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's

transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal

or the Stern School subsequent to his January 22, 2007 degree conversion, and damages in an

amount to be determined at trial, but not less than $500,000, plus interest.

COUNT SIX

<u>(In the Alternative, Under New York CPLR § 7803(3) against all Defendants)</u>

87.    Plaintiff repeats and realleges the allegations contained in paragraphs 1

through 86 of this Complaint as though fully set forth herein.

88.    Defendants' conduct set forth above, and the decisions reached by

Defendants, were arbitrary and capricious and/or an abuse of discretion with respect to the

process utilized, the results reached, and the punishment meted out.  As such, the entire

proceeding undertaken by defendants is improper and must be dismissed as a nullity *nunc pro

tunc* or, alternatively, its outcome reversed as to Mr. Rosenthal so that he is awarded all the

rights of a graduated student, including without limitation, his diploma.

89.    By reason of such wrongful conduct, Mr. Rosenthal has been damaged

and is entitled to an award directing that the Stern School conferred an MBA degree upon Mr.

Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma

reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's

transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal

or the Stern School subsequent to his January 22, 2007 degree conversion, and damages in an

amount to be determined at trial, but not less than $500,000, plus interest.

COUNT SEVEN
(In the Alternative, Under New York CPLR § 7803(4) against all Defendants)

90.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91.    Defendants' conduct set forth above resulted in a determination and a punishment that was not, on the entire record, supported by substantial evidence. As such, the entire proceeding undertaken by Defendants is improper and must be dismissed as a nullity *nunc pro tunc* or, alternatively, its outcome reversed as to Mr. Rosenthal so that he is awarded all the rights of a graduated student, including without limitation, his diploma.

92.    By reason of such wrongful conduct, Mr. Rosenthal has been damaged and is entitled to an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree conversion, and damages in an amount to be determined at trial, but not less than $500,000, plus interest.

WHEREFORE, plaintiffs demand judgment against Defendants for the following relief:

(a)    On Count One of the Complaint, a declaration that the Stern School conferred a degree upon Mr. Rosenthal on January 22, 2007, an order that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and an order that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree;

25

(b)      On Count Two of the Complaint, damages against Defendants in an amount to be determined at trial, but not less than $500,000, plus interest;

(c)      On Count Three, damages against Defendants in an amount to be determined at trial, but not less than $88,000, plus interest;

(d)      On Count Four of the Complaint, damages against Defendants in an amount to be determined at trial, but than $500,000, plus interest;

(e)      On Count Five of the Complaint, an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree, and damages in an amount to be determined at trial, but not less than $500,000;

(f)      On Count Six of the Complaint, an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22, 2007 degree, and damages in an amount to be determined at trial, but not less than $500,000; and

(i)      On Count Seven of the Complaint, an award directing that the Stern School conferred an MBA degree upon Mr. Rosenthal on January 22, 2007, that the Stern School provide Mr. Rosenthal with a diploma reflecting that degree, and that NYU ensure that Mr. Rosenthal's official NYU Stern School's transcript reflects the foregoing, and is devoid of any

reference to any conduct by Mr. Rosenthal or the Stern School subsequent to his January 22,

2007 degree, and damages in an amount to be determined at trial, but not less than $500,000;

        (j)     Interest, costs, attorneys' fees to the extent provided by law and such other

and further relief as the Court may deem just and proper.

## JURY TRIAL

Plaintiffs demand a trial by jury.

Dated: New York, New York
      July 28, 2009

HERNSTADT ATLAS LLP

By: _____
Edward Hernstadt (EH 9569)
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
Attorneys for Plaintiff

27