3

October 1, 2007

Dean Thomas Cooley
Leonard Stern School of Business
44 W. 4th Street
New York, NY 10012

Dean Cooley:

I am writing in accordance with the Policies & Procedures of the Stern MBA Judiciary Committee. Lee Sproull, vice dean of faculty, on behalf of the faculty submitted a complaint to Dean Fraser that included the following motion: "That this faculty votes that the case of Ayal Rosenthal, having pleaded guilty to the intent to commit securities fraud, be remanded to the Stern School's Judiciary Committee and their procedures."

After thorough consideration of the complaint and writing a subsequent investigative report, I convened a Hearing Panel on September 13, 2007. The Judiciary Committee reviewed the complaint brought by the Stern faculty and heard the testimony of Mr. Rosenthal. Upon being read the complaint, Mr. Rosenthal pleaded not guilty to violating the Stern Honor Code and Code of Conduct. The Panel decided in a unanimous vote (7-0) that Mr. Rosenthal is guilty of violating the Stern Honor Code and Code of Conduct, namely that students are expected in all of their actions to reflect personal honesty, integrity and respect for others, and has recommended the following sanctions:

> Degree: Mr. Rosenthal shall not be conferred his degree of Master of Business Administration from the Stern School of Business but may transfer his completed coursework, credits and grades to another school that will accept them.

> Transcript: Immediately and prior to any transfer of coursework, credits and grades to another school, Mr. Rosenthal's grade for Professional Responsibility shall be changed from an A to Fail (F) and the credits for this class shall not be eligible for transfer, with a notation added to his transcript that states: "Not transferable due to judiciary hearing."

At the core of this complaint and Mr. Rosenthal's testimony at the hearing was the question of jurisdiction as it relates to the Judiciary Committee's ability to hear and rule on this matter. After inspecting the Committee's Policies & Procedures, the Hearing Panel concluded that this complaint falls within the Judiciary Committee's jurisdiction. The Policies & Procedures set forth that student discipline is delegated by the Faculty to the Judiciary Committee (Section 1). Therefore, the question then becomes whether or not the Judiciary Committee has authority to hear and act on this complaint, despite and independent of any factual errors that may or may not be contained within the complaint.

As stated under Section 2, "The Committee has jurisdiction over disciplinary matters involving matriculated and continuing MBA students (hereinafter MBA Students) in the full-time or part-time MBA Programs (hereinafter MBA Programs) of the Stern School of Business." Further, "This jurisdiction may include, without limitation, the following: iii. Violations of federal, state or local laws." It is the Judiciary Committee's decision that Mr. Rosenthal was a student when he violated the Honor Code and Code of Conduct, when criminal proceedings took place and he pleaded guilty to conscious avoidance of securities laws, and when the complaint was submitted by Lee Sproull. Mr. Rosenthal's argument is that he was conferred his degree as of January 22, 2007, therefore he was not a student nor a member of the Stern community at the time of his guilty plea within the U.S. District Court, Eastern District of New York. The Judiciary Committee interpreted Dean Cooley's January 31, 2007, letter to state that on January 22, 2007, the Faculty recommended to the President and Board of Trustees that his degree be



conferred. Until the President and Board of Trustees actually confer the degree, Mr. Rosenthal remains a matriculated and continuing student of New York University and definitely a member of its community. Mr. Rosenthal also admitted at the Hearing Panel to breaking the law while he was a student at the Stern School of Business – therefore further placing himself under the Judiciary Committee's jurisdiction per Section 2, subsection (iii).

Since student discipline is delegated by the Faculty to the Judiciary Committee, the question of due process that Mr. Rosenthal argues does not fall within the NYU Student Disciplinary Procedures and/or the Statement of Policy on Student Conduct at New York University. Due process is instead covered by the Judiciary Committee's Policies & Procedures. Under those, Mr. Rosenthal was fully afforded his due process. Section 4, subsection (a) states that the complaint will be sent to the Dean of Students, which occurred. According to Section 4, subsection (d), the Chair will then notify the Accused, which occurred immediately upon conclusion that there was sufficient evidence to suspect a Violation. In both of these actions, there is not a mandated timeframe or set of deadlines.

The Judiciary Committee cannot speculate if Mr. Rosenthal's actions have harmed or will harm the reputation of New York University or the Stern School of Business as set forth in the complaint. However, Mr. Rosenthal has violated the Honor Code and Code of Conduct based on his own admission at the Hearing Panel that he broke the law while a student and through his guilty plea within the U.S. District Court for conscious avoidance of securities law. For this, Mr. Rosenthal is subject to the sanctions recommended by this body.

I am attaching 10 sets of documents to support our decision, including:

1. Minutes of the Hearing
2. A copy of the MBA Judiciary Committee's Policies & Procedures
3. Lee Sproull's original complaint
4. Mr. Rosenthal's testimony before the Hearing Panel
5. May 20, 2007, Investigative Report
6. Court room transcript from February 8, 2007
7. January 31, 2007, letter from Dean Cooley to Mr. Rosenthal
8. February 1, 2007, letter from David Gordan to Mr. Rosenthal
9. Mr. Rosenthal's NYU Stern transcript
10. May 24, 2007, letter from Mr. Rosenthal to Dean Fraser

I would be happy to discuss this with you further or to answer any questions which you may have. You can reach me by email at mel.ochoa@stern.nyu.edu or by phone at (510) 219-5515.

Sincerely,

*Mel M Ochoa*

Mel Ochoa
Chair, MBA Judiciary Committee


Enclosures (10)

cc: Dean Fraser

```
 1   UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK
 2
 3   ------------------------------X
 4   UNITED STATES OF AMERICA,        :  07 CR 069
 5                                    :
 6        -against-                   :  United States Courthouse
                                         Brooklyn, New York
 7                                    :
 8   ZVI ROSENTHAL, et al.,           :  February 8, 2007
                                         Defendants.
 9                                    :  11:00 o'clock a.m.
10   ------------------------------X
11
12              TRANSCRIPT OF PLEADING
13              BEFORE THE HONORABLE JOHN GLEESON
                UNITED STATES DISTRICT JUDGE
14
15   APPEARANCES:
16
17   For the Government:   ROSLYNN R. MAUSKOPF
18                         United States Attorney
                           BY: PAUL WEINSTEIN
19                         SEAN CASEY
                           Assistant United States Attorneys
20                         One Pierrepont Plaza
                           Brooklyn, New York
21
22   For the Defendants:   PETER J. DRISCOLL, ESQ.
                           Attorney for Zvi Rosenthal
23
24                         PAUL SCHECHTMAN, ESQ.
                           GLEN KOPP, ESQ.
25                         Attorneys for Amir Rosenthal
```

GR OCR CM CRR CSR

```
 1                         GERALD LEFCOURT, ESQ.
                           RENATO STABILE, ESQ.
 2                         Attorneys for David Heyman
 3                         NINA M. BEATTIE, ESQ.
 4                         RACHEL DOFT, ESQ.
                           Attorneys for Ayal Rosenthal
 5
 6   Court Reporter:       Gene Rudolph
                           225 Cadman Plaza East
 7                         Brooklyn, New York
                           (718) 613-2538
 8
 9   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
10
11
12
13              THE CLERK: United States versus Rosenthal, et al.
14   Counsel, please state your appearances.
15              MR. CASEY: Sean Casey and Paul Weinstein for the
16   United States.
17              Good morning, Your Honor.
18              MR. DRISCOLL: Peter Driscoll for Zvi Rosenthal.
19              Good morning.
20              THE COURT: Good morning.
21              MR. SCHECHTMAN: Paul Schechtman. With me is Glen
22   Kopp, for Amir Rosenthal.
23              THE COURT: Nice to see you.
24              MR. LEFCOURT: Gerald Lefcourt. With me is Renato
25   Stabile for David Heyman.
```

GR OCR CM CRR CSR

```
 1              THE COURT: Nice to see you.
 2              MS. BEATTIE: Nina Beattie. With me is Rachel Doft.
 3              THE COURT: Good morning to both of you.
 4              Your name is Nina Beattie?
 5              MS. BEATTIE: Yes.
 6              THE COURT: Is that the correct pronunciation?
 7              MS. BEATTIE: Or Beattie.
 8              THE COURT: Beattie. Okay.
 9              I have changed my mind. Let's do one at a time. It
10   seems very crowded.
11              MR. SCHECHTMAN: If we do, I think it might be
12   easiest if we go first.
13              THE COURT: Fine with me.
14              MR. CASEY: Fine with the government.
15              THE COURT: Let's have -- you've Amir, correct?
16              MR. SCHECHTMAN: Correct, Your Honor.
17              THE COURT: Let's have Amir Rosenthal and his
18   counsel here with the prosecutors. If everyone else could
19   just take a seat at the table. That's a sensible way to
20   proceed.
21              I read what you sent to me. I can't recall whether
22   it is one or more of the defendants had his case assigned to
23   me not at random but related, is that correct?
24              MR. WEINSTEIN: Yes.
25              The first case was 069, with the three defendants.
```

GR OCR CM CRR CSR

```
 1   That was assigned by random. The second case, which is --
 2              MR. CASEY: 98.
 3              THE COURT: That's Ms. Beattie's client.
 4              MR. WEINSTEIN: Is related.
 5              THE COURT: We will deal with that in a minute.
 6              If I have this right, what's happening today is, by
 7   agreement, a waiver of indictment and a plea of guilty to this
 8   one-count information, is that correct, Mr. Schechtman?
 9              MR. SCHECHTMAN: Correct, Your Honor.
10              THE COURT: I also understand from Ilene that this
11   is the first appearance before a judicial officer and you've
12   already put your heads together about release on conditions
13   and there is an agreement on that?
14              MR. CASEY: We have, Your Honor.
15              MR. SCHECHTMAN: Yes.
16              THE COURT: Let's do the plea first.
17              MR. SCHECHTMAN: Judge, do you have a copy of the
18   plea agreement?
19              THE COURT: I must. I have a lot of paper here.
20              MR. SCHECHTMAN: We can just hand up a signed copy.
21              MR. CASEY: I am also going to hand up the
22   information, the signed information by the US Attorney.
23              THE COURT: Mark that as Exhibit 1, the plea
24   agreement.
25              MR. SCHECHTMAN: We have the signed waiver, if you
```

GR OCR CM CRR CSR     Amir Rosenthal pleading

```
 1   want that as well.
 2              THE COURT: Hang on to that for one second, please,
 3   Mr. Schechtman.
 4              Okay. Would you
```

licensed CPA regarding a contemplated 25 merger between two publicly trade companies. My conduct GR OCR CM CRR CSR David Heyman pleading 62 1 occurred in 2004 and 2005. 2 I am deeply sorry for my conduct. 3 THE COURT: In your view, is that a sufficient 4 factual basis for the plea? 5 MR. CASEY: Yes. The government is satisfied with 6 that. 7 THE COURT: Okay. I find Mr. Heyman is acting 8 knowingly and voluntarily and intelligently, he understands 9 the rights he is waiving and the consequences he faces. I 10 find there is a factual basis for his plea to this 371 count, 11 the only count against him. I accept the plea. 12 What's our date for sentence? 13 THE CLERK: May 18th, at 2:00 pm. 14 THE COURT: I have before me, I presume, by 15 agreement, a release order. It looks like an unsecured PRB 16 with a travel restriction to the United States, surrender of 17 any passports, and reporting to Pretrial as directed. 18 Is that correct? 19 MR. CASEY: We agree it would be secured by a 20 $250,000 -- that it was secured by the defendant's security on 21 $250,000 bond. 22 THE COURT: It's a $250,000 bond. 23 MR. CASEY: Yes. Unsecured bond in the amount of 24 $250,000. 25 THE COURT: Otherwise, I've got it right? GR OCR CM CRR CSR David Heyman pleading 63 1 MR. CASEY: I believe so, Your Honor. As directed, 2 and the passports will be surrendered to Pretrial, if there 3 are passports, which I believe there are. 4 THE COURT: Okay. So stipulated? 5 MR. LEFCOURT: Yes, Your Honor. 6 THE COURT: Here is the bond for your client to sign 7 live. 8 MR. LEFCOURT: It does say Ayal. 9 MR. CASEY: I believe this is Ayal's bond. 10 THE COURT: No wonder it didn't have an amount in 11 it. I knew that. 12 Here. Try this one out. 13 MR. LEFCOURT: Your Honor, Your Honor stated on the 14 record, and it was recommended by Pretrial, that he be 15 confined to the continental United States. This says Southern 16 and Eastern District of New York and New Jersey. 17 The reason why he would have to travel more, Your 18 Honor, is his significant -- 19 THE COURT: Is there agreement on this? 20 MR. CASEY: We have no objection. 21 MR. LEFCOURT: Okay. 22 THE COURT: Let me change it. 23 Okay. I will put it on here, must report to 24 Pretrial as directed. 25 MR. LEFCOURT: Thank you, Your Honor. GR OCR CM CRR CSR David Heyman pleading 64 1 THE COURT: I have to sign it. 2 I think that's it. 3 MR. LEFCOURT: Yes, Your Honor. 4 THE COURT: Have a good day. 5 THE DEFENDANT: Thank you, Your Honor. 6 MR. LEFCOURT: Thank you. 7 (Continued on next page.) 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 GR OCR CM CRR CSR Ayal Rosenthal pleading 65 1 THE COURT: Okay. Welcome back. 2 Ms. Beattie, I understand your client wants to waive 3 indictment and plead guilty? Correct? 4 MS. BEATTIE: That is correct, Your Honor. 5 THE COURT: All right. Ilene, would you please 6 swear the defendant? 7 THE CLERK: Yes, Your Honor. 8 Please raise your right hand. 9 (The defendant duly sworn/affirmed by clerk.) 10 THE CLERK: Please state and spell your full name. 11 THE DEFENDANT: Ayal Ross, A Y A L, 12 R O S E N T H A L. 13 THE COURT: How old are you? 14 THE DEFENDANT: Twenty-six. 15 THE COURT: How far did you go in school? 16 THE DEFENDANT: I just finished my MBA. 17 THE COURT: Have you been able to communicate 18 effectively with your lawyers? 19 THE DEFENDANT: Yes. 20 THE COURT: Are you satisfied so far with the 21 representation they have provided to you? 22 THE DEFENDANT: Yes. 23 THE COURT: Is your mind clear right now? 24 THE DEFENDANT: Yes, it is. 25 THE COURT: Do you understand what's happening and GR OCR CM CRR CSR Ayal Rosenthal pleading 66 1 what these proceedings are all about? 2 THE DEFENDANT: Yes, I do. 3 THE COURT: Have you had any alcohol or medication 4 or drugs in the last 24 hours? 5 THE DEFENDANT: No, Your Honor. 6 THE COURT: Is there any reason to doubt your 7 client's competence to waive indictment or plead guilty? 8 MS. BEATTIE: No, Your Honor. 9 THE COURT: Have you been over with him the various 10 rights

he'd be waiving and the various consequences he will 11 face if he pleads guilty to this charge? 12 MS. BEATTIE: I have, Your Honor. 13 THE COURT: You are confident that he understands 14 all those things? 15 MS. BEATTIE: I am, Your Honor. 16 THE COURT: Mr. Rosenthal, the charge before you is 17 in an information, not an indictment. It is signed by the 18 acting US Attorney, not a grand jury foreperson, which means 19 unless you waive a significant constitutional right that you 20 possess, you don't need to enter any kind of plea to this 21 charge, guilty or not guilty. 22 Do you understand what I am talking about? 23 THE DEFENDANT: Yes, I do. 24 THE COURT: The right is the right not to face an 25 offense of this magnitude, with this sort of punishment, GR OCR CM CRR CSR Ayal Rosenthal pleading 67 1 except if a grand jury returns an indictment. A grand jury is 2 a room with 16 to 23 people, drawn at random from the 3 community, before whom the government presents information, 4 not even evidence, just information. But the rules and the 5 Constitution require that the government persuade at least 12 6 of those people, a majority, majority that has to be 12, that 7 there is probable cause to believe the crime in this 8 instrument, this conspiracy to engage in insider trading, was 9 committed and that you committed it. 10 If the government fails to persuade at least 12 of 11 the grand jurors of those things, you are not going to be 12 charged, unless you waive the right. 13 Do you understand? 14 THE DEFENDANT: Yes, sir. 15 THE COURT: It is rare that a prosecutor, a federal 16 prosecutor, asks a grand jury to indict and they say no. But 17 it is not unheard of. You might be the beneficiary of such an 18 action by a grand jury. 19 Do you understand that, sir? 20 THE DEFENDANT: Yes, sir. 21 THE COURT: Do you still want to waive your right to 22 require the government to proceed in that way? 23 THE DEFENDANT: I do. 24 THE COURT: Okay. Are you being pressured in any 25 way to waive that right? GR OCR CM CRR CSR Ayal Rosenthal pleading 68 1 THE DEFENDANT: No, sir. 2 THE COURT: You are doing it voluntarily after 3 consulting with your lawyers about your options in this case? 4 THE DEFENDANT: Yes, Your Honor. 5 THE COURT: Apart from the promises made to you in 6 your plea agreement, which I have marked as plea agreement 7 four, are there any promises out there I don't know about that 8 have been made to you to get you to waive your right to grand 9 jury indictment? 10 MS. BEATTIE: Your Honor, I would like to put some 11 clarifications of the plea agreement on the record. I don't 12 know if this is the appropriate time. 13 THE COURT: It really depends what they are. 14 MS. BEATTIE: Okay. It is because of the global 15 nature of this plea, I think it is important just to be clear 16 about certain facts. 17 THE COURT: Okay. 18 MS. BEATTIE: These are not inconsistent with the 19 plea agreement but I just would like to put them on the 20 record. 21 THE COURT: Okay. 22 MS. BEATTIE: As the government has said, it has 23 given its guideline estimate in this case in good faith. 24 Assuming there is no new information, it has stated that it 25 will stand by that guideline estimate and it will stand by it GR OCR CM CRR CSR Ayal Rosenthal pleading 69 1 in writing, both to Probation Department and to this Court. 2 It has also said that it does not -- it believes 3 that a noncustodial sentence is appropriate in this case. 4 Obviously, that decision will ultimately be made by this 5 Court. 6 The government has also said that it has no 7 intention of suggesting or proving that there is any 8 applicable relevant conduct and that it could not prove any 9 under any standard. I notice the loss stated in the plea 10 agreement is zero. 11 In addition, and I think this is not inconsistent 12 with the plea agreement, if the Court determines that 13 probation is appropriate in this case, and Probation agrees 14 that it is appropriate, the government has stated that it will 15 not object to Mr. Rosenthal serving his probation outside of 16 the United States. 17 THE COURT: Okay. 18 MS. BEATTIE: That's it. 19 THE COURT: Is that all accurate? 20 MR. WEINSTEIN: Well, let me -- let me say, I -- the 21 agreement is the

agreement. An interpretation of the 22 agreement, and a valid one, would be that the government is 23 acting in good faith in giving that guideline estimate and 24 that with the listing of the accounts in the coverage 25 paragraph the government would be fairly representing that it GR OCR CM CRR CSR Ayal Rosenthal pleading 70 1 is not trying to prove or won't seek to prove, and doesn't 2 believe it can prove, relevant conduct emanating from those 3 accounts that will affect the guideline range. I think that 4 that's what counsel is saying. 5 I don't think counsel is saying anything that's not 6 in the plea agreement. 7 I think it's also implicit, and I had hoped not to 8 get into this and burden the record with it, but given that I 9 think that I am called on to do so, that when the government 10 gives an estimate of zero to six months and says that it will 11 take no position where within the guidelines the sentence 12 should fall, that that is fairly interpreted as the government 13 not seeking a custodial sentence. Because the government 14 would not object, and would take no position, if the Court 15 under the government's view of the guidelines gave probation 16 in this case. 17 So that being said, that's the government's 18 position. 19 On where the defendant would serve his supervised 20 release, in discussing what the government's position has been 21 in like cases, and based on what the government's 22 understanding of this case is, without seeing a presentence 23 report, the conversations with counsel were I would see no 24 reason for the government to object under those circumstances. 25 That's what the government said. GR OCR CM CRR CSR Ayal Rosenthal pleading 71 1 It is not in the plea agreement. So I can't say 2 that it is a promise. But that is the government's opinion. 3 And if counsel would like the government to put that on the 4 record I just did. 5 THE COURT: Does this all sound a little nuanced to 6 you, sir? 7 THE DEFENDANT: It does, Your Honor. 8 THE COURT: Join the club. 9 I'll tell you, with all respect to counsel, what's 10 important in all that. It seems like you've got a fairly 11 certain road ahead with regard to the accounts listed here. I 12 think it is obvious to you, as it is to me, that if there is 13 other -- this discussion of relevant conduct could be 14 confusing. If there is other fraud out there that are not on 15 anybody's radar screen yet, it doesn't strike me that this 16 agreement gives you a pass for that. And given the breadth of 17 that relevant conduct guideline, it is entirely plausible that 18 if there is other fraud out there, the government has no idea 19 about, and then they find out about it, it could well wind up 20 in here. 21 But that's really not what is at the heart of the 22 understanding here about your guideline computation. 23 What is at the heart of it is based on what the 24 government knows about the insider trading in these various 25 accounts, and it seems to me like it knows a lot, you are GR OCR CM CRR CSR Ayal Rosenthal pleading 72 1 going to wind up with the zero to six-month range once we get 2 that range figured out. 3 Do you understand? 4 THE DEFENDANT: Yes, Your Honor. 5 THE COURT: Does anybody disagree? 6 MR. WEINSTEIN: No, Your Honor. 7 MS. BEATTIE: No. 8 THE COURT: Second, there is a way to have an agreed 9 upon sentence of probation, a way that would allow you to take 10 your plea back if that sentence weren't imposed. But this 11 agreement doesn't choose that way. 12 What your lawyer is telling me, and what 13 Mr. Weinstein confirms, in essence, by his remarks, is that 14 you and she hope that there is going to be a non-incarceratory 15 sentence, you don't go to jail, that I will be authorized even 16 within this guideline structure to do that. But that 17 determination is going to be up to me. You are not going to 18 get your plea back if I decide you ought to go to jail. 19 Do you understand what I am telling you? 20 THE DEFENDANT: I do, Your Honor. 21 THE COURT: Where was I? 22 MS. BEATTIE: You were discussing his waiver of 23 right to indictment. 24 MR. WEINSTEIN: It was, are there any other promises 25 that induced the waiver of the right to indictment. GR OCR CM CRR CSR Ayal Rosenthal pleading 73 1 THE COURT: Yes. 2 Apart from the promises made to you in writing, and 3 I

understand the understandings that have been placed on the 4 record here, but apart from the promises that have been made 5 to you or understandings that have been expressed here, is 6 there anything out there that has been said to you, any 7 understandings or representations or promises that I don't 8 know about that have been made to you, to get you to waive 9 your right to grand jury indictment? 10 THE DEFENDANT: No, sir. 11 THE COURT: Are you being pressured by your -- not 12 your codefendants. They are in a separate instrument. Are 13 you being pressured by your brother or your father or 14 Mr. Heyman to waive indictment or plead guilty? 15 THE DEFENDANT: No. 16 THE COURT: Is there any reason I shouldn't accept 17 the waiver, counsel? 18 MS. BEATTIE: No, Your Honor. 19 THE COURT: I find that Mr. Rosenthal is acting 20 knowingly and voluntarily and intelligently and he understands 21 the right he is waiving and there is no reason not to accept 22 his waiver. 23 Is there a written waiver form around here 24 somewhere? 25 MR. CASEY: There is. GR OCR CM CRR CSR Ayal Rosenthal pleading 74 1 MS. BEATTIE: Here it is. 2 THE COURT: Is that your signature on it, sir? 3 THE DEFENDANT: Yes, it is. 4 THE COURT: Would you hand it up, please, counsel? 5 I accept the waiver orally and in writing. 6 All that means, sir, is I am accepting this 7 information as the manner in which you are going to be charged 8 in this case. You still have a right to plead not guilty. 9 Do you understand that? 10 THE DEFENDANT: Yes, I do. 11 THE COURT: If you plead not guilty, we will go down 12 a different road than the one we'd go down if you plead 13 guilty. The former road would mean scheduling a speedy public 14 trial to a jury of this charge against you. 15 Do you understand what I have said so far? 16 THE DEFENDANT: Yes, sir. 17 THE COURT: The jury would decide whether the 18 government proved your guilt beyond a reasonable doubt, 19 because that's what a trial is all about. 20 Understood? 21 THE DEFENDANT: Yes. 22 THE COURT: You wouldn't have to prove anything. 23 You would be presumed innocent. The presumption of innocence 24 alone is enough to require the jury to find you not guilty 25 unless the government proves you guilty beyond a reasonable GR OCR CM CRR CSR Ayal Rosenthal pleading 75 1 doubt to the unanimous satisfaction of all the 12 jurors at 2 trial. 3 Understood? 4 THE DEFENDANT: Yes. 5 THE COURT: At the trial, you would be represented 6 by counsel. You'd be seated at that table over there. The 7 witnesses against you would testify from this witness stand. 8 Your lawyer could cross-examine the witnesses in your behalf, 9 object to the government's evidence, offer evidence in defense 10 of the charge. Your lawyer would have the ability to subpoena 11 witnesses, basically serve court orders on witnesses to 12 require them to come to court to testify in your behalf. 13 Understood? 14 THE DEFENDANT: Yes, Your Honor. 15 THE COURT: You'd have the right to get on the 16 witness stand yourself and testify in your own defense. 17 The flipside of that is an absolute right not to 18 testify which, if exercised, can't be held against you and 19 would not be held against you by the jury. I would make sure 20 of that. They would draw no inference against you based on 21 your silence because they would understand, and if they didn't 22 understand they wouldn't on your jury, that you have the 23 fundamental right to remain silent at your own trial. 24 Do you understand what I have said? 25 THE DEFENDANT: Yes, I do. GR OCR CM CRR CSR Ayal Rosenthal pleading 76 1 THE COURT: If you plead guilty, and I accept your 2 plea, there will be no trial. We will go down a different 3 road, as I mentioned a minute ago. There will be no trial at 4 all. I will find you guilty based on your own admission here 5 today. You won't have a right to appeal from my finding that 6 you are guilty of this charge. 7 Understood? 8 THE DEFENDANT: Yes. 9 THE COURT: Also, pleading guilty requires you to 10 admit your guilt under oath. In essence, you substitute for a 11 trial your own sworn statements that you are guilty, and that 12 means you have to give up your right to remain

silent in a few 13 minutes when we get to that part of the proceeding. 14 Do you understand that, sir? 15 THE DEFENDANT: Yes, sir. 16 THE COURT: Do you want to give up your right to 17 trial and all these other rights that you would have at trial 18 by pleading guilty? 19 THE DEFENDANT: I do. 20 THE COURT: This plea agreement bearing your name 21 has been marked Court Exhibit 4. Have you read it? 22 THE DEFENDANT: I have. 23 THE COURT: Is this your signature on page seven? 24 Show that to him, please, Ilene. 25 THE DEFENDANT: Yes, sir, it is. GR OCR CM CRR CSR Ayal Rosenthal pleading 77 1 THE COURT: Have you had enough time to go over the 2 agreement with your lawyer? 3 THE DEFENDANT: Yes, sir, I have. 4 THE COURT: Okay. Counsel do you feel the same way? 5 MS. BEATTIE: Yes, Your Honor. 6 THE COURT: If you have any questions at all about 7 any part of this process, Mr. Rosenthal, please raise them, 8 and in particular if you have questions about this plea 9 agreement now would be the best time to raise them. I know 10 something about these agreements and I am more than happy to 11 answer any question you have. 12 Do you understand that? 13 THE DEFENDANT: Yes, Your Honor. 14 THE COURT: Even if your questions don't happen to 15 bear on the parts of the agreement I refer to now. 16 Okay? 17 THE DEFENDANT: Yes. 18 THE COURT: For example, you have a maximum prison 19 term of five years if you plead guilty to this crime. 20 Understood? 21 THE DEFENDANT: Yes, sir. 22 THE COURT: You've got a maximum supervised release 23 term of three years. 24 Do you understand that? 25 THE DEFENDANT: Yes, Your Honor. GR OCR CM CRR CSR Ayal Rosenthal pleading 78 1 THE COURT: Supervised release is the state a 2 federal releasee is in after a prison term is served but 3 before they are done with the case. They are under court 4 supervision. They have to report to a probation officer. 5 They have to refrain from committing any other crimes of any 6 type, federal or state, or foreign even. Those are just a 7 couple of the conditions of supervision, which if violated by 8 the person on supervision, in this case you, can land the 9 person back in jail for up to two years without credit for the 10 time you've been on release. 11 Understood? 12 THE DEFENDANT: Yes, sir. 13 THE COURT: It sounds like there is a prospect here, 14 maybe even a hope, that you would serve a period of 15 supervision, either supervised release or probation, somewhere 16 else. 17 Where else? 18 THE DEFENDANT: Either Israel or Europe. 19 THE COURT: Recognize the special pitfalls that 20 attend being on supervision outside the United States because 21 we don't have probation officers there. It wouldn't seem like 22 you were under supervision because you wouldn't be reporting 23 to an officer, but you would be. So if you were to commit 24 another crime -- and you'd be surprised how frequently this 25 happens -- if you were to commit another crime, even though it GR OCR CM CRR CSR Ayal Rosenthal pleading 79 1 didn't seem to you like you were under supervision, you could 2 wind up back before me, either on a violation of your 3 probation or a violation of your supervision release term, and 4 you'd face the prospect of going to jail. 5 Understood? 6 THE DEFENDANT: Yes, Your Honor. 7 THE COURT: If it were a supervised release 8 violation, you'd face the prospect of up to two years in jail. 9 Understood? 10 THE DEFENDANT: Yes. 11 THE COURT: Financial penalties are prospective; 12 that is, they are possibilities when you get sentenced in a 13 few months. They include a fine of up to the greater of 14 $250,000 or twice the gross gain or loss resulting from your 15 offense. 16 Understood? 17 THE DEFENDANT: Yes, I do. 18 THE COURT: Restitution is also a possibility. 19 That's a Court order by which you'd be required to make 20 payments, to make whole, compensate any victim or victims of 21 your crime. 22 Understood? 23 THE DEFENDANT: Yes, sir. 24 THE COURT: Finally, a hundred-dollar special 25 assessment is mandatory; no matter what else happens, you will GR OCR CM CRR CSR Ayal Rosenthal pleading 80 1 be required to do that.

NYU000050

2 Understood? 3 THE DEFENDANT: Yes, Your Honor. 4 THE COURT: You've already heard some discussion 5 here about your guideline range and the joint estimate that it 6 is zero to six months. That's all well and good, and I have 7 no reason to doubt it. But the fact is, I am the one who will 8 determine what your guideline range is. I won't do that until 9 a few months go by and a presentence investigation is 10 conducted and the report is written and I get input from your 11 lawyer and the government about that report. Only after all 12 that happens will I apply these labyrinthian guidelines to the 13 facts in your case and come up with an advisory sentencing 14 range. 15 Understood? 16 THE DEFENDANT: Yes, sir. 17 THE COURT: If you are not happy with the one I come 18 up with, if it is not zero to six months, for example, that's 19 not going to be a basis on which you will be able to withdraw 20 your plea of guilty. 21 Understood? 22 THE DEFENDANT: Yes, Your Honor. 23 THE COURT: In fact, even if you get cold feet about 24 having pled guilty before then, even if it happens later today 25 and you decide you want to back out, you don't have an GR OCR CM CRR CSR Ayal Rosenthal pleading 81 1 automatic right to withdraw your plea of guilty. You can make 2 a motion, but unless there is some just reason that in my 3 opinion warrants the withdrawal of a plea of guilty entered 4 here in open court on the record under oath, I am simply not 5 going to let you do it. 6 Do you understand? 7 THE DEFENDANT: I do. 8 THE COURT: You have given up your right to appeal 9 or challenge in any other way any sentence imposed upon you in 10 this case unless you get more than six months in jail. 11 Do you understand that? 12 THE DEFENDANT: Yes, sir. 13 THE COURT: You have given up your right to assert 14 that the crime occurred in some other district besides this 15 one; that is, you have waived venue. 16 Do you understand that, sir? 17 THE DEFENDANT: I do, Your Honor. 18 THE COURT: There is this package plea deal 19 agreement by which it is possible the government might seek to 20 withdraw its assent to your plea agreement if there is a 21 problem with the guilty pleas of your brother, your father and 22 David Heyman. 23 Do you understand that, sir? 24 THE DEFENDANT: Yes, sir. 25 THE COURT: Is there any other part of this GR OCR CM CRR CSR Ayal Rosenthal pleading 82 1 agreement that warrants special attention? 2 MR. WEINSTEIN: No, Your Honor. 3 I will mention at this time that my understanding is 4 that a part of the allocution is going to include conscious 5 avoidance. So it is going to be a little bit of a different 6 allocution than the other defendants. 7 THE COURT: Okay. Do you have any questions about 8 any part of what is happening here, the plea agreement or 9 otherwise, sir? 10 THE DEFENDANT: No, Your Honor. 11 THE COURT: The government, just so the record 12 reflects your understanding of the charge, the government 13 would have to prove beyond a reasonable doubt four things if 14 you went to trial: The existence of this conspiracy to engage 15 in insider trading; your membership in it, your knowing and 16 intentional membership in it; the commission of one of the 17 charged overt acts by a member of the conspiracy; and the 18 furtherance of the conspiracy by the overt act that is proved. 19 They would have to prove all those things beyond a reasonable 20 doubt. 21 Understood? 22 THE DEFENDANT: Yes, sir. 23 THE COURT: Is there any reason I shouldn't allow 24 your client to plead guilty? 25 MS. BEATTIE: No, Your Honor. GR OCR CM CRR CSR Ayal Rosenthal pleading 83 1 THE COURT: How do you plead to this charge, sir, 2 guilty or not guilty? 3 THE DEFENDANT: Guilty. 4 THE COURT: Is anybody pressuring you to get you to 5 plead guilty? 6 THE DEFENDANT: No, Your Honor. 7 THE COURT: Are you making this plea voluntarily and 8 of your own free will after consulting with your lawyer about 9 your options. 10 THE DEFENDANT: Yes, Your Honor. 11 THE COURT: Apart from the promises made to you in 12 writing in this agreement, and these other understandings that 13 have been expressed here today, are there any promises or 14

representations that I don't know about that have been made to 15 you to get you to plead guilty? 16 THE DEFENDANT: No, Your Honor. 17 THE COURT: Has anybody promised you what your 18 sentence will be? 19 THE DEFENDANT: No, Your Honor. 20 THE COURT: Tell me briefly why you are guilty. 21 THE DEFENDANT: Your Honor, do you mind if I read? 22 THE COURT: I don't. 23 THE DEFENDANT: Your Honor -- 24 THE COURT: Just read slowly. 25 THE DEFENDANT: Your Honor, in or about May 2005, in GR OCR CM CRR CSR Ayal Rosenthal pleading 84 1 a discussion about my work, I agreed to tell my brother Amir 2 Rosenthal the names of two companies that were involved in a 3 confidential acquisition that I was working on. I knew that 4 my brother Amir was an active trader of securities. I 5 consciously turned a blind eye to what would have otherwise 6 been obvious to me; that my brother was going to trade, in 7 violation of United States securities laws on information that 8 I provided to him. 9 I accept responsibility for my actions and am very 10 sorry for what I did. 11 THE COURT: Okay. Is that sufficient in the 12 government's view? 13 MR. WEINSTEIN: Yes, Your Honor. 14 THE COURT: Can you join a conspiracy, can you 15 consciously avoid -- 16 MS. BEATTIE: You can, Your Honor. There is a 17 Second Circuit case on point. If you -- 18 THE COURT: Sboboda? 19 MS. BEATTIE: Yes, Your Honor. 20 THE COURT: This is a great book. 21 MS. BEATTIE: That was quick. I am impressed. 22 THE COURT: I find that the defendant is acting 23 knowingly and voluntarily, he understands the rights he's 24 waiving and the consequences he faces. I find thee is a 25 factual basis for his plea of guilty. So I accept the plea. GR OCR CM CRR CSR Ayal Rosenthal pleading 85 1 May 18th, at 2:00 o'clock, is our date for sentence. 2 What's the agreed upon set of release conditions? 3 MS. BEATTIE: ROR. 4 THE COURT: Okay. It looks like there was a -- 5 someone filled in -- I don't think it was me, although I did 6 fill in an amount; I have since crossed that out -- a 7 geographic restriction to the United States? 8 MR. WEINSTEIN: Yes. 9 THE COURT: Correct? 10 MS. BEATTIE: That's fine. 11 THE DEFENDANT: Yes. 12 THE COURT: Surrender of any passports today to 13 Pretrial. Correct? 14 MS. BEATTIE: Can we do it later? 15 MR. CASEY: Pick a date. 16 MS. BEATTIE: How about within the next week? 17 MR. WEINSTEIN: Fine. 18 THE COURT: Okay. 19 By February 15th. 20 And reporting to Pretrial as directed. Agreed? 21 MR. WEINSTEIN: Yes. 22 MR. CASEY: Yes. 23 MS. BEATTIE: Yes, Your Honor. 24 THE COURT: Could you show your client where to sign 25 on this form, please? GR OCR CM CRR CSR Ayal Rosenthal pleading 86 1 MS. BEATTIE: Yes, Your Honor. 2 THE COURT: Here are the Pretrial Services reports. 3 These are contraband, aren't they? You are not allowed to 4 keep them after the bail hearing. 5 Thank you. 6 Anything further? 7 MR. WEINSTEIN: No, Your Honor. 8 THE COURT: Anything further? 9 MS. BEATTIE: No, Your Honor. 10 Thank you. Okay. 11 THE COURT: Thank you. 12 MR. CASEY: Thank you, Your Honor. 13 (Matter concludes.) 14 15 16 17 18 19 20 21 22 23 24 25 GR OCR CM CRR CSR

MBA Judiciary Committee
Hearing Minutes
Case: Ayal Rosenthal
Submitted By: Mel Ochoa, October 1, 2007

**Date, place and time of the hearing:** September 13, 2007; NYU Stern Office of Career Development; 5:30 p.m.

**The names of all persons present at the Hearing:** Mel Ochoa (chair), Jamila Williams (vice chair), Debraj Ghosh, Catherine Zhang, Brad Doyle, Andy Cho (student at large), Spencer Jones (student at large), Dean Fraser, Rachel Kowal (faculty)

**A short statement of the charge against the Student:** "The faculty believes that by pleading guilty to an infraction of federal securities law, Mr. Rosenthal has broken both the Stern Honor Code and the University Code of Ethical Conduct. He is therefore not qualified to receive the degree of Master of Business Administration."

**Confirmation that the Student was notified of the allegations and given an opportunity to respond:** Yes, Mel Ochoa communicated the complaint to Mr. Rosenthal and sent him via email the Investigative Report. Mr. Rosenthal was invited to the Hearing Panel and provided testimony under a not guilty plea.

**A summary of the findings of fact and conclusions made by the Hearing Panel:** Please see attached October 1, 2007, letter from Mel Ochoa to Dean Cooley.

**A statement of the decision of the Hearing Panel:** Please see attached October 1, 2007, letter from Mel Ochoa to Dean Cooley.

**The sanction recommended by the Hearing Panel:**

Degree: Mr. Rosenthal shall not be conferred his degree of Master of Business Administration from the Stern School of Business but may transfer his completed coursework, credits and grades to another school that will accept them.

Transcript: Immediately and prior to any transfer of coursework, credits and grades to another school, Mr. Rosenthal's grade for Professional Responsibility shall be changed from an A to Fail (F) and the credits for this class shall not be eligible for transfer, with a notation added to his transcript that states: "Not transferable due to judiciary hearing."



NEW YORK UNIVERSITY
**NYU STERN**
LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
*Paganelli-Bull Professor of Economics
and Richard R. West Dean*

January 31, 2007

Mr. Ayal Rosenthal
98 Walnut Dr.
Tenafly, NJ 07670

Dear Mr. Rosenthal:

Congratulations on completing the requirements for the degree of Master of Business Administration.

The Faculty has recommended to the President and Board of Trustees of New York University that your degree be conferred as of January 22, 2007. I trust that your experience at Stern was a good one. I hope that you will stay involved with the School and with the larger Stern community, and wish you continued success as you move to new challenges and opportunities.

Sincerely,

TC/dg