

NEW YORK UNIVERSITY
NYU
STERN
LEONARD N. STERN
SCHOOL OF BUSINESS

OFFICE OF RECORDS AND REGISTRATION
GRADUATE DIVISION

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, SUITE 6-100
NEW YORK, NY 10012-1126
TEL: 212-998-0660
FAX: 212-995-4424

February 1, 2007

Dear Stern Graduate,

Enclosed is a copy of your academic transcript indicating your graduation as of January 22, 2007. Congratulations and best wishes as you move on to new endeavors

You should receive your diploma in about six to eight weeks, but if you change your address in the meantime, please notify Ms. Jaclyn Shaw in writing at the address above or by fax at 212-995-4424.

Please do not hesitate to call if you have any questions.

Sincerely,

David Gordon
David Gordon
Associate Director of Records and Registration

THE BACK OF THIS DOCUMENT HAS A REFLECTIVE WATERMARK HOLD AT AN ANGLE TO VIEW

```
                          NEW YORK UNIVERSITY
             STERN SCHOOL OF BUSINESS - GRADUATE DIVISION
                    44 WEST 4TH ST. NEW YORK, N.Y. 10012
                          ACADEMIC TRANSCRIPT

NAME......: Rosenthal, Ayal                CANDIDATE FOR...: MBA
STUDENT ID: xxx-xx-8659                    Gen Mgmt
BIRTH DATE: 05/17/1980                     ******************************
ADDRESS...: 98 Walnut Dr.                  REQUIRED CR.....: 60.0
            Tenafly, NJ 07670

                                           PREVIOUS NON-SGD DEGREE(S):
                                           1. BS  05/2001 RUTGERS STATE UNIVERSITY RUTGERS C
                                           2. ***  ******  ******************************
                                           3. ***  ******  ******************************
                                           4. ***  ******  ******************************

COURSE    TITLE                            CREDITS  GRADE    COURSE    TITLE                          CREDITS  GRADE
------    -----                            -------  -----    ------    -----                          -------  -----
SPRING 2005                                                  B40.2304  RESTRUCT FIRMS&INDUSTRIES         3.0    B
B00.2050  MBA PREPARATION & PRETERM          0.0    P        B40.3125  CORP STRAT & FINC IN EMT          1.5    A
B01.1302  MANAGING ORGANIZATIONS             3.0    B+       B40.3196  MERGERS & ACQUISITIONS            1.5    A
B01.1305  STATISTICS &DATA ANALYSIS          3.0    B        B40.3199  CASE STDS-BANKRPCY&REORGS         1.5    A
SUMMER 2005                                                  B70.2119  ENTRTMT & MEDIA INDUSTRES         1.5    A
B01.2103  STRATEGY I                         1.5    B        B95.2120  ENTERTAINMENT LAW                 1.5    A
B01.2104  STRATEGY II                        1.5    B        ********  END OF COURSE LISTING ****************
B01.2314  COMPET ADVT FM OPERATIONS          3.0    A
FALL 2005
B01.2105  BUSINESS COMMUNICATION             1.5    B+
B01.2310  MARKETING CONCEPTS                 3.0    B+
B01.2311  FOUNDATIONS OF FINANCE             3.0    B+
SPRING 2006
B02.3101  PROFESSIONAL RESPONSIBILI          1.5    A
B30.2190  GLOB PERSP ENTERPRISE SYS          1.5    A-
B40.2302  CORPORATE FINANCE                  3.0    A
B40.3145  INVEST BNKG&PRIV EQTY-EMT          1.5    B+
B40.3160  TOPICS IN CORP FINANCE             1.5    B
B40.3188  TOPICS-INTERNATIONAL FINC          1.5    A
B65.2159  COLLABORATN,CONFLCT&NEGTN          1.5    A
SUMMER 2006
B40.3165  PRIVATE EQUITY FINANCE             1.5    B
B40.3333  DEBT INSTRUMENTS & MKTS            3.0    B
B40.3335  FUTURES & OPTIONS                  3.0    B
B60.2320  IT IN SUPPLY CHAINS                1.5    B+
B70.2121  FINC SERVICES MARKETING            3.0    A-
B70.2129  SALES MANAGEMENT                   1.5    B
B70.2347  CONSUMER BEHAVIOR                  3.0    A
FALL 2006
B30.2119  ENTRTNT&MEDIA, MKTS& ECON          1.5    A
********  CONTINUED ON THE NEXT COLUMN ***

TOTAL CREDITS ATTEMPTED: 60.0     TOTAL CREDITS EARNED: 60.0     OVERALL GPA: 3.4275

SGD DEGREE(S) CONFERRED:
1. MBA  01/22/2007 Gen Mgmt
2. ***  ******
3. ***  ******
4. ***  ******

Specializations: Entertainment, Media & Technology, Law & Business and Finance.   ***********

                                                              DIRECTOR, RECORDS AND REGISTRATION
                                                              TRANSCRIPT IS VALID ONLY IF IT BEARS THE RAISED
                                                              UNIVERSITY SEAL AND THE OFFICIAL SIGNATURE.

                                                              PRINT DATE: 02/01/2007;   PAGE 1 OF 1
IN ACCORDANCE WITH THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974, AS AMENDED, THIS INFORMATION IS RELEASED ON THE CONDITION
THAT YOU WILL NOT PERMIT ANY OTHER PARTY TO HAVE ACCESS TO THIS INFORMATION WITHOUT THE WRITTEN CONSENT OF THE STUDENT.
```

NYU000056

May 24, 2007


Ayal Rosenthal
98 Walnut Dr.
Tenafly NJ, 07670
732-763-8125

Dean Gary Fraser
Dean of Students & Associate Dean, MBA Student Affairs
NYU Stern School of Business
Kaufman Management Center
44 West 4th Street, Suite 6-129
New York, NY 10012

Dear Dean Fraser,

    This letter is in regard to the complaint filed against me on February 28, 2007, by Dean Lee Sproull (the "Complaint"). This complaint was made available to me on May 23, 2007. The Complaint accuses me of violating the Stern Honor Code and University Code of Ethical Conduct, but it does not specify how either code was violated. After reviewing the New York University Student Disciplinary Procedures (the "Disciplinary Procedures"), the New York University Code of Ethical Conduct, and the NYU Stern MBA Honor Code, it is evident that the University has not afforded me the due process to which I am entitled under these guidelines. Specifically, the University did not fulfill its obligation to timely communicate the charges to me, meet with me, and not summarily suspend me. By failing to follow its own basic procedures, the University has waived any authority it may have had to commence disciplinary proceedings against me and the Complaint against me should therefore be dismissed.

    In addition, I would like to point out certain material factual errors contained in the Complaint that need to be corrected before the Stern MBA Judicial Committee begins its deliberations on this matter. Please note that I first received the written Complaint via mail on Wednesday, May 23, 2007 and that my responses are being submitted in a timely manner.

    The University violated its own procedural guidelines when it failed to timely notify me about the charges. According to the Disciplinary Procedures, the University is obligated to notify the student of the complaint against him within 48 hours of the filing. *See* Disciplinary Procedures Part II(A) ("Notice of the filing shall be mailed to the student within 48 hours.") But I did not learn about the proceedings against me for more than 10 weeks after the Complaint was filed.

    Moreover, the Disciplinary Procedures provide that the Office of Legal Counsel is required to notify the student of its decision. *See* Disciplinary Procedures Part I(C)3 ("The decision of the Office of Legal Counsel shall be both telephoned and mailed to each student who

is the subject of the same or a similar complaint"). However, this has still not been done by the Office of Legal Counsel and even now I am not aware of how its decision was made.

The Disciplinary Procedures also require the Vice President for Student Affairs to meet with the student to try to resolve the matter with the consent of the student. *See* Disciplinary Procedures Part I(E)2 ("The Vice President for Student Affairs shall meet with the student(s) complained against and shall try to resolve the matter with the consent of the student(s)"). However, no effort was made by the Vice President for Student Affairs to contact me, nor did the University attempt to resolve this matter amicably.

Finally, the Disciplinary Procedures forbid the University from summarily suspending a student. By withhold my diploma and preventing me from graduating, the University has, in effect summarily suspended me, thereby violating my due process rights. *See* Disciplinary Part II(B) ("A student should not be summarily suspended either completely or for certain purposes, except for reasons relating to his/her physical or emotional safety and well-being, the safety and well-being of students, faculty, staff, or University property, the maintenance of public order, or the effective continuation of the education process"). When a student is suspended, the University is obligated to expedite disciplinary proceedings. *See* Disciplinary Part II(B) ("the opportunity to expedite disciplinary proceedings so as to enable the determination of the appropriate sanction, if any, at the earliest possible time, preferably within 48 hours."). The University's action in this matter resulted in a *de facto* suspension, which is clearly against University policy and which was first communicated to me more than 10 weeks after the decision was made.

The Complaint against me should be dismissed because the University repeatedly violated my rights as a student by failing to provide me with the minimum due process mandated by the Student Disciplinary Procedures. The University's action have been in stark contrasts to my own, as I have previously made inquiries to your office (office visit and email communications on February 15, 2007), visited the Langone Office (walk-in visit on May 2, 2007) and called various departments in my attempts to uncover my current standing at the University (phone calls to the Langone Office, Registrar, and Graduation Services on May 14, 2007, and follow-up conversation with Graduation Services and voice-message to the MBA Office of Student Affairs on May 15, 2007). Such actions by the University are inexcusable and have had (and continue to have) irreparable detrimental effects on me, both personally and financially.

In addition to the above violations of my due process rights, the Complaint against me contains a number of material factual errors. These following facts are in the public record and are indisputable:

1) Paragraph 1 of the Complaint is factually incorrect in stating that "Mr. Rosenthal completed the course work for the MBA degree as of January 2007." The coursework was completed as of December 2006 and the degree was conferred on January 31, 2007. *See* Letter from Dean Thomas Cooley (stating that the "Faculty has recommended to the President and Board of Trustee of New York University that your degree be conferred as of January 22, 2007.").

NYU000058

2) Paragraph 2 of the Complaint states that "Mr. Rosenthal pleaded guilty . . . in an insider trading scheme involving his father, brother, and a childhood friend." I did not plead guilty to an insider trading scheme. Nor did my plea relate to the charges against my father, brother, and my brother's childhood friend. In fact, the government specified that it was not "trying to prove or won't seek to prove, and doesn't believe that it can prove" any relevant conduct from the purported scheme involving the other individuals and me." *See* Transcript of United States District Court Eastern District of New York in the matter appearing before the Honorable John Gleeson on February 8, 2007, page 70, lines 1 and 2. The Faculty improperly and prejudicially conflated these two completely separate matters. *This critical mistake must be corrected before the Complaint reaches the Judicial Committee.*

3) For the record, my plea was for "conscious avoidance" of securities laws, which is materially different from a guilty plea as a matter of both law and fact. Not only is the faculty's conclusion that I "pleaded guilty to the intent to commit securities fraud" irrefutably wrong, but such a conclusion undoubtedly tainted every step of the proceedings against me. At a minimum, an error of this magnitude requires that the faculty, Office of Legal Counsel, and any other body or individual involved in investigating this matter re-evaluate their analysis and conclusions.

Lastly, the Complaint should not have been filed under the NYU Code of Ethical Conduct (the "Code"), *see* Paragraphs 1, 4 and 6 of the Complaint, and it was wrong for the Faculty to consider the Code when filing its complaint. The Code only applies to "every part-time and fulltime employee, faculty member, officer, trustee, overseer, and advisory board member." I am not currently a member of any of these groups, nor was I a member at the time the Complaint was filed. Consequently, I cannot be accused of violating the Code.

In light of the University's repeated and unjustified failure to afford me the proper due process to which I am entitled under the Disciplinary Procedures, and the numerous material and prejudicial factual misstatements contained in the Complaint against me, I respectfully request that the University immediately drop the disciplinary proceedings against me and award me my diploma.

Sincerely,

Ayal Rosenthal

Cc: Lee S. Sproull
    Mel Ochoa

Encl: Student Disciplinary Procedures
      University Code of Conduct
      Transcript of Plea Hearing in Eastern District Court



NEW YORK UNIVERSITY
NYU
STERN
LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, SUITE 11-55
NEW YORK, NY 10012-1126
212-998-0804
FAX: 212-995-4212
E-MAIL: lsproull@stern.nyu.edu

LEE S. SPROULL
*Vice Dean of Faculty*
*Leonard N. Stern Professor of Business*

February 28, 2007

Gary Fraser
Dean of Students & Associate Dean, MBA Student Affairs
NYU Stern School of Business
Kaufman Management Center
44 West 4th Street, Suite 6-129
New York, NY 10012

Dear Gary:

On behalf of the faculty of the Leonard N. Stern School of Business, I write to file a complaint against AYAL ROSENTHAL, a part-time MBA student. Mr. Rosenthal completed the course work for the MBA degree as of January 2007. However, we believe that he was in serious violation of the NYU Stern MBA Code of Conduct and the NYU Code of Ethical Conduct in actions he took while a matriculated student at Stern.

On Friday, February 9, 2007, Mr. Rosenthal pleaded guilty to conspiracy to commit securities fraud before Eastern District Judge John Gleeson, in an insider trading scheme involving his father, brother, and a childhood friend.

During his studies at the Stern School, Mr. Rosenthal took the required course in Professional Responsibility. He also served as a Teaching Fellow for the course. A basic premise of this course is the responsibility that individuals have to act according to the highest ethical principles in the course of their professional lives. Mr. Rosenthal would therefore be expected to understand the implications of his criminal conduct from the course and related discussion, if from nothing else.

University and School policy states that students are expected to behave with honesty and integrity. The NYU Stern MBA Code of Conduct, which Mr. Rosenthal was required to sign, states: "Students are expected in all of their actions to reflect personal honesty, integrity and respect for others." The New York University Code of Ethical Conduct states that "Every member of the University shall, at all times, conduct his or her activities in accordance with the highest professional and community ethical standards." And the New York University Policy on Student Conduct states that "Students are expected to conduct themselves as mature and law-abiding members of both the University community and the general community."

In his admission of guilt in Federal Court, Mr. Rosenthal said the following:

> "In or about May, 2005, in a discussion about my work, I agreed to tell my brother Amir Rosenthal the names of two companies that were involved in a confidential acquisition that I was working on. I knew that my brother Amir was an active trader of securities. I consciously turned a blind eye to what would have otherwise been obvious to me; that my brother was going to trade, in violation of United States securities laws on information that I provided to him. I accept that responsibility for my actions..."

The faculty believes that by pleading guilty to an infraction of federal securities law, Mr. Rosenthal has broken both the Stern Honor Code and the University Code of Ethical Conduct. He is therefore not qualified to receive the degree of Master of Business Administration. University Counsel's opinion supports the faculty's stand in this matter.

At the February 22, 2007 Faculty Meeting, the faculty voted unanimously in favor of the following motion:

"That this faculty votes that the case of Ayal Rosenthal, having pleaded guilty to the intent to commit securities fraud, be remanded to the Stern School's Judiciary Committee and their procedures."

I ask that the Judiciary Committee meet at the earliest opportunity to review the case and provide its recommendations to the Dean of the School.

Sincerely,

*Lee S. Sproull*
Lee S. Sproull
Vice Dean of Faculty


Encl:
University Code of Conduct
NYU Stern Honor Code
Transcript of Plea Hearing in Eastern District Court of New York

*Privileged & Confidential*

~~I refused to make a plea to an action that I did not commit. Only after the US Attorney's office suggested that I plead to conscious avoidance, or turning a blind eye, and offered to argue in front of the judge that I should be sentenced to 6 months unsupervised release did I realize that, unfortunately for me, this offer was the least worse of my options. In their view, and, retrospectively, I began to see too, that even though I did not know what my brother was doing, I should have asked him questions and should have known.~~

~~However, at no point of my proceeding did the government accuse me of an involvement in a larger conspiracy. On the contrary, they stated that the government "is not trying to prove or won't seek to prove and doesn't believe that it can prove" anything related to the other case.~~

Lack of Jurisdiction:

The main questioned asked of each of you today is does the MBA Judicial Committee have jurisdiction over this matter. Simply put, no. The MBA Judiciary Committee, and the University as a whole, has no jurisdiction in this matter. I was not a student nor member of the Stern community when the criminal proceedings took place and the Faculty lodged its complaint. Exhibits A (my final transcript), Exhibit B (letter from the Dean), and Exhibit C (letter from Langone office) all confirm that I completed my studies with a degree conferred date of January 22, 2007. This attempt amounts to a retroactive disciplinary hearing of a former student and sets a terrible precedent whereby the University could track down former students disrupt their livelihoods.

The NYU Faculty does not have jurisdiction over this matter. According to the Student Disciplinary Procedures the Faculty has five enumerated instances of Jurisdiction and are as follows:
Cases of:
   1. Cheating, plagiarism, forgery of academic documents with intent to defraud.

   2. Disruption of a lecture hall, laboratory, or any other premises used for academic purposes.

   3. Failure to return library books, or destruction of all or part of a library book or archival document.

   4. Interference with access to classrooms, laboratories, or academic offices.

   5. Physical detention or restraint of a student, instructor, University staff member, or administrator while that person is attempting to exercise his/her duties.

Based on these categories, it is obvious that the Faculty does not have jurisdiction.

Similarly, this Judiciary Committee has no jurisdiction. As provided in the Student Disciplinary Procedures, the Judiciary Committee has jurisdiction over the following six instances:
   1. Disruptive or riotous activity in student residence halls by non resident students, or student centers of non academic activity.

   2. Violation of dormitory rules by residents (but see I.E.4).

   3. Forgery of instruments of identification with intent to defraud.

①

NYU000063

*Privileged & Confidential*

> 4. Theft of, or wanton damage to, University property.
>
> 5. Engaging in conduct which interferes with or disrupts any academic function involving more than one school or which prevents or limits the free expression of ideas, or which physically obstructs or restrains another member of the University community or a visitor.
>
> 6. Failing to surrender University identification card upon request by clearly identifiable University personnel, or failing to comply with the direction of clearly identifiable University personnel in the performance of their assigned duties.

The inflammatory and incorrect accusations against me by the Faculty also do not fall into any of these six items.

Now Section 1.D. of the Student Disciplinary Procedures says that while it is the policy of the University to discourage illegal acts by its members, only when the extent that such acts also fall within one of the categories you just heard may the student be subject to disciplinary measures by the University. Therefore, because we know that this does fall into neither the first five faculty categories nor the six judicial committee categories, it is clear that this outside the scope and jurisdiction of the University's disciplinary rules.

In addition, the Statement of Policy on Student Conduct at New York University states that "The University should not use its powers to interfere with the rights of a student outside the University campus. In general, a student's off-campus activities should be subject only to sanctions of the public authorities. Where a student is convicted of a violation of law, he or she should not be subject to University discipline for the same offense unless the student's conduct seriously affects his or her position as a member of the academic community." Since I was no longer a student at NYU, there was no impact on my position within the University as none existed.

Due Process:

In addition to the lack of jurisdiction of the University and this committee in this matter, NYU has consistently and extensively violated the University's due process procedures in this matter.

The University violated its own procedural guidelines when it failed to timely notify me about the charges. According to the Disciplinary Procedures, the University is obligated to notify the student of the complaint against him within 48 hours of the filing. However, I did not learn about the proceedings against me for more than 10 weeks after the Complaint was filed. Even then, I was alerted to the charges only after I called to inquire about my diploma.

Moreover, the Disciplinary Procedures specifically provide that the Office of Legal Counsel is required to notify the student of its decision to file a complaint. It is seven months later, I am in the same room with the Univeristy's legal counsel and counsel has still not provided me with the notification of its decision.

The Disciplinary Procedures also require the Vice President for Student Affairs to meet with the student to try to resolve the matter with the consent of the student. However, no effort was ever



*Privileged & Confidential*

made by the Vice President for Student Affairs to contact me, nor did the University attempt to resolve this matter amicably. To the contrary, these parties conducted their own investigation and based their conclusions without ever asking me for my side of the story. This led them to rely on incorrect facts and reach wrong conclusions.

Finally, the Disciplinary Procedures forbid the University from summarily suspending a student. By withholding my diploma, the University has in effect summarily suspended me, thereby violating my due process rights.

The Complaint against me should be dismissed because the University repeatedly violated my rights as a student by failing to provide me with the minimum due process mandated by the Student Disciplinary Procedures. The University's action have been in stark contrasts to my own, as I have previously made inquiries to Vice President of Student Affairs' office, visited the Langone Office, and called various departments in my attempts to uncover the status of my diploma. Such actions by the University are inexcusable and have had (and continue to have) irreparable detrimental effects on me, both personally and financially.

In addition, the Complaint should not have been filed under the NYU Code of Ethical Conduct and it was wrong for the Faculty to consider the Code when filing its complaint. The Code only applies to "every parttime and fulltime employee, faculty member, officer, trustee, overseer, and advisory board member." I am not currently a member of any of these groups, nor was I a member at the time the Complaint was filed. Consequently, I cannot be accused of violating the Code.

To add insult to injury, during the most difficult time of my life, the Dean of Stern, Thomas Cooley, used this case as a discussion topic in his professional responsibility class. This occurred several weeks after the University was required to and failed to notify me of its complaint and so the University's administration clearly knew of its responsibilities and ignored them for the sake of a classroom debate.

General Hearing:

The Faculty's complain against me contains a number of material factual errors. These following facts are in the public record and are indisputable:

Paragraph 1 of the Complaint is factually incorrect in stating that I completed the course work for the MBA degree as of January 2007. The coursework was completed as of December 2006 and the degree was conferred on January 31, 2007.

Paragraph 2 of the Complaint states that I pleaded guilty. . . in an insider trading scheme involving my father, brother, and a childhood friend. I did not plead guilty to an insider trading scheme. Nor did my plea relate to the charges against my father, brother, and my brother's childhood friend. In fact, the government specified that it was not "trying to prove or won't seek to prove, and doesn't believe that it can prove any relevant conduct from the purported scheme"

*Privileged & Confidential*

involving the other individuals and me. The Faculty improperly and prejudicially conflated these two completely separate matters.

For the record, my plea was for conscious avoidance of securities laws, which is materially different from a customary guilty plea as a matter of both law and fact. Not only is the faculty's conclusion that I pleaded guilty to the intent to commit securities fraud irrefutably wrong, but such a conclusion undoubtedly tainted every step of the proceedings against me. At a minimum, an error of this magnitude requires that the faculty, Office of Legal Counsel, and any other body or individual involved in investigating this matter re-evaluate their analysis and conclusions.

The Stern Honor Code states that "I will not lie, cheat or steal to gain an academic advantage, or tolerate those who do." According to the MBA Judiciary Committee's website, the Honor Code requires that each student act with integrity in all academic activities. Examples of violations of this code include lying to obtain an academic advantage, cheating through the use of unauthorized materials to complete an assignment, and plagiarism. The common thread among these examples, as well as additional examples provided by Judiciary Committee, is that they relate to a student's academic activity. There is no evidence of nor accusation of any academic impropriety. Therefore, this complaint does not have any merit of a Stern Honor Code violation.

Since we already know that the NYU Code of Ethical Conduct does not apply in this instance and now that the Stern Honor Code also does not apply in this instance, it is clear that there is no basis for the Faculty's complaint

Lastly, the University can not demonstrate any harm or damage to the University's relationship with an involved external party.

In fact, there was no demonstrable damage to the University. Specifically regarding recruiters, I have not had contact with a recruiter through an NYU sponsored event since October 2006 and there is no evidence of an association in the minds of recruiters at NYU Stern between myself, the University, and the matter in the complaint. This is demonstrated by the increasing desire of companies to approach NYU Stern students through (anecdotal) higher internship placements which occurred in the post-compliant period and the completely full schedule of companies seeking to interview Stern students for full-time position in the Fall of 2007. Barring any evidence that a recruiter has withdrawn

The conduct itself did not involve NYU or that degree so to say that there is a reputational harm is not justified. It is not because I was an NYU student or obtained a special skill of an MBA that was a cause or precipitate of any action. Nothing I did has reflected NYU, and it is simply the mere fact is that I attended NYU. If that is the standard that the Univeristy establishes then it needs to be applied broadly and not just in this specific incidence.

Any prophetic approach that the Faculty believes might be possible in the future is wrong. There is nothing indicating additional media coverage of my specific offense, especially in light of other recent and more-prominent US Attorney and SEC actions such as the 15 people Investment Banking ring, the TXU buyout, the Dow Jones takeover, options backdating, and sub-prime mortgage fraud. It is therefore highly unlikely to become prominent in the media in the future.

*Privileged & Confidential*

In addition, none of the media coverage that I did receive noted any association between myself and NYU Stern so it is wrong and unrealistic to assume that now, seven months later, there will be.

The Rules of Conduct of the "New York University Rules for the Maintenance of Public Order" stated that "Conduct that is violative of such laws and ordinances occurring off University premises will ordinarily not be subject to University discipline, unless such conduct seriously affects the interests of the University or the position of the member within the University community. *As you've already heard regarding the first item, there is no evidence that it has affected the interests of the University. And since I was no longer a student at NYU, there was no impact on my position within the University as none existed.*

Because of the lack of jurisdiction that this committee has, the continuous and egregious violations of the University's due process procedures by the Faculty and Office of Legal Counsel, the fact there was no violation of any University code, and that there was no harm nor damage suffered by the University, I ask you, the members of the MBA Judiciary Committee to reject the Faculty's complaint and endorse for me to receive my diploma.

NYU000067