21



Re: MBAJC Hearing

Subject: Re: MBAJC Hearing
From: Mel Ochoa <mel.ochoa@stern.nyu.edu>
Date: Thu, 13 Sep 2007 00:05:38 -0400 (EDT)
To: Gary Fraser <gfraser@stern.nyu.edu>, Rachel Kowal <rkowal@stern.nyu.edu>, Bruce Buchanan <bbuchana@stern.nyu.edu>

Professors:

Attached please find two documents that will be distributed at tomorrow's hearing. I do not have a soft copy of the complaint, so I will read it at the beginning of the hearing in front of the plaintiff and defendant.

The committee will prepare for the case from 5:30-6 by reading the background material (attached documents) and handling administrative duties, so please call in at 6 to reduce your wait time. [Dean Fraser, I will be there early to test the system with you]

Let me know if you have any questions. My cell number is 510/219-5515 in case you need to reach me. Thank you for devoting time to this during the holiday.

-Mel

----- Original Message -----
From: "Gary Fraser" <gfraser@stern.nyu.edu>
To: "Mel Ochoa" <mel.ochoa@stern.nyu.edu>, "Rachel Kowal" <rkowal@stern.nyu.edu>, "Bruce Buchanan" <bbuchana@stern.nyu.edu>
Sent: Tuesday, September 11, 2007 3:31:59 PM (GMT-0600) America/Chicago
Subject: Re: MBAJC Hearing

Hi Mel and Prof Kowal,
FYI the number for the session tomorrow is 212-998-0986 .  A phone has been set up to recieve a conference call.  I will try to call you around 5:15pm to test it Mel.
Thanks.
Gary

Mel Ochoa wrote:

Hey, team.

I just wanted to remind everyone of the hearing this Thursday beginning at 5:30. We will have about 15-20 minutes of prep work, and then the plaintiff and defendant will join us. The prep work is very important (i.e. please try to be on time) as it involves reading over the complaint and investigative report.

The hearing will be held in a new location this year: the OCD recruiter lounge. Go to the Office of Career Development on the 5th floor of KMC and the door will be open with signs leading you to the area.

Let me know if you have any questions. See you at 5:30.

-Mel

--


Gary Fraser
Dean of Students
Associate Dean of MBA Student Affairs
NYU Stern School of Business

1 of 2


PLAINTIFF'S
EXHIBIT
35
11/9/09   Ym

Re: MBAJC Hearing

Tel: 212-998-0993

--
Mel Ochoa
NYU Stern School of Business
MBA Candidate, Class of 2008
Tel: 510/219-5515

Tom Grace.doc    Content-Type:    application/msword
     Content-Encoding: base64

Rosenthal.pdf    Content-Type:    application/pdf
     Content-Encoding: base64

9/16/2009 12:57 PM

NYU000340

[Tom Grace]

1. The NYU Office of Legal Counsel has the official word on matters of jurisdiction. If Lee Chamberlin says there is reason to believe harm was done to the University (in this case, to the University's reputation) through Rosenthal's actions, our judiciary process has jurisdiction.

2. Our Judiciary Committee's job is to determine */a)/* to what degree the student's behavior damaged or endangered the School's reputation and */b)/* what punishment is appropriate.

3. If they feel the damage is minimal, they can recommend that no punishment be exacted.

4. A judiciary process may only rule on behavior that has occurred and the impact of that behavior on the University. Therefore, they should only recommend withholding the degree if they believe the amount of damage he did warrants that particular punishment. A judiciary process may not recommend withholding the degree because they don't want the damage to be greater.

5. If the Committee feels that withholding the degree does not fit the offense (in nature and/or severity), other penalties might be imposed (e.g., a notation of sanction on the transcript, a requirement that he take ethics instruction, delaying the degree, etc.).

6. If the judiciary process does not result in a recommendation satisfactory to the School, an administrative process can be invoked.

From page 222 "Rules of Conduct"

http://www.nyu.edu/students.guide/policies/student_discipline.pdf

A. All members of the University Community - students, faculty members, and members of the staff - shall comply with city, state, and federal laws and ordinances affecting the maintenance of order on University premises. Students who engage in behavior that violates these standards will be subject to the disciplinary process in the following manner:

1. Conduct that is violative of such laws and ordinances occurring on University premises may be subject to both University discipline and public sanctions as circumstances may warrant or dictate.

2. Conduct that is violative of such laws and ordinances occurring off-University premises will ordinarily not be subject to University discipline, unless such conduct a) seriously affects the interests of the University or the position of the member within the University community; or b) occurs in close proximity to University premises and is connected to violative conduct on University premises.

NYU000341

From page 224 "University Policy on Student Conduct". (second paragraph of section 2. Rules of Conduct)

2. Basic Rules of Conduct. Students are expected to conduct themselves as mature and law-abiding members of both the University community and the general community, and to comply with requests of the administrative authorities of the University for maintenance of order on University premises. Behavior which jeopardizes the health or safety of the University community, or disrupts the educational activities and supporting services of the University, is subject to review and possible penalty in accordance with the procedures and practices of the University and its colleges, schools, or divisions.

Where activities sponsored by student organizations constitute violations of University rules or of public laws and regulations, sanctions may be imposed on such organizations as well as on individual students.

The University should not use its powers to interfere with the rights of a student outside the University campus. In general, a student's off-campus activities should be subject only to sanctions of the public authorities. Where a student is convicted of a violation of law, he should not be subject to University discipline for the same offense unless his conduct seriously affects his position as a member of the academic community.

Where a student's conduct on campus constitutes violations of both University rules and public law, he may be subject to both University discipline and public sanctions.

From Page 227 "Resolution of Questions of Jurisdiction in Any Particular Case"

C. Resolution of Questions of Jurisdiction in Any Particular Case. While questions of jurisdiction are not expected to be numerous or difficult, the following procedures shall be used where such questions arise:

1. Where a question arises as to whether a case should come within faculty or Senate jurisdiction, the question shall be referred for decision to the Office of Legal Counsel of the University.

2. The decision of the Office of Legal Counsel shall be both telephoned and mailed to each student who is the subject of the same or a similar complaint as the one in which the question of jurisdiction has been raised, to the Dean of the faculty of each school in which any such student is enrolled and to the Chairman of the University Judicial Board (hereinafter defined).

3. If either a student who is the subject of a complaint, or the Dean or Chairman of the Disciplinary Committee of a faculty in which such student is enrolled, or the Chairman of the University Judicial Board disagrees with the decision rendered by the Office of Legal Counsel, such person shall have the right to appeal the decision to the Committee on Organization and Governance of the University Senate.

NYU000342

4. The Office of the Secretary of the Senate must receive notice of such appeal no later than three days after the initial decision of the Office of Legal Counsel has been communicated to the person taking the appeal. In cases in which the student has been temporarily suspended or dismissed pending disciplinary proceedings, such notice of appeal must be received within eight hours.

May 20, 2007

## Summary

Mel Ochoa (hereafter, "the Chair") has received the complaint presented in the case involving the faculty of the Leonard N. Stern School of Business (hereafter, "the Faculty") and student Ayal Rosenthal (hereafter, "the Student"), reviewed materials including an email exchange between Dean Gary Fraser, Dean Kim Corfman, Leona Chamberlin, Thomas Grace and Tim Colvin (not included herein as it is a matter of University privilege), and met with Dean Gary Fraser, all to determine the facts of the case.

The circumstances involving the allegation of violating the NYU Stern MBA Code of Conduct and the NYU Code of Ethical Conduct by the Faculty are intricate and open to interpretation, especially as they pertain to jurisdiction and/or authority in this matter.

## Details of Faculty Complaint

As outlined in the complaint, the Student on February 9, 2007, "pleaded guilty to conspiracy to commit securities fraud before Eastern District Judge John Gleeson" and as such, the Faculty "believes that by pleading guilty to an infraction of federal securities law, [the Student] has broken both the Stern Honor Code and the University Code of Ethical Conduct. He is therefore not qualified to receive the degree of Master of Business Administration."

Subsequently, the Faculty voted unanimously on February 22, 2007, that "the case of [the Student], having pleaded guilty to the intent to commit securities fraud, be remanded to the Stern's Judiciary Committee and their procedures."

At the core of the complaint is the Faculty's interpretation, supported by the University's Counsel, that the Student acted in an unbecoming manner as part of the University community and without honesty and integrity in relation to the New York University Stern MBA Code of Conduct, the New York University Code of Ethical Conduct and the New York University Policy on Student Conduct.

Under this interpretation, off-campus incidents are only subject to University disciplinary action when there is direct effect on the University, including harm and damage to the University's relationship with an involved external party. The Student's behavior could be interpreted as damaging the University's reputation and relationship with recruiters and potential applicants. The Student, therefore, might be undeserving of the Stern MBA.

## Details of Jurisdiction

The Judiciary Committee may or may not hold jurisdiction and/or authority in this matter. Under policies stated within The Student's Guide to NYU (http://www.nyu.edu/students.guide/policies/student_discipline.pdf), the Student's admitted actions did not take place on University premises and therefore the University should not use its powers to interfere with his rights outside of campus—his off-campus actions should be subject only to sanctions of the public authorities. As written, "Where a student is convicted of a violation of law, he should not be subject to University discipline for the same offense unless his conduct seriously affects his position as a member of the academic community." (p. 222, 224)

NYU000344

At the same time, his admitted actions could be interpreted as seriously affecting the interests of the University and his position as a member of the academic community in reference to the School's aforementioned interaction and reputation with recruiters, applicants and other external parties. Further, under these policies the Student is expected to conduct himself as a law-abiding member of both the University community and the general community. (p. 224) Under the Stern Code of Conduct, "Students are expected in all of their actions to reflect personal honesty, integrity and respect for others."

However, it is questionable if the Judiciary Committee can successfully determine or speculate the extent or severity to which the Student's behavior has damaged or endangered, or will damage or endanger, the University's reputation since the Student has thus far not been directly and explicitly associated with Stern in the public domain—media, record of court proceedings or otherwise.

## Conclusion & Recommendation

The Chair acknowledges that a formal complaint has been forwarded to the Judiciary Committee and, as such under its procedures, must be reviewed by an Investigative Committee comprised of two student members for purposes of fact finding and recommending further action as necessary. It is the Chair's opinion, however, that the Student's plead of guilt before Eastern District Judge John Gleeson is sufficient evidence to suspect a violation and that the case of Ayal Rosenthal requires a hearing as an appropriate channel to discuss this matter on the following three levels.

First, under section 2.ii. of Stern's Policies and Procedures, it is the Chair's recommendation that a quorum of members (at least one faculty advisor, the presiding Chair and three students) decides if the Judiciary Committee, in its opinion alone from University Counsel, holds jurisdiction and/or authority in this case as it relates to a possible violation. The body should take into account "off-campus," "academic community" (i.e. University reputation) and "law-abiding" phrases offered within The Student's Guide to NYU to determine if the Student can be tried by the Judiciary Committee for actions taken outside of the University. This is especially pertinent since The Student's Guide to NYU only makes reference to jurisdiction pertaining to Faculty and Senate and does not include a case of this nature within its I.A. or I.B.

If jurisdiction is established, the Judiciary Committee may decide if and to what degree the Student's behavior "has broken both the Stern Honor Code and the University Code of Ethical Conduct" as put forth in the complaint (included within is the assumption of possible impact on the University's reputation).

Lastly, if determined that the Student is in violation, the Judiciary Committee may recommend an appropriate penalty to Dean Cooley ranging from, but not limited to, withholding the Student's degree to no punishment if the severity of his actions and damage or endangerment to the University's reputation is minimal or indefinable at this point in time.

However, it is also the conclusion of the Chair that the Judiciary Committee is not mandated to provide a judgment, recommendation or opinion on jurisdiction, violation and/or penalty and may forward the complaint to Dean Cooley with the simple recognition that the case has been acknowledged and heard by the Judiciary Committee and nothing more. It should be noted that if the judiciary process does not result in a recommendation satisfactory to the University, an administrative process can be invoked.

## Due Process

NYU000345

Since section 2.ii. of Stern's Policies & Procedures holds The Student's Guide to NYU under the Judiciary Committee's jurisdiction, due process for the Student must be applied as it relates to the following notification clause:

> II.A. Filing and Notice of Complaint.
> Any member of the faculty, administration, or staff or any student may file a complaint against any student for a student offense with the Dean of the school in which the student complained of is enrolled or with the Vice President for Student Affairs. Notice of the filing shall be mailed to the student within 48 hours.

Further, under section I.C., if the NYU Office of Legal Counsel opines in the question of resolution of jurisdiction (beyond the stated realm of Faculty or Senate jurisdiction), then again the Student must be afforded his due process as follows:

> 2. The decision of the Office of Legal Counsel shall be both telephoned and mailed to each student who is the subject of the same or a similar complaint as the one in which the question of jurisdiction has been raised, to the Dean of the faculty of each school in which any such student is enrolled and to the Chairman of the University Judicial Board (hereinafter defined).

Finally, under Stern's Policies & Procedures:

> 4.d. If the Investigative Committee or the Chair concludes there is sufficient evidence to suspect a Violation, the Chair will notify the Complainant and the Accused.
>
> 6.b. The Accused has the right to be informed in writing of the charges against him or her and the identity of the Complainant.
>
> 6.c. The Accused will receive a copy of the Investigative Committee's written report no later than three academic days prior to the hearing.
>
> 6.g. The Accused may consult with an adviser of his or her own choosing to assist in the preparation of the Accused's defense.

Again, since section 2.ii. of Stern's Policies & Procedures holds The Student's Guide to NYU under the Judiciary Committee's jurisdiction:

> D.3. That the student has the right to be accompanied by counsel or an adviser. The student or his counsel or adviser shall have the right to examine and cross-examine each witness either by putting questions directly to the witness, or by asking questions through members of the hearing body. The method shall be determined by the hearing body, and may be altered by it at any time.

NYU000346

22

Re: Fwd: Rosenthal

**Subject:** Re: Fwd: Rosenthal
**From:** Kim Corfman <kcorfman@stern.nyu.edu>
**Date:** Thu, 14 Jun 2007 08:37:54 -0400
**To:** Gary Fraser <gfraser@stern.nyu.edu>

I think it would be bad. Perhaps he needs to impress upon them that the granting of this student's degree has at this point been delayed almost six months, which is already unacceptable. Or maybe you should take a stronger hand in this.

This also suggests we need to make some changes to ensure the committee can work over the summer, since most of the Langone Program and all of the EMBA students are in class during the summer.

Gary Fraser wrote:

> Thoughts? Mel has tried really hard to set something up during the week and over the weekend but has not had any success in getting the critical mass needed to hear the case.
>
> **Subject:**
>     Rosenthal
> **From:** Melchior Ochoa <mel.ochoa@stern.nyu.edu>
> **Date:** Wed, 13 Jun 2007 13:52:42 -0500
> **To:** Gary Fraser <gfraser@stern.nyu.edu>
> **To:** Gary Fraser <gfraser@stern.nyu.edu>
>
> ```
> Gary,
>
> Would it be bad if we held the hearing at the beginning of the school year? I am
> having a difficult time getting quorum, even for a conference call. Would the
> faculty be upset? Does it have a bearing on final degree decisions and/or
> approvals? Is it unfair to wait so long?
>
> Mel
>
> ---
> Mel Ochoa
> NYU Stern School of Business
> MBA Candidate, Class of 2008
> Tel: 510/219-5515
> ```

```
--
Kim P. Corfman
Vice Dean for MBA Programs
Professor of Marketing
Stern School of Business, New York University
```



PLAINTIFF'S
EXHIBIT
33
11/9/09   Ken

9/9/2009 6:43 PM

NYU000871



Re: [Fwd: Re: Rosenthal hearing]

Subject: Re: [Fwd: Re: Rosenthal hearing]
From: Kim Corfman <kcorfman@stern.nyu.edu>
Date: Wed, 20 Jun 2007 08:33:42 -0400
To: Lee Sproull <lsproull@stern.nyu.edu>
CC: Gary Fraser <gfraser@stern.nyu.edu>

Gary asked me the same thing and I said I think it's unacceptable. There has already been a delay of almost four months.

Lee Sproull wrote:

> fyi and what kind of due process issues does this proposal create?
> lee
>
>
> ------- Original Message -------
> Subject: Re: Rosenthal hearing
>     Date: Mon, 18 Jun 2007 22:44:11 -0500
>  From: mbajc mbajc <mbajc@stern.nyu.edu>
>       To: Lee Sproull <lsproull@stern.nyu.edu>
>     CC: Susan Douglas <sdouglas@stern.nyu.edu>
>
>
> Lee and Susan,
>
> Due to the summer break, I am having a difficult time scheduling a hearing that includes quorum of the Judiciary Committee, a faculty represe
>
> Would the Faculty be opposed to allowing this hearing to be held in early September?
>
> -Mel
>
> ----- Original Message -----
> From: Lee Sproull <lsproull@stern.nyu.edu>
> Date: Tuesday, May 29, 2007 12:03 pm
> Subject: Re: Rosenthal hearing
>
> > Mel
> > Susan Douglas, chair of the NYU Stern Faculty Council will be
> > available
> > on Sunday at noon and Monday evening after 6:45. Could you be in
> > touch
> > with her directly about the final time and place of the hearing.
> > Lee
> >
> >
> > mbajc mbajc wrote:
> > >
> > > Lee.
> > >
> > > Will you or a representative be available for a hearing on
> > Sunday,
> > > June 3rd, at around noon or Monday, June 4th, in the evening?
> > >
> > > -Mel
> > >
> > --
> >
> > Lee S. Sproull
> > Leonard N. Stern School Professor of Business
> > Vice Dean of Faculty
> > NYU Stern School
> > 44 West 4th St., Room 11-55, New York, NY 10012
> > phone +1 212-998-0804    fax +1 212-995-4212
> >
> >
> >
>
>
>
> --
>
> Lee S. Sproull
> Leonard N. Stern School Professor of Business
> Vice Dean of Faculty
> NYU Stern School
> 44 West 4th St., Room 11-55, New York, NY 10012
> phone +1 212-998-0804    fax +1 212-995-4212

Kim P. Corfman
Vice Dean for MBA Programs
Professor of Marketing
Stern School of Business, New York University
Henry Kaufman Management Center, 11-96
New York, NY 10012-1126
212-998-0593, 212-995-4212 (fax)



PLAINTIFF'S EXHIBIT

9/9/2009 6:43 PM

NYU000724

Re: Rosenthal

**Subject:** Re: Rosenthal
**From:** Gary Fraser <gfraser@stern.nyu.edu>
**Date:** Wed, 27 Jun 2007 11:53:40 -0400
**To:** Melchior Ochoa <mel.ochoa@stern.nyu.edu>

Hi Mel,
So sorry for the delayed response.  Do you have any time to talk today?
Gary

Melchior Ochoa wrote:

> Yeah, I would like to get this out of the way as soon as possible. I've just
> been having a really tough time getting quorum. No one can meet, especially the
> defendant and the plaintiff at the same time, with faculty advisors, you, and
> three students. Really tough over the summer. Do you have time to talk early
> next week? I sent an email to Lee asking if would be all right to wait, and was
> denied. Said due process would be violated (however, due process has already
> been violated to this point and I received permission from the student to
> postpone).
>
> Mel
>
>
> ---
> Mel Ochoa
> NYU Stern School of Business
> MBA Candidate, Class of 2008
> Tel: 510/219-5515
> ----- Original Message -----
> From: Gary Fraser <gfraser@stern.nyu.edu>
> Date: Tuesday, June 19, 2007 9:02 pm
> Subject: Re: Rosenthal
>
>
> Hi Mel,
> Sorry for the delayed response. I understand the difficulty in
> scheduling a hearing but given that Ayal has completed his
> coursework in
> December. I think it would be too long to wait until September to
> have a
> hearing.  Is there a way to find a date in July?  Since we have a
> week
> or two before July, perhaps we can find one day that works with a
> critical mass of committee members in the month of July?
> Gary
>
> Melchior Ochoa wrote:
>
>
>   Gary,
>
>   Would it be bad if we held the hearing at the beginning of the
>
>
>   school year? I am having a difficult time getting quorum, even for
>   a conference call. Would the faculty be upset? Does it have a

9/16/2009 12:57 PM

NYU000334

Re: Rosenthal

bearing on final degree decisions and/or approvals? Is it unfair
to wait so long?

Mel

---
Mel Ochoa
NYU Stern School of Business
MBA Candidate, Class of 2008
Tel: 510/219-5515


--

*/Gary Fraser/*

/Dean of Students/

/Associate Dean of MBA Student Affairs/

NYU Stern School of Business

44 West 4th Street, Suite 6-120

New York, NY 10012

212-998-0993


--
Gary Fraser
*Dean of Students*
*Associate Dean of MBA Student Affairs*
NYU Stern School of Business
Tel: 212-998-0993

NYU000335

23

New York University Leonard N. Stern School of Business
Meeting of the Faculty
October 3, 2007, 12:30 pm
Cantor Boardroom
Henry Kaufman Management Center, 11th Floor
Minutes

Dean Thomas Cooley called the meeting to order and welcomed the faculty to the first meeting of the new academic year at Stern.

*1. Resolution of voting privileges:*
The Dean then called for the following motion: that voting privileges at meetings of the faculty of the Stern School of Business for this academic year be extended to:

a) full-time Clinical Faculty of the Stern School;

b) full-time Lecturers and Instructors in the Stern School;

b) full-time Administrative Personnel who also hold faculty appointments in the Stern School.

The motion was seconded and passed.

*2. Approval of the May 3, 2007 meeting minutes:*
The minutes of the May 3, 2007 meeting were approved as submitted.

*3. Judiciary Committee/Ayal Rosenthal case – Professor Bruce Buchanan*

Professor Buchanan reminded faculty of the Ayal Rosenthal case which had been remanded to the Stern School's Judiciary Committee and their procedures after a vote by the faculty during the February 22, 2007 faculty meeting. Professor Buchanan asked the faculty to vote on a motion summarizing the committee's recommendations. During their discussion, the faculty raised and voted on the following motions:

*MOTION: That an amendment be added to the motion to explain that this case is exceptional due to the potential damage to the School's reputation. The faculty voted and denied the motion.*

*MOTION: That the clause "at this or any other meeting of the Stern Faculty" be removed from the motion. The faculty voted and approved the motion.*

The faculty then voted to approve the following motion:
*Whereas:*

➢ *At its meeting of February 22, 2007 the Stern School faculty voted unanimously that "the case of Ayal Rosenthal, having plead guilty to the intent to commit securities fraud, be remanded to the Stern School's Judiciary Committee and their procedures,"*

*And Whereas:*

➢ *The panel of the Stern MBA Judiciary committee that investigated and reviewed the case of Ayal Rosenthal decided by unanimous vote that Mr. Rosenthal "is guilty of violating the Stern Honor*



PLAINTIFF'S EXHIBIT 24

*Code and Code of Conduct, namely that students are expected in all of their actions to reflect personal honesty, integrity, and respect for others,"*

*And Whereas:*

> *That same panel, as sanction, has recommended that "Mr. Rosenthal shall not be conferred a degree of Masters of Business Administration from the Stern School"*

*I move:*

> *That Mr. Ayal Rosenthal not be recommended to the NYU President and Board of Trustees for a degree of Masters of Business Administration.*

### *4. Presentation of Candidates for September 2007 graduation:*
Candidates for September 2007 graduation were presented and approved as follows:

| | | |
|---|---|---|
| Professor Tom Pugel | MBA | 201 |
| Professor Tom Pugel | Exec MBA | 64 |
| Professor Doug Guthrie | TRIUM | 39 |
| Professor Joel Steckel | Ph.D. | 11 |
| | MPhil. | 5 |
| Professor Stephen Brown | B.S. | 22 |

### *5. Introduction of New Faculty – Department Chairpersons:*
The Dean called upon the chairpersons to introduce new faculty in their departments.

Professor Frederick Choi, Chair, Department of Accounting
Tenure-track: Mary Billings

Professor Lawrence White, Deputy Chair, Department of Economics
Visitors: Valerie Bencivenga, Simon Bowmaker, James Kahn

Professor Robert Whitelaw, Chair, Department of Finance
Tenure-track: Xavier Gabaix, Yuliy Sannikov; Clinical: Anthony Marciano; Visitors: Riccardo Colacito, Raymond da Silva Rosa, John Handley, Ralph Koijen, Yoram Landskroner, Sabri Oncu, James Vickery

Professor Michael Pinedo, Chair, Department of Information, Operations, & Management Sciences
Tenure-track: Josh Reed

Professor Joseph Porac, Chair, Department of Management and Organizations
Tenured: Michael Katz; Clinical: Seth Freeman, Sonia Marciano; Visitor: Benjamin Cole

Professor Bruce Buchanan, Director, Markets, Ethics, and Law Program
Clinical: Tunku Varadarajan; Visitor: Edwin Hartman

Professor Samuel Craig, Deputy Chair, Department of Marketing
Tenure-track: Vishal Singh; Clinical: Jeffrey Carr, Anne-Laure Sellier; Visitor: Hai Che

NYU000246

Professor Irving Schenkler, Director, Management Communication Program
Clinical: Susan Stehlik, Jeffrey Younger

Dean Thomas Cooley, School-wide Appointments
Clinical: Gerald Rosenfeld

The Dean applauded the excitement and energy that the new faculty members bring to the School.

### 6. Introduction of Executives-In-Residence and Promotions – Dean Thomas Cooley:

The Dean extended his welcome to two new Executives-in-Residence – Paul Horn and Vijay Vaitheeswaran – and to three returning Executives-in-Residence: John Biggs, now in his second year as Executive-in-Residence; Chandrika Tandon, who would be playing an important role in developing Stern's global strategy this year; and, Mel Taub, now in his third year as Executive-in-Residence.

Dean Cooley acknowledged the following faculty promotions: René Caldentey promoted to Associate Professor with tenure (IOMS); Rohit Deo promoted to Full Professor (IOMS); Lasse Pedersen promoted to Full Professor (Finance); Rangarajan Sundaram promoted to Full Professor (Finance); Stephen Ryan promoted to Full Professor (Accounting); Paul Zarowin promoted to Full Professor (Accounting).

### 7. Faculty Fellowships & Research Professorships – Dean Thomas Cooley:

The Dean then drew the faculty's attention to the list of new honorific appointments which had not been announced at previous faculty meetings on their chairs. Specifically, he referenced the creation of four new Paduano Fellowships, the result of a generous gift from Dan Paduano, with the goal of engaging prominent faculty members to become part of an intellectual dialogue on issues involving Markets, Ethics, and Law. Dean Cooley announced that Doug Guthrie, Foster Provost, Batia Wiesenfeld, and David Yermack had been named Paduano Fellows and that Professor Edwin Hartman would be directing the Paduano Symposium, a conference intended to spark a research dialogue among experts on these issues. Dean Cooley emphasized the importance of this dialogue in today's marketplace and applauded the accomplishments of all honorific recipients.

### 8. Graduate Judiciary Committee Charter Revision – Dean of Students, Gary Fraser

Mr. Fraser asked the faculty to consider revising the MBA Judiciary Committee charter so that the purview of the committee would also include the Executive MBA and Stern PhD programs.

The faculty discussed the revision and then raised and approved the following motion:

*MOTION: That the committee will be renamed the "Graduate Judiciary Committee," and will expand its purview from solely Full and Part Time MBA programs to also include Executive MBA and the Stern PhD programs.*

NYU000247

*9. Undergraduate College—Dean Sally Blount-Lyon*

Dean Blount-Lyon announced that the new B.S. in Business and Political Economy had been approved by the state and will welcome its first class of students in Fall 2009. She also announced that the World Studies Track, with Professor Joseph Foudy in place as Academic Director, would begin in Fall 2008. She also mentioned that study abroad participation is expected to reach 50% this year, bringing us increasingly close to achieving our goal of providing our students with a global education.

Dean Blount-Lyon then informed the faculty that the new minor in Mathematical Analysis would be announced to students in January and that several new "inter-school" minors were in the works, explaining that we have become increasingly creative and expansive in our minor offerings by leveraging our relationships with other areas of NYU. Dean Blount-Lyon concluded by sharing photos for the design of the Concourse Project, highlighting that the design provides for a beautiful renovation of the space, bringing natural light into the lower levels of Tisch Hall and connecting the lobbies of the graduate and undergraduate schools. Dean Cooley added that if they have not already done so, faculty members should look at the wonderful renovations already been completed on the second and third floors of Tisch Hall.

*10. Dean's Report—Dean Thomas Cooley*

The Dean gave a brief summary of the past five years of progress at the Stern School, highlighting the following improvements: we have added the energy and innovation of 70 new tenured and tenure-track faculty members to our ranks (even though increasing the size of the faculty body remains a challenge for us); we have experienced a remarkable increase in research productivity; we have created a diversified portfolio of both graduate and undergraduate programs with all seats full and with a record number of applications, selectivity and yields; we have completed renovations at SUNY Purchase for the Westchester Langone program, allowing that program to open with facilities up to our high-quality standards; we have developed an innovative array of co-curricular activities which leverage our NYC location; we've built the social capital of the school, fostering a feeling of increased ownership in the School among our students, as evidenced by high participation rates in Legacy Donations; we have a vital and growing alumni function – annual fund giving is at an all-time high; and, we have new and dynamic leadership boards which include the careful reconstitution of the Board of Overseers and the creation of a Dean's Advisory Executive Board.

The Dean then announced that we have had record-breaking success with the Capital Campaign, explaining that we have raised a total of $153 million in gifts and pledges ($148.5 million in booked gifts and pledges and $4.5 million in verbal commitments). He also announced that for FY 2007, unrestricted gifts to the annual Stern Fund totaled $4.96 million, an increase of 13% over the previous year, and that the number of alumni donors has increased by 7% to 7,729. He explained that restricted and endowed gifts and pledges totaled $32 million, up 26% from last year and up 62% from the start of the capital campaign in 2001. The Dean thanked the members of the Faculty Campaign Steering Committee and our faculty for their outstanding level of support and generosity in participating in the Faculty Campaign.

The Dean then remarked that we have made major investments in IT and educational technology and have experienced great success with the remaking of our physical plant, especially with regard to the renovation of faculty offices and department space.

NYU000248

Dean Cooley then gave a report on the fiscal state of the School, noting that the School had ended the 2007 fiscal year with a surplus, allowing us to eliminate fund deficits of $2.9 million and to spend $7 million on capital projects.

The Dean then explained that our goal is to be as diversified as possible in terms of our revenue sources. He then identified non-degree Executive Education programs, the Westchester Langone program, and the Berkley Center as key components of helping to achieve this goal. He noted that our largest source of new revenue has been our non-degree Executive Education programs, which boast revenues that are up 17% over last year, and that we would explore ways of growing these programs. He also noted that the Westchester Langone program has increased our geographical footprint and that the Berkley Center, as a result of the guidance of Vice Dean Kim Corfman, now had a new and robust leadership team in place with William Baumol as Academic Director, Jeffrey Carr as Executive Director of the Entrepreneurship Program, Alexander Ljungqvist as the Director of the Entrepreneurship Research Program, and Cynthia Franklin as the Administrative Director.

The Dean then gave an update on the strategic plan, announcing that the following global teams have been organized as interest-groups: Team China-East Asia led by Dean Sally Blount-Lyon; Team India led by Vice Dean Kim Corfman; and Team EU led by Vice Dean Eitan Zemel. Dean Cooley also announced that Vice Dean Lee Sproull would handle the overall coordination of the global strategy.

To conclude his remarks, Dean Cooley brought the attention of the faculty to what he called "the impact conundrum" which is, more specifically, "How do we get the things we do to have a more visible impact upon the communities of which we are a part?" The Dean mentioned that we would be continuing to explore this question with the help of both internal and external consultants.

Dean Blount-Lyon and the faculty then thanked Dean Cooley for his five years of service to the School as Dean.

### 11. Stern Faculty Council – Professor Eric Greenleaf

Professor Greenleaf placed the following motion to be voted on by faculty members:

*MOTION: In order to fill vacancies on the P&T committee, the Dean will consult with the Faculty Council (FC) prior to making his recommendations for eligible professors with the FC. The recommendations must then be approved by a majority vote of the FC.*

The faculty voted and approved the motion.

### 12. University Senate – Professor Lawrence White

After explaining the structure and purpose of the University Senate Meetings, Professor White asked faculty members to contact himself, Professor Jeff Simonoff, or Professor Nick Economides with any issues they would like to see brought before the University Council.

The meeting was adjourned. (2:00 p.m.)

NYU000249

24



NEW YORK UNIVERSITY

# NYU STERN

LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
*Paganelli-Bull Professor of Economics
and Richard R. West Dean*

October 25, 2007

Mr. Ayal Rosenthal
98 Walnut Dr.
Tenafly, NJ 07670

Dear Mr. Rosenthal,



I am writing to inform you of my decision in the matter ref
Stern MBA Judiciary Committee, regarding your guilty ple
information charging conspiracy to engage in insider trading, based upon ,
you engaged in conscious avoidance of United States securities law. Your guilty plea was
entered in the period between the completion of the course requirements for the MBA degree
and the date for approval by the President and Trustees of the University of degrees to be
conferred on NYU students.

In December, 2006, it came to my notice that you were under investigation for charges related to
securities fraud. Although you had completed the course requirements for the MBA degree, that
degree is only awarded after the Faculty votes to recommend degree recipients to the President
and Board of Trustees for receipt of the degree.

On February 9th, 2007, in the US District Court Eastern District of New York, you allocuted the
following in submitting your guilty plea to the Honorable Judge John Gleeson:

> "[I]n or about May 2005, in a discussion about my work, I agreed to tell my brother Amir
> Rosenthal the names of two companies that were involved in a confidential acquisition
> that I was working on. I knew that my brother Amir was an active trader of securities. I
> consciously turned a blind eye to what would have otherwise been obvious to me; that
> my brother was going to trade, in violation of United States securities laws on
> information that I provided to him. I accept responsibility for my actions and am very
> sorry for what I did."

At the February 22, 2007 Faculty meeting, the faculty voted to submit your case to the MBA
Judiciary Committee. The Judiciary Committee convened a hearing on September, 2007, in
which you were given the opportunity to have your voice heard. The Judiciary Committee
rejected your contention that it lacked jurisdiction in this matter, and, taking account of the fact
that you pled guilty to conscious avoidance of securities law, it voted unanimously that you had
violated the Stern Honor Code.



PLAINTIFF'S EXHIBIT
8

NYU000040

Mr. Ayal Rosenthal
October 25, 2007
Page 2

The following sanctions were recommended:

> *Degree: Mr. Rosenthal shall not be conferred his degree of Master of Business :
> Administration from the Stern School of Business but may transfer his completed
> coursework, credits, and grades to another school that will accept them.*

> *Transcript: Immediately and prior to any transfer of coursework, credits, and grades to
> another school, Mr. Rosenthal's grade for Professional Responsibility shall be changed from
> an A to Fail (F) and the credits for this class shall not be eligible for transfer, with a notation
> added to his transcript that states: "Not transferable due to judiciary hearing.".*

In the interests of due process, I referred the Judiciary Committee's recommendations back once
more to the faculty for its approval.  At the October 3, 2007 Faculty Meeting, the Faculty voted
to approve the following motion:

> *Whereas:*

> > *At its meeting of February 22, 2007 the Stern School faculty voted unanimously that "the
> > case of Ayal Rosenthal, having plead guilty to the intent to commit securities fraud, be
> > remanded to the Stern School's Judiciary Committee and their procedures,"*

> *And Whereas:*

> > *The panel of the Stern MBA Judiciary committee that investigated and reviewed the case
> > of Ayal Rosenthal decided by unanimous vote that Mr. Rosenthal "is guilty of violating
> > the Stern Honor Code and Code of Conduct, namely that students are expected in all of
> > their actions to reflect personal honesty, integrity, and respect for others,"*

> *And Whereas:*

> > *That same panel, as sanction, has recommended that "Mr. Rosenthal shall not be
> > conferred a degree of Masters of Business Administration from the Stern School"*

> *I move:*

> > *That Mr. Ayal Rosenthal not be recommended to the NYU President and Board of
> > Trustees for a degree of Masters of Business Administration."*

As Dean of the Stern School of Business, I can accept, deny, or modify the Judiciary Committee's
recommendations.  Given that you pled guilty to a federal crime predicated upon your conscious
avoidance of securities law, offenses that were based upon conduct that took place while you were a
student at the NYU Stern School of Business, I choose to exercise my prerogative as Dean to modify
the Judiciary Committee's recommendation as follows:

NYU000041

Mr. Ayal Rosenthal
October 25, 2007
Page 3

> *Mr. Rosenthal shall not be conferred his degree of Master of Business Administration*
> *from the Stern School of Business.*

I wish to emphasize that at every stage of the proceeding, your guilty plea to conscious avoidance of
securities law has been the deciding factor in the decisions made.  The student Honor Code and the
University Code of Conduct are the bedrock of our community.  In consciously avoiding securities
law while a student at the NYU Stern School of Business, you have broken both these Codes and
broken also the trust that holds our community together.

Sincerely,

TC/ks

NYU000042