25

November 5, 2007

Ayal Rosenthal
98 Walnut Dr.
Tenafly, NJ 07670

Thomas F. Cooley
Henry Kaufman Management Center
44 West Fourth Street, 11-58
New York, NY 10012-1126

Dear Mr. Cooley,

I received a copy of your letter dated October 25, 2007. Needless to say, I find your decision unacceptable. It is based on incorrect interpretation of the school's rules and regulations, wrong factual allegations, and a severely flawed process.

In accordance with MBA Judiciary Committee Student Disciplinary Rule 7, I will file an appeal on or before December 1, 2007 (30 calendar days from the date I received of your letter).

To adequately prepare for my appeal, I respectfully request that you provide me with the following documents:

1. A copy of the charging instrument (i.e., a copy of the complaint against me) and any supporting documents;

2. A copy of all documents drafted, reviewed, and consulted by you, the Faculty, and the MBA Judiciary Committee in rendering your respective decisions;

3. A copy of the relevant NYU and Stern rules and regulations upon which your decision is based, including but not limited to, any rules and/or regulations purportedly conferring jurisdiction upon you, the Faculty, and the MBA Judiciary Committee to render a decision on this matter and recommend the sanctions imposed;

4. The names and contact information for all members of the MBA Judiciary Committee who attended the disciplinary hearing and voted on this matter;

5. The names and contact information for all members of the Faculty who attended the February 22 faculty meeting and voted on this matter;

6. The names and contact information for all members of the Faculty who attended the October 3 faculty meeting and voted on this matter;

NYU000177

7. Minutes of all meetings concerning this matter;

8. All documents concerning the decision to confer upon me a Masters of Business Administration degree, and the subsequent award of said degree on January 22, 2007;

9. All documents concerning the University's communications with any government agency regarding this matter; and

10. Any findings of fact or law that have been made by you, the Faculty, the University's Counsel, or the MBA Judiciary Committee concerning this matter.

In addition, please provide me with a list of all instances during the last 10 years where NYU has been aware that a student has been convicted of a crime while attending the University. For each instance, please specify whether the student has been disciplined by the University, and, if so, the outcome of each case.

Sincerely,

Ayal Rosenthal

cc:    Oren Rosenthal, Esq.

Leona Chamberlin, Esq.
NYU Office of Legal Counsel

NYU000178



NEW YORK UNIVERSITY

# NYU STERN

LEONARD N. STERN
SCHOOL OF BUSINESS

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
Paganelli-Bull Professor of Economics
and Richard R. West Dean

November 20, 2007

Mr. Ayal Rosenthal
98 Walnut Drive
Tenafly, NY 07670

Dear Mr. Rosenthal,

I am responding to your November 5, 2007 letter requesting copies of certain documents and other information in connection with your expressed intent to appeal from the decision of the Stern MBA Judiciary Committee.

I have considered your requests in light of the Stern Policies & Procedures applicable at the time your case was heard and specifically Section 7 of the Student Disciplinary Rules, which provides the following grounds upon which a Judiciary Committee decision may be appealed:

    i.    Any evidence of a material nature and/or witness unavailable at the time of the original hearing and now available which might have affected the Hearing Panel's decision at that time.

    ii.    Any procedural irregularity in the conduct of the hearing that was material and prejudicial to the Student.

With regard to your specific requests, you previously were provided with a copy of the Judiciary Committee's written report informing you of the charges against you, as requested in item 1 in your letter. Similarly, my October 25, 2007 letter sets forth the Judiciary Committee's findings upon which the sanction you have received is based and responds to your request in item 10. For your convenience I have enclosed additional copies of these documents.

The NYU and Stern School disciplinary rules and procedures which you request are posted on the web at www.nyu.edu/students.guide (NYU policies and procedures) and http://w4.stern.nyu.edu/scorp/committee.cfm?doc_id=4797#policies (Stern policies and procedures applicable to your case). You were present at the Judiciary Committee hearing and therefore are aware of the identities of members of the Hearing Panel. Apart from that, Stern Policies & Procedures do not entitle you to contact information for these individuals nor to the names and contact information for the members of the Stern faculty who attended the faculty meetings you have cited.

NYU000182

With regard to your remaining requests, Stern Policies & Procedures do not provide for the document discovery that you are seeking. Nor does it appear that the additional information you have requested is necessary in order for you to file your appeal on the grounds permitted under Stern disciplinary procedures, namely, the existence of previously unavailable material evidence or procedural irregularity. Accordingly, I am denying your requests, but will extend your time to file your appeal until December 14, 2007.

Sincerely,

Thomas Cooley

Enclosures

Cc: Gary Fraser, Dean of Students and Associate Dean, MBA Student Affairs

NYU000183

26



**NEW YORK UNIVERSITY**

# NYU ⚑

# STERN

LEONARD N. STERN
SCHOOL OF BUSINESS

**CONFIDENTIAL**

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, 11-58
NEW YORK, NY 10012-1126
212-998-0909
FAX: 212-995-4212
E-MAIL: tcooley@stern.nyu.edu

THOMAS F. COOLEY
*Paganelli-Bull Professor of Economics
and Richard R. West Dean*

February 19, 2008

Mr. Ayal Rosenthal                    Cc: Gary Fraser
98 Walnut Drive                       Bcc: Leona Chamberlin
Tenafly, NY 07670                           Melchior Ochoa

Dear Mr. Rosenthal:

This letter is to advise you of the disposition of your appeal of the decision of the MBA Judiciary Committee of the Stern School of Business's (the "Judiciary Committee") not to confer upon you a degree of Master of Business Administration. After carefully reviewing your appeal, I am satisfied that you have failed to demonstrate that there is any (i) "evidence of a material nature and/or witness unavailable at the time of the original hearing and now available which might have affected the Hearing Panel's decision at the time" nor (ii) "any procedural irregularity in the conduct of the hearing that was material and prejudicial" to you. Stern Disciplinary Rules § 7(a)(i)-(ii). Your appeal therefore is denied.

As your appeal asserts several grounds for overturning the decision, I will address the concerns raised in your letter below.

### I.      Jurisdiction

The appeal is primarily predicated on the claim that the adjudication was jurisdictionally flawed. Specifically, the assertion is that New York University, its Stern School of Business, the Stern School Faculty and the Judiciary Committee lacked both personal and subject matter jurisdiction in your case. Your assertion, however, is based on a misapprehension of the facts and of New York University and Stern School Codes, Policies and Procedures.

#### A.   Personal Jurisdiction

At the time the Stern Faculty filed their complaint, you were a "matriculated and continuing MBA [student]…in the full-time or part-time MBA Programs…of the Stern School of Business." Stern Disciplinary Rules § 2. Any suggestion that you were already an alumnus of the Stern School at that time is inaccurate. On February 22, 2007, the Stern Faculty determined not to certify you for the Stern MBA. Instead, the Stern Faculty voted to file the instant complaint and to remand the complaint to the Judiciary Committee. The New York University Bylaws require the Faculty of each school "to certify to the President, for recommendation to the Board, qualified candidates for degrees and certificates." NYU Bylaw 61(b). Furthermore, "[d]egrees in course are granted by the Board to candidates recommended by the President on certification by a faculty as having fulfilled the requirements for a degree." NYU Bylaw 63(a). While we regret any miscommunication around this matter, the fact remains that you had not been certified by the Faculty as mandated by the NYU Bylaws and thus remained a student subject to University-wide and Stern School jurisdiction at the time of the complaint. And as a Stern student, the Judiciary Committee's decision not to confer your degree was equivalent to expelling you from the Stern School. Stern Disciplinary Rules § 8(a)(viii).



**PLAINTIFF'S EXHIBIT**
28
11/6/09

NYU000459

### B.  Subject Matter Jurisdiction: In General

It is apparent from the New York University Policy on Student Conduct (the "University Policy") and the Stern School Code of Conduct (the "Stern Code") that the University and each of its schools – including Stern – have concurrent jurisdiction over NYU students; University Policy and University Student Disciplinary Procedures do not divest a school of jurisdiction to discipline its students unless the matter impacts more than one school.  As the University Policy states: "[e]ach faculty has the duty of enforcing not only its own rules of conduct but also, in appropriate cases, the University rules of conduct established by the Senate under the authority granted to it by the University Bylaws."  University Policy § 6.  Moreover, students affirm that they have read and understand the Stern Student Code, which states "[c]onduct that violates the Code may be subject to both School or University discipline and/or public sanctions as circumstances may warrant."  While the University-wide and school level policies and procedures often overlap – for example, both permit any member of the faculty to file a complaint against a student for a perceived offense – students within a given school are subject to both disciplinary regimes.  Student Disciplinary Procedures § II.A; Stern Disciplinary Rules § 4(a).  Specifically, "[b]ehavior which jeopardizes the health or safety of the University community, or disrupts the educational activities and supporting services of the University, is subject to review and possible penalty in accordance with the procedures and practices of the University *and* its colleges, schools, or divisions."  University Policy § 2 (emphasis added).

### C.  Subject Matter Jurisdiction: Violations of Federal Law

The Stern School has developed a set of procedures and practices that reinforce the University Policy's statement that a student may be disciplined when the student's criminal conviction "seriously affects [the student's] position as a member of the academic community."  University Policy § 2.  Namely, under the authority delegated by the Stern Faculty, the Judiciary Committee has jurisdiction over "violations of federal, state or local laws."  Stern Disciplinary Rules § 2(iii).  As you may know, private educational institutions have broad authority to discipline students according to their own policies and procedures.  In this case, the Stern Faculty has recognized the nexus between being a law-abiding citizen and behaving ethically in business dealings and the Stern School's Disciplinary Rules embody this principle.  While every violation of the law does not come before the Judiciary Committee, the Stern community is not required to turn a blind eye to student "indiscretions," especially when the violation of the law involves a business transaction.

## II.     Rights & Obligations of the Accused

The Stern Disciplinary Rules outline students' rights and obligations in relation to adjudicating complaints.  Specifically, a student may "consult with an adviser of his or her own choosing to assist in the preparation of the Accused's defense."  Stern Disciplinary Rules § 6(g).  A student also "has the right to be present during all witness testimony and the right to challenge witness testimony as appropriate."  Stern Disciplinary Rules § 6(d).  Furthermore, a student "has the right to have the Chair request presence of a reasonable number of witnesses on his or her behalf."  Stern Disciplinary Rules § 6(e).  It appears that you took advantage of the adviser option in preparing a statement to challenge the complaint and consulted with your counsel prior to the hearing.  While your counsel was not permitted to accompany you into the hearing room, the primary purpose of permitting counsel to attend hearings is to enable counsel "to examine and cross-examine each witness either by putting questions directly to the witness, or by asking questions through members of the hearing body."  Student Disciplinary Procedures § II.D.3.  In contrast to a state or federal adjudicatory body, neither the University nor the Stern policies and procedures mandate that the counsel must be allowed to present the student's case; the only active role of counsel is to interrogate witnesses.  As you are aware, you did not request witnesses to attend the hearing

NYU000460

on your behalf, and your allocution in federal court obviated the need to summon witnesses to your crime. The Faculty complainants were not required to retry the government's case. As your guilty plea and allocution were crucial in the Judiciary Committee determination, I find that the absence of counsel during the hearing was neither "material" nor "prejudicial."

It should be noted that a student does not have a right to modify or amend the complaint; the purpose of the hearing is to determine the veracity of the complaint. Regardless of any references to an "insider trading scheme" in the initial complaint, the Judiciary Committee took into account your statement regarding the factual errors in the complaint. As my October 25, 2007 letter made clear, the basis for not conferring your degree was not your alleged involvement in an "insider trading scheme," but your guilty plea and allocution before U.S. District Judge John Gleeson to "conscious avoidance of securities law."

### III.    Violation of the Stern Codes

#### A.    Standard of Proof

Under the Stern Disciplinary Rules, "the accused is presumed innocent until proven guilty by standard of beyond a reasonable doubt." Stern Disciplinary Rules § 5(h). As you are aware, the issue before the Judiciary Committee was whether or not you violated the Stern and/or University Codes. Once you pled guilty in federal court, the scope of the Judiciary Committee's inquiry was limited to evaluating the admitted behavior in light of rules to which NYU and Stern students are bound. Your guilty plea has been the determining factor throughout this process and the decisions made; your own admission rebuts any presumption of innocence. Although the Judiciary Committee may have been convinced that your conviction damaged the Stern School, it was not required to adjudicate this issue, and any representations to the contrary should be disregarded.

#### B.    Violation of the Code of Conduct

The Stern Code of Conduct states that "students are expected in *all* of their actions to reflect personal honesty, integrity, and respect for others." While the statement is broad, it is not merely "aspirational" – it encompasses the Stern School's philosophy that its students – as future business leaders – have an obligation to adhere to these principles in their behavior. As a former Teaching Fellow for Professional Responsibility, you should be aware that this philosophy is reflected even in the curriculum as the Stern School has made business ethics a central and integral component of its business education program. It is undisputed that you pled guilty to "conscious avoidance" of the securities laws and admitted to sharing confidential information with your brother, an active securities trader. Your crime – an offense under United States securities laws – also violates the Stern Code. Moreover, conferring your MBA degree would undermine the Stern School's position as a moral authority on business ethics and the integrity of a Stern degree.

#### C.    Violation of the Honor Code

Similarly, the purpose of the Stern Honor Code is "to express a commitment to promote principles of honesty, integrity and trust among Stern students…each student is asked to commit to *the principles* of this Honor Code and, by signing the Honor Code, agrees to abide by the Code" (emphasis added). It is irrelevant whether you committed any of the enumerated offenses such as lying, cheating, or stealing. The Stern Honor Code states "[t]his list is not inclusive, and is included for illustrative purposes." It is beyond dispute that you did not adhere to its principles. Moreover, your violation of the Stern Code of Conduct was a sufficient basis upon which to expel you.

### IV.    Faculty Behavior

NYU000461

Under the Stern Disciplinary Rules, the Chair may appoint a Committee member to serve as "pre-hearing counsel" – at the student's request – to discuss the judiciary rules and process. Stern Disciplinary Rules § 6(h). Without conceding the veracity of your complaints, your statements regarding Professor Rachel Kowel's "bias" are without merit as nothing in the rules required Professor Kowel to "serve as an impartial advisor." Indeed, Dean Fraser is the Judiciary Committee's sole formal advisor.

While Stern Faculty may have relied upon any of the numerous public reports – the New York Times, Wall Street Journal, the SEC Press Release – as a basis for academic discussions on professional responsibility, such discussions were not improper. Only the Hearing Panel has an obligation of confidentiality regarding the proceedings. Stern Disciplinary Rules § 4(f).

V.     *Outstanding Issues*

The other issues that you raise reference University Student Disciplinary Procedures, which are either inapplicable or have been misapprehended. Specifically, the Vice President for Student Affairs is required to meet with students and resolve the matter with the student's consent only in cases subject to University Senate Jurisdiction. Student Disciplinary Procedures § I.E.2. Under the Student Grievance Procedures, the burden is on the student to file a formal complaint raising his grievances; we are not aware of any formal complaint in this regard. Student Grievance Procedure § III. The Stern Disciplinary Rules do not require that students receive notice of the complaint within 48 hours, nor do the Rules require that students be notified of the Office of Legal Counsel's decision regarding jurisdiction. Stern Disciplinary Rules §§ 2 & 4. The Office of Legal Counsel determined that jurisdiction was proper in your case.

Finally, I want to reemphasize that private educational institutions have broad authority to discipline students according to their own policies and procedures and in accordance with their stated values. "The Stern community believes that honesty and integrity are qualities necessary for rewarding academic and professional experiences." Stern Honor Code. Based on your actions, you have demonstrated a lack of integrity and a complete disregard for the values that hold our community together. The decision not to confer your Masters of Business Administration degree was not only not "a draconian penalty," but a necessary step in restoring balance to the Stern community and well within the Stern School's rights. Accordingly, I am denying your appeal.

Sincerely,

Thomas Cooley

Cc: Gary Fraser, Dean of Students and Associate Dean, MBA Student Affairs

27

# CERTIFIED TRANSCRIPT

1

www.veritext.com

email: info@veritext.com

VERITEXT

National Deposition & Litigation Services

1

2   UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

3   Index No. 08-CV-5338 (LAK)

- - - - - - - - - - - - - - - - - - x

4   AYAL ROSENTHAL,

5                    Plaintiff,

6        - against -

7   NEW YORK UNIVERSITY, NEW YORK UNIVERSITY

LEONARD N. STERN SCHOOL OF BUSINESS, and

8   THOMAS F. COOLEY, RICHARD R. WEST, Dean

of the LEONARD N. STERN SCHOOL OF

9   BUSINESS,

10                   Defendants.

11

- - - - - - - - - - - - - - - - - - x

12

                 November 6, 2009

13               10:14 a.m.

14

15       DEPOSITION of THOMAS COOLEY, a Defendant

16   herein, taken by the Plaintiff, pursuant to

17   Notice, held at 11 Broadway, New York, New York,

18   before Kim Auslander, a Notary Public of the

19   State of New York.

20

21

22

23

24

25

59

T. COOLEY

Q.      Why did you copy Naiome
Diamant?

A.      Because I copied her on all
important matters, and she is the one that
creates the agenda for the vice Dean's
meeting.

This is to notify her that this
was going to be scheduled as an agenda item.

Q.      Looking at your response to
Bruce Buchanan, the third sentence says:

If we haven't awarded his
degree we may wish to withhold it.  Do you
see that?

A.      Yes.

Q.      Do you remember writing that?

A.      Yes.

Q.      Why would you wish to withhold
it?

A.      Because he is in violation of
the Stern Code of Conduct.  That is the
immediate thought, was we should stop and
think about this, whether we want to award
a degree to a person who has pled to a
felony violation of securities laws.

141

T. COOLEY

MS. KILSON:  In responding to the question, I caution you not to disclose any advice you may have received from legal counsel.

I think you can respond to that question without making such a disclosure.

A.      Is the question did I discuss it with anyone in legal counsel?

Q.      Yes.

A.      Yes.

Q.      Who did you speak to over there?

A.      To be honest, I don't recall. I think Lee Chamberlain.

Q.      Did you teach or include the Rosenthal case in a Professional Responsibility class you taught on or about March 20?

A.      I included an article from the Wall Street Journal about it in our discussion about insider trading.

Q.      Why did you do that?

A.      Because it was a very public,

142

T. COOLEY

open issue where insider trading took place

and a Stern person was involved in it.

    Q.      Why do you say --

    A.      It was very prominently

featured in the Journal.

    Q.      The Wall Street Journal?

    A.      Yes.

    Q.      The fact that a Stern School

person was involved?

    A.      The fact of the case, the fact

that the family was involved.

    Q.      Was there anything in the

public reports about the case that

indicated that a Stern School student was

involved?

            MS. KILSON:  Objection to

    form.

    A.      I can't say.

    Q.      Did you ever see anything, any

article, read any report that was publicly

available --

    A.      I don't recall.

    Q.      Do you recall whether it said

that in the complaint against

143

T. COOLEY

Mr. Rosenthal?

    A.       I don't recall.

    Q.       Do you recall whether it was
in the plea allocation when he plead
guilty?

    A.       I don't recall.

    Q.       Had any student talked to you
about Mr. Rosenthal?

    A.       No.

    Q.       After the class did any
students talk to you and say oh, I know who
that guy is?

    A.       No.

    Q.       Were you concerned that
teaching that might inform people who might
be involved in the judiciary committee
process of the case?

    A.       It was public information, so
they would have -- assuming that they read
the Wall Street Journal we give them every
day, they would have known about it anyway.

    Q.       How did the Stern School
figure out that the Ayal Rosenthal in the
complaint who was not referred to as being

144

T. COOLEY

1   associated with the Stern School was in

2   fact a Stern School student?

3   

4       A.      He was acting as a teaching

5   assistant for a course in markets, ethics

6   and law, and Bruce Buchanan who brought the

7   matter to my attention heads that area, so

8   undoubtedly he recognized the name.

9       Q.      Do you know if he did anything

10  to figure out whether it was the same

11  person?

12      A.      I have no idea what he did.

13      Q.      Do you recall a class

14  discussion of the case?

15      A.      At best imperfectly.

16      Q.      Was there any discussion about

17  whether Mr. Rosenthal behaved improperly?

18      A.      Was there discussion about

19  whether he pled to felony violation of

20  securities laws?  Yes.

21          MR. HERNSTADT:  Read the

22      question back.

23          (Record read back.)

24      A.      Yes.

25      Q.      Was there any discussion about

145

T. COOLEY

1

2      punishment of somebody who violated

3      securities laws?

4           A.        Not that I recall.  Excuse me.

5      Let me go back.  In the class we do talk

6      about punishment, about what sentencing is

7      like for people who violate securities laws

8      and what the consequences are, we talk

9      about in general.  We did not talk about

10     his case.

11          Q.        Do you remember whether you

12     talked about it in connection with his

13     case?  I understand that's generally

14     something that comes up, but do you recall

15     specifically?

16          A.        No.

17          Q.        Do you remember if you said

18     anything to any of the students about

19     Mr. Rosenthal being someone who was at the

20     Stern School?

21          A.        Yes, I did.

22          Q.        You told the students that he

23     was a Stern School student?

24          A.        Yes.

25          Q.        Why did you do that?

146

T. COOLEY

1

2      A.      Because it was the truth.

3      Q.      But it wasn't in the article,

4  was it?

5      A.      What does that matter?

6      Q.      Was there any other reason why

7  you told the class that the person in the

8  article was a Stern School person?

9      A.      Because I believe that it was

10 a good example that being exposed to these

11 discussions doesn't necessarily teach you

12 how to behave properly.  Some people are

13 too, you know, too unethical to benefit

14 from what we teach in the class.

15     Q.      Did you discuss or was there a

16 discussion about the appropriate reaction

17 of the Stern School to one of its students

18 pleading guilty to a securities violation?

19     A.      I believe there was a

20 discussion, yeah.

21     Q.      Tell me as best you recall.

22     A.      I don't remember the whole

23 discussion.

24     Q.      Tell me as best you recall in

25 sum and substance what the discussion

147

T. COOLEY

2  included.

3       A.       I believe, you know, the

4  discussion was about how we react in

5  situations like that.  I don't remember the

6  discussion so I am not going to speculate

7  on what happened.

8       Q.       Fair enough.  I don't want you

9  to speculate, but I am entitled to your

10  best recollection.

11       A.       I just gave it to you.

12            MR. HERNSTADT:  Could you read

13       it back?

14          (Record read back.)

15       Q.       What did you say about how we

16  react?  We, being the Stern School; is that

17  correct?

18       A.       Yes.

19       Q.       So what did you say about how

20  the Stern School reacts in such a

21  situation?

22       A.       I don't recall.

23            MS. KILSON:  Objection.

24       A.       I don't recall what I said

25  exactly.

148

T. COOLEY

Q.      Generally.

A.      I don't recall.  You are asking about a specific class, and I don't recall what I said in that class.

Q.      I am not asking you the exact words.  I am asking if you remember the substance of what you said, to tell me what the substance of what you said was.

MS. KILSON:  Objection to form.

A.      I don't remember.

Q.      Do you remember anything that any students said?

A.      No, I don't.

MS. KILSON:  I don't want to interfere with your line of questioning, but I am noting it's after 1:00 p.m.  At an appropriate time we should take a lunch break.

MR. HERNSTADT:  I have a few more questions on this, then we will take a break.

Q.      Do you know if any of the students in that class were on the

149

T. COOLEY

1   judiciary committee?

2       A.      I don't.

3       Q.      Did you know that at the time

4   you taught that class that Mr. Rosenthal

5   had not yet been informed of the complaint

6   against him?

7               MS. KILSON:   Objection to

8       form.

9       A.      No.

10      Q.      I think you said earlier that

11  your understanding is that he was told

12  about the complaint in April or May.

13      A.      Yes, correct.

14      Q.      You taught this class in

15  March?

16      A.      Well, I don't remember what

17  date that particular class took place where

18  we had that discussion.  I don't recall

19  that.

20      Q.      Was that something you thought

21  about in terms of telling the class,

22  identifying that the Ayal Rosenthal in the

23  securities complaint was a Stern School

24  student?

150

T. COOLEY

Did you consider whether or not
Mr. Rosenthal even knew that there had been
a complaint filed against him?

A.      No, I didn't know.

Q.      Did you teach or did you
include the Rosenthal case in more than one
class in your Professional Responsibility
class?

A.      Not that I recall, although I
do know it's been discussed in another
class, in another course.

Q.      What class or course was that?

A.      There's an undergraduate class
called Business and its Publics.

Q.      Do you know who teaches that
class?

A.      A woman named Batia
Wiesenfeld.

Q.      How do you know that the
Rosenthal case was taught in that class?

A.      I don't know.  It's taught as
a case.  I know it's mentioned as a
subject.

Q.      How do you know that?