28

**CERTIFIED TRANSCRIPT**

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-CV-5338 (LAK)

- - - - - - - - - - - - - - - - - - - x

AYAL ROSENTHAL,

                    Plaintiff,

        - against -


NEW YORK UNIVERSITY, NEW YORK UNIVERSITY

LEONARD N. STERN SCHOOL OF BUSINESS, and

THOMAS F. COOLEY, RICHARD R. WEST, Dean

of the LEONARD N. STERN SCHOOL OF

BUSINESS,

                    Defendants.

- - - - - - - - - - - - - - - - - - - x


                    January 12, 2010
                    1:28 p.m.



    DEPOSITION of TIM COLVEN, a non-party

Witness herein, taken by the Plaintiff,

pursuant to Notice, held at 11 Broadway,

New York, New York, before Kim Auslander,

a Notary Public of the State of New York.

www.veritext.com
email: info@veritext.com

VERITEXT
National Deposition & Litigation Services

16

T. COLVEN

1

2     A.        That was either an election by

3     the members -- I think it was an election

4     by the members of the committee.

5         Q.        When did you become the chair

6     of the judiciary committee?

7         A.        When the preceding chair left,

8     which would have been when she graduated,

9     so started end of my first, beginning of my

10    second year.

11        Q.        Sometime between May and

12    September of 2005 or 2006?

13                MS. KILSON:   Off the record.

14            (Discussion held off the record.)

15            (Record read back.)

16        A.        It's probably April, May, as

17    opposed to May, September.

18        Q.        That would be 2006?

19        A.        2006.

20        Q.        Who was the vice chair of the

21    judiciary committee when you were the

22    chair?

23        A.        Amy Margolis.

24        Q.        During the time that you were

25    the chair of the judiciary committee, other

33

T. COLVEN

A.      Okay.

Q.      Then under B it says, Upon
receipt of a complaint, the chair shall
select an investigative committee comprised
of two student committee members within two
academic days.

         Do you recall if you followed
that procedural directive?

         MS. KILSON:  Objection, form.

         Are we talking about in this
    case?

         MR. HERNSTADT:  Yes.

Q.      In the case of Ayal Rosenthal.

A.      I guess what I would say is --
just say the question again.  I'm sorry.

Q.      I am asking if you recall
whether you followed that procedural
directive in the case of Ayal Rosenthal.

A.      I would say I didn't do the
case of Ayal Rosenthal, so I would say I
didn't follow that or any other directive
really.

Q.      Did you participate in the
Rosenthal case at all?

80

T. COLVEN

1

2      Q.      Do you know who he is?

3      A.      The person in the case, but I

4  don't think I have ever talked to him.

5      Q.      Did you know who he was before

6  this case came up?

7      A.      I don't think even today I

8  would recognize him if I saw him on the

9  street.

10     Q.      Is there any reason why you

11 didn't inform Ayal Rosenthal of the

12 complaint against him?

13     A.      Well, it hadn't gotten far

14 enough along that I informed anybody about

15 anything.

16     Q.      Was it normal that it would

17 take so long to look into a complaint

18 against a student?

19              MS. KILSON:  Objection, form.

20     A.      A typical case takes less long

21 than this case took, yes.

22     Q.      Referring you again to

23 Exhibit 7, there is a requirement of an

24 investigation and then an investigative

25 report.

81

T. COLVEN

        Do you know if there was ever

an investigation or an investigative report

done in connection with the Ayal Rosenthal

case?

    A.      I don't know.  It would have

been after my time, but I don't know.

    Q.      Do you know why the deadline

wasn't followed in the case of Ayal

Rosenthal?

            MS. KILSON:  Objection, form.

    Q.      The deadline I am referring to

is on page 7.

    A.      I don't think the deadline

applied.  I don't think the case had been

taken in by the Judiciary Committee.  I

don't know at what point the Judiciary

formally took the case.

        At that point that would have

been the following year.  I have no idea

whether it was along the timeline it was

supposed to be or not.

    Q.      Looking at page 7 of 12 of

Exhibit 7 under procedure, which is section

four, looking at B it says, Upon receipt of

29

www.veritext.com
email: info@veritext.com

VERITEXT
National Deposition & Litigation Services

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Index No. 08-CV-5338 (LAK)

**CERTIFIED TRANSCRIPT**

- - - - - - - - - - - - - - - - - - - - - - -x

AYAL ROSENTHAL,.

                    Plaintiff,

            -against-

NEW YORK UNIVERSITY, NEW YORK UNIVERSITY

LEONARD N. Stern School OF BUSINESS and

THOMAS F. COOLEY, RICHARD R. WEST, DEAN of

the LEONARD N. STERN SCHOOL of BUSINESS,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - -x

                    11 Broadway

                    New York, New York

                    December 18, 2009

                    10:10 a.m.


        DEPOSITION of MELCHIOR OCHOA, taken

by the Plaintiff, in the above-entitled action,

held at the above time and place, pursuant

to Notice, taken before Jo-Anne Bodkin, a

Notary Public within and for the State of

New York.

1                  Melchior Ochoa              46

2    as an unbiased and fair chair, looking at

3    both sides of the matter, I had an

4    obligation to follow up on that reference.

5            Q    How did you become the chair of

6    the judiciary committee?

7            A    I was a leader in multiple

8    clubs, so -- I'm fuzzy on the selection

9    process for those clubs --

10           Q    Right.

11           A    -- so I don't recall.

12           Q    Do you remember if you were

13   selected by Mr. Colvin or by the outgoing

14   members of the judiciary committee?

15           A    I believe it was a selection by

16   the outgoing members.

17           Q    Do you recall if there was an

18   election of MBA students that led to your

19   being named the chair of the judiciary

20   committee?

21           A    What sort of election?

22           Q    Any election.  Like some kind

23   of election by the MBA students.

24           A    No, not the general MBA student

25   body.

Melchior Ochoa                          47

1

2          Q       What are the SCORP elections?

3                  MS. KILSON:  Objection.

4                  Form.

5          A       The SCORP elections are

6    elections for officers in the SUNY

7    government.

8          Q       And were you elected chair of

9    the judiciary committee in the SCORP

10   elections?

11         A       There was no position at that

12   time elected on the ballot.

13         Q       Do you know if Dean Fraser

14   selected you as chair of the judiciary

15   committee?

16         A       He did not.

17         Q       You know that he did not?

18         A       Yes.

19         Q       You chuckle when you say that.

20   Is that amusing for some reason?

21         A       It is amusing, because I would

22   not allow that personally.

23         Q       Is Dean Fraser the faculty --

24   withdrawn.

25                 Is Dean Fraser the Stern School

```
                        Melchior Ochoa                  116
 1
 2           A      Okay.
 3           Q      My question is:  Do you know
 4    whether the Office of Legal Counsel
 5    opined --
 6           A      No, I do not.
 7           Q      -- as to matter of jurisdiction?
 8           A      I do not know.
 9           Q      Was an investigative committee
10    ever formed in connection with the Rosenthal
11    matter?
12           A      No.
13           Q      Was a report from the
14    investigative committee created within seven
15    academic days after being formed?
16           A      Where are you referencing?
17           Q      Well, 6C:  The accused will
18    receive a copy of the investigative
19    committee's written report no later than
20    three academic days prior to the hearing.
21           A      So he received a written report
22    no later than three academic days prior to
23    the hearing.
24           Q      Right.
25           A      Yes.
```

1      Melchior Ochoa                    120

2           improper.

3                MS. KILSON:   It is beyond

4           pointless.

5      Q     You can answer.

6                MS. KILSON:   It is a waste

7           of time.

8      A     Again, because he pleaded

9  guilty in a court of law and that was what

10 was within the complaint, and the committee

11 is for fact finding and recommending only to

12 determine the -- what the complaint consists

13 of, this case was pushed to a hearing.

14     Q     Okay.

15           So my question was a simpler

16 question.

17           No investigative committee was

18 formed, correct, in the case of Mr. Rosenthal?

19     A     No.

20     Q     And that was no, no committee

21 was formed?

22     A     No committee was needed to be

23 formed for this case.

24     Q     And, therefore, none was,

25 correct?

Melchior Ochoa                    121

1

2          A     Yes.

3          Q     And do you see where it says

4    that the investigative committee shall

5    submit its written report within seven

6    academic days?

7          A     Yes.

8          Q     Was that done in the case of

9    Mr. Rosenthal?

10                    MS. KILSON:   I'll

11                stipulate that because there

12                was no committee, there was no

13                report.

14         Q     Is that correct?

15         A     Correct.   Since there was no

16   committee, there was no report.

17         Q     And it says that the role of

18   the investigative committee is that of fact

19   finding and recommending further action is

20   necessary.

21         A     That is what is written.

22         Q     And is it your testimony that

23   because Mr. Rosenthal pleaded guilty to a

24   felony, no additional fact finding other

25   than that particular fact was necessary in

Melchior Ochoa                    123

1
2   has a right to be accompanied by counsel or
3   an advisor.
4           Do you see that?
5       A    Yes.
6       Q    Was Mr. Rosenthal permitted to
7   be accompanied by counsel at the hearing
8   that was conducted in September 2007?
9       A    So I believe this was an error
10  on my part, because I don't know if this is
11  in the polies and procedures.
12      Q    Okay.
13          I mean, my question is simply:
14  Was he permitted to have counsel at the
15  hearing?
16      A    According to the policies and
17  procedures on the day of the hearing, it
18  states that he's not allowed to bring in
19  legal counsel.
20      Q    Okay.  Why don't we get to that
21  actually after my question.
22          My question was:  Was he
23  permitted to have counsel at the hearing?
24      A    According to the polies and
25  procedures, he was not permitted to counsel.

Melchior Ochoa                          124

1

2          Q      Did he have counsel at the

3   hearing?

4          A      No.

5          Q      And was he prevented from

6   having counsel at the hearing by the

7   judiciary committee?

8          A      Yes.  By the policies and

9   procedures.  The policies and procedures state

10  that he cannot bring in counsel.

11         Q      Where does it say that?

12         A      It can it say that he, I believe -- so

13  6G --

14         Q      Right.

15         A      -- I believe it is, he may

16  consult with an advisor of his or her own

17  choosing.

18         Q      And you understand that to mean

19  that he is not permitted to have counsel at

20  the hearing?

21         A      Right.

22                MR. HERNSTADT:  Why don't

23                we take a short break.

24                (Whereupon, a luncheon

25                recess was taken.)

1                    Melchior Ochoa                139

2      rules.

3              A      Can you just refer to the

4      exhibit?

5              Q      Sure.  Exhibit 7, these rules

6      in Plaintiff's Exhibit 7, the polies and

7      procedures, the student disciplinary rules

8      of the Stern School.

9                    Do you recall if --

10             A      I don't remember if they were

11     printed out for everybody there.

12             Q      Do you recall if the Stern

13     School honor code, a copy of the honor code

14     was available?

15             A      I don't remember if they were

16     printed out for everyone, no.

17             Q      Do you recall if the NYU

18     disciplinary rules were available during the

19     deliberations?

20             A      Because we were following the

21     policies and procedures under this --

22                    MS. KILSON:  Referring to

23                    Exhibit 7.

24             A      -- Exhibit 7, and the judiciary

25     committee in its deliberations decided that

```
                    Melchior Ochoa              140
```

1    the jurisdiction falls within this and this

2    alone --

3         Q     Referring to Exhibit 7?

4         A     Exhibit 7.

5               -- and that was the judiciary

6    committee's decision, we were not following

7    the NYU policies, the larger NYU policies.

8               This was an independent use of

9    these policies and procedures since we are

10   directed by these as the judiciary

11   committee.

12        Q     And "these" being again --

13        A     Exhibit 7 --

14        Q     -- Exhibit 7?

15        A     -- the polies and procedures

16   for the MBA judiciary committee that we were

17   following.

18        Q     I take it that means that a

19   copy of the NYU disciplinary rules were not

20   used during the deliberations?

21        A     I don't know.  I can't assume

22   that.  But I know that this is what we were

23   following, Exhibit 7, the polies and

24   procedures.  We felt that this was our

Melchior Ochoa                    141

1   jurisdiction.  And because we were a

2   committee abiding by these and created from

3   these, this is what we were using as our

4   policies and procedures, and that's --

5   that's how we proceeded.

6              We did not refer to the larger

7   NYU rules or procedures or anything like

8   that.

9       Q      Okay.

10             And "this" and "these" in

11  you're your previous answer --

12      A      Exhibit 7, the policies and

13  procedures, the honor code and code of

14  conduct for the Stern School as they pertain

15  to the MBA for graduate judiciary committee.

16      Q      And at the conclusion of

17  deliberations, what happened?

18      A      A vote, seven/zero, stating

19  that the things that I laid out in the

20  summary, that this was the jurisdiction of

21  the graduate judiciary committee or MBA

22  judiciary committee at the time, that we

23  were following this and nothing else,

24  provided by the Exhibit 7, nothing else

```
 1                    Melchior Ochoa           148
 2     jurisdiction as it relates to the judiciary
 3     committee's ability to hear and rule on this
 4     matter.
 5          A    Yes.
 6          Q    Can you state as concisely as
 7     possible what the question of jurisdiction
 8     was?
 9                    MS. KILSON:  Objection.
10                    Form.
11          Q    You can answer.
12          A    So the question of jurisdiction
13     was what I stated here in the May 20th
14     document, as I alone was trying to figure
15     out where jurisdiction resides as I was
16     going through these multiple documents.  And
17     so it was more of an exercise of me getting
18     up to speed on the due process.
19                    And in that May 20th document,
20     the due process section, it was much more of
21     an appendix of these are the things that I
22     am finding.  But ultimately it's the
23     decision of the judiciary committee how
24     jurisdiction is dealt with.  And that's what
25     I wanted to leave open ended in the May 20th
```

```
1                      Melchior Ochoa                    149

2     document.

3          Q      Did the question of

4     jurisdiction include a question of whether

5     Stern School or NYU rules applied?

6                      MS. KILSON:   Objection.

7                      Form.

8          A      Yes.

9          Q      And then looking at the second

10    page, the first full paragraph that begins

11    "student discipline," do you see that?

12                      It says:   Student discipline is

13    delegated by the faculty to the judiciary

14    committee.   The question of due process that

15    Mr. Rosenthal argues does not fall within

16    the NYU disciplinary procedures and/or --

17                      MS. KILSON:   NYU student

18                      disciplinary procedures.

19         Q      -- NYU student disciplinary

20    procedures and/or the statement of policy on

21    student conduct --

22         A      Yes.

23         Q      -- at NYU -- at New York

24    University.

25         A      Yes, I see that.
```

```
1                    Melchior Ochoa                150

2          Q    Due process is instead covered

3    by the judiciary committee's polies and

4    procedures.

5          A    Yes.

6          Q    So is this your conclusion that

7    the disciplinary rules set forth in

8    Exhibit 7 apply as opposed to any other

9    rules?

10                        MS. KILSON:  Objection.

11                        Form.

12          A    It was the decision of the

13   committee by a seven/zero unanimous vote

14   that the judiciary committee holds

15   jurisdiction over any other document, such

16   as the NYU student disciplinary procedures

17   or the statement of policies on student

18   conduct at New York University, that the

19   judiciary committee alone holds

20   jurisdiction, and that any due processes

21   afforded to Mr. Rosenthal comes from these

22   policies and procedures.

23          Q    And not any policies and

24   procedures under NYU rules?

25          A    We were an independent body
```

Melchior Ochoa                    151

1

2    that we had jurisdiction, and we wanted to

3    try this case based on our local set of,

4    quote/unquote, laws.

5         Q     And this was a decision that

6    was contemplated and voted on by all seven

7    members of the hearing panel?

8         A     It was contemplated by

9    extensive discussion and it was voted on.

10   And I made sure that it was voted on because

11   I did not want to make that decision alone

12   or push anyone in that direction.

13              And so the body of his peers

14   unanimously voted that this falls within our

15   local policies and procedures.

16        Q     Let me ask you to take a look

17   at what has previously been marked as

18   Exhibit 1, Plaintiff's Exhibit 1.

19              MS. KILSON:   Hold on a

20              minute.

21        Q     These are pages taken from the

22   NYU university policies and procedures,

23   Pages 224 to 231.

24        A     Yes.

25        Q     And I would like you to look at