UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AYAL ROSENTHAL,                             :
                                            :    08 Civ.  5338 (LAK)
                    Plaintiff,              :        ECF Case
                                            :
                                            :
           -v-                              :
                                            :
                                            :
NEW YORK UNIVERSITY, NEW YORK               :
UNIVERSITY LEONARD N. STERN SCHOOL          :
OF BUSINESS, and THOMAS F. COOLEY,          :
Richard R. West Dean of the Leonard N. Stern   :
School of Business,                         :
                                            :
                                            :
                    Defendants.             :
-----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS
NEW YORK UNIVERSITY, NEW YORK UNIVERSITY
LEONARD N. STERN SCHOOL OF BUSINESS, AND THOMAS F. COOLEY**

Edward Hernstadt (EH 9569)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
212-214-0307 (facsimile)

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

STANDARD OF REVIEW ........................................................................................................... 3

ARGUMENT .................................................................................................................................. 7

    I.    Plaintiff Is Entitled to Summary Judgment Because Defendants Had No Jurisdiction to Discipline Him ........................................................................................................................ 8

    II.    Plaintiff Is Entitled to Summary Judgment Because He Did Not Violate the Stern Honor Code or the Stern Code of Conduct ........................................................................ 14

    III.    Plaintiff Is Entitled to Summary Judgment Because Defendants Did Not Comply With Their Published Rules and Procedures .......................................................................... 16

    IV.    Plaintiff Is Entitled to Summary Judgment Because the Disciplinary Process Against Him Was Fundamentally Unfair .................................................................................... 25

    V.    Plaintiff Is Entitled to Summary Judgment Because the Punishment He Received Was Unauthorized, Excessive, and Unfair ................................................................... 30

CONCLUSION ............................................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**

*10 West 66th Street Corp. v. New York State Div. of Housing & Community Renewal*, 184 A.D.2d 143 (N.Y. App. Div. 1st Dep't 1992)............................................................................ 4

*Bethlehem Steel Co. v. Turner Constr. Co.*, 161 N.Y.S.2d 90 (N.Y. 1957) ................................... 3

*Castle Rock Entm't, Inc. v. Carol Publ'g Croup, Inc.*, 150 F.3d 132 (2d Cir. 1998) .................... 3

*Deen v. New Sch. Univ.*, 2007 U.S. Dist. LEXIS 25295 (S.D.N.Y. Mar. 27, 2007). .................... 6

*Downey v. Schneider*, 2005 NY Slip Op 8945, 2 (N.Y. App. Div. 2d Dep't 2005)........................ 6

*Ebert v. Yeshiva Univ.*, 780 N.Y.S.2d 283 (NY Sup. Ct. 2004) .................................................... 26

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) .................................................... 6

*Keefe v New York Law School*, 2009 NY Slip Op 52331U (N.Y. Sup. Ct. Nov. 17, 2009)........ 15

*Kelly v. Safir*, 96 N.Y.2d 32 (2001) ............................................................................................. 31

Klein v. Levin, 305 A.D.2d 316 (N.Y. App. Div. 1st Dep't 2003) ................................................ 33

*Koupash v. Board of Education*, 72 A.D.2d 885 (N.Y. App. Div. 3d Dep't 1979)...................... 30

*Lahey v. Kelly*, 71 N.Y.2d 135 (1987) ........................................................................................... 7

*Levien v. Board of Zoning & Appeals*, 64 Misc. 2d 40 (N.Y. Sup. Ct. 1970) ............................... 4

*Lloyd v. Alpha Phi Alpha Fraternity*, 1999 U.S. Dist. LEXIS 906 (N.D.N.Y Jan, 26, 1999)..... 16

*Machosky v. State Univ. Of New York as Oswego*, 546 N.Y.S.3d 513 (NY Sup. Ct. 1989) ........ 26

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986)............................................... 3

*Matter of Charles A. Field Delivery Serv., Inc.*, 498 N.Y.S.2d 111 (1985). ................................ 33

*Papelino v. Albany College of Pharm.*, 2009 U.S. Dist. LEXIS 82939 (N.D.N.Y Sept. 11, 2009). ......................................................................................................................................................... 6

*Pauling v. Smith*, 46 A.D.2d 759 (N.Y. App. Div. 1st Dep't 1974).............................................. 31

*Pell v. Board of Education*, 34 N.Y.2d 222 ................................................................................. 31

*Quercia v. NYU*, 838 N.Y.S.2d 538 (1st Dept 2007)........................................................ 32

*Radin v. Albert Einstein College of Med. of Yeshiva Univ.*, 2005 U.S. Dist. LEXIS 9772 (S.D.N.Y. May 20, 2005). ................................................................................. 6, 27

*Sabin v. State University of New York Maritime College*, 92 A.D.2d 831 (N.Y. App. Div. 1st Dep't 1983) ........................................................................................................ 5

*Seiden Assocs., Inc. v. ANC Hldings, Inc.*, 959 F.2d 425 (2d Cir. 1992)......................... 3

*Taste of Society, L.C. v. Ciffone,* 2006 WL 760270 (S.D.N.Y. March 23, 2006)............ 3

*Tedeschi v. Wagner College*, 49 N.Y.2d 652, 658 (N.Y. 1980) ....................................... 5

*Tombler v. Board of Education*, 109 Misc. 2d 821 (N.Y. Sup. Ct. 1981) ........................ 7

*Vought v. Teachers College, Columbia University*, 511 N.Y.S.2d 880 (N.Y. App. Div. 2d Dep't 1987)........................................................................................................ 5

*Ward v. New York Univ.*, 2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sept. 25, 2000)...................... 6

*Weidemann v. State Univ. of New York College*, 188 A.D.2d 974 (N.Y. App. Div. 3d Dep't 1992) ....................................................................................................................... 17

**Statutes**
NY CLS CPLR §§ 7803 ................................................................................... 3, 4

**Rules**
Fed. R. Civ P. 56(c) ....................................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................................... 1

## PRELIMINARY STATEMENT

Plaintiff Ayal Rosenthal successfully completed the Langone program for a Masters in Business Administration ("MBA") at the Leonard N. Stern School of Business ("Stern" or the "Stern School") of New York University ("NYU"), completing all required coursework with a 3.475 grade average. On February 8, 2007, some six weeks after he finished his last Stern School class, Rosenthal pled guilty to a federal crime, conscious avoidance of federal securities law. As a result of that guilty plea, the Stern School faculty, led by Stern School Dean Thomas F. Cooley ("Cooley"), filed a faculty complaint against Rosenthal and sent it to the Stern School Judiciary Committee to be investigated and, if a violation of the Stern School rules was suspected, subjected to a disciplinary hearing.

The matter should have been terminated in the Judiciary Committee upon receipt, because under the bylaws and unambiguous procedures promulgated by NYU, the Stern School had not been granted the jurisdiction to pursue a disciplinary action against Rosenthal for his criminal conduct, which was indisputably off-campus and entirely unrelated to NYU, the Stern School, or any of its academic or other affairs. Instead of dismissing the complaint, however, Dean Cooley and several other Stern School deans were determined to prevent Rosenthal from receiving his MBA degree, even though Rosenthal had fulfilled every requirement for that degree, and actively interfered in the proceedings of the purportedly independent Judiciary Committee. At the same time, the Judiciary Committee members, advised by Stern School Dean of Students Gary Fraser, were denying to Rosenthal virtually every due process and procedural protection provided Rosenthal by both the NYU Student Disciplinary Procedures and the Stern School Student Disciplinary Rules.

1

Defendants' conduct in proceeding against Rosenthal, when there was no jurisdiction – and thus no right – to do so under clear and unambiguous NYU procedures, constitutes a blatant breach of the contract that is implied between any student and his/her university. Moreover, assuming for the purposes of this motion that jurisdiction did exist with respect to the complaint, which it did not, defendants' concerted and overwhelming denial of virtually every vital due process protection afforded to him under University procedures also breaches the contract between NYU and Rosenthal. Finally, defendants conduct was undertaken without or in an excess of jurisdiction, was arbitrary and capricious or an abuse of discretion with respect to the process utilized, the results reached, or the punishment meted out. This resulted in a determination and a punishment that was not, on the entire record, supported by substantial evidence and was undertaken without or in an excess of jurisdiction. As such, plaintiff is entitled to relief under New York CPLR Article 78.

Defendants' breaches of their fundamental obligations to Rosenthal under their own published procedures and rules is undeniable and not subject to any disputed material question of fact. Accordingly, for the reasons demonstrated below, Rosenthal is entitled to summary judgment on his claims as a matter of law, and judgment should be entered in his favor.

## STATEMENT OF FACTS

The relevant facts are set forth in Plaintiff's Local Rule 56.1 Statement of Undisputed Facts filed in support of this Motion ("Pl. 56.1"). The key facts concerning each instance of breach of contract and Article 78 violations at issue in this Motion are summarized in the corresponding sections of the Argument.

## STANDARD OF REVIEW

### *Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see, e.g., Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). Once the plaintiff makes the required showing, the burden shifts to the defendant who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). To defeat a summary judgment motion, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in the original).

In a contract dispute, summary judgment is proper where "the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *Taste of Society, L.C. v. Ciffone,* 2006 U.S. Dist. LEXIS 13142, *4 (S.D.N.Y. March 23, 2006) (McMahon, J.); *See also Nycal Corp. v. Inoco P.L.C.*, 988 F. Supp. 296, 299 (S.D.N.Y. 1997) (Kaplan, J.) ("summary judgment is appropriate in a contract interpretation dispute whenever there is no genuine issue of fact"). Contract language is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Taste of Society, L.C.*, 2006 U.S. Dist. LEXIS 13142, *4. (citation omitted). "The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Seiden Assocs., Inc. v. ANC Hldings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 161 N.Y.S.2d 90, 93 (N.Y. 1957)).

3

Similarly, Article 78 claims are particularly well-suited to be decided by the court on summary judgment. *See Levien v. Board of Zoning & Appeals*, 64 Misc. 2d 40, 41 (N.Y. Sup. Ct. 1970) ("An article 78 proceeding is a special proceeding intended to be summarily decided upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised and to be tried forthwith if a triable issue is raised." (citations and quotations omitted.)); *see also 10 West 66th Street Corp. v. New York State Div. of Housing & Community Renewal*, 184 A.D.2d 143, 148 (N.Y. App. Div. 1st Dep't 1992) ("[w]here no triable issue of fact is raised, a summary determination is appropriate based on the pleadings, papers and admissions in accordance with the standards for granting summary judgment.") (citations and quotations omitted).

As demonstrated below, NYU has published detailed rules and procedures, passed by the University Senate in accordance with the relevant University Bylaws, that establish defendant's obligations to plaintiff Rosenthal. *See* Pl. 56.1, ¶¶ 13-40. At the same time, there is no contention that Rosenthal satisfied all of his obligations to the University, with the sole exception that defendants' allege that his guilty plea to conscious avoidance of federal securities law was a violation of Stern School rules justifying defendants' refusal to confer upon him an MBA degree. Pl. 56.1, ¶¶ 10-11. In reality, it is clear beyond peradventure that under NYU's published rules and procedures, defendants Cooley and the Stern School did not have the jurisdictional authority to pursue disciplinary proceedings against Rosenthal based on his off-campus, non-academic conduct. Moreover, even assuming for the purposes of argument only that such jurisdiction existed, defendants' undisputed and admitted failure to follow most of the key due process protections afforded Rosenthal by the NYU and Stern School rules and procedures, as well as the Stern administration's blatant interference in the improper disciplinary

4

proceeding, so thoroughly tainted the proceedings as to render them fundamentally unfair. As

such, based solely on the undisputed facts in this case, summary judgment as a matter of law in

Rosenthal's favor required.

Accordingly, Rosenthal respectfully submits that his motion for summary

judgment should be granted.

## Judicial Review of University Disciplinary Action

New York courts routinely review the actions of private institutions of higher

learning in matters of student discipline involving non-academic suspensions or expulsions. A

court may overrule a university's disciplinary decision where the school has failed to follow its

own policies and procedures or where the determination was reached in excess of jurisdiction,

was arbitrary and capricious, was affected by an error of law, or was not supported by substantial

evidence. *See, e.g., Tedeschi v. Wagner College*, 49 N.Y.2d 652, 658 (N.Y. 1980) ("Suspension

or expulsion for causes unrelated to academic achievement . . . involve determinations quite

closely akin to the day-to-day work of the judiciary. Recognizing the present day importance of

higher education to many, if not most, employment opportunities, the courts have, therefore,

looked more closely at the actions of educational institutions in such matters."); *Sabin v. State*

*University of New York Maritime College*, 92 A.D.2d 831 (N.Y. App. Div. 1st Dep't 1983); NY

CLS CPLR §§ 7803.

The relationship between a college or university and its students is based upon an

implied contract. *See Vought v. Teachers College, Columbia University*, 511 N.Y.S.2d 880, 881

(N.Y. App. Div. 2d Dep't 1987). "When a student enrolls at a university, an implied contract

arises whereby, if the student complies with the conditions prescribed by the university, he or she

5

will obtain the degree she is pursuing." *Ward v. New York Univ.*, 2000 U.S. Dist. LEXIS 14067

(S.D.N.Y. Sept. 25, 2000).

"The terms of the implied contract are supplied by the [school's] bulletins,

circulars and regulations made available to the student." *Gally v. Columbia Univ.*, 22 F. Supp.

2d 199, 206 (S.D.N.Y. 1998); *see also Radin v. Albert Einstein College of Med. of Yeshiva Univ.*,

2005 U.S. Dist. LEXIS 9772, 31-32 (S.D.N.Y. May 20, 2005). In addition, there are also

"reciprocal obligations that are implicit in the relationship itself." *Downey v. Schneider*, 2005

NY Slip Op 8945, 2 (N.Y. App. Div. 2d Dep't 2005). One of the most important such reciprocal

obligations is the requirement that a university act in good faith in dealing with the student. *See*

*Papelino v. Albany College of Pharm.*, 2009 U.S. Dist. LEXIS 82939 (N.D.N.Y Sept. 11, 2009).

"The interpretation of a university's catalogue, like the interpretation of any contract, is a matter

of law for the Court." *Deen v. New Sch. Univ.*, 2007 U.S. Dist. LEXIS 25295, * 8-9 (S.D.N.Y.

Mar. 27, 2007).

In New York, a private college or university's disciplinary action may also be

subject to Article 78 review. The issues on Article 78 claims are narrower in scope than the

breach of contract claims, and in this case, the court's review is limited to the following

questions: (1) "whether the body or officer proceeded, is proceeding or is about to proceed

without or in excess of jurisdiction;" (2) "whether a determination was made in violation of

lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of

discretion, including abuse of discretion as to the measure or mode of penalty or discipline

imposed;" and/or (3) "whether a determination made as a result of a hearing held, and at which

evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial

evidence." NY CLS CPLR §§ 7803(2)-(4). If a court finds for the plaintiff in an Article 78

6

proceeding, it may annul the university's decision and direct that it issue the student his diploma, *see, e.g., Lahey v. Kelly*, 71 N.Y.2d 135, 140 (1987), it may remand the case to the university's administrative body for new proceedings subject to the court's ruling, *see, e.g., Ebert v. Yeshiva Univ.*, 4 Misc. 3d 699 (N.Y. Sup. Ct. 2004) (remanding a case for a new hearing because the university did not comply with its policies of providing reasonable notice), or it can "reduce the measure of punishment imposed." *Tombler v. Board of Education*, 109 Misc. 2d 821, 826 (N.Y. Sup. Ct. 1981) (courts have the power to reduce a punishment deemed to be too harsh).

## ARGUMENT

Plaintiff Ayal Rosenthal is entitled to summary judgment on his breach of contract and Article 78 claims against defendants. First, defendants ignored, and continue to ignore, the plain language of the governing NYU Student Disciplinary Procedures. Those procedures, which were passed by the University Senate under the authority of the University Bylaws, set forth a clear and unambiguous grant of jurisdiction to NYU's "Several Schools and Colleges" of the authority to handle only certain enumerated disciplinary cases. It is beyond cavil that Rosenthal's off-campus, non-academic, federal securities crime is not within the five categories of cases designated to "Faculty Jurisdiction." As such, defendants simply had no jurisdiction to pursue a complaint against Rosenthal, and thus no basis not to recommend his name to the President and Board for an MBA degree. In fact, the contract between Rosenthal and NYU/Stern School requires the conferral of the MBA degree, because he fulfilled all the requirements for it.

Defendants' improper conduct did not stop at persecuting Rosenthal with a complaint that NYU's plain rules and procedures did not permit. Assuming for the purposes of this motion that jurisdiction did exist with respect to the complaint, which it did not, in the

7

course of pursuing that complaint, defendants denied Rosenthal virtually every important due

process protection and procedure provided him in the NYU Student Disciplinary Procedures and

the Stern School Disciplinary Rules. This conduct not only rendered the entire proceeding

fundamentally unfair, but also constitutes a breach of the contract between the parties. Finally,

defendants' conduct entitles plaintiff to relief under New York CPLR Article 78.

I.      **Plaintiff Is Entitled to Summary Judgment Because Defendants Had No
        Jurisdiction to Discipline Him**

       First and foremost, according to their own self-imposed rules and procedures,

NYU and Stern had no authority to pursue a disciplinary complaint, let alone punish, Rosenthal

for his guilty plea. NYU's university-wide policy strongly discourages the school from

disciplining students for off-campus conduct, and generally prohibits the university and its

various schools from imposing additional punishment on students who have been convicted of a

crime except in certain, very limited and specific circumstances.

       The NYU Senate, the University's main legislative body, promulgated a series of

directives and procedures under the authority of the University Bylaws. These policies and

procedures severely curtail the University's ability to regulate or discipline students' off-campus

activities by limiting disciplinary action for such behavior to all but a few enumerated violations.

The University Policy on Student Conduct establishes the parameters and limits on what the

University can and cannot do under its own rules and procedures. It provides in its explanatory

Preamble that:

> In general, a student's *off-campus* activities should be subject only to sanctions of
> the public authorities. Where a student is convicted of a violation of law, he
> should not be subject to University discipline for the same offense unless his
> conduct seriously affects his position as a member of the academic community.
> Where a student's conduct *on campus* constitutes violations of both University

8

rules and public law, he may be subject to both University discipline and public sanctions.

Declaration of Edward Hernstadt ("Hernstadt Decl."), Exhibit 5 at NYU 253 (Preamble, § 2)(emphasis supplied.) Pl. 56.1 ¶18.

Thus, absent a showing that a student's off campus conduct "seriously affect[ed] his position as a member of the academic community," NYU and its individual schools are barred from punishing him. Here, of course, defendants never even tried to make this showing. They relied solely on the fact of Rosenthal's guilty plea, which they used to presume harm to the University; the question of whether the guilty plea (or Rosenthal's underlying conduct) had any impact on Rosenthal's position in an academic community he had already left was simply never addressed. Pl. 56.1 ¶¶18-20. Under NYU procedures, the fact that a student may have been convicted of a crime is not relevant unless that conduct had a "serious" impact on his position in the academic community.

The NYU Student Disciplinary Procedures, also promulgated by the University Senate under the authority of the University Bylaws, further delineate the specific boundaries of the University's disciplinary power over students. To that end, the NYU Student Disciplinary Procedures designated jurisdiction over certain disciplinary matters to the faculties of the individual NYU schools and over other matters to the University Senate. Only those acts, enumerated in Section I.A. of the NYU Student Disciplinary Procedures, such as cheating, plagiarism, academic forgery, disruption of academic premises, physical detention or restraint of

9

others, and the like, are allocated to the jurisdiction of the individual schools' faculties' jurisdiction. Hernstadt Decl., Exh. 5 at NYU 254 (§ I.A).[1] Pl. 56.1 ¶¶ 21-23.

The allocation of jurisdiction in Section I of the NYU Student Disciplinary Procedures is comprehensive and clear: it is a grant of jurisdiction by the University Senate under University Bylaws. The Senate, acting under the broad authority of the University Bylaws, designated a limited set of cases – those listed in Section I.A – to Faculty Jurisdiction. This limited authority to hear certain cases is intentionally narrow; it is not a guideline, or by way of example or described as "including." Pl. 56.1 ¶ 23.

This point is made even clearer elsewhere in the NYU Student Disciplinary Procedures, which also provides that "[t]o the extent that [offenses in violation of city, state or federal laws] *also* fall within one of the categories defined in I.A. or I.B. above, they may also be subject to applicable disciplinary measures within the University." *Id.* (§ I.D)(emphasis added). Pl. 56.1 ¶ 25. That is, if criminal conduct does not fall within either category I.A. or I.B., the University Senate has determined that it will not authorize either the Senate or the faculties of the individual school to undertake any disciplinary action against the student.[2]

---

[1]     Other acts, listed in Section I.B. of the NYU Student Disciplinary Procedures, are designated for Senate jurisdiction, including disruptive activity on campus, violation of dormitory rules, identify forgery, theft or damage to university property, and engaging in conduct that interferes with academic function involving more than one school.

[2]     If a question arises as to whether a particular case falls under Faculty or Senate jurisdiction, the dispute is to be referred to the NYU Office of Legal Counsel for a decision, subject to certain due process and appellate rights granted to the student. Pl. 56.1 ¶ 24 Here, defendants have admitted that they did not turn to the University Counsel for a determination of whether the Rosenthal case fell under Faculty or Senate Jurisdiction. Instead, the Stern School Judiciary Committee decided that it had jurisdiction over the case. Pl. 56.1 ¶¶ 71, 84, 92.

Here, it is undisputed that Rosenthal's conviction was a result of off-campus conduct and was entirely unrelated to his status as an NYU student. Under the exact and unambiguous grant of jurisdiction in the NYU Student Disciplinary Procedures, the Senate <u>did</u> <u>not</u> designate this type of off-campus violation of law to the Faculty of the Stern School to address under its own disciplinary policies. Rather, the pursuit of disciplinary proceedings by the faculties of the several schools and colleges in connection with a violation of city, state of federal law is <u>limited</u>: only "to the extent that such acts *also fall within one of the categories defined in I.A* and I.B above, they may also be subject to applicable disciplinary measures within the University." Hernstadt Decl., Exh. 5 at NYU 254 (§ I.D ("Violations of Federal, State of Local Law")).

The NYU Senate, expressly acting under the authority of University Bylaws,[3] made an express and limited grant of "jurisdiction over student disciplinary proceedings . . . *in certain circumstances* to the faculty of the school in which the student is enrolled." *Id.* (§ I). The "certain circumstances" under which jurisdiction over student disciplinary proceedings are granted to the faculty of the student's school are enumerated in Section I.A of the Student Disciplinary Rules. Any case not designated to Faculty Jurisdiction under I.A is by definition not within the jurisdiction of the faculty of the student's school to discipline. When a student violated "Federal, State, or Local Law," the University Senate clearly established in the NYU

---

[3]     University Bylaw 34(c) authorizes the University Senate to adopt university-wide rules and policies. ("The Senate shall have power to act upon educational matters and regulations of the academic community that affect more than one school"). Bylaw 61(b) allows each faculty to determine its own "rules for the guidance and conduct of the students", subject, of course, to "general University policy as defined by the President and Senate. Bylaw 62 provides that the"power of suspending or dismissing a student in any school is lodged with the voting faculty of that school."

Student Disciplinary Procedures that the faculty of the student's school could <u>only</u> refer such conduct to the "appropriate outside authority." Only if such conduct "also" fell within the cases designated to Faculty Jurisdiction might the conduct "also be subject to applicable disciplinary measures within the University." *Id.* § I.D. Pl. 56.1 ¶ 25.

In the instant case, it is undisputed that conduct alleged against Rosenthal in the faculty complaint was an off-campus violation of federal law that does not fall within any of the five enumerated categories of "Cases of Faculty Jurisdiction." As such, it is clear as a matter of law that under the NYU Student Disciplinary Procedures that the University Senate did not designate to the Stern School the necessary jurisdiction to prosecute a disciplinary complaint against Rosenthal, and that the Stern School's assumption of such jurisdiction was beyond and expressly prohibited by University rules and procedures.

The Stern School's prosecution of its faculty complaint against Rosenthal without the jurisdiction to do so constitutes a violation of the University rules and procedures that govern it, and a breach of the contract between defendants and Rosenthal, which includes the requirement that defendants abide by their own rules and procedures. Thus, summary judgment in favor of Rosenthal is required as a matter of law.

Moreover, even assuming that prosecution of a disciplinary action were permitted by the NYU Student Disciplinary Procedures, which, as demonstrated above, it is not, the Preamble to the NYU Policy on Student Conduct speaks directly to cases such as this and forbids the university from taking any disciplinary action against Rosenthal absent a showing that his conduct "seriously affects his position as member of the academic community." Not surprisingly, NYU has not shown, and indeed, cannot show that it has made this determination. First, NYU has acknowledged that it did not investigate this issue. Pl. 56.1 ¶¶ 19-20, 98-99. Instead,

defendants equated the criminal guilty plea with a violation of NYU rules, and presumed some

harm to the University without ever making any effort to investigate, discover, or even produce

some evidence of this issue. Indeed, the Stern School Faculty specifically voted to reject a

proposed motion that would have deemed Rosenthal's case "exceptional due to the potential

damage to the School's reputation." Pl. 56.1 ¶ 99. In fact, it is not only undisputed that

Rosenthal's off-campus conduct was not related to the University in any way, but that very few

individuals were even aware of his conviction. None of the press releases or news coverage

concerning the Rosenthal family's legal troubles identified Ayal Rosenthal as an NYU or Stern

School student.[4] Pl. 56.1 ¶ 45.

      Second, NYU cannot reach such a conclusion because Rosenthal's conduct –

disclosing confidential information to his brother, in conscious avoidance of federal securities

laws – could not have seriously affected his position as a member of the NYU academic

community, since at the time he pled guilty he had completed his Stern School class work and

was no longer a member of the university community.

      In this regard, defendants have admitted that the only instances in which NYU

students were disciplined for convictions stemming from off-campus conduct, about which

senior NYU and Stern School administrators responsible for Student Affairs testified, all

---

    [4]    Discovery in this case reveals that the only faculty or students who appear to have
connected Rosenthal and NYU learned that he was a Stern School student because of defendants'
own conduct: one professor forwarded an article about the SEC investigation of, *inter alia*, Ayal
Rosenthal to her class and a student emailed her back stating that one of the alleged wrong-doers
was a former Stern Student. More troubling, Cooley not only used the Rosenthal family case in
a professional responsibility class he taught in the Spring of 2007 (after the faculty complaint
was filed but before Rosenthal had been informed of it) and not only identified Rosenthal as a
former Stern School student, but discussed with the class the appropriate action the Stern School
should take. Pl. 56.1, ¶ 74

involved either violent crimes or serious drug charges. Rosenthal's securities laws violation was not a violent crime, nor did the acts have any connection of any kind to, or threaten the safety or well-being of, the University or NYU students, faculty, or staff.

Try as they may to pretend there these NYU policies and procedures do not apply to the Stern School, the plain language of the NYU University Policy on Student Conduct and NYU Student Disciplinary Procedures confirm that defendants were indeed bound by these University-wide rules and subject to their limitations.

II.    **Plaintiff Is Entitled to Summary Judgment Because He Did Not Violate the Stern Honor Code or the Stern Code of Conduct**

The Court should reverse Cooley's decision based upon the recommendation of the MBA Judiciary Committee and the vote of the Stern School Faculty not to award Rosenthal his MBA degree because Rosenthal's unlawful conduct did not violate either the Stern Honor Code or the Stern Code of Conduct.[5] Cooley's and the faculty's decision for the Stern School is defectively based on an error of law, is arbitrary and capricious, reflects an abuse of discretion, and is not supported by substantial evidence. In fact, Rosenthal's violation of federal securities laws is not a behavior that is proscribed by or related to the Stern Honor Code or the Stern Code of Conduct—the two sets of rules that Cooley, the Judiciary Committee and the Faculty ultimately cited to as the provisions violated by Rosenthal and the basis for discipline..

Specifically, the Stern Honor Code, which Stern students are required to sign and abide by upon enrolling in the school, states that "I will not lie, cheat or steal to gain an academic

---

[5]    The New York University Code of Ethical Conduct, which the original Stern School faculty complaint alleges Rosenthal violated, are rules directed only to NYU employees – "every part-time and full-time employee, faculty member, officer, trustee, overseer, and advisory board member" – and thus has no application to the faculty complaint against Rosenthal. Hernstadt Decl., Exh. 9, at NYU 199-202. Pl. 56.1 ¶ 43.

advantage, or tolerate those who do." The Honor Code requires students to "act with integrity in all academic activities" and lists improper conduct such as lying to gain an unfair academic advantage, cheating by copying the work of another student or representing another's work as one's own, and stealing of ideas as illustrative violations. Pl. 56.1 ¶ 39. Rosenthal's conduct, which admittedly violated federal securities law and resulted in his brief incarceration, was unquestionably wrong, and Rosenthal admitted his wrongdoing and accepted punishment for it. However, is equally obvious that Rosenthal's wrongful conduct was not done in order to gain an academic advantage, and did not have that effect. There is simply no evidence to suggest that Rosenthal's criminal acts constituted conduct contemplated by or that violated the Honor Code, and thus, the decision to punish Rosenthal under that Code was an error of law, arbitrary and capricious, an abuse of discretion, and not supported by any evidence, let alone substantial evidence.

Similarly, defendants' determination that Rosenthal violated the Stern Code of Conduct flies in the face of both the plain language and the spirit of the document. Although the preamble to the Code of Conduct begins with the aspirational statement that "[s]tudents are expected in all of their actions to reflect personal honesty, integrity and respect for others" that language is too broad and unspecific to be enforceable. *See Keefe v New York Law School*, 2009 NY Slip Op 52331U, 2 (N.Y. Sup. Ct. Nov. 17, 2009). Even the use of the word "expected" illustrates the hopeful, rather than binding, nature of the preamble. "General statements of policy are not sufficient to create a contractual obligation. Only specific promises that are material to the student's relationship with the school can establish the existence of an implied contract." *Id.* (citing *Lloyd v. Alpha Phi Alpha Fraternity*, 1999 U.S. Dist. LEXIS 906, at *27-*28 (N.D.NY Jan, 26, 1999)).

15

Immediately following the aspirational preamble, of course, the Code of Conduct clarifies that its scope is quite narrow and spells out the conduct that actually is covered by it: "[m]ore particularly, a Stern student's responsibilities include: [a.] a duty to respect the integrity of all members of the Stern community by avoiding all forms of force, violence or intimidation, including sexual harassment; [b.] a duty to respect the property and rights of others; and [c.] a duty to respect and preserve the quality of academic facilities." The remainder of the document merely expounds on these three duties. Pl. 56.1 ¶ 40.

Read in its entirety, and subject to the NYU Student Disciplinary Procedures, it is abundantly clear that the Stern Code of Conduct pertains only to conduct of students vis-à-vis other members of the Stern community, the Stern School, and the University. Defendants' refusal to confer an MBA degree upon Rosenthal is expressly based upon their determination that he violated the Stern School Honor Code and Code of Conduct. Because, as demonstrated above, based on the plain and unambiguous language of those codes, neither applies to Rosenthal's non-academic, off-campus criminal conduct, defendants' determination constitutes a breach of the Stern School's own rules and procedures, and Rosenthal is entitled to summary judgment against defendants as a matter of law.

III.    **Plaintiff Is Entitled to Summary Judgment Because Defendants Did Not Comply With Their Published Rules and Procedures**

From the very beginning, the disciplinary proceedings against Rosenthal were fatally infected by mistakes, irregularities, and serious procedural and due process violations. In the course of adjudicating Rosenthal's case, assuming for purposes of this motion only that jurisdiction to do so existed, which it did not, defendants failed to follow nearly every procedural step required under the NYU Student Disciplinary Procedures and Stern School Disciplinary

16