Edward Hernstadt (EH 9569)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
212-214-0307

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AYAL ROSENTHAL,                                          :
                                                         :
                    Plaintiff,                           :    08-cv-5338 (LAK)
                                                         :       ECF CASE
         v.                                              :
                                                         :
NEW YORK UNIVERSITY, NEW YORK                            :    **PLAINTIFF'S REPSONSE**
UNIVERSITY LEONARD N. STERN SCHOOL     :    **TO DEFENDANTS' LOCAL**
OF BUSINESS, and THOMAS F. COOLEY,                :    **RULE 56.1 STATEMENT**
Richard R. West Dean of the Leonard N. Stern           :
School of Business,                                      :
                                                         :
                    Defendants                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Rule 56.1 of the Civil Rules of the United States District Court for

the Southern District of New York, Plaintiff Ayal Rosenthal ("Rosenthal") respectfully

submits this response to the Local Rule 56.1 statement of allegedly undisputed facts ("Def.

Rule 56.1 Statement") submitted by defendants New York University ("NYU"), the NYU

Stern School of Business ("Stern" or "Stern School") and Dean Thomas F. Cooley ("Cooley")

(collectively "Defendants") in support of their motion for summary judgment.

2.    Deny.  As defendants state at paragraph 8 of their Rule 56.1 Statement,

Rosenthal completed his coursework for an MBA degree in December 2006.  But after that

date, he was no longer an NYU or Stern School student in any capacity.  *See also* Plaintiff's

Rule 56.1 Statement in support of his Motion for Summary Judgment ("Pl. Rule 56.1

Statement"), ¶ 6.  Additionally, the Stern School faculty's October vote regarding granting

Rosenthal a degree did not involve, or in any way refer to, "academic grounds." *See* Declaration of Thomas Cooley dated January 26, 2010 ("Cooley Decl."), Exh. 12 at 1-2. Finally, this Court's July 21, 2009 Order is not relevant to the faculty vote referred to in paragraph 2 of defendants' Rule 56.1 statement.

4.      The document speaks for itself.   Rosenthal's signature on Exh. D-27 to the Declaration of Nancy Kilson dated February 1, 2010 ("Kilson Decl.") appears under a sentence reading: "I affirm that I have read and understand the above," which includes the aspirational language extracted and quoted in paragraph 4 of Defendants' Rule 56.1 statement.

5.      Deny.  As of the end of December 2006, Rosenthal was no longer an active student at the Stern School.  After 2006, Rosenthal was not enrolled or continuing in any capacity as a Stern School student.  In fact, by February 13, 2007, in response to learning of Rosenthal's guilty plea, the Stern School had removed Rosenthal from its alumni database and blocked all information about Rosenthal on its student information database. *See* Hernstadt Decl. Exh. 12.  While Gary Fraser states at paragraph 7 of his Declaration dated January 27, 2010 ("Fraser Decl.") that Rosenthal was a "matriculated and continuing" student, he cites to no fact or document for that assertion.  At his deposition, however, Fraser admitted that a "matriculated and continuing student" is "someone who is enrolled." Declaration of Edward Hernstadt dated March 5, 2010 in Opposition to Defendants Motion for Summmary Judgment ("Hernstadt Opp. Decl.") Exh. 1 (100:15-20). The Stern School has presented no evidence to suggest that an individual who is not enrolled as a student, is not paying any fees, is not signed up for or attending any classes, who has no more credit or academic requirements due for the degree, and who has no formal presence as a student is nonetheless a "matriculated and continuing" student, despite the plain and unambiguous meaning of that

phrase to the contrary.

6.      Deny.  Rosenthal served as a Teaching Fellow, not a teaching assistant, for which he received a Financial Aid award in the form of a tuition remission, but no salary. Rosenthal was not formally employed by NYU or the Stern School, and did not receive a 1099 or W2 in connection with his duties as a Teaching Fellow.  Nor was he ever told by anyone at NYU or the Stern School that he was an employee of Stern, or subject to the NYU "Code of Ethical Conduct," a copy of which was never given to him.  *See* Declaration of Ayal Rosenthal dated March 4, 2010 ("Rosenthal Opp. Decl."), ¶¶ 2-4. The NYU "Code of Ethical Conduct," by its terms, applies only to NYU employees. *See* Pl. Rule 56.1 Statement, ¶ 43. Defendants have neither produced nor referred to any document that classifies Teaching Fellows as Stern School employees.

7.      Denied for the reasons set forth in paragraph 6 above.  Additionally, NYU itself makes clear that a Teaching Fellowship "is a Financial Aid award." Hernstadt Opp. Decl. Exh. 2, *available at* http://w4.stern.nyu.edu/students/current/jobs/index.cfm?doc_id=6567.  As such, university employees are not permitted to be teaching fellows: **"Can an NYU employee work as a Teaching Fellow, Grader, or Tutor?** No. As an employee, you are not eligible to be compensated for any of these positions." Hernstadt Opp. Decl. Exh. 3, *available at* http://w4.stern.nyu.edu/students/current/jobs/index.cfm?doc_id=6561.

8.      Rosenthal completed all of his coursework and should have received his MBA degree "as of" January 22, 2007, as stated in correspondence to him and set forth on his transcript.  He did not receive the MBA degree because of defendants' conduct as set forth in the Second Amended Complaint and Plaintiff's Motion for Summary Judgment.

3

13.     Rosenthal testified that he was initially unaware of an investigation of the conduct that led to his conviction or the date on which he first learned of the government's investigation into Aragon, and could recall only that it was "before May, 2006." Kilson Decl. Exh. C, 38:11-12.

17.     Richard DeMarco Jr. received a faxed subpoena from the SEC seeking nine categories of documents relating to Rosenthal on May 10, 2007. *See* Declaration of Richard DeMarco, Jr. dated January 12, 2010, ¶ 2.

18.     Rosenthal was given an Aragon Partners LP check dated May 15, 2006, which was deposited on May 22, 2006. Kilson Decl., Exh. D-26.

21.     Rosenthal did receive funds from the Aragon Partners LP account, but his actual testimony is that he did not know whether such funds were tainted or legitimate. *See* Kilson Decl., Exh. C at 118:14-25.

13-21.     Regardless of the accuracy or inaccuracy of paragraphs 13-21, none of them are remotely relevant to Plaintiff's Complaint or the arguments set forth in Defendants' Motion for Summary Judgment.

22.     Rosenthal became a Teaching Fellow at the Stern School starting in September 2005, and served as a Teaching Fellow during each of the semesters throughout his enrollment at Stern from September 2005 through December 2006, when he completed his coursework at Stern. *See* Rosenthal Opp. Decl., ¶ 5.

24.     Rosenthal was given a Financial Aid award in the form of tuition remission in return for serving as a Teaching Fellow. *See* ¶ 6, *supra*.

25.     Rosenthal objects to this statement of fact insofar as it contains a legal conclusion regarding the contract between the parties, and denies that he violated any

4

purported commitments he had made to Stern.

26.   Rosenthal did not contact Gary Fraser "at the request of his criminal defense attorneys." In fact, defendants' counsel asked him that exact question on the page immediately following the pages cited for defendants' inaccurate allegation of fact in Def. Rule 56.1 Statement ¶ 26: "Q: You contacted Dean Fraser in response to a question from your attorney; correct?  A: No." Kilson Decl. Exh. C, 101:6-9.

30.   Rosenthal's plea to the Information attached as Exhibit 8 to the Kilson declaration was as set forth in his plea allocution.  Rosenthal admitted to having "agreed to tell [his] brother Amir Rosenthal the names of two companies that were involved in a confidential acquisition" and to having "consciously turned a blind eye to what would have otherwise been obvious to [him]: that [his] brother was going to trade, in violation of United States Securities laws on information that [he] provided to him." *See* Kilson Decl. Exh. D-9 at 83:25-84:10.  As observed by Judge Maas in *SEC v. Aragon Capital Management, LLC,* 2009 U.S. DIST LEXIS 112656, * 13, note 3 (S.D.N.Y. Nov. 24, 2009), Rosenthal "did not admit that he had conspired with Amir to violate the securities laws," although he noted that Rosenthal's criminal defense counsel acknowledged that "conscious avoidance" is the "legal equivalent of knowing participation." It is not clear that Rosenthal, however, was aware of this distinction. *See* Rosenthal Opp. Decl., ¶ 6; Kilson Decl. Exh. D-9 at 84:11-19.

32-33.   Without denying that Buchanan stated what is attributed to him in paragraphs 32 and 33 of Defendants' Rule 56.1 Statement, Rosenthal was not charged with, and did not plead guilty to, "running an insider trading operation," or "receiving stolen information from his father," and did not plead to "leaking confidential information . . . for the purpose of insider trading." *See, e.g.,* Kilson Decl. Exh. D-9 at 83:25-84:10 (Rosenthal

allocution).

42.     NYU Bylaws § 63 provide for other methods by which degrees may be granted. Declaration of Edward Hernstadt in Support of Plaintiff's Motion for Summary Judgment, dated February 1, 2010 ("Hernstadt Decl.") Exh. 4 at NYU 1172 (§ 63(d)).

48.     Deny.  The faculty complaint incorrectly referenced "an insider trading scheme involving his father, brother and a childhood friend." The charge to which Rosenthal pled guilty was unrelated to the guilty pleas of his father, brother, and brother's childhood friend.  Kilson Decl. Exh D-8.

49.     In the February 28, 2007 faculty complaint, Lee Sproull wrote that "[t]he faculty believes that by pleading guilty to an infraction of federal securities law, Mr. Rosenthal has broken both the Stern Honor Code and the University Code of Ethical Conduct. He is therefore not qualified to receive" an MBA degree. Hernstadt Decl. Exh. 3 at NYU 61.

51.     Rosenthal does not dispute Dean Cooley's statement regarding his belief about the purpose of a Judiciary Committee proceeding.  However, the Judiciary Committee proceeding was not optional because, as noted in paragraphs 52 and 53 of Defendants' Rule 56.1 Statement, "[s]tudent discipline is the responsibility of the faculty of the Stern School," and the Stern Faculty "delegate[d] its authority to the MBA Judiciary Committee of the Stern School." *See* Hernstadt Decl. Exh. 8 at NYU 75.  As such, the faculty had no alternative but to direct a disciplinary complaint to the Judiciary Committee.

52-53.  Rosenthal respectfully refers the Court to the Stern School Student Disciplinary Procedures, § 1, for the language of the section entitled "Authority." *See* Hernstadt Decl. Exh. 8 at NYU 75.

54.     Rosenthal respectfully refers the Court to the Stern School Student

Disciplinary Procedures, § 2, for the language of the section entitled "Jurisdiction." *See* Hernstadt Decl. Exh. 8 at NYU 75-76. Stern's jurisdiction, however, is "[s]ubject to the approval of the [NYU] Board [of Trustees] and to general University policy as defined by the President and Senate". Hernstadt Decl. Exh. 4 at NYU 1171 (NYU Bylaw 61(b)).

55.     As set forth in Plaintiff's Motion for Summary Judgment, Rosenthal's off-campus, non-school related conduct that led to his guilty plea to a violation of federal securities law had no effect or impact on any part of NYU, including on the Stern School. In this regard, in the very paragraph of his declaration relied upon by defendants in paragraph 55 of Defendants' Rule 56.1 Statement, Cooley does not assert that Rosenthal's conduct had any impact on the Stern School. *See* Cooley Decl. ¶ 16.

56.     Rosenthal respectfully refers the Court to the Stern School Student Disciplinary Procedures, § 4.a for the full language of the disciplinary rule. *See* Hernstadt Decl. Exh. 8 at NYU 77.

57.     Melchior Ochoa became the Chair of the Judiciary Committee in or about early May 2007. *See* Pl. Rule 56.1 Statement, ¶ 72; Hernstadt Decl. Exh. 20 (May 9, 2007 email from outgoing Judiciary Committee Chair to incoming chair Ochoa regarding Rosenthal matter).

58.     At the time Ochoa became involved in the Rosenthal case, it had already been in the hands of the Judiciary committee for more than two months. *See* Pl. Rule 56.1 Statement, ¶ 57; Hernstadt Decl. Exh. 15.

59.     In fact, there was no delay in the Judiciary Committee's beginning work on the Rosenthal case. Chair Tim Colvin and Vice-Chair Amy Margolis began working on the case when it was handed to them on March 1, 2007, and by April 5, 2007, had already

communicated to Dean Fraser their serious doubt as to whether Rosenthal's conduct "classifies as a NYU code of conduct violation." Hernstadt Decl. Exh. 16 at NYU 12.

60.    Deny.  The delay was caused by the Judiciary Committee's reluctance to proceed with the case against Rosenthal and the Stern administration's fervent desire and efforts to strong-arm the student leaders of the Judiciary Committee to change their minds.  Pl. Rule 56.1 Statement ¶¶ 57-73.  At his deposition, Gary Fraser did not testify about any delay in the Judiciary Committee's commencing work, or about any delay because of the "unusual nature" of Rosenthal's case.  Rather, he testified that he handed the case to the Judiciary Committee on or about March 1, 2007, that Tim Colvin and Amy Margolis began working on it, and that he conferred with them about the case between March 1 and late-April or early May 2007. *See* Hernstadt Opp. Decl., Exh. 1 (65-66, 85-87).

62.    Rosenthal's case involved a student who had pled guilty to a crime that was wholly unrelated to the Stern School or any of his activities as a student, as opposed to the general run of disciplinary complaints, which addressed matters such as cheating or plagiarism.

63.    Deny.  This bald statement by Fraser is repeatedly and thoroughly contradicted by the many emails sent by and to Fraser, starting on April 5, 2007.  In these emails, Fraser and others make clear that they were responding to the serious doubts raised by Judiciary Committee Chair Colvin and Vice-Chair Margolis as to whether Rosenthal's conduct violated any NYU or Stern rule or whether the Judiciary Committee had jurisdiction to hold a disciplinary hearing regarding Rosenthal.  Pl. Rule 56.1 Statement, ¶¶ 60-64, 69, and exhibits cited therein.

67.    Rosenthal respectfully refers the Court to Ochoa's May 20, 2007

"Summary" for his conclusion regarding whether a hearing was required. *See* Hernstadt Decl. Exh. 21 at NYU 345.

68.     Rosenthal learned about the existence of the faculty complaint for the first time on or about May 16, 2007, when Fraser informed him of that fact and that the complaint had been referred to the Judiciary Committee to resolve a question of jurisdiction. Pl. Rule 56.1 Statement, ¶¶ 76-78. Ochoa contacted Rosenthal about the complaint two days later, on or about May 18, 2007. *Id.*, ¶ 79. The NYU Student Disciplinary Procedures, however, mandated that Rosenthal be provided with notice of the complaint with 48 hours of its filing. *See* Pl. Rule 56.1 Statement, ¶ 30; Hernstadt Decl. Exh. 5 at NYU 255 (Disciplinary Rule § II.A).

69.     Ochoa set forth his explanation for failing to appoint an Investigative Committee (and Colvin failed to do so as well, Kilson Decl. Exh. F (Colvin Dep. p. 33)) in his May 20, 2007 "Summary." *See* Hernstadt Decl. Exh. 21 at NYU 345. The failure to appoint an Investigative Committee, however, is a direct violation of the Stern School's mandatory procedures ("the Chair *shall* select an Investigative Committee"). *See* Pl. Rule 56.1 Statement, ¶ 35; Hernstadt Decl. Exh. 8 at NYU 77 (§ 4.b).

70.     Fraser had no authority to assign, delegate, or allocate any aspect of a disciplinary complaint or Judiciary Committee matter to anyone. The Stern School Student Disciplinary Rules clearly state that the Stern Faculty delegated its authority to oversee student discipline to the Judiciary Committee, which was required to follow the procedures set forth in Section 4 of those Rules. *See* Pl. Rule 56.1 Statement ¶ 32; Hernstadt Decl. Exh. 8 at NYU 75, 77 (§§ 1, 4). Additionally, the Stern Student Disciplinary Rules provide that "If there are questions of jurisdiction in any particular case, they shall be referred for decision to

9

the Office of Legal Counsel of the University." *Id.* at NYU 76 (§ 2).

71.     Ochoa set forth an explanation for his decision to send the Rosenthal case to a hearing in his May 20, 2007 "Summary." *See* Hernstadt Decl. Exh. 21 at NYU 345.

72.     Without disputing what Ochoa purports to have thought in 2007, the NYU Student Disciplinary Procedures do in fact apply to the Stern School and all "Faculty Discipline Committtee[s]" at NYU, including the Stern School Judiciary Committee. *See* Pl. 56.1 Statement, ¶¶ 21-31.

74.     Ochoa had trouble getting a quorum of students and faculty members, not just students. *See* Hernstadt. Decl. Exh. 22.

77.     While Rosenthal believes he was prejudiced by the many failures by defendants to follow their own rules and procedures and by the delays in his case, which stretched from the filing of the complaint on February 28, 2007 to Dean Cooley's rejection of Rosenthal's appeal on February 19, 2008, *see* Rosenthal Opp. Decl. ¶ 8, prejudice is also a term of art. To the extent that Defendants Rule 56.1 Statement uses prejudice in a legal sense in paragraph 77 thereof, that is a matter of fact and law to be determined by the Court.

82.     Rosenthal maintains that the Judiciary Committee had neither the jurisdiction to discipline him, nor the authority to deliberate on the issue of jurisdiction. Notwithstanding these objections, Rosenthal respectfully refers the Court to the report of the Judiciary Committee regarding its decision on the question of jurisdiction. Hernstadt Decl. Exh. 3 at NYU 43.

83.     The Stern School Judiciary Committee did not have jurisdiction over the Rosenthal case because it dealt with an off-campus crime that had already been punished by the federal government. NYU had not in the NYU Student Disciplinary Procedures

allocated jurisdiction to the Stern School over such a case. Pl. 56.1 Statement, ¶¶ 23, 25-28. Moreover, the unlawful conduct to which Rosenthal pled guilty is not encompassed by any Stern or NYU rule or regulation. *Id.*

84.     Rosenthal respectfully refers the Court to the report of the Judiciary Committee regarding its decision on the question of which rules – Sterns or NYU's – should apply to Rosenthal's case. Hernstadt Decl. Exh. 3 at NYU 43.  As noted above, both rules applied, but the Stern Rules would apply only so far as they were permitted by the NYU rules.

87.     Rosenthal was initially advised in the "Ochoa Memo" that he had the right to counsel at the hearing. *See* Hernstadt Decl. Exh. 21 at NYU 246.  The NYU Student Disciplinary Procedures expressly mandate that "the student has the right to be accompanied by counsel." Hernstadt Decl. Exh. 5 at NYU 255 (§II.D.3). The Stern School Student Disciplinary Rules are silent as to whether a student is entitled to be accompanied by counsel, but do not prohibit it. Hernstadt Decl. Exh. 8 at NYU 78-80 (§§ 5-6).  Dean Fraser, rather than the Judiciary Committee's student members, objected to counsel's presence at the hearing. Rosenthal Opp. Decl. ¶ 6.  Rosenthal's counsel agreed to leave the hearing on the condition that if the Judiciary Committee were to ask Rosenthal specific questions about his offense, then counsel would be allowed to return. *Id.*

89.     After Rosenthal read a prepared statement that addressed the issues raised in the Ochoa Memo, he was asked and responded to numerous questions from Committee members, including questions he had been assured he would not be asked without the presence of his counsel.  Rosenthal Opp. Decl., ¶¶ 6-7 .

92.     Rosenthal respectfully refers the Court to the report of the Judiciary Committee regarding the content of and basis for its vote.  Hernstadt Decl. Exh. 3 at NYU 43-

44.

97-100.  Rosenthal respectfully refers the Court to Cooley's October 25, 2007 letter for the contents thereof, and disagrees with the conclusions contained in that letter for the reasons discussed in Plaintiff's Motion for Summary Judgment. Hernstadt Decl. Exh. 24.

103-108, 110-112.  Rosenthal respectfully refers the Court to Cooley's February 19, 2008 letter for the contents thereof, and disagrees with the conclusions contained in that letter for the reasons discuss in Plaintiff's Motion for Summary Judgment. Hernstadt Decl. Exh. 26.

106.    Deny.  The NYU Student Disciplinary Procedures expressly mandate that "the student has the right to be accompanied by counsel." Hernstadt Decl. Exh. 5 at NYU 255 (§II.D.3). The Stern School Student Disciplinary Rules, which are supplementary to the NYU rules, are silent as to whether a student is entitled to be accompanied by counsel, but do not prohibit it. Hernstadt Decl. Exh. 8 at NYU 78-80 (§§ 5-6).

109.    At his deposition on December 4, 2009, Rosenthal repeatedly testified that "I have stated many times and do so again that my conduct that led to the criminal charge was wrong -- and I am deeply sorry for that conduct every day," adding that the "conduct was both wrong and illegal." Kilson Decl. Exh. C., 93:24-94:2, 11.

Dated:   New York, New York
         March 5, 2010

HERNSTADT ATLAS LLP

By:_____
Edward Hernstadt (EH-9569)
11 Broadway, Suite 615
New York, New York 10004
(212) 809-2501
Attorneys for Plaintiff