Edward Hernstadt (EH 9569)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
212-809-2501

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AYAL ROSENTHAL,                                    :
                                                   :   08 Civ.  5338 (LAK)
                        Plaintiff,                 :   ECF Case
                                                   :
         -v-                                       :   (Oral Argument Requested)
                                                   :
NEW YORK UNIVERSITY, NEW YORK                      :
UNIVERSITY LEONARD N. STERN SCHOOL                 :
OF BUSINESS, and THOMAS F. COOLEY,                 :
Richard R. West Dean of the Leonard N. Stern       :
School of Business,                                :
                                                   :
                        Defendants.                :
------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
<u>TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT FACTS ..................................................................................................... 1

ARGUMENT ................................................................................................................ 9

   I.   Defendants Disregarded NYU's and Stern's Written Policies and Breached Nearly Every Procedural Rule During the Disciplinary Proceedings Against Rosenthal....................... 10

      A.   NYU Rules Divest the Stern School from Jurisdiction to Discipline Rosenthal for His Off-Campus Conduct............................................................................................... 10

      B.   Defendants Were Obligated to Abide By Both the NYU Student Disciplinary Procedures and the Stern Student Disciplinary Rules ........................................ 13

      C.   Defendants Failed to Follow Fundamental NYU and Stern Policies or Provide Fundamental Rights and Procedural Protections to Rosenthal................................. 14

   II.   Defendants' Decision Not to Award Rosenthal His Degree Was Not an Exercise of Academic Discretion ...................................................................................................... 19

   III.   Defendants Are Not Entitled Summary Judgment on the Article 78 Claims................ 25

      A.   Count Five ................................................................................................................ 25

      B.   Count Six ................................................................................................................. 25

      C.   Count Seven.............................................................................................................. 27

      D.   Rosenthal is Entitled to His Degree and to Damages............................................. 27

CONCLUSION............................................................................................................ 27

**TABLE OF AUTHORITIES**

*Bhandari v. Trustees of Columbia Univ. in N.Y.*,
     2000 U.S. Dist. LEXIS 3720 (S.D.N.Y. Mar. 24, 2000)........................................................25

*Flomenbaum v New York Univ.*,
     2009 NY Slip Op 8975, 11 (N.Y. App. Div. 1st Dep't 2009)................................................23

*H. v. New York Medical College*,
     88 A.D.2d 296, 300 (N.Y. App. Div. 2d Dep't 1982) .........................................................21

*Harris v. Trustees of Columbia University*,
     98 A.D.2d 58, 68 (N.Y. App. Div. 1st Dep't 1983)............................................................24

*Lightsey v. King*,
     567 F. Supp. 645 (E.D.N.Y. 1983)....................................................................................23

*Machosky v. State University of New York*,
     145 Misc. 2d 210 (N.Y. Sup. Ct. 1989) .............................................................................16

*Papelino v. Albany College of Pharm.*,
     2009 U.S. Dist. LEXIS 82939 (N.D.N.Y Sept. 11, 2009) ..................................................25

*Ryan v. Hofstra Univ.*,
     67 Misc. 2d 651, 660 (N.Y. Sup. Ct. 1971) .......................................................................16

*Sackman v. Alfred Univ.*,
     186 Misc. 2d 227 (N.Y. Sup. Ct. 2000) .............................................................................21

*Susan M. v. New York Law School*,
     76 N.Y.2d 241 (N.Y. 1990).................................................................................................21

*Tanenbaum v. Columbia Univ.*,
     244 A.D.2d 164, 165 (N.Y. App. Div. 1st Dep't 1997)......................................................21

*Ward v. New York Univ.*,
     2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sept. 25, 2000) ................................................22

iii

**PRELIMINARY STATEMENT**

Plaintiff Ayal Rosenthal respectfully submits this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  The motion submitted by defendants New York University ("NYU"), the NYU Stern School of Business ("Stern" or "Stern School") and Stern Dean Thomas Cooley ("Cooley") should be denied because it relies on allegations that are factually unsupported or simply incorrect, on bald misstatements and misinterpretations of the applicable NYU and Stern School rules, and upon serious mischaracterizations of plaintiff's actual claims in this case.  Behind Defendants' elaborate display of smoke and mirrors, the facts of this case are abundantly clear: Stern did not have jurisdictional authority under NYU rules and procedures to subject Rosenthal to a disciplinary hearing, let alone to punish him, for his off-campus, non-school-related felony conviction. Moreover, defendants repeatedly violated or ignored virtually all of the NYU and Stern School rights and procedures put in place to protect Rosenthal, all to his detriment. Finally, Stern's decision not to award Rosenthal his MBA degree was arbitrary and capricious, and unsupported by substantial evidence.

**RELEVANT FACTS**

Many of the facts of this dispute are not contested. However, to the extent that defendants have misstated relevant rules and procedures, and in particular, the applicability of such rules and procedures, or that there is a dispute as to material facts, plaintiff relies on his Response to Defendants' Rule 56.1 Statement and upon Plaintiff's Local Rule 56.1 Statement to set out the disputed and undisputed facts relevant to defendants' Motion for Summary Judgment. Defendants devote two-thirds of their Memorandum of Law in Support of the Motion for Summary Judgment ("Def. Mem.") to a lengthy "Statement of Facts." These "facts," disputed or not, dwell (at needless length) on numerous extraneous matters, such as the SEC case against

1

Rosenthal and his family, that are entirely irrelevant to either plaintiff's complaint or defendants' motion. Presumably, defendants engage in this exercise for the purpose of turning the Court's attention away from the insufficiency of the Motion, and to cast Rosenthal in as a bad and unsympathetic a light as possible. In this last regard, let us be clear: Ayal Rosenthal engaged in illegal conduct, pled guilty to a felony count of conspiracy to violate federal securities laws, and was sent to prison for two months for the crime. In his allocution, Rosenthal both apologized and took responsibility for the crime. *See* Declaration of Nancy Kilson dated February 1, 2010 ("Kilson Decl.") Exh. D-8 at p. 84. These facts are not in dispute.

At issue is whether, construing the facts in the light most favorable to Rosenthal and resolving all ambiguities and drawing all reasonable inferences against defendants, NYU and the Stern School have demonstrated that there is no genuine issue as to any material fact and they are entitled to summary judgment as a matter of law. Defendants' motion falls far short of doing so, or of demonstrating, as they must, that their actions against Rosenthal were permitted by, and undertaken in compliance with, the applicable NYU and Stern School rules and procedures. In reality, and contrary to defendants' assertions throughout their motion, defendants repeatedly and unabashedly broke virtually every NYU or Stern School rule applicable to the disciplinary complaint, investigation, and hearing against Rosenthal in order to withhold the MBA degree Rosenthal had earned.

Defendants do make a number of inaccurate and/or largely misleading statements in their Memorandum of Law.  While it is neither necessary nor practicable to refute them all, plaintiff is obliged to address some of the most striking examples.

First, defendants' assertion that "under University-wide rules, Stern's Policies and Procedures generally govern disciplinary proceedings against Stern students, except in cases

2

impacting both Stern and other components of the University in addition to Stern," (Def. Mem. at 9) is simply not true. In fact, Stern's Student Disciplinary Rules were created under, and are clearly subordinate to, the rules and policies set forth by the Senate for the University as a whole. *See* Hernstadt Decl., Exh. 5 at NYU 254-55 (§§ 1.E.1, II.E.)

As explained in greater detail in plaintiff's Motion for Summary Judgment, pursuant to the NYU Bylaws, the NYU Student Disciplinary Rules designate "jurisdiction over student disciplinary proceedings . . . under certain circumstances to the faculty of the school in which the student is enrolled"; the handling of violations of federal law was not allocated to the faculty unless it "also" fell into one of the designated categories. Pl. Rule 56.1 Statement, ¶¶ 23, 25; Hernstadt Decl. Exh. 5 at NYU 254 (§§ I, I.A). The NYU rules also permit the faculty of a school to delegate jurisdiction for disciplinary matters to a Faculty Discipline Committee, which "shall . . . file its own additional rules of procedure." Pl. Rule 56.1 Statement, ¶¶ 27, 29; Hernstadt Decl. Exh. 5 at NYU 254-55 (§§ 1.E, II.E). Accordingly, Stern School disciplinary matters are subject to both NYU and Stern School rules.

Second, Stern School Teaching Fellows – not "teaching assistants," as defendants misname the position – are not NYU employees, but recipients of a financial aid grant. *See* Declaration of Edward Hernstadt dated March 5, 2010 in Opposition to Defendants Motion for Summmary Judgment ("Hernstadt Opp. Decl.") Exh. 3.  Defendants work hard to ignore their own published definition in order to argue that, as a part-time employee, Rosenthal was subject to the NYU Code of Ethical Conduct (Def. Mem. At 4-5 7-8), despite the fact that such Code applies only to NYU employees and contains no provisions addressing off-campus crimes by students or any disciplinary mechanism. The contention that Rosenthal was a part-time employee, while inexcusably inaccurate, is also ultimately meaningless because, notwithstanding

3

the fact that the Stern Faculty referenced the NYU Ethical Code of Conduct in its February 28 Complaint, *see* Hernstadt Decl. Exh. 3 at NYU 60-61, the Judiciary Committee did not consider the Ethical Code at the disciplinary hearing for Rosenthal, did not include or consider it in the report presented to Dean Cooley by letter dated October 1, 2007, was not considered by the Stern Faculty in their (meaningless) October 3, 2007 vote regarding Rosenthal, and was neither considered nor mentioned in Dean Cooley's October 25, 2007 decision regarding Rosenthal's fate, or his February 19, 2008 rejection of Rosenthal's appeal. In other words, defendants misstate Rosenthal's Teaching Fellow status in order to invoke a rule that was neither relied upon by defendants in, nor holds any relevance to, the Rosenthal case.

Third, defendants engage in a similarly bald distortion of the facts for no real purpose in disavowing the contents of the "Grace Memo," which was distributed (in its original email form) to Judiciary Committee Chair Tim Colvin, Vice-Chair Amy Margolis, Judiciary Committee Chair Ochoa, the quorum of Judiciary Committee members at the hearing and to Rosenthal, and which served as the basis for many for the issues identified by Ochoa as relevant to Rosenthal's hearing. Defendants contend that "Grace is not the author of the Memo" and that "Grace did not analyze the impact of "Stern's disciplinary rules," but recommended that "Stern look to [its] own policies." As such, defendants now posit that "Grace's views apply in a different context. Rosenthal misinterprets those views in a factually baseless effort to find a procedural violation that does not really exist." Def. Mem. 9-10. This assertion is both inaccurate and misleading. Moreover, it is blunt attempt to downplay the fact that defendants have always been well aware that the Stern School was strictly bound by NYU's University-wide rules and procedures, as evidenced by the fact that the first person Stern Dean of Students Gary Fraser contacted when faced with concerns as to whether Stern had jurisdiction over Rosenthal's

4

case was then-NYU Director of Judicial Affairs and Compliance Thomas Grace. Pl. Rule 56.1 Statement, ¶ 60.

   While Grace did testify that he did not prepare the memorandum, he also acknowledged that he both compiled the various NYU rules included in it and sent them to Stern Vice-Dean Kim Corfman (who distributed them to Stern Deans Cooley and Fraser) in response to the Stern Deans' request that he advise them on the jurisdictional issues raised by the student Chair and Vice-Chair of the Judiciary Committee. *See* Hernstadt Decl. Exh. 18 at NYU 711-712 ("Here are three pertinent sections from the Students Guide to NYU from Tom") (copying the same materials included in the Grace Memo (*compare* Hernstadt Opp. Decl. Exh. 2 *and* Hernstadt Decl. Exh. 21 at NYU 341-43)). Grace also participated in a lengthy email exchange with the Stern Deans who were trying to force the Judiciary Committee students to change their mind and find jurisdiction over the Rosenthal case. *See* Pl. Rule 56.1 Statement, ¶¶ 60-68, Hernstadt Decl. Exhs. 16-21. When questioned about that exchange, and his discussions with Corfman, Grace admitted that (i) contrary to the defendants' assertions of fact set forth above, he could not recall whether he ever recommended that Stern "look to [its] own policies" in connection with an email that said no such thing, and (i) he did not correct, dispute or clarify any of the bullet points attributed to him that ended up in the "Grace Memo." Hernstadt Opp. Decl. Exh. 5 (pp 52:16-53:12).

   Fourth, defendants' assertion that "the Chair of the Judiciary Committee reasonably concluded that no investigative committee was necessary, because Rosenthal had pled guilty in open court to the criminal securities law violation on which the faculty complaint and Judiciary Committee proceeding rest" (Def. Mem. at 10) is no more than an after-the-fact excuse for the admitted failure of both Judiciary Committee Chairs –Tim Colvin and Mel Ochoa

– to appoint the Investigative Committee as mandated in the Stern Disciplinary Rules.  Under

Stern's Rules, "the Chair *shall* select an Investigative Committee within two academic days,"

which committee "*shall* submit its written report within seven academic days."  Hernstadt Decl.

Exh. 8 at NYU 77 (§ 4.b) (emphasis supplied). Not only do defendants misrepresent the fact that

the appointment of an Investigative committee is mandatory and not optional, but they also fail

to cite any support for the Chair having such authority. Another excuse proffered by defendants,

that "[a]n investigation of the facts underlying the complaint would have served no purpose,

since the complaint rested on Rosenthal's own sworn judicial admission of guilt" (Def. Mem. at

10-11), similarly misstates the issue and ignores the mandatory rules imposed upon the Judiciary

Committee and its Chair.

   Fifth, defendants strenuously try to gloss over the uncontestable fact that NYU

and Stern violated, ignored, or denied to Rosenthal virtually every rule or procedure applicable to

him under the NYU and Stern rules. For example, defendants state that "although Stern's

Policies and Procedures recognize that Stern students have 'the right [to] a fair and timely

hearing in accordance with these rules,' they do not set specific deadlines within which Stern

must either notify an accused of a proceeding or convene a disciplinary hearing."  Def. Mem. at

11.  This statement overlooks the fact that NYU rules specifically require notice to the subject of

a complaint within 48 hours. Hernstadt Decl. Exh. 5 at NYU 255 (§II.A).

   Defendants likewise attempt to minimize the long delays in the investigation and

hearing of the February 28, 2007 Faculty complaint, which was submitted to the Judiciary

Committee on March 1, 2007 by simply pretending that Judiciary Chair Tim Colvin did not work

on the matter at all. Thus, defendants assert, "there was a delay of several weeks before the

Judiciary Committee, through its incoming Chair, Melchior Ochoa, actively began work on the

matter." This "delay," defendants suggest, "occurred in part because of the unusual nature of the violation." Def. Mem. at 11. In fact, as demonstrated in plaintiff's Motion for Summary Judgment, there was no delay in commencing work on the case at all. Indeed, Judiciary Committee Chair Colvin worked on the Rosenthal matter from soon after he received the complaint on March 1, 2007, and did so until he left the Judiciary Committee some time after May 9, 2007. *See, e.g.,* Hernstadt Decl. Exh. 15, 20. There was, however, an extensive delay in the process caused by defendants' relentless efforts to bully Judiciary Committee Chair Colvin and Vice-Chair Margolis to change their minds and proceed with the case against Rosenthal. Ultimately, as a result of the delay, Colvin handed over the matter to Ochoa, who swiftly agreed to send the complaint to a disciplinary hearing. Finally, in this regard, it is not credible that Rosenthal's case could be both absolutely straightforward – he pled guilty to a crime, which defendants state is a violation of Stern rules – and so "unusual" as to justify such a prolonged delay.

    Defendants similarly flat-out misstate the facts when they attempt to explain away the refusal to permit Rosenthal to be accompanied by counsel at his disciplinary hearing, allegedly "because the applicable Stern Policies and Procedures do not allow counsel to appear" Def. Mem. at 13, 22. In fact, although the Stern rules are silent about whether counsel may or may not accompany an accused student – but certainly do not prohibit it – the NYU rules specifically give students the right to have an attorney at the judiciary committee hearing. Hernstadt Decl. Exh. 5 at NYU 255 (§II.D.3), Exh. 8 at NYU 77-70 (§§4-6). Indeed, the right to counsel is set forth in Section II.D of the NYU Student Disciplinary Procedures, which states that each individual school "Discipline Committee . . . shall conduct [disciplinary] proceedings

7

as they deem appropriate, but shall include the following provisions: . . . 3. That the student has

the right to be accompanied by counsel."  Hernstadt Decl. Exh. 5 at NYU 255 (§II.D.3),

       Sixth, defendants suggest that Rosenthal was properly punished because "the

hearing gave Rosenthal an opportunity to explain his misconduct and move the panel members to

exercise leniency on his behalf.  He failed to take advantage of this opportunity, and said nothing

to suggest that he accepted responsibility for the conduct underlying his guilty plea," but

"[i]nstead, Rosenthal proffered baseless arguments that Stern and the University had no

jurisdiction over him."  Def. Mem. at 14.  This contention is absurd in several respects.  Initially,

the complaint that Rosenthal did not accept responsibility for his conduct is both false – he

expressly did so at his plea allocution[1] – and irrelevant.  Acceptance of responsibility was not a

charge against him and simply had no place in a hearing as to whether his guilty plea violated

some NYU or Stern rule.  Moreover, to demean the defense presented by Rosenthal is stunning,

since the issue of jurisdiction was specifically identified by Ochoa as an important question in

his May 20 memorandum, and specifically bound over to the Judiciary Committee Hearing to

decide at the hearing ("First . . . it is the Chair's recommendation that a quorum of members . . .

decides if the Judiciary Committee . . . holds jurisdiction and/or authority in this case.")

Hernstadt Decl. Exh. 21 at NYU 345.  Given these directions from the Chair of the Judiciary

Committee, and the fact that Stern did not have such jurisdiction under the plain language of the

NYU Student Disciplinary Procedures, of course Rosenthal would present an argument on the

issue of jurisdiction.

---

[1]     "I accept responsibility for my actions and am very sorry for what I did." Kilson
Decl. Exh. D-9, 84:9-10.

Similarly, Rosenthal takes serious issue with defendants' suggestion that he wasted his opportunity at the hearing of his case because he "argued that the University 'can not demonstrate any harm or damage to the University's relationship with an involved external party,'" which "argument is simply irrelevant, as the University had no obligation to demonstrate any such harm or damage." Def. Mem. at 15. This contention blatantly ignores the fact that harm to the University was also an issue that Ochoa expressly raised in his May 20 memorandum and expressly directed the Committee to address at the hearing.[2]

Defendants' mocking dismissal of Rosenthal's efforts to fight a disciplinary process defendants had no power to pursue, or to attempt to invoke the rights and procedures expressly provided to him by NYU and Stern School rules (but which defendants simply ignored), underscores the hollowness of their Motion for Summary Judgment. Accordingly, plaintiff respectfully requests that it be denied in its entirety.

## ARGUMENT

In Count Four of the Second Amended Complaint, plaintiff alleged that defendants breached the contract between Rosenthal and NYU/Stern School by, among other things, conducting a disciplinary process against him without the jurisdiction to do so, failing to provide him with most of the essential due process protections to which he was entitled under NYU and Stern rules, and conducting a defective hearing against him. Defendants have failed utterly to

---

[2]    Similarly, although Rosenthal has dropped his claim that Stern had already conferred the MBA degree upon him as of January 2007, as set forth in their correspondence to him, he did so based on discovery provided by defendants in this litigation.  Rosenthal did not know this fact until he received such discovery, and, at the time he raised this issue with the Stern school, reasonably believed that he had already graduated based on defendants' various letters indicating his graduation.

show that no genuine issue of fact exists as to this claim so that they are entitled to judgment as a

matter of law.  First, defendants ignored or simply refused to provide Rosenthal with most of the

procedural rights called for in the NYU and Stern rules, even those defendants identified in

writing as being due to plaintiff.  Second, notwithstanding defendants' last-ditch effort to create a

new basis to justify breaching their obligations to Rosenthal, there is not and never was an

academic basis to the disciplinary process and punishment imposed on plaintiff.

**I.      Defendants Disregarded NYU's and Stern's Written Policies and Breached Nearly
           Every Procedural Rule During the Disciplinary Proceedings Against Rosenthal**

        A.      NYU Rules Divest the Stern School from Jurisdiction
                 <u>to Discipline Rosenthal for His Off-Campus Conduct</u>

Defendants did not have the right, and should not have subjected Rosenthal to any

disciplinary action in the first place, because under NYU's Student Disciplinary Procedures,

neither NYU nor Stern had jurisdiction to adjudicate his off-campus conduct.  University-wide

policy clearly prohibits NYU and its individual schools from punishing students for non campus-

or University-related behavior except for a few, very limited circumstances—none of which

Defendants have even attempted to claim apply here.  Instead, Defendants falsely assert that the

Stern School rules grant it jurisdiction "without limitation" over "'violations of the MBA Code

of Conduct' and of 'federal, state, and local laws.'"  Def. Mem. at 25. This claim is belied,

however, by the unambiguous, controlling authority of the NYU Student Disciplinary

Procedures, which were enacted pursuant to NYU Bylaws, and which expressly limit the

jurisdiction over disciplinary matters allocated by the University to the Stern School to an

enumerated and narrow set of matters, as well as general University policy against the exercise

of jurisdiction for off-campus activities.

As an initial matter, the Stern School's ability "to make and enforce rules for the guidance and conduct of the students" is "[s]ubject to the approval of the [NYU] Board [of Trustees] and to general University policy as defined by the President and Senate." Pl. 56.1 Statement, ¶ 15, Hernstadt Decl. Exh. 4 at NYU 1161-62. In other words, the Stern School rules and regulations are subordinate to the University's policies and procedures.  And where a Stern rule is in conflict with or exceeds the scope of a University rule or policy, that rule is obviously unenforceable.

Thus, contrary to Defendants' contention, the Stern School's power to discipline Rosenthal in this case was significantly limited in at least two ways.  First, the University's Policy on Student Conduct generally proscribes both the University and its individual schools from punishing students for off-campus behavior. Pl. 56.1 Statement, ¶18, Hernstadt Decl. Exh. 5 at NYU 253.  As such, to the extent that Stern's Code of Conduct (or for that matter any other Stern or University rule) seeks to punish students for engaging in unlawful activities, it can only do so for conduct that took place on-campus.  Illegal acts that, like Rosenthal's, did not involve the University and occurred outside University property do not fall within the confines of the University's—and by extension, the Stern School's— jurisdiction.

Second, the NYU Student Disciplinary Procedures, which directly allocates certain disciplinary matters to the faculties of the individual schools, simply do not confer upon the faculty of the Stern School the authority to discipline Rosenthal for his illegal off-campus activities.  According to the Student Disciplinary Procedures, which were approved by the University Senate and are binding on the Stern School, cases of faculty jurisdiction are as follows:

11

1.      Cheating, plagiarism, forgery of academic documents with intent to defraud.

2.      Disruption of a lecture hall, laboratory, or any other premises used for academic purposes.

3.      Failure to return library books, or destruction of all or part of a library book or archival document.

4.      Interference with access to classrooms, laboratories, or academic offices.

5.      Physical detention or restraint of a student, instructor, University staff member, or administrator while that person is attempting to exercise his/her duties.

Pl. 56.1 Statement, ¶ 23, Hernstadt Decl. Exh. 5 at 254 (§I.A.)[3]

In accordance with the University's Policy on Student Conduct, the Student Disciplinary Procedures provide that only violations of "city, state, or federal laws" that "*also fall within one of the categories defined in I.A. or I.B. above . . . may also be subject to applicable disciplinary measures within the University.*" *Id.*, at 255 (§D.1)(emphasis added). Since Rosenthal's conduct, pleading guilty to the felony of disclosing confidential information to his older brother in conscious avoidance of securities laws, is not included either cases of faculty or Senate jurisdiction, his conduct cannot be adjudicated by the University.

Thus, Defendants' assertion that Stern's "jurisdiction extended without limitation," including to "'violation of . . . federal, state, and local laws" is patently untrue.

---

[3]      Cases of Senate Jurisdiction is similarly unrelated to such off-campus conduct. (Student Disciplinary Procedures §I.B.)  They include: (1) disruptive or riotous activity on campus, (2) violation of dormitory rules, (3) forgery of instruments of identification, (4) theft of, or damage to, University property, (5) engaging in various disrupting conduct on campus, (6) failing to surrender University identification or to comply with University personnel in the performance of their duties. *Id.*

B.     Defendants Were Obligated to Abide By Both the NYU Student
       Disciplinary Procedures and the Stern Student Disciplinary Rules

Rosenthal was denied virtually every basic and necessary procedural protection to which he was entitled under the NYU and Stern School Rules, including, but not limited to: timely notice of the complaint against him; the appointment of an Investigative Committee with two academic days to investigate the complaint; a written report by that Investigative Committee within seven academic days; a timely hearing of that complaint, including a tape recording of it preserved through any appeal period; a final written report stating findings of fact and reasons for the decision provided to him within seven calendar days of the hearing; and the right to be represented by counsel at the hearing.  Defendants provide no coherent or credible explanation why these fundamental rights, which are clearly spelled out in the NYU Student Disciplinary Procedures and Stern School Student Disciplinary Rules, do not apply to Rosenthal or his case.

Defendants attempt to dismiss the applicability of any NYU rule to the Stern School by inaccurately stating that "under the University-wide rules, Stern's Policies and Procedures generally govern disciplinary proceedings against Stern students, except in cases impacting both Stern and some other NYU school or division in addition to Stern."  Def. Mem. at 9; Cooley Decl. ¶ 16 and Exh. 9, Exh. 10 at p. 229 § E.  Defendants' claim is demonstrably false, and the only support they offer in support of this potentially dispositive issue is defendant Cooley's self-serving declaration referencing an obviously inapplicable University rule.  In truth, Section II.E of the NYU Student Disciplinary Procedures, cited by Cooley, states that each Faculty Discipline Committee[4] "shall . . . file its own *additional* written rules of procedure with

_____

        [4]        Section I.E.1 permits the Faculty of a school to delegate its authority over disciplinary matters to a "Disciplinary Committee."

13

the Secretary of the University."  Hernstadt Decl. Exh. 5 at NYU 254-55 (§§ I.E.1, II.E.)

(emphasis supplied). [5]

        Notwithstanding defendants' clearly false assertions to the contrary, nothing in

the University policies allows the Stern School to circumvent these clear and unambiguous rules.

Under the plain language of the NYU Student Disciplinary Procedures, the Stern rules apply in

conjunction with the University rules, and Stern must fully comply with the minimum standards

spelled out in those University-wide procedures.  The Stern School is not free to ignore NYU

policies and procedures unless it is specifically authorized to do so.

       C.     Defendants Failed to Follow Fundamental NYU and Stern Policies
            <u>Or Provide Fundamental Rights and Procedural Protections to Rosenthal</u>

        Defendants delayed the "timely" hearing to which Rosenthal was entitled by more

than two full months in order to secure a decision from the Judiciary Committee to their liking.

In the interim, Defendants failed to notify Rosenthal that he was the subject of a faculty

complaint at all, let alone within the required 48 hours, while pressuring the student Chair and

Vice-Chair of the Judiciary Committee to change their view – which persisted until a new Chair

took over the case – that the Stern Judiciary Committee could not move forward with

Rosenthal's case.  During that period, the Chair of the Judiciary Committee failed to appoint an

---

     [5]     In fact, the section immediately preceding the one upon which defendants rely requires *both* faculty Discipline Committees and the University Judicial Board (the Senate and its University Judicial Board are delegated cases involving more than one NYU school) to provide students under their respective jurisdictions three fundamental rights: "Each *Discipline Committee* <u>and the University Judicial Board</u> shall provide hearings and make decisions on all disciplinary cases within their respective jurisdictions.  *They shall conduct such proceedings as they deem appropriate, but shall include the following provisions*," (1) to have the hearing tape recorded, (2) to receive a written report within seven calendar days, stating findings of fact and reasons for the decision, and (3) the right to be accompanied at the hearing by counsel or an adviser. Hernstadt Decl. Exh. 5 at 255 (§ II.D) (emphasis added).

Edward Hernstadt 3/5/10 10:44 PM
**Deleted:** .

14

Investigative Committee within two academic days, which Committee was required to file a report within seven academic days. Had the Judiciary Committee complied with those mandatory Stern Rules, it would have eliminated or reduced the months-long delay that resulted in the departure of Judiciary Committee Chair Colvin, who was following the clear and unambiguous University Rules in the Rosenthal case and repeatedly indicated his belief that the Judiciary Committee did not have jurisdiction over the Rosenthal case.  Instead, Ochoa took over as Chair more than two months after the complaint was submitted to the Judiciary Committee, and essentially abandoned the Committee's independent review of the case by bizarrely deferring deciding the question of jurisdiction (a decision reserved to the Office of University Counsel) to the hearing itself – a hearing that could presumably only take place if there was a finding that jurisdiction for it exists.

Defendants attempt to deflect the obvious fact that they violated so many procedures and denied Rosenthal so many of the due process rights accorded to him by NYU and Stern rules by contending that "New York courts have recognized that minor delays in student disciplinary proceedings do not give rise to procedural violations, especially where, as here, any delay has a legitimate basis." [6]  Def. Mem. at 21.  This assertion is fatally flawed in numerous

---

[6]     The case cited by Defendants for this proposition, *Nawaz v. State Univ. of N.Y.*, 295 A.D.2d 944 (4th Dep't 2002) (incorrectly named *Majewski v. State Univ. of N.Y.* in defendants' brief), actually held that the University had substantially complied with its written policies when it commenced the formal proceedings against students for cheating within 33 days of the incident rather than the ten business days required by the student handbook.  The court was not troubled by the three-week delay, as it occurred because the University performed a statistical analysis of the test scores in question so as to avoid charging the students with a potentially baseless complaint.  That is, the University's delay was the result of actions undertaken for the benefit of the students.  In contrast, here defendants delayed the investigation and decision whether to proceed with a disciplinary hearing more than two months so that they could bully the Judiciary Committee into hearing the case, and the hearing did not take place for more than 200 days after the complaint was filed.

15

respects as it relies on false assumptions.  First, a seven-month delay is not "minor" by any

measure.  *See, e.g., Machosky v. State University of New York*, 145 Misc. 2d 210 (N.Y. Sup. Ct.

1989) (dismissing disciplinary charges against a student and ordering a university to reinstate

him, in part, because of a three-month delay in initiating disciplinary charges) *citing Ryan v.

Hofstra Univ.*, 67 Misc. 2d 651, 660 (N.Y. Sup. Ct. 1971) (holding that a university's three-

month delay in scheduling a review hearing was punitive).  The magnitude of the seven-month

delay in holding a disciplinary hearing here is particularly striking in relation to the short time

frames set out in the Stern School and NYU rules for such matters, and even in comparison to

the two years it took Rosenthal to complete all his coursework for the degree.

       Second, the suggestion that the lengthy delay was in any way excusable or

"legitimate" is ludicrous.  NYU attempts to justify the delay by insincerely stating that "the case

was unusual and Stern took time to consider how to proceed."  Def. Mem. at 22.  That argument

is simply not true.  As set forth *supra*, and in plaintiff's Motion for Summary Judgment, the

holdup was caused by the Stern administration's refusal to accept the first Judiciary Committee's

finding that it could not subject Rosenthal to disciplinary sanctions.  *See* Pl. 56.1 Statement ¶¶

57-73, Pl. Mem. at 20-21. The only thing "unusual" about the Rosenthal case is the extraordinary

and entirely improper effort by the Stern Deans – Dean Cooley, Vice-Dean Corfman, and Dean

of Students Fraser – to overpower the Judiciary Committee student Chair and Vice-Chair's

exercise of their independent judgment and their repeated statements to the Stern administration

that the Committee could not take the case. Indeed, in light of the overwhelming evidence of the

Stern Deans' blatant tampering with the Judiciary Committee, the testimony by Deans Cooley

and Fraser as to the independence of the Committee is nothing short of ironic.  *See* Hernstadt

Opp. Decl. Exh. 1 (33:4-19), 6 (52:8-16).  Although Stern's strong-arm tactics failed to

overcome the oft-repeated conclusion of Committee Chair Colvin that no jurisdiction existed,

Stern ultimately got the ruling it desired and pressed so hard to achieve once Colvin graduated

and a new Chair took over.  Accordingly, not only was the delay inexcusable, but it was also

prejudicial, since but for the administration's delay and continued pressure on the students, the

Judiciary Committee would have rejected the case altogether.

Even if the case were, in fact, "unusual" for the reasons advanced by Defendants,

which it is not, that status does not excuse defendants from adhering to the clear rules of the

University and the Stern School, both of which assign to the University Office of Legal Counsel

the authority to decide whether jurisdiction exists in the event such a question arises.  Here, of

course, defendants have affirmatively averred that the Stern Judiciary Committee made the

decision on jurisdiction, (Pl. Rule 56.1 Statement, ¶ 71) rather than follow its rules ("If there are

questions of jurisdiction in any particular case, they shall be referred for decision to the Office of

Legal Counsel of the University.").[7] Hernstadt Decl. Exh. 8 at NYU 76 (§I.C.1).  Had Stern

actually followed its own procedures and timely referred the matter to the Office of Legal

Counsel, much delay and prejudice might have been avoided.

Rosenthal's procedural rights were also violated when his attorney was told he

could not attend the disciplinary hearing.  Defendants' claim that "students have no right to have

counsel present during school disciplinary proceedings" (Def. Mem. at 22) is squarely contrary

to NYU's established written procedures.  As discussed, *supra*, the NYU Student Disciplinary

Procedures provide that "the student has the right to be accompanied by counsel or an adviser" at

---

[7]     The NYU Student Disciplinary Procedures similarly assign to the Office of Legal
Counsel the authority to resolve questions of jurisdiction, but only where it is a question between
faculty or Senate jurisdiction, which was not the question here.  *See* Hernstadt Decl. Exh. 5 at
NYU 254 (§1.C.1).

the hearing.  Hernstadt Decl. Exh. 5 at NYU 255 (§ II.D.3).  The Judiciary Committee's hearing

procedures are governed by both the University-wide rules, as well as the Stern rules (which are

silent on this issue).  Rosenthal was prejudiced by Defendants' exclusion of his attorney from the

hearing because Rosenthal prepared for the hearing with the expectation that his attorney would

be by his side, as he was told by Ochoa. Rosenthal could not anticipate that he would have to

stand before the hostile committee, all alone, and respond to questions and issues that were not

included in the faculty Complaint against him (such as the purported violation of the Stern Code

of Conduct) or raised in the Ochoa Memo.  Moreover, because of the criminal nature of

Rosenthal's conduct and the pending SEC lawsuit, Rosenthal's attorney agreed to leave the

hearing room on the condition that the facts and circumstances of Rosenthal's conduct would not

be discussed without his presence. *See* Rosenthal Opp. Decl. ¶¶ 6-7.

Additionally, defendants make the odd assertion that "the Judiciary Committee

acted in a purely advisory role, and the Stern faculty was the real decision maker here."  Def.

Mem. at 22-23.  This contention is not just a wholly conclusory non-sequitur, but it is directly

contradicted by both the plain language of the Stern School Student Judiciary Rules and

defendants' admission that under those rules "the Stern faculty has delegated its disciplinary

authority to Stern's 'MBA Judiciary Committee.'" Def. Mem. at 8; Hernstadt Decl. Exh. 8 at

NYU 75 ("the faculty hereby delegates its authority [over student discipline] to the MBA

Judiciary Committee of the Stern School of Business"); *see also* Hernstadt Decl. Exh. 5 at NYU

254 (NYU Student Disciplinary Procedure § 1.E authorizing faculty to delegate its disciplinary

jurisdiction to a committee). As one might expect, defendants do not, and cannot, cite to any

Stern or NYU rule in support of the bald assertion that the Judiciary Committee acted in an

advisory role, as opposed to having been delegated the Stern Faculty's entire disciplinary

18

authority.  Moreover, if the Judiciary Committee merely acted in an advisory capacity, then there
was no reason to delay the proceedings against Rosenthal for so long.  The faculty or Dean could
have simply proceeded without the Judiciary Committee's decision on jurisdiction, or a Judiciary
Committee hearing, or a written decision by the Judiciary Committee based on that hearing.

        Similarly, the Court should ignore as wholly unsupported rhetoric defendants'
statement that "The true purpose of the Judiciary Committee hearing was to give Rosenthal a
chance to explain himself—an opportunity he squandered by making the same kind of
pettifogging arguments he offers in this lawsuit, ignoring his own sworn admission of culpability
in open court before Judge Gleeson."  Def. Mem. at 23.  This assertion is both mean-spirited and
without any basis in the Stern School or NYU rules, or any discovery in this case. The stated
purpose of the Judiciary Committee investigation and/or hearing was first, to determine if
jurisdiction existed to hear the faculty complaint against Rosenthal, and second, to determine
whether the Faculty could meet its burden of proof on the complaint so as to impose some
penalty on Rosenthal.

II.      **Defendants' Decision Not to Award Rosenthal His
Degree Was Not an Exercise of Academic Discretion**

        Over the course of the year-long process that resulted in Rosenthal's being denied
the MBA degree he had earned, defendants established a practice of changing rules and
rationales whenever and however they so desired.[8] Defendants now contend for the first time

---

[8]    For example: (i) Defendants charged Rosenthal with violating the University
Code of Ethical Conduct yet that charge was not addressed at the disciplinary hearing and was
not a basis of Cooley's decision against him; rather the Judiciary Committee found that he
violated the Stern Code of Conduct, a charge that was absent from the Faculty complaint; (ii)
despite the fact that Rosenthal was told that he could have counsel present at his disciplinary
hearing, his attorney was not allowed to accompany him; (iii) Rosenthal was advised by Ochoa
that the disciplinary hearing would focus on the issues of jurisdiction and whether he violated

ever that the decision to discipline Rosenthal was academic in nature and it is therefore immune from judicial scrutiny.  Defendants claim that "even if a material procedural violation had occurred—which is not the case—Stern and NYU would have the prerogative to deny a degree to Rosenthal, because the Stern faculty as a whole deemed him academically unqualified to receive it.  Such an academic determination is committed to the discretion of the University."  Def. Mem. at 20.  This newly minted approach to the Rosenthal case is unsupported by either the facts of the case or New York law.

Defendants' brazenly fabricated new theory is defective for a number of obvious reasons.  First and foremost, from the very first day Stern learned of Rosenthal's legal issues, defendants have treated this case as a disciplinary action.  Rosenthal was not accused in the Faculty Complaint of any academic violation or wrong-doing, but that "by pleading guilty to an infraction of federal securities law, Mr. Rosenthal has broken both the Stern Honor Code and the University Code of Ethical Conduct"[9]; Ochoa's May 20 memorandum sending the Complaint to a hearing did not mention any academic malfeasance by Rosenthal; Ochoa's October 1, 2007 letter to Cooley setting out the Judiciary Committee's findings and recommendations was silent as to academic issues; and Cooley's October 25, 2007 letter finding against Rosenthal was

---

Stern and NYU rules, yet Defendants assert in their Motion for Summary Judgment that "[t]he hearing gave Rosenthal an opportunity to explain his misconduct and move the panel members to exercise leniency on his behalf"; (iv) throughout the entire investigation and hearing process, members of the Judiciary Committee were provided with the "Grace Memo" containing a information on applicable University-wide rules and on jurisdiction; defendants now disavow the Grace Memo as incorrect and irrelevant in order to make the new argument that Stern need not follow University-wide rules; and (v) the Stern Faculty delegated its disciplinary authority to the Judiciary Committee, which was given the Rosenthal Complaint to adjudicate, but defendants now assert that the entire process and decision were purely "advisory."

[9]      Tellingly, the latter of the codes asserted in the Faculty Complaint does not even apply to students, but only to employees of the University.

20

devoid of any allegation of Rosenthal's academic deficiencies.  *See* Pl. Rule 56.1 Statement ¶ 54;

Hernstadt Decl. Exh 3 at NYU 60-61, 43-44; Exh.21 at NYU 344-46; Exh. 24.  In fact, to the

contrary, as Cooley wrote in his initial decision, "I wish to emphasize that every state of the

proceeding, your guilty plea to conscious avoidance of securities law has been the deciding

factor in the decisions made" – that is, Rosenthal's criminal, not academic, activity.

    Second, the argument that Rosenthal's off-campus violation of federal securities

laws was in some way related to his academic conduct goes far beyond stretching the definition

of "academic" past any reasonable meaning.  As defendants correctly note, courts are generally

reluctant to interfere with a school's genuine academic decisions. However, that reluctance is

limited to decisions that are actually related to academic achievements, in matters such as

admission criteria (*see, e.g., Tanenbaum v. Columbia Univ.*, 244 A.D.2d 164, 165 (N.Y. App.

Div. 1st Dep't 1997)), student's grades (*see, e.g., Susan M. v. New York Law School*, 76 N.Y.2d

241 (N.Y. 1990)) academic standards (*see, e.g., H. v. New York Medical College*, 88 A.D.2d 296,

300 (N.Y. App. Div. 2d Dep't 1982)), tenure decisions (*see, e.g., Sackman v. Alfred Univ.*, 186

Misc. 2d 227 (N.Y. Sup. Ct. 2000)), and other, purely discretionary academic matters. NYU

cannot, as it appears to believe, simply brand Rosenthal's conduct "academic" and thereby

escape all judicial scrutiny.

    No matter how defendants couch the complaint and decision against Rosenthal,

they were not, and were never asserted to be, academic in nature.  It is simply not sufficient to

grasp upon scattered words in the various documents relevant to the case against Rosenthal, such

as "business ethics" and "qualified," and contrive a theory that the disciplinary action against

Rosenthal had an academic component, when such a component is so starkly absent from any

decisional language in that action.  Rosenthal's guilty plea was deemed (albeit by a fatally

flawed and prejudicial process) to have violated the school's Honor Code and Code of Conduct. Stern cannot equate Rosenthal's misconduct (based upon illegal off-campus activities that had no connection to Stern or NYU) with a failure to attain a standard of scholarship.

In this regard, the Stern academic and graduation requirements are listed on its web site.  *See* Hernstadt Opp. Decl. Exh. 4.  Rosenthal met and exceeded each and every single one of them — a fact that Defendants do not challenge.  Once a student has met these requirements, the University cannot exercise unfettered discretion in decided whether to award the student his diploma.  *See Ward v. New York Univ.*, 2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sept. 25, 2000) ("When a student enrolls at a university, an implied contract arises whereby, if the student complies with the conditions prescribed by the university, he or she will obtain the degree she is pursuing.").  Indeed, any finding that Stern or NYU could arbitrarily withhold a diploma to a student who has otherwise fulfilled all his obligations under the contract between them would render that contract utterly meaningless.

In sum, defendants subjected Rosenthal to disciplinary proceedings in which they accused him of violating disciplinary rules and found him to have violated these rules. They cannot today, some two years after Cooley's final decision rejecting Rosenthal's appeal, suddenly restate this entire history by claiming that the action against Rosenthal was an "academic" decision.[10]

---

[10]      Of course, even purely academic decisions are not entirely beyond the scope of judicial review.  *See Morales v New York Univ.*, Morales v. New York University, 83 A.D.2d 811 (1st Dep't 1981), aff'd 55 NY2d 822 (denying defendant's motion for summary judgment, and finding an issue of fact exists "as to whether defendant acted in good faith in denying plaintiff's request for transfer credits toward fulfilling the requirements for a doctorate degree.") Courts may also overturn a university's *academic* decisions if the university has acted in a manner that is "arbitrary and capricious, irrational, made in bad faith or contrary to Constitution or statute."  *Susan M. v. New York Law School*, 76 N.Y.2d 241, 246, 556 N.E.2d 1104, 1107, 557

NYU and Stern are not the first university defendants to try to "hide behind the screen of academic freedom to avoid its obligations" to its students. *Flomenbaum v New York Univ.*, 2009 NY Slip Op 8975, 11 (N.Y. App. Div. 1st Dep't 2009) (Acosta, J., dissenting). For example, in *Lightsey v. King*, 567 F. Supp. 645 (E.D.N.Y. 1983), Thomas Lightsey, a student at the United States Merchant Marine Academy was accused of cheating on an exam. The instructor entered the student's grade as "zero," which rendered him ineligible for the Coast Guard licensing exam. The academy's honor board held an evidentiary hearing on the matter and exonerated the student, but the school refused to accept the honor board's decision, claiming that "this is a matter of 'grades,' and, as such, is delegated to the faculty and is reviewable only by the administration of the Academy." *Id*. at 647. The district court was not amused by "the artful semantics of the defendants" and concluded that:

> this is not an instance of discretionary grading, and the cases relating to academic standards and sanctions for academic deficiencies are not apposite. This is a disciplinary matter, rather than an academic one, a distinction of great significance. . . . The Academy is well aware of this distinction, because it takes great pains to argue that "no disciplinary element" was involved in Lightsey's case and that the Academy's refusal to credit his test score was "purely academic." However, the Court is convinced from the record and its observation of the witnesses at the evidentiary hearing that the reverse is true: there was no academic element to the Academy's action; rather, it was purely disciplinary, at least until the Honor Board cleared Lightsey of the charge of cheating. Only then did the Academy determine this to be exclusively an "academic" matter involving "grades," in an attempt to circumvent the Honor Board's verdict. Had the Academy taken this position from the outset, without reporting Lightsey to the Honor Board, and applied its "academic" procedures fairly, rationally and in good faith, this Court would not presume to question its judgment.

*Id*. at 648.

---

N.Y.S.2d 297, 300 (1990). Moreover, "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed" where such suspension or expulsion is "for causes unrelated to academic achievement." *Tedeschi v. Wagner Coll.*, 404 N.E.2d 1302, 1304-06 (N.Y. 1980).

Here, defendants are similarly confronted with the reality that their written policies afford them no power to discipline Rosenthal, and having subjected Rosenthal to a severely flawed and unfair disciplinary proceeding, defendants now seek to reframe their improper decision as an academic one.  Defendants should be estopped from recharacterizing the process from a disciplinary to an academic one, particularly since there has never been any suggestion before that the decision had any academic component.

Indeed, Rosenthal's unlawful conduct bears no relationship to his academic achievement and cannot serve as an "academic" basis for the University to deny him his degree. Defendants write that "numerous courts have recognized that a student's dishonest behavior is of 'vial interest' to an academic institution."  Def. Mem. 24.  They fail to note, however, that these cases do not refer to dishonest behavior generally, but are all specifically linked to dishonesty vis-à-vis the university. Defendants rely upon the dissent in *Harris v. Trustees of Columbia University*, 98 A.D.2d 58, 68 (N.Y. App. Div. 1st Dep't 1983), a case in which a student was accused of previously lying to the university about his affiliation with the school in order to remain in university housing.  However, defendants' parenthetical purporting to summarize the holding is intentionally incomplete and misleading.  The full sentence reads "[the student's fraudulent submission] evinced a degree of dishonesty and lack of character, a matter of vital interest to an academic institution, which may reasonably expect honesty and fairness by its students *in dealings with the university*" (emphasis supplied).

In fact, none of the cases cited by defendants permits institutions of higher education to discipline students for dishonesty committed outside an academic context or without some connection between the conduct and the student's dealing with the university.  Thus neither

24

*Bhandari v. Trustees of Columbia Univ. in N.Y.*, 2000 U.S. Dist. LEXIS 3720 (S.D.N.Y. Mar. 24, 2000) (student repeatedly lied to professor about his twin brother's health in order to be excused from several classes and from doing some work), nor *Papelino v. Albany College of Pharm.*, 2009 U.S. Dist. LEXIS 82939 (N.D.N.Y Sept. 11, 2009) (students were found to have cheated in various courses), provides any support to defendants' newly conceived argument.

Here, of course, there is no suggestion that Rosenthal engaged in any criminal or dishonest activity with respect to Stern or NYU. To the extent that defendants may attempt to infer such dishonesty from Rosenthal's failure to inform Stern that he was being investigated by the SEC, they do not point to any obligation on Rosenthal to have done so, and Rosenthal, since he was innocent until proven guilty, obviously had every reason not to bring his legal problems to anyone's attention before his guilty plea or some resolution against him in the SEC. Indeed, Rosenthal had no obligation to bring his guilty plea to defendants' attention, and no reason to do so, particularly since he worked so hard and so successfully to keep NYU and the Stern School's names out of any press mention of his problems. Pl. Rule 56.1 Statement ¶ 45.

### III. Defendants Are Not Entitled Summary Judgment on the Article 78 Claims

A. <u>Count Five</u>

As discussed at length both in this brief, *supra*, and in Rosenthal's Motion for Summary Judgment, neither Stern nor NYU had jurisdiction to subject Rosenthal to discipline. NYU's and Stern's rules are clear and unequivocal on this issue. The Court should therefore deny defendants' motion for summary judgment on this issue and rule in Rosenthal's favor.

B. <u>Count Six</u>

25

This issue, too, has been thoroughly examined and briefed by Rosenthal. Defendants cannot show that they are entitled to summary judgment on the issue of whether their decisions with respect to Rosenthal were "arbitrary and capricious and/or an abuse of discretion with respect to the process utilized, the results reached and the punishment meted out."  Second Am. Compl. ¶ 88.  Defendants committed wholesale violations of the applicable NYU and Stern rules during the entire disciplinary process; they went out of their way to deny Rosenthal his basic procedural rights; and deprived Rosenthal of a fair and just process.  It is not surprising, therefore, that defendants' decision to discipline Rosenthal was based on inapposite rules, mistakes of fact and law, and was tainted by the prejudices and strong-arm tactics of the university administrators.  Finally, the punishment imposed on Rosenthal to deny him his MBA degree, was so extreme and excessive that it is entirely devoid of either proportion or fairness.[11]  Defendants' motion should therefore be denied on this point as well.

---

[11]    In this regard, and contrary to Defendants' claims, New York law does not require a plaintiff to show that he was prejudiced by a university's violation of its procedural rules, and *Trahms v. Trustees of Columbia Univ.*, 245 A.D.2d 124, 125 (1st Dep't 1997), the case cited by defendants as authority for this incorrect statement of the law, does not stand for such a requirement.  In fact, the *Trahms* court found that the university substantially complied with its published guidelines where it provided the student with adequate notice of the hearing and charges against him and the student appeared at the hearing and presented a defense that included the testimony of himself and two witnesses.  *Id.* at 125.  In light of these findings, the court concluded that the student suffered no prejudice.

26

C.    Count Seven

        The Court should also deny defendants' motion on Count Seven, which alleges that defendants' disciplinary decision was not supported by substantial evidence.  As previously noted, both in this submission as well as in Rosenthal's Motion for Summary Judgment, defendants did not so much as attempt to ascertain the facts surrounding Rosenthal's conduct that led to his conviction.  Instead, defendants relied solely on the undisputed (yet insufficient for disciplinary purposes) fact that Rosenthal pled guilty to one count of conspiracy to commit securities fraud.  Thus, defendants cannot meet their burden on summary judgment here.

D.    Rosenthal is Entitled to His Degree and to Damages

        At the very least, Rosenthal is entitled to the degree that he earned and paid for. Defendants should be required to uphold their end of the contract, just as Rosenthal had done. Defendants offer no meaningful explanation, other than immaterial rhetoric about the university's broad discretion to manage its academic affairs, as to why Rosenthal should not receive his degree.  Similarly, to the extent that defendants unlawfully denied Rosenthal his degree, they provide no reliable reasons as to why they should not bear the financial burden their impermissible actions imposed on Rosenthal.

**CONCLUSION**

        For the reasons set forth above and in plaintiff's related submissions in support of his Motion for Summary Judgment and in Opposition to defendants' Motion for Summary Judgment, defendants have failed to demonstrate that there is no genuine issue as to any material fact and they are entitled to summary judgment as a matter of law. Accordingly, plaintiff respectfully requests that the motion be denied in its entirety.

27

Dated: New York, New York
March 5, 2010

HERNSTADT ATLAS LLP


By:      _____/s/_____
Edward Hernstadt (EH 9569)
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
Attorneys for Plaintiff

28