New York University Office of General Counsel
Nancy Kilson (NK 4557),
Associate General Counsel
70 Washington Square South, Rm. 1158
New York, New York 10012
Tel.: (212) 998 2258
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

AYAL ROSENTHAL,

                Plaintiff,                08 CV 5338 (LAK)
                                            ECF Case

    v.

NEW YORK UNIVERSITY, *et al.,*

                Defendants

_____

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

Preliminary Statement .............................................................................................................. 1

ARGUMENT ............................................................................................................................ 3

Rosenthal Has No Legitimate Basis On Which to Oppose
Summary Judgment Dismissing His Complaint ...................................................................... 3

    A.   Stern's Rules Specify The Relevant Procedures ...................................................... 3

    B.   The Alleged "Tampering" Has No Basis. ............................................................... 5

    C.   Rosenthal Suffered No Prejudice ............................................................................ 6

    D.   Stern Made An Academic Decision Regarding
        Rosenthal's Lack of Entitlement to a Degree ........................................................ 7

CONCLUSION ......................................................................................................................... 8

## TABLE OF AUTHORITIES

### Cases

*Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) .................................................. 6

New York University Office of General Counsel
Nancy Kilson (NK 4557),
Associate General Counsel
70 Washington Square South, Rm. 1158
New York, New York 10012
Tel.: (212) 998 2258
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

AYAL ROSENTHAL,

                Plaintiff,              08 CV 5338 (LAK)
                                                ECF Case

      v.

NEW YORK UNIVERSITY, *et al.*,

                Defendants

_____

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

It is clear from Rosenthal's Opposition to Defendants' Motion for Summary Judgment ("Rosenthal 3/5/ Br.") that the parties have no substantial factual disputes, and disagree primarily about the interpretation of the governing contract, and particularly the applicable disciplinary rules. Rosenthal, who must establish that NYU and Stern failed to follow those rules in order to prevail, argues that Stern should for the most part have disregarded the rules that generally govern its students, and instead followed University-wide rules which, on their face, apply to different situations involving more than one school or disturbances of public order. Rosenthal offers no evidence whatsoever that the

University-wide rules on which he relies usually apply in cases involving Stern students. His argument against the application of Stern's rules also disregards relevant provisions of the University's Bylaws and Faculty Handbook, although he concedes that both are part of the governing contract and has incorporated them in support of his own summary judgment motion.  Moreover, in the single instance where Rosenthal can show that Stern did not follow one of its own disciplinary procedures – a rule requiring the appointment of an Investigative Committee to determine facts where needed, which was not the situation here  – Rosenthal argues that Stern's rules *should* apply.  Rosenthal's arguments are result-oriented, and both legally and factually unsupported.  They provide no reason for the Court to advance this case to trial.

      Rosenthal has also completely lost sight of the big picture.  He challenges Stern's decision after a disciplinary proceeding not to confer an MBA degree.  Rather than making that decision entirely on its own, Stern's faculty gave Rosenthal's peers on the MBA Judiciary Committee a chance to express their views, and allowed Rosenthal himself to speak in his own defense at a hearing before that committee.  The Judiciary Committee concluded that Rosenthal should not receive his degree.  Stern's faculty did not need the students' permission to act, however, and could have decided to expel Rosenthal even if the Judiciary Committee had disagreed or there had been no Judiciary Committee hearing at all.  Thus many of Rosenthal's allegations, for example, his contention that Defendants "tampered" with the Judiciary Committee, are not only factually unsupported but also simply irrelevant.

      In his brief (at 19), Rosenthal himself concedes that, if the Judiciary Committee played an advisory role, Stern's faculty could act without conducting any hearing at all.

: 291430-1                         2

By instead referring the matter to the Judiciary Committee for a recommendation, the faculty gave Rosenthal an opportunity – albeit one that he either could not use effectively or chose to squander – to show that he was entitled to leniency. There is no reason why this Court should penalize Stern for taking this step.

Moreover, Rosenthal's assertions that he suffered prejudice because of delays in scheduling the hearing and because he was questioned at the hearing without a lawyer present are completely ineffectual, when he cannot establish that anything Stern did violated any applicable procedure, and his allegations that he suffered prejudice are entirely conclusory and unpersuasive. There is no reason to have a trial to air the irrelevant and unfounded arguments on which Rosenthal relies. This Court should instead grant summary judgment in Defendants' favor.

## ARGUMENT

### Rosenthal Has No Legitimate Basis On Which to Oppose Summary Judgment Dismissing His Complaint

Opposing Defendants' motion for summary judgment, Rosenthal relies on "facts" that have no support in admissible evidence. This is wishful thinking, based on nothing other than the unsupported assertions of Rosenthal's counsel in his brief, and not an appropriate basis on which to oppose summary judgment.

A.    Stern's Rules Specify The Relevant Procedures

For example, Rosenthal asserts that Stern's disciplinary rules are "subordinate to" certain University-wide rules promulgated by the NYU Senate, Rosenthal 3/5 Br. at 3, and that the University-wide rules comprise a "minimum standard" for all disciplinary proceedings. *Id*. at 14. These arguments ignore governing documents on which Rosenthal himself has relied, which make plan that the NYU Senate may act only "upon

: 291430-1                                3

educational matters and regulations of the academic community that affect *more than one school*," and that it is only in such matters that the Senate can take action that is "binding upon all faculties" within the University.  *See* Exhibit 4 to the February 1, 2010 Declaration of Edward Hernstadt submitted in support of Rosenthal's motion for summary judgment ("Hernstadt Dec.") at NYU 1162 (emphasis added).

Rosenthal's argument that the University-wide rules take precedence over Stern's own rules not only has no evidentiary basis but also conflicts with the testimony Rosenthal obtained in discovery.  Rosenthal deposed numerous witnesses who testified that, contrary to his argument, it is Stern's practice to impose discipline on its students under its own disciplinary rules.  *See* the Reply Declaration of Nancy Kilson, Exhibit A (deposition of Kim Corfman, Stern's Vice Dean for MBA Programs) at 98-99; Exhibit B (deposition of Gary Fraser, Stern's Associate Dean of Student Affairs) at 12-18; Exhibit C (deposition of Tim Colvin, former Chair of the MBA Judiciary Committee) at 19-26; and Exhibit D (deposition of Melchior Ochoa, former chair of the MBA Judiciary Committee) at 18-19, 28-30.

The University's publications – which establish the governing contract – similarly fail to support Rosenthal's argument.  The NYU Faculty Handbook, on which Rosenthal himself has relied, states that in the case of a disciplinary violation such as Rosenthal's "affecting only one school, disciplinary action shall be carried out by the faculty of the school in which the student charged is enrolled."  Hernstadt Dec. Exh. 4 at NYU 1117.  In such cases, "[d]isciplinary proceedings shall be in accordance with the established practice of the school."  *Id*.  Where no school-level practice exists – which was not the situation here – the school must follow "in principle, though not necessarily in detail," the

University-wide rules on which Rosenthal relies. *Id*. The argument that those rules displace Stern's established procedures here, however, is totally baseless.

Moreover, contradicting his own argument that Stern's rules are subordinate to the University-wide rules, Rosenthal insists that Stern was obliged to follow one selected Stern rule, requiring appointment of an Investigative Committee and issuance of an investigative report. He nowhere explains what purpose such an investigation would have served in light of his sworn judicial admission that he did, indeed, commit the crime that led Stern to discipline him. The argument that he should receive a degree based on the Judiciary Committee's failure to investigate whether the underlying crime he admittedly committed in fact occurred is simply nonsensical in this context.

Next, Rosenthal asks the Court to conclude that Stern could not discipline a Stern student for an off-campus crime based on statements in what Rosenthal calls the "Grace memo." Rosenthal 3/5 Br. at 4. This Court, however, is obviously fully capable of interpreting the University's publications to decide which rules apply and what those rules mean without reliance on the so-called Grace memo, the true author of which was someone other than Mr. Grace. *See id*. at 5.

B.  The Alleged "Tampering" Has No Basis.

Next, Rosenthal offers conclusory assertions that Stern subjected the MBA Judiciary Committee to "tampering" or other improper tactics. Rosenthal 3/5 Br. at 16-17. The "tampering" argument makes no sense, given the purely advisory role of the Judiciary Committee. Documents on which Rosenthal himself relies reflect the Committee's advisory function. *See* Hernstadt Dec. Exh. 8 at NYU 79 ("The Dean of the School has the right to accept, modify, or reject the Panel's verdict and recommended

sanctions"); Hernstadt Dec. Exh. 14 at 2 (faculty complaint asking the Judiciary Committee to "meet … to review the case and provide its recommendations to the school"); Hernstadt Dec. Exh. 21 at NYU 345 (noting, *inter alia*, that "if the judiciary process does not result in a recommendation satisfactory to the University, an administrative process can be invoked").

Rosenthal concedes in his brief (at 19) that "if the Judiciary Committee merely acted in an advisory capacity" – which was surely the case – the Stern faculty could have "simply proceeded without the Judiciary Committee's decision on jurisdiction, or a Judiciary Committee hearing, or a written decision by the Judiciary Committee … ." Since Stern did not need the Judiciary Committee's permission to act, Stern had no need to "tamper" with the committee, nor did it do so.

    C.     Rosenthal Suffered No Prejudice

In his most recent Declaration, dated February 1, 2010 ("Rosenthal Opp. Dec."), Rosenthal suggests that he was prejudiced because he worried about the implications of his disciplinary hearing testimony for a pending SEC proceeding.[1] Two-and-one-half years have now passed since Rosenthal's disciplinary hearing, however, and Rosenthal proffers no evidence that his hearing testimony has had any impact whatsoever on the SEC case. Rosenthal's conclusory assertions of prejudice are insufficient to suggest a factual issue requiring trial. *See*, *e.g.*, *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Moreover, Stern had no obligation to allow Rosenthal to bring counsel to the hearing under its applicable rule. *See* Hernstadt Dec. Exh. 8 at NYU 80 ("The Accused may *consult with* an adviser of his or her choosing to assist in the *preparation* of the

---

[1] The date is an apparent typographical error.

Accused's defense") (emphasis added).  The absence of an express prohibition on attendance at the hearing by counsel for the accused student is not, contrary to Rosenthal's assertions, tantamount to a rule requiring the attendance of counsel.  Moreover, even if Rosenthal was surprised by the Judiciary Committee's refusal to allow his counsel to attend the hearing, this does not constitute prejudice.

Rosenthal's similarly conclusory assertions that he was "severely prejudiced by the numerous failures of NYU and the Stern School to follow their own rules and procedures, and by the extraordinary delays in [his] case" (Rosenthal Opp. Dec. at ¶ 8) are equally ineffectual.  If Rosenthal had in fact suffered some prejudice, he would presumably be able to specify what it consisted of, yet his Declaration contains only naked conclusions with no supporting detail.  Moreover, the Court should disregard Rosenthal's unsupported conclusions for the additional reason that Rosenthal could not specify how he suffered prejudice at his deposition.  *See* the Declaration of Nancy Kilson, dated February 1, 2010, Exhibit C at 135-38, 171-75.[2]

    D.    Stern Made An Academic Decision Regarding
           Rosenthal's Lack of Entitlement to a Degree

Finally, Rosenthal suggests that there was no academic discretion involved in the decisions of Stern's faculty and Dean that he should not receive an MBA degree.  This proposition is nothing short of laughable.  The decision whether to confer a degree on a student is inherently academic in nature.  Nor did Defendants note that the decision was an academic one "for the first" time in their summary judgment brief, contrary to Rosenthal's assertions (3/5 Br. at 19).  In the Fifth Affirmative Defense of Defendants'

---

[2] In addition, as previously noted, Rosenthal agreed to postpone his disciplinary hearing from July to September 2007 because he knew he would be incarcerated during that time period.  *Id*. at 106, 107-08, 123, 148.

Answer to the Second Amended Complaint (Hernstadt Dec. Exh. 1 at 11), Defendants noted that "[t]he question whether to confer a degree upon Rosenthal is an academic matter solely committed to the University's discretion as a matter of law and not a proper question for this Court to determine." Defendants served their answer in August 2009, and Rosenthal has been on notice of this defense since then.

The question before this Court is not whether Rosenthal was academically qualified to receive the MBA degree, a question Stern's faculty and Dean have resolved. Instead, the question is whether Defendants reasonably complied with the applicable rules in imposing discipline on Rosenthal. His efforts to show a procedural lapse are self-contradictory and have no legal or factual basis, as noted above. His assertion that the decisions of the faculty and Dean were not academic in nature is equally misguided.

## CONCLUSION

For all of the foregoing reasons, therefore, together with those shown in Defendants' prior submissions supporting their motion for summary judgment and opposing Rosenthal's cross-motion, this Court should now grant summary judgment dismissing Rosenthal's complaint.

: 291430-1                                    8

Dated:    New York, New York
          March 22, 2010

                              Respectfully submitted,

                              NEW YORK UNIVERSITY
                              OFFICE OF GENERAL COUNSEL

By:    s/_____
         NANCY KILSON
         Associate General Counsel
         70 Washington Square South
         New York, New York   10012
         Tel.:   (212) 998 2258
         Fax:   (212) 995-3048