Edward Hernstadt (EH 9569)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
212-809-2501

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

AYAL ROSENTHAL,                                :

                              Plaintiff,        :        08 Civ.  5338 (LAK)
                                                :        ECF Case
                                                :
              -v-                               :        (Oral Argument Requested)
                                                :
NEW YORK UNIVERSITY, NEW YORK                   :
UNIVERSITY LEONARD N.  STERN SCHOOL            :
OF BUSINESS, and THOMAS F.  COOLEY,            :
Richard R.  West Dean of the Leonard N.  Stern  :
School of Business,                             :
                                                :
                              Defendants.        :
----------------------------------------------------------------X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

The submissions of defendants New York University ("NYU"), the Leonard N. Stern School of Business (the "Stern School" or "Stern") and Stern Dean Thomas F. Cooley ("Cooley") in opposition to Ayal Rosenthal's Motion for Summary Judgment raise no genuine issue of material fact and no legal basis to deny the relief he seeks. Moreover, defendants have taken egregious liberties with the record, repeatedly making assertions that are blatantly contrary to the undisputed evidence adduced in this matter and misquoting and twisting NYU and Stern's own express and unambiguous rules and procedures. Inaccurate statements of fact or law and blustering, misleading and mean-spirited arguments that miss the point do not constitute an opposition to the motion for summary judgment, and plaintiff respectfully requests that his motion be granted in full.

## ARGUMENT

### I.    Stern Rules Are Subordinate to Senate-Promulgated "University Rules"

The New York University Senate, under the authority of the University Bylaws, has enacted policies and procedures that apply to all NYU students, including the NYU Policy on Student Conduct and NYU Student Disciplinary Procedures, which are published and distributed to every NYU student in the "The Student's Guide to NYU." *See* Plaintiff's Memorandum of Law is Support of His Motion for Summary Judgment ("Pl. Mem.") at 8-12. Defendants rely on several nonsensical theories in arguing that NYU's University-wide rules do not apply in this case.

First, defendants distort the plain meaning of both the Bylaws and the University Policy on Student Conduct (and, by extension, the University Student Disciplinary Procedures) by arguing that (i) Bylaw 61(b) stands for the proposition that the Stern school has sole and unfettered power independently to "promulgate and enforce rules of particular relevance to its students" (Def. Opp. Mem. at 8); and (ii) Bylaw 34(c) should be read to mean that rules, policies, and procedures that were

1

promulgated by the NYU Senate as University-wide policies only "concern disciplinary infractions affecting more than one school" and are not binding on Stern. Def. Opp. Mem. at 10. Defendants' construal of the Bylaws is clearly wrong. In reality, the University Policy on Student Conduct Preamble opens with the clear statement that under the NYU Bylaws, each school or division's faculty is to "make and enforce rules for the guidance and conduct of the students," but that this authority is expressly "subject to the approval of the Board and general University policy." Hernstadt Decl., Exh. 5 at NYU 253. The Preamble then notes that the "Bylaws *also* authorize the University Senate to act upon such matters which affect more than one school." *Id.* (emphasis supplied). Defendants suggest that the words "affect more than one school" are intended to limit the scope of the University-wide Student Disciplinary Procedures to only those situations where a student's conduct relates to more than one school. Def. Opp. Mem. at 9. In other words, defendants argue that the University-wide policies and procedures concerning student discipline would come into play in Rosenthal's case *only* if his conducted had affected Stern *and* another division of NYU. This interpretation strains all credulity.

        As an initial matter, such a distorted reading does not follow at all from the Bylaws or the University Policy on Student Conduct. Bylaw 34(c) grants the Senate with broad authority to promulgate general policies for all schools and divisions, which Stern must follow, but does not empower it to set school/division-specific policies. Hernstadt Decl., Exh. 4 at NYU 1162. Moreover, although Bylaw 61(b) assigns to the "Faculties" the authority to "make and enforce rules," that grant is expressly "[s]ubject to the approval of the Board and to general University policy as defined by the President and Senate." *Id.* at NYU 1171. There is nothing in this language to suggest that the Bylaws can be understood to withhold from the Senate the power to set general University policy or that the University-wide rules enacted by the Senate are not binding on the individual schools. Not only does such a strained interpretation fly in the face of the unambiguous language of the Bylaws, but it also

2

would render meaningless many of the Student Disciplinary Procedures.[1] For example, Section I

designates jurisdiction over certain enumerated student disciplinary matters to the faculty of the school

in which the student is enrolled and others to the Senate. Hernstadt Decl. Exh. 5 at NYU 254. If the

Bylaws have already allocated to Stern jurisdiction over any and all disciplinary matters affecting only

the Stern School, Section I would be meaningless and confusingly duplicative.

   Defendants' suggestion that the "designation of jurisdiction" set out in Section I is only

relevant in cases where the disciplinary proceeding affect more than one school of the University leads

to other absurd results as well.  Offenses by a student affecting multiple schools are obviously the rare

exception and would almost never arise in the context of the academic offenses explicitly allocated to

the Faculties (issues like cheating and plagiarism). In fact, defendants bluntly admit that the Senate

does in fact have the power to allocate jurisdiction to the individual schools since the very categories

of offenses listed in Section I.A are, as defendants note, "obviously matters that could arise in any

school or college in within the University: they therefore affect more than one school." Def.  Opp.

Mem.  at 9, 10. Thus defendants expose the fatal flaw in their argument: matters affecting more than

one school are to be considered on category level, as types of matters, rather than specific instances.  It

would be absurd, as defendants have admitted, to assert that University-wide rules were intended to

apply on a case-by-case basis, depending on whether the specific disciplinary issue affected more than

one school, because all disciplinary problems "arise in any school or college within the University." *Id.*

   Similarly, Student Disciplinary Procedure Section D states the University discourages

its students from committing off-campus crimes and "[t]o the extent that such acts also fall within one

---

[1]  The Student Disciplinary Procedures open with statement that the Senate established them to "ensure
the smooth functioning of University activities" – which must include the activities of its component schools, as
the University consists only of such schools – and "to implement the principles expressed in the University
Policy on Student Conduct at New York University" – again, implicating the University as a whole, which must
include in its scope all students at the component schools, or it would include no one.

of the categories defined in I.A or I.B above, they may *also* be subject to applicable disciplinary measures within the University." *Id.* at NYU 254 (emphasis supplied). If, as defendants contend, the schools can independently assert jurisdiction over matters not allocated to the Faculties in Section I.A, Sections I.A and D of the NYU Student Disciplinary Procedures would be a waste of paper.

Additionally, defendants' arguments are dishonest because they know better. First, defendants pored over University-wide rules when attempting to persuade the Judiciary Committee that it could hear the complaint, and the Judiciary Committee Chair sent the complaint for a disciplinary hearing that would consider the application of University-wide rules contained in the Student's Guide to NYU. *See* Pl. Mem. at 19-23, Hernstadt Decl. Exh. 21 at NYU 345. Moreover, in a published document entitled "University Policy Development and Management" ("UPDM") – which defendants inexplicably failed to produce to plaintiff in discovery, despite its obvious applicability to this dispute – NYU's General Counsel addressed the formulation of University-wide policies, including the relationship between University Policies and the "policies or procedures that relate to matters of interest only to [a] particular School, College or administrative unit." *See* Hernstadt Reply Declaration, Exh. 1. The UPDM specifically explains that although "Schools, Colleges, or operating units may have *additional* policies applicable to those entities," the policies or procedures of an individual school "*may not be contrary* to University Policies in language, purpose, intent or application. Any [individual school] policy that is contrary to University Policies is void and will not be enforced." *Id.* at 4. This, of course, makes perfect sense because each school is a mere division of the University and not an independent entity.[2] Moreover, such a policy is necessary to avoid the type

---

[2]     Other divisions of the University explicitly acknowledge that their own rules are created under the authority of, and are not exclusive of or superior to, University-wide rules. NYU's School of Medicine Code on Student Discipline recognizes that "New York University's . . . Statement of Policy on Student Conduct apply to students of the School of Medicine as they do to students of other schools of the University," so that the Medical School's disciplinary guidelines "augment[] the University's Student Disciplinary Procedures." Hernstadt

of conflict between rules that on their face apply to everyone and rules that apply only to an NYU division that defendants attempt to create in this case.

Defendants also make the bizarre argument that because plaintiff did not provide extrinsic evidence such as "testimony of any knowledgeable witness . . . that NYU or Stern have ever acted in accordance with his interpretation of the University's rules," its motion for summary judgment must fail. Def. Opp. Mem. at 6-7. This contention is wrong for several reasons. First, to oppose plaintiff's motion for summary judgment based on the argument that defendants have never followed their own published rules and procedures is to concede the alleged violations. Second, as defendants contradictorily but correctly point out, NYU's rules and procedures set forth, at least in part, the contract between the parties, and parol evidence is not admissible – or necessary – to the interpretation of the applicable rules and procedures as a matter of law.[3] Obviously, defendants' inconsistent reliance on the self-serving, disingenuous, and incorrect testimony of Cooley, Fraser, and Ochoa is wholly without merit. Def. Opp. Mem. at 6-7.

Defendants' other arguments justifying Stern's assertion of jurisdiction over the disciplinary complaint against Rosenthal are equally without substance or basis. For example, defendants cite repeatedly throughout their opposition papers to the disciplinary procedures of the NYU Rules for the Maintenance for Public Order. *See* Hernstadt Aff. Exh. 4 at 1117. However, these Rules were not alleged in the complaint against Rosenthal, were not addressed at the Judiciary Committee disciplinary hearing, or in either of Dean Cooley's decisions against Rosenthal, and are simply irrelevant to the cross-motions. Similarly, the mere fact that the Student Disciplinary Procedures require a faculty that has delegated the authority designated to it over

---

Reply Decl., Exh. 2. The Wagner Graduate School of Public Service's Academic Code adopted disciplinary procedures that "supplement the Student Disciplinary Procedures of New York University . . . as permitted under New York University by-laws and disciplinary procedures." *Id.*, Exh. 3. The NYU School of Law has a similar provision. *Id.*, Exh. 4.

[3]     *See South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 278 (2005) ("Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous").

disciplinary matters to a Faculty Discipline Committee to "file its own additional written rules of procedure" with the University, simply does not mean, as defendants would have it, that Stern had jurisdiction to discipline Rosenthal's off-campus, non-academic criminal conduct, or that only the Stern rules, and no University-wide rules or procedures, applied to Rosenthal's case. Section II.D of the NYU Student Disciplinary Procedures, for example, which mandates that certain fundamental rights are expressly applicable to *all* of the University's schools and divisions, is clearly to the contrary.

Finally, as discussed in detail in plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, defendants' newly minted assertion that its campaign against Rosenthal was an exercise in academic discretion is entirely baseless and no more than a desperate attempt to create a justification for its blatant breach of its contractual obligations to Rosenthal. *See* Pl. Opp. Mem. at 19-24. This cynical argument should be dismissed out of hand.

## II.    Plaintiff Did Not Violate the Stern Honor Code or Code of Conduct

Assuming for present purposes only that Stern had jurisdiction to pursue a complaint against Rosenthal, which it did not, defendants work hard to overcome two fatal errors they commit in the Rosenthal case.  First, notwithstanding all of defendants' deceptive efforts to twist the record, the Faculty did not properly allege a violation of the Code of Conduct in its complaint. And second, defendants had the burden of alleging a particular violation of a particular rule. It is simply not sufficient to assert that Stern's codes set forth vague, wholly undefined "behavioral norms" and then claim that Rosenthal's admitted criminal conduct violated those norms. Def. Opp. Mem. at 13.

In fact, although the Stern Faculty Complaint did express the faculty's concern that Rosenthal violated violated the Stern Code of Conduct, the Complaint's operative charge is that "by pleading guilty to an infraction of the federal securities law, Mr. Rosenthal has broken both the Stern Honor Code and the University Code of Ethical Conduct." The Stern faculty then voted "that the case

6

of Ayal Rosenthal, having pleaded guilty to the intent to commit securities fraud, be remanded to the Stern School's Judiciary Committee." Hernstadt Decl. Exh. 14 at NYU 61. Similarly, in sending the complaint to a disciplinary hearing, the Chair called for a hearing to determine "if and to what degree the Student's behavior 'has broken both the Stern Honor Code and the University Code of Ethical Conduct.'" *Id.*, Exh. 21 at NYU 345. Thus the complaint sent from the faculty to the Judiciary Committee, and from the Judiciary Committee to a disciplinary hearing, did not allege that Rosenthal had breached the Code of Conduct, and he had no reason to believe that his hearing would address it.[4]

### III.    Defendants Failed to Comply with Their Published Rules and Procedures

Defendants purport to refute Rosenthal's demonstration that they denied him virtually every single substantive and procedural protection available to him (and all NYU and/or Stern students) on essentially two grounds. First, that because the Stern Disciplinary Committee handled the Stern Faculty Complaint, Rosenthal had no rights under the NYU Student Disciplinary Procedures, which, according to defendants, simply did not apply at all. Second, defendants admit numerous breaches, but suggest that they are immaterial and should be ignored. Def. Opp. Mem. 15-17. Neither of these bases survives even the gentlest scrutiny.

As discussed *supra* and in Rosenthal's prior memoranda of law, defendants' first ground flies in the face of the unambiguous language of the NYU Student Disciplinary Procedures. In fact, defendants freely admit that they did not comply with and completely denied Rosenthal the basic

---

[4]    Defendants also tellingly admit that "the University is not suggesting that Rosenthal breached a contractual obligation to the University when he violated the Code of Conduct. Instead, Rosenthal breached a behavioral norm that Stern applied to all MBA Students." Def. Opp. Mem. at 13. Having admitted that the various rules and procedures established by the University constitute the contract between defendants and Rosenthal, defendants cannot now state that Rosenthal's conduct did not breach the contract between them without also admitting that he did not violate the Code of Conduct. The last-minute and, again, newly minted argument of some lesser infraction – the breach of an undefined behavioral norm about which the record is devoid of any testimony regarding its content, its scope or application, or whether it was applied to any other student – does not cure the fact that the actual complaint against Rosenthal did not charge a violation of the Code of Conduct, and any reliance by defendants on this so-called norm must be dismissed.

procedural and substantive rights required in the Procedures, including that: notice of a complaint be provided to the student within 48 hours; the hearing be tape-recorded; a written report summarizing the hearing be given to the student within seven calendar days; and the student have the "right to be accompanied by counsel." *See, e.g.*, Hernstadt Decl. Exh. 5 at NYU 255 (§§I.A, I.D); Pl. Mem. at 21-23. These conceded violations constitute complete noncompliance with defendants' rules and procedures, which is a far cry from the minimal "substantial compliance" claimed by defendants. *See Weidmann v. State Univ. of New York College*, 188 A.D.2d 974, 975 (3rd Dep't 1992).

   Defendants also admit that they brazenly ignored Stern's own Student Disciplinary Rules, but argue that, not withstanding the plain language of the rules, even some Stern rules did not apply to Rosenthal. Thus, defendants suggest, the fact that no Investigative Committee was ever appointed by the Stern Judiciary Committee, despite the mandatory language of the Stern Rules ("the Chair *shall* select an Investigative Committee . . . within two academic days," Hernstadt Decl. Exh. 8 at NYU 77 (§4.B)), so that the equally mandatory Investigative Report was never created.  Defendants suggest that neither was required because Rosenthal's guilty plea automatically justified sending the complaint against him to a hearing. Of course, the Rules, which are absolute on the procedures to be followed, do not support or permit that feeble justification for the manifest violation. Moreover, although defendants grudgingly concede that the disciplinary proceedings against Rosenthal were extraordinarily delayed, they attempt to divert attention from the five months of delay between February 28 and mid-July 2007 by focusing on the fact that Rosenthal, *like the student and faculty members of the Judiciary Committee*, was also unavailable for two months during the summer because he was incarcerated. This fact, while true, is not relevant to the delay caused by defendant and is intended only to distract and prejudice.

Stunningly, defendants feign indignation at Rosenthal's demonstration that defendant Cooley and the Stern administration interfered with the Judiciary Committee's review of and action on the Faculty Complaint against Rosenthal. This response, however, is utterly belied by the vast documentary evidence of tenacious, extensive and wholly improper intervention by Stern administrators to influence the workings of the purportedly independent Committee. To reject as speculative the notion that a different decision might have made had Colvin not been replaced by defendants is topsy-turvy reasoning. In reality, the facts are plain: Judiciary Committee Chair Colvin and his Co-Chair did not believe that the applicable University rules permitted a case to proceed against Rosenthal; defendants improperly interfered in the workings of the Judiciary Committee for three months while denying Rosenthal basic rights (such as notice of the complaint and an Investigative Committee) to which he was entitled under both NYU and Stern rules until Colvin left; and the incoming Chair, hand-picked by defendants in violation of the Stern rules, made the decision to proceed against Rosenthal for which they had been lobbying for more than three months within two weeks of being appointed. *See* Pl. Mem. at 19-21. In sum, defendants' violations of the rules succeeded in their aim of subjecting plaintiff to a disciplinary proceeding in the absence of any right to do so.

Finally, this Court should absolutely reject Defendants' sneering dismissal (calling it "most feeble") of Rosenthal contention that defendants totally and shamelessly denied him the presumption of innocence. Defendants conflate the presumption of innocence to which Rosenthal is entitled by NYU and Stern rules in connection with the Faculty Complaint with the obvious fact that Rosenthal enjoyed no such presumption in the criminal case following his guilty plea. Yes, Rosenthal pled guilty to violating securities laws, but his plea was obviously not tantamount to an admission that he also violated some Stern rule or code. To suggest Rosenthal's guilty plea constitutes such an

admission is both absurd and denies Rosenthal the presumption of innocence required under NYU and Stern Rules.

### IV.     Plaintiff Has Already Refuted Defendants' Remaining Baseless Contentions

Plaintiff has already addressed most of defendants' remaining arguments, but two particular contentions merit a brief additional response. First, with respect to Cooley's highly improper actions in teaching Rosenthal's case, he not only used the case in a class discussion while fully aware of the pending Faculty Complaint, but Cooley also identified Rosenthal as a Stern Student, which was information not included in the news article shared with his class, and improperly discussed with the students whether such a student should be awarded an MBA degree.

Second, defendants' outrageous statement that Rosenthal's failure "to disclose that he was under investigation for many months after" he committed a securities crime "is directly related to his 'position as a student' and reflects his abject failure to learn the lessons Stern tried to teach," Def. Opp. Mem. 21, is baseless. Rosenthal was under no obligation whatsoever to disclose to NYU that he was under investigation. Moreover, the mean-spirited suggestion that plaintiff deserved to be denied his diploma because he did not voluntarily disclose this fact – long before his guilty plea – and did not express remorse (at a hearing that was specifically not about his sorrow) is again to deny to plaintiff the presumption of innocence to which he was entitled under NYU and Stern rules.

### CONCLUSION

For the reasons set forth above, as well as in plaintiff's moving Memorandum of Law and related submissions in support of his Motion for Summary Judgment and in his Memorandum of Law and related submissions in Opposition to defendants' Motion for Summary Judgment, no genuine issue as to any material fact regarding plaintiff's claims in this matter. Accordingly, plaintiff is entitled to summary judgment as a matter of law and his motion should be granted in its entirety.

10

Dated: New York, New York
March 22, 2010

HERNSTADT ATLAS LLP

By: _Edward Hirst_

Edward Hernstadt (EH 9569)
11 Broadway, Suite 615
New York, New York 10004
212-809-2501
Attorneys for Plaintiff

11